IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION
CASE NO. 5:18-cr-452

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | **DEFENDANT'S REVISED** |
| | ) | **BRIEF IN SUPPORT** |
| LEONID TEYF et al., | ) | **OF PRETRIAL RELEASE** |
| | ) | |
| Defendants. | ) | |

## FACTS

Leonid Teyf stands accused of engaging in monetary transactions in property derived from specified unlawful activity and conspiring with and aiding and abetting others in furtherance of same,[1] bribery of a public official,[2] murder for hire,[3] aiding and abetting others by possessing a firearm with an obliterated serial number,[4] bringing in and harboring certain aliens and conspiring with and aiding and abetting others in furtherance of same,[5] and visa fraud.[6] Mr. Teyf is currently being detained at the Wake County Detention Center awaiting trial. The Revised Pretrial Services Report (ECF No. 57) recommends Mr. Teyf's release in conjunction with the imposition of eight accompanying conditions.[7] This brief is intended to replace the previously filed Defendant's Brief in Support of Pretrial Disclosure (ECF No. 49).

---

[1] 18 U.S.C. §§ 2, 1956(h) and 1957 (2018).
[2] *Id*. § 201(b)(1).
[3] *Id*. § 1958.
[4] *Id*. §§ 2, 922(k) and 924(a)(1)(B).
[5] 8 U.S.C. §§ 1324(a)(1)(A)(iv), (v)(I) and (v)(II) (2018).
[6] 18 U.S.C. § 1546(a).
[7] The proposed conditions are as follows: "1. The defendant must submit to supervision by and report for supervision to the U.S. Probation Office as directed. 2. The defendant must continue or actively seek employment. 3. The defendant must surrender any passport to: The U.S. Probation Office. 4. The defendant must not obtain a passport or other international travel document. 5. The defendant must avoid all contact, directly or indirectly, with any person who is or may be a victim or witness in the investigation or prosecution. 6. The defendant must not possess a firearm, destructive device, or other weapon. 7. The defendant must not use or unlawfully possess a narcotic drug or other controlled substances defined in 21 U.S.C. § 802, unless prescribed by a licensed medical

While the superseding indictment reads like an international crime novel, the Pretrial Services Report (ECF No. 57) paints a more accurate portrait of reality. Mr. Tefy, 57, has lived in the Raleigh, North Carolina area for the past decade with his wife and three children. His youngest daughter was born in Raleigh and he has been engaged in business ventures in Raleigh and other parts of the U.S. since immigrating to America. Mr. Teyf has considerable health problems, and he has been under medical observation during his time in custody. Mr. Teyf is a homeowner, a businessman, and a member of the community with no criminal record. Mr. Teyf has significant ties to the Raleigh, North Carolina community, and his family, his business, and his home are all in the Raleigh, North Carolina area.

## ARGUMENT

The Bail Reform Act of 1984 established two statutory presumptions against pretrial detention. The first is a presumption in favor of pretrial release on personal recognizance or unsecured appearance bond.[8] The second is a presumption in favor of release in conjunction with the imposition of reasonable conditions, but only if the judicial officer determines that release pursuant to the first presumption will not reasonably ensure the person's appearance as required or would endanger the safety of others.[9] Further, the Court is required to impose the least restrictive condition(s) necessary to achieve the objective of reasonably assuring the accused's return and the safety of other persons and the community.[10]

In spite of the Bail Reform Act's bias towards release, and the Revised Pretrial Services Report's recommendation for release, the Government seeks continued pretrial detention for Mr. Teyf. Such detention is only warranted under exceptional circumstances. Specifically, this Court

---

practitioner. 8. The defendant must report as soon as possible, to the probation office or supervising officer, every contact with law enforcement personnel, including arrests, questioning, or traffic stops."
[8] *See id*. § 3142(b).
[9] *See id.* § 3142(c).
[10] *See id.* § 3142(c)(1)(B).

may only impose continued pretrial detention where "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."[11] The Government's request is unwarranted in this case and conflicts with the framework of the Bail Reform Act and the fundamental principles upon which our criminal justice system is built.

The presumption in favor of pre-trial release of a person accused of a crime is a long-established principle of our federal judicial system and a corollary of the presumption of innocence. As the Supreme Court explained in *Stack v. Boyle*:

> From the passage of the Judiciary Act of 1789, 1 Stat. 73, 9 1, to the present Federal Rules of Criminal Procedure, Rule 46(a)(1), federal law has unequivocally provided that a person arrested for a non-capital offense *shall* be admitted to bail. This traditional right to freedom before conviction permits the unhampered preparation of a defense, and serves to prevent the infliction of punishment prior to conviction. See *Hudson v. Parker*, 156 U.S. 277, 285 (1895). **Unless [the] right to bail before trial is preserved, the presumption of innocence, secured only after centuries of struggle, would lose its meaning.**[12]

In order to defeat this presumption, the Government must prove either: (a) by clear and convincing evidence that Mr. Teyf is so dangerous that this Court is incapable of fashioning conditions sufficient to assure the safety of others; or (b) by a preponderance of the evidence that he is so likely to flee that this Court is incapable of fashioning conditions sufficient to assure his appearance as required. Mr. Teyf's well-established community and business ties, his demonstrated lack of intent to flee, and the fact that his three children (two of whom are U.S. citizens) reside in America all weigh heavily against the Government's ability to meet its burden.

---

[11] *See id.* § 3142(e).
[12] *Stack v. Boyle*, 342 U.S. 1, 4 (1951) (emphasis in original).

## A. Factors to Be Considered

The Bail Reform Act directs the Court to consider the following factors when making a determination about an accused's release:

(1) the nature and circumstances of the charges;

(2) the weight of the evidence against the person;

(3) the person's history and characteristics; and

(4) the nature and seriousness of the danger posed by the person's release.[13]

Regarding the person's "history and characteristics," the Court must consider:

(1) the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history related to substance abuse, criminal history, and record concerning appearance in court proceedings; and

(2) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law. *Id.* at § 3142(g)(3)(A)-(B).

Additionally, when assessing an alien defendant's ties to the community, the Court should also consider several other factors including:

(1) The amount of time the defendant has resided in the community;

(2) the defendant's employment in the community;

(3) whether the defendant owns property in the community; and

(4) whether the defendant has any relatives who are citizens or residents of the United States.[14]

## I. Leonid Teyf is Not a Flight Risk

As noted above, pre-trial detention is prohibited unless the judicial officer determines that "no condition or combination of conditions will reasonably assure the person's appearance as

---

[13] *See* 18 U.S.C. § 3142(g) (2018).
[14] *See United States v. Townsend*, 897 F.2d 989, 995 (9th Cir. 1990).

required and the safety of any other person and the community."[15] With respect to the first prong, the Government bears the burden of proof and must carry it by a preponderance of the evidence.[16] Mr. Teyf is decidedly not a flight risk. He has no criminal history, has been living in the United States for approximately the past eight years, is a legal resident of the United States, has extensive family and business ties to the United States, has ties to the Raleigh community, and has repeatedly evidenced a lack of intent to flee. The extent of the risks of nonappearance identified in the Revised Pretrial Services Report consist of "Ties to a Foreign Country – Russia." ECF No. 57. Such circumstances militate against pretrial detention.

The lack of intention to flee is more informative to the determination of the necessity of pretrial detention than the opportunity to flee. While evidence related to intent is often non-existent, when present, courts have focused on this lack of intent to find that pretrial detention is unwarranted.[17] This is especially true when the defendant is aware of the impending threat of prosecution and declined to flee under circumstances giving rise to an opportunity to do so.[18]

Mr. Teyf has been aware of the Government's interest in him for some time. Despite this, Mr. Teyf's conduct throughout the pendency of the Government's investigation has evidenced an intention to remain in the United States and to defend against the charges leveled against him. Despite having every opportunity to flee the country, Mr. Teyf has declined to do so, a reflection

---

[15] 18 U.S.C. § 3142(e).
[16] *See United States v. Stewart*, 19 Fed. Appx. 46, 48 (4th Cir. 2001). While the "preponderance of evidence" standard has been employed by the Fourth Circuit and courts therein, Mr. Teyf contends that the Constitutional implications of pretrial confinement necessitate analysis under a "clear and convincing" evidentiary standard.
[17] *See United States v. Hanson*, 613 F. Supp. 2d 85, 90 (D.D.C. 2009) (noting that there was "no strong circumstantial evidence indicating that Mrs. Hanson intends to flee the United States" and permitting the defendant's release subject to conditions); *United States v. Khashoggi*, 717 F. Supp. 1048, 1050-1051 (S.D.N.Y. 1989) (granting pretrial release in conjunction with the imposition of conditions where the defendant "manifest[ed] an intention to remain here and face the charges against him."); *see also Hung v. United States*, 439 U.S. 13, 26 (U.S.) (concluding that a defendant was entitled to bail pending appeal as the government's evidence "suggest[ed] opportunities for flight, [but] they hardly establish[ed] any inclination on the part of applicant to flee. And other evidence supports the inference that he is not so inclined.")
[18] *See Hanson*, 613 F. Supp 2d at 89 (granting the defendant's release subject to conditions where the defendant "had an opportunity to flee between January 29, 2009 (when her home in Maryland was searched and she was interrogated) and February 12, 2009 (when she was arrested), but did not flee.")

of his intention to remain accountable and present. He has been aware of DHS' investigation into his business affairs since at least the spring of 2018. Specifically, he had knowledge that Alexey Timofeev was arrested by the Department of Homeland Security ("DHS") in April of this year, and that Mr. Timofeev cooperated with DHS. Moreover, Mr. Teyf understood that, rather than being primarily focused on any immigration issue relevant to Mr. Timofeev himself, the Government agents clearly expressed interest in Mr. Teyf's own business activities. Yet rather than flee in an attempt to evade law enforcement, Mr. Teyf retained counsel to assist him with the pending investigation into his business affairs, continued his relationship with Mr. Timofeev and continued to reside at his home in Raleigh. In fact, Mr. Teyf enhanced his ties to the United States. Rather than liquidate his U.S. holdings in anticipation of fleeing the country, in July 2018, he doubled his existing ownership interests in certain Utah-based trucking businesses. Further, since becoming aware of the government inquiry into his business affairs, Mr. Teyf has travelled internationally and yet returned to the United States. Simply put, these actions are not consistent with an intent to flee the country in the face of a government investigation. To the contrary, these are the actions of someone ready and willing to defend against any charges that may be and now have been brought against him.

The business interests that Mr. Teyf has established and grown since his arrival in the United States further compel a finding of pretrial release.[19] Mr. Teyf has been employed as the President of Delta Plus, LLC, a provider of urgent care services in the Raleigh area, since his arrival in the United States. And, as noted above, he maintains substantial ownership interests in multiple trucking companies in Utah. These connections argue loudly against the need for pretrial detention.

---

[19] *See Khashoggi*, 717 F. Supp. at 1051 (noting that the negative impact the defendant's flight would have on his United States business interests supported the conclusion that he did not pose a substantial risk of flight.)

Mr. Teyf's community and family ties further support a finding that he is not a flight risk. He arrived in the United States in 2010 and has since become a legal resident of the United States. He has three children in the United States, two of whom are United States citizens, and one is a minor attending school in Raleigh. Mr. Teyf owns real estate in North Carolina, including his home in Raleigh. The strength of these connections weighs heavily against pretrial detention.

Turning to the nature of the charges, it is true that they suggest the possibility of a significant sentence if convicted, but what seems certain is that these complex allegations will result in a protracted pretrial process and trial. The extensive anticipated duration of these proceedings weighs against pretrial detention.[20] Further, Mr. Teyf's release is especially important given the complexity of the financial transactions and international implications involved in his case. Refusal to grant pretrial release will have a materially negative impact on his ability to defend himself at trial. Additionally, the nature of the charges is inconsistent with the sole "risk of nonappearance" identified in the Revised Pretrial Services Report (ECF No. 57), that being ties to Russia. Assuming arguendo the validity of the allegations against Mr. Teyf related to the Russian kickback scheme, he would have every incentive to stay far away from Russia.

The weight of the evidence similarly militates against Mr. Teyf's pretrial detention. While it remains to be seen exactly what the Government will ultimately produce as evidence, what is already clear is that the superseding indictment is plagued by inconsistencies, conclusory statements and questionable legal theories. As an example, the money laundering charges against Mr. Teyf are premised on, what is at best, a decidedly non-intuitive notion of theft, to wit: that an

---

[20] *See Khashoggi,* 717 F. Supp. at 1051 (explaining that "the likelihood of a somewhat prolonged pretrial detention for the defendant weighs in his favor").

agreement between a government contractor and a subcontractor to receive a portion of the subcontractor's payment, for work that was introduced by the former to the latter, constitutes theft of government funds. Regardless of whether the superseding indictment states facts incorrectly, or assumes facts that have not been alleged, these issues are indicative of the Government's tenuous position moving forward and weigh against the Government's request for continued detention while Mr. Teyf tries to defend himself.

### B. Leonid Teyf Poses No Danger to this Community

Under the safety prong of the Bail Reform Act analysis, the Government has an even higher burden: to prove by clear and convincing evidence that no condition or combination of conditions can reasonably assure the safety of others and the community.[21] The clear and convincing standard requires that the evidence support a conclusion with a high degree of certainty.[22]

It should be noted at the outset that Mr. Teyf is not charged with a crime of violence, which is defined by the United States Code as "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another..."[23] Regarding the firearm charge, the statute is absolutely devoid of any reference to physical force.[24] Similarly, regarding the murder-for-hire charge, none of the requisite elements are found in 18 U.S.C. § 1958(a). Instead, that statute merely requires traveling or causing others to travel in interstate or foreign commerce, or use of the mails or any facility of interstate or foreign commerce with the intent that a murder be committed.[25] Insofar as *U.S. v. Luskin* might be read

---

[21] *U.S. v. Salerno*, 481 U.S. 739, 742 (1987) (citing 18 U.S.C. § 3142).
[22] *U.S. v. Chimurenga*, 760 F.2d 400, 405 (2nd Cir. 1985).
[23] 18 U.S.C. § 16(a) (2018). Subsection 16(b), the so-called "residual clause," which included any felony involving a substantial risk that physical force may be used against the person or property of another, has been declared unconstitutionally vague. *See Sessions v Dimaya*, 138 S. Ct. 1204 (2018).
[24] *See* 18 U.S.C. 922(k).
[25] *See id*. § 1958(a).

to the contrary, its holding is inconsistent with the plain language of the statute and, regardless, is distinguishable. In *Luskin*, the defendant hired an individual, Sonny Cohen, to murder his estranged wife. Upon conviction, he appealed the imposition of consecutive sentences based on the finding that he had committed a crime of violence. In finding that Luskin's solicitation of his wife's murder was indeed a crime of violence, the court stated, "… Sonny Cohen violated [18 U.S.C. § 1958] by travelling in interstate commerce three times with the intent to commit murder. This *conduct* certainly threatened the use of violence…" (emphasis added).[26] Clearly, the court resorted to the specific facts of Luskin's case to find the requisite threat of force, as opposed to the statute's requirement that such threat be an element of the offense charged. Regardless, the indictment against Mr. Teyf contains no allegations of any similar conduct and, therefore, *Luskin* is inapposite.

Mr. Teyf is not a danger to his community. Pursuant to 18 U.S.C. § 3142(f)(2)(B), the Government is required to prove that "no condition or combination of conditions will reasonably assure the safety of any other person and the community . . . by clear and convincing evidence." This standard mandates a "high degree of certainty."[27] Here, the Government is unable to prove that no conditions would assure the safety of the community under this evidentiary standard.

The Government's success is contingent upon its ability to present specific evidence that Mr. Teyf would be a danger to the community. Though the Bail Reform Act does not explicitly define "danger," the legislative history of the Act indicates that Congress intended "danger" to refer specifically to the likelihood that the accused would commit further crimes to the "detriment of the community" while on release.[28]

---

[26] *U.S. v. Luskin*, 926 F. 2d 372 (4th Cir. 1991). In support of its holding, the court also referenced the "substantial risk" portion of the definition which, as noted above, has been declared unconstitutionally vague. *See* n. 2, *supra*.
[27] *Addington v. Jessup*, 441 U.S. 418, 431 (1979).
[28] S. Rep. No. 98-225 at 13, 20 (1984).

None of the crimes Mr. Teyf is charged with trigger any presumption under the Bail Reform Act.[29] The Government is unable to prove that the mere possession of a gun is sufficient to establish that Mr. Teyf is a danger to the community under the clear and convincing evidentiary standard given his lack of history of criminal activity. The only alleged violence in the superseding indictment is the effort to harm the purported paramour of his former wife; there is no basis to extrapolate the threat of violence to the larger community. Further, given the nature of these charges—the indictment is devoid of any suggestion that Mr. Teyf personally participated in any violent or threatening behavior—it is unclear how pretrial detention would be relevant to ensuring public safety. Most importantly, Mr. Teyf has lived peacefully in this community for nearly a decade without committing any criminal acts, as evidenced by his lack of a criminal record. Such circumstances compel a finding that Mr. Teyf is not a danger to the community.

## II. The Court Must Employ the Least Restrictive Means for Maintaining Community Safety and Assuring Defendant's Appearance at Trial.

For the reasons set forth above, Mr. Teyf poses no significant risk of flight or danger to others and should therefore be released on personal recognizance or unsecured appearance bond. But should this Court determine that one or more conditions are necessary to assure Mr. Teyf's continued participation in these proceedings or the safety of others, it must select the least restrictive means necessary.[30] The specific language of Section 3142(c) mandates that detention based on "flight" or "danger" be limited to those narrow circumstances where "**no condition or combination of conditions** will **reasonably** assure the appearance." (emphasis added). This Court's obligation under the statute is to impose the "*least restrictive* further condition or combination of conditions the judicial officer determines that will *reasonably* assure the

---

[29] *See* 18 U.S.C. § 3142(e)(3).
[30] 18 U.S.C. § 3142(c).

appearance . . . ."[31] The Court may require no more than an objectively reasonable assurance that the defendant will appear at trial. Absolute, one hundred percent certainty, which can be assured only by detention is not the test.[32]

If this Court determines that Mr. Teyf presents some appreciable risk of flight or danger to the community, it must fashion the least restrictive combination of fourteen statutory conditions specified in 18 U.S.C.§ 3142(c). Those fourteen conditions include limitations on personal associations; limitations of travel, telephone calls, contacts, and use of firearms and narcotics, as well as other monitoring restrictions implemented and administered through Pretrial Services that will "reasonably assure" defendant's appearance. Imposition of such conditions will reduce any concerns related to the defendant's propensity for flight or dangerous activity.[33]

The Revised Pretrial Services Report (ECF No. 57) recommends that Mr. Teyf "be released on a Personal Recognizance bond and with" eight accompanying conditions. Here, Mr. Teyf's accounts have already been frozen, and he is amenable to the imposition of any reasonably necessary condition to ensure his appearance at future proceedings, including all of the conditions outlined in the Revised Pretrial Services Report (ECF No. 57). Under these circumstances, it is incumbent upon the Court to employ the least restrictive set of restrictions to permit Mr. Teyf to return home and participate in the preparation of his defense. The Pretrial Services Report provides reasonable measures to ensures Mr. Teyf's appearance at future proceedings, and provides adequate safeguards to ensure the safety of the community (although

---

[31] 18 U.S.C. § 3142(c)(1)(B).
[32] *United States v. Orta,* 760 F.2d 887, 892 (8th Cir. 1985) (*en banc*) (district court imposition of detention on grounds defendant's appearance could not be "guaranteed" applied the wrong legal standard, which is reasonable assurance).
[33] *See, e.g. United States v. Giorando,* 370 F. Supp. 2d 1256, 1271 (S.D. Fla. 2005) (explaining that "monetary conditions [] would ameliorate the flight risk that exists" as a result of the defendant's significant financial resources); *United States v. Karni*, 298 F. Supp. 2d 129, 132 (D.D.C. 2004) (imposing conditions in conjunction with release where the defendant had no ties to the United States).

Mr. Teyf is not a threat whatsoever to the community), and Mr. Teyf respectfully requests this Court adopt the recommendations of the Pretrial Services Report and order Mr. Teyf's release.

This 18th day of December, 2018.

/s/ James P. McLoughlin, Jr.
James P. McLoughlin, Jr.
N.C. State Bar No. 13795
Nathan A. White
N.C. State Bar No. 48684
Benjamin F. Leighton
N.C. State Bar No. 50835
MOORE & VAN ALLEN PLLC
100 North Tryon Street, Suite 4700
Charlotte, NC 28202-4003
Phone: (704) 331- 1054
Facsimile: (704) 378-2054
Email: jimmcloughlin@mvalaw.com
nathanwhite@mvalaw.com
benleighton@mvalaw.com

# CERTIFICATE OF SERVICE

I hereby certify that on December 18, 2018, I caused to be filed electronically with the Clerk of Court through the CM/ECF system the foregoing **DEFENDANT'S REVISED BRIEF IN SUPPORT OF PRETRIAL RELEASE,** and that service will be accomplished by the CM/ECF system sending notification of such filing to the following counsel of record:

> Jason Kellhofer
> U.S. Attorney's Office
> 310 New Bern Avenue
> Federal Building, Suite 800
> Raleigh, North Carolina 27601-1461
> Jason.kellhofer@usdoj.gov
>
> Barbara Kocher
> 310 New Bern Avenue
> Federal Building, Suite 800
> Raleigh, North Carolina 27601-1461
> Barb.kocher@usdoj.gov
>
> Attorneys for the United States of America

/s/ James P. McLoughlin, Jr.
James P. McLoughlin, Jr.
