IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION
CASE NO. 5:18-cr-452

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| v. | ) | MOTION TO REVOKE OR AMEND |
| | ) | THE MAGISTRATE'S ORDER |
| LEONID TEYF et al., | ) | DETAINING DEFENDANT |
| | ) | |
| Defendants. | ) | |

Defendant Leonid Teyf, by and through undersigned counsel, pursuant to 18 U.S.C. § 3145(b), moves this Court to revoke the Order of Detention Pending Trial (the "Order") entered by the Honorable Magistrate Judge Robert T. Numbers, II on December 18, 2018, or alternatively, hold an evidentiary hearing, for the reasons set forth below.

## PROCEDURAL HISTORY

Leonid Teyf stands accused of engaging in monetary transactions in property derived from specified unlawful activity and conspiring with and aiding and abetting others in furtherance of those transactions,[1] bribery of a public official,[2] "murder for hire",[3] aiding and abetting others in possessing a firearm with an obliterated serial number,[4] bringing in and harboring certain aliens, as well as conspiring with and aiding and abetting others in furtherance of that harboring,[5] and visa fraud.[6]

---

[1] 18 U.S.C. §§ 2, 1956(h) and 1957 (2018).

[2] *Id*. § 201(b)(1).

[3] *Id*. § 1958.

[4] *Id*. §§ 2, 922(k) and 924(a)(1)(B).

[5] 8 U.S.C. §§ 1324(a)(1)(A)(iv), (v)(I) and (v)(II) (2018).

[6] 18 U.S.C. § 1546(a).

The Government made an oral motion for detention as to Mr. Teyf on December 6, 2018. A Pretrial Services Report was filed recommending that Mr. Teyf be detained. (ECF No. 42.) Counsel for Mr. Teyf challenged the Pretrial Services Report at the December 14, 2018 detention hearing on Constitutional and statutory grounds. As a result, the detention hearing was continued until December 18, 2018. An Amended Pretrial Services Report was filed on December 17, 2018. (ECF No. 57). The Amended Pretrial Services Report recommended Mr. Teyf's release with the eight conditions.[7] The Defense did not have access to any material discovery prior to the hearing. Since the hearing the Defense has been provided some discovery relevant to the issue of detention that the Defense believes present part of the grounds for this motion. In addition, the Defense has obtained additional evidence regarding Mr. Teyf's medical condition.

Magistrate Numbers concluded that the Government had shown by clear and convincing evidence that there are no conditions or combination of conditions that would reasonably assure the safety of any other person and the community pending the outcome of the case and granted the Government's motion for detention. (ECF No. 68). Magistrate Numbers did not find that the Government showed that Mr. Teyf was a flight risk by a preponderance of evidence.

**STANDARD OF REVIEW**

Pursuant to 18 U.S.C. 3145(b), this Court retains the authority to conduct a de novo review of a Magistrate's order detaining a defendant in a federal criminal case. The Court should conduct a hearing and de novo review.[8] In doing so, the Court makes an independent determination as to whether the magistrate judge's findings are correct based on the Court's review of the evidence

---

[7] Mr. Teyf filed a Brief in Support of Pretrial Release (ECF No. 49) and a Revised Brief in Support of Pretrial Release (ECF No. 59) in anticipation of the hearing.

[8] *United States v. Clark*, 865 F.2d 1433, 1437 (4th Cir. 1989); *United States v. Williams*, 753 F.2d 329, 333 (4th Cir. 1985); *United States v. Ramey*, 602 F. Supp. 821, 822-24 (E.D.N.C. 1985).

*(continued on next page)*

before the magistrate judge.[9] The Court may conduct a further evidentiary hearing if it is necessary or desirable in carrying out the review.[10]

## ARGUMENT

Mr. Teyf's continued pretrial detention is a product of the Magistrate Judge's improper analysis of the applicable factors under the Bail Reform Act. The Magistrate Judge relied upon anecdotal evidence without supporting statistical analysis to conclude pretrial release is rare in the context of murder for hire charges. The Magistrate Judge used an incomplete review of the cases and incorrect assumptions made based on that review to *presume* that in most such cases pretrial release is not to be granted. In fact, the Magistrate Judge unconstitutionally and in violation of 18 U.S.C. 3142(b), effectively reversed the presumption in favor of release. In addition, the Magistrate Judge erroneously concluded that the weight of the evidence plus the nature and circumstance of the offenses and potential harm to A.G. and Tatyana Teyf supported his determination that no conditions could reasonably ensure the safety of any person and the community. Closer analysis of these factors and the case law dictates the conclusion that the Magistrate Judge erred.

First, Mr. Teyf's release does not pose a danger to A.G. or Tatyana Teyf. Even assuming solely for the sake of argument that a risk to A.G. ever existed, the exposure of the alleged scheme in and of itself, even without any conditions of release, virtually eliminates any risk to A.G. Mr. Teyf is fully aware of the fact that should any harm whatever befall A.G. he would inescapably be charged with responsibility and face a crushing increase in a potential sentence. The same is true

---

[9] *See Williams*, 753 F.2d at 333-34.

[10] *See id.*, at 333; *see also United States v. Koenig*, 912 F.2d 1190, 1192 (9th Cir. 1990) (district court has discretion on whether to conduct a further evidentiary hearing); *United States v. Delker*, 757 F.2d 1390, 1393-94 (3rd Cir. 1985); *United States v. Fortna*, 769 F.2d 243, 249-50 (5th Cir. 1985) (same).

3

for Tatyana Teyf. Moreover, detention of Mr. Teyf does not make anyone safer. Mr. Teyf is not charged with personally trying to harm anyone; he is charged with hiring someone else to do harm. He has no criminal record and no history of reported violence has been submitted against him. He is a 57-year-old business man with a variety of physical ailments. If Mr. Teyf were reckless enough to try to have harm done to A.G. or Tatyana Teyf—and he is not—continued pretrial detention would not preclude this as, theoretically, such directions could just as easily occur while Mr. Teyf remains in jail. The real deterrent is the charges against him—not his detention. The Court has the power to impose conditions preventing contact pending trial. Second, contrary to the Government's characterizations of the evidence against Mr. Teyf, the discovery materials reveal that the Government's case is far more tenuous than what was presented to the Magistrate Judge. Third, a murder-for-hire charge is not a crime of violence altering the presumption favoring release; it does not dictate confinement; and there is precedent for release in federal courts nationwide. Fourth, this Court can and must employ the statutorily enumerated conditions of release to facilitate Mr. Teyf's release given the cumulative weight of these factors.

**A. Mr. Teyf does not pose a danger to A.G. or Tatyana Teyf and cases support release.**

Neither A.G. nor Tatyana Teyf are endangered by Mr. Teyf's release. First, the fact that the purported scheme has been exposed wholly undermines any potential threat to A.G. Mr. Teyf is well aware that all eyes will immediately turn in his direction should any harm befall A.G.; thus, even assuming the accuracy of the Superseding Indictment, Mr. Teyf has every incentive to assure A.G.'s safety rather than threaten it.

In *United States v. Barnett*, the court assessed the issue of how to reasonably assure the safety of the purported victims and witnesses after two defendants were charged with murder-for-

4

Case 5:18-cr-00452-FL   Document 75   Filed 01/03/19   Page 4 of 16

hire.[11] The Court cited Judge Keeton of the District of Massachusetts, who provided an adept interpretation of the Bail Reform Act in *United States v. Phillips*.[12] He explained:

> Congress has not provided a definition of "safety of . . . the community," 18 U.S.C. § 3142(e), or "danger to . . . the community," 18 U.S.C. § 3142(g)(4). Congress did, however, choose to use the term "danger," which by its nature is a risk concept. By using this term, Congress did not declare that the community is entitled to assurances of freedom from all harm, and a court cannot detain arrestees on the mere apprehension of danger of harm. Rather, the court's inquiry must focus on whether by conditions of release the community can reasonably be assured of its safety. *See United States v. Orta*, 760 F.2d 887, 892 (8th Cir. 1985) (en banc) (court "cannot require more than an objectively reasonable assurance of community safety"). Indeed, if the statute were interpreted as requiring a guarantee against any harm, pretrial preventive detention would become the norm rather than the exception because such guarantees could be made in almost no cases. As already noted, preventive detention as a norm is not the manifested congressional intent, S.Rep. No. 225, 98th Cong., 2d Sess. 12, reprinted in 1984 U.S. Code Cong. & Admin. News 3182, 3195 ("it is anticipated that [pretrial] release will continue to be appropriate for the majority of Federal defendants"), nor is it consistent with the Supreme Court's opinion in *Salerno*, 481 U.S. at 755.[13]

In *Barnett*, the Magistrate Judge relied on this analysis and concluded that while "it is certainly within the wide realm of the possible" that the defendant would disregard the stringent conditions of release, it was "implausible and unlikely" that he would do so.[14] He further explained that "[a]s much as it may be desirable to eliminate *even this slight possibility* of danger to the community, the law does not permit the court to require guarantees of safety before granting pretrial release."[15]

---

[11] 986 F. Supp. 385 (W.D. La. 1997).

[12] 732 F. Supp. 255 (D. Mass.1990).

[13] *Id.* at 266-67.

[14] *Barnett*, 986 F. Supp. at 399-400.

[15] *Id.* at 400. District Court Judge Melancon subsequently reviewed the Magistrate Judge's order and concluded that one of the defendants was a flight risk given his tenuous ties to the local community and his extensive work outside the country. *United States v. Barnett*, 986 F. Supp. 405, 408 (W.D. La. 1997). Still, the District Court Judge did not overrule the Magistrate Judge's conclusion that neither defendant charged with murder-for-hire was such a danger to the community that no conditions could facilitate their release.

*(continued on next page)*

In regard to the animosity one of the defendants maintained against the purported victims, the court determined that:

> The government has failed to present any evidence that [the defendant's] negative feelings toward his purported victims cannot be counterbalanced by concern for his family and their property, concern for his own financial welfare, and awareness of the huge disparity in criminal penalties between the charges he faces and the charges he might face if he injures the purported victims while on release. Just as a person may be motivated by hate, he can also be motivated by love, friendship, loyalty, fear, and self-interest. These are the principles upon which the Bail Reform Act are based: that most people can be released on some combination of bond conditions which will insure the safety of the community and their appearance at trial.[16]

More specifically, the court noted that the "case has generated sensational headlines and much publicity . . . Defendants would indeed have to be irrational to attempt anything while on pretrial release. The government has offered no evidence that either defendant suffers from a mental disease or defect which would impede their ability to rationally consider these consequences."[17] Such principles are equally applicable here and underscore the Court's ability to fashion appropriate conditions to mitigate against any concerns related to A.G.'s safety and the corresponding feasibility and appropriateness of Mr. Teyf's pretrial release.

The presumption in favor of pre-trial release of a person accused of a crime is a long-established principle of our federal judicial system and a corollary of the presumption of innocence. As the Supreme Court explained in *Stack v. Boyle*:

> From the passage of the Judiciary Act of 1789, 1 Stat. 73, 9 1, to the present Federal Rules of Criminal Procedure, Rule 46(a)(1), federal law has unequivocally provided that a person arrested for a non-capital offense *shall* be admitted to bail. This traditional right to freedom before conviction permits the unhampered preparation of a defense, and serves to prevent the infliction of punishment prior to conviction. See *Hudson v. Parker*, 156 U.S. 277, 285 (1895). **Unless**

---

[16] *Id*. at 402.

[17] *Id.* at 402-03.

*(continued on next page)*

6

> ***[the] right to bail before trial is preserved, the presumption of innocence, secured only after centuries of struggle, would lose its meaning.***[18]

Similarly, Mr. Teyf's release does not endanger Tatyana Teyf. At no point during the alleged extended scheme does the Government allege that Mr. Teyf threatened Tatyana Teyf with violence. The Government does not accuse Mr. Teyf of plotting to physically harm Tatyana Teyf; rather, the extent of the accusations relate to allegedly framing her upon arrival in Russia. Moreover, even if a threat related to the alleged plot to frame Tatyana Teyf ever existed, it has now been extinguished by the charges brought against Mr. Teyf.

To the extent any concerns are related to the accusations of domestic violence, such concerns do not necessitate pretrial detention. The evidence against Mr. Teyf related to domestic violence amounts to unconfirmed statements from Tatyana Teyf, as well as scars she allegedly claims were products of the alleged violence. There is insufficient proof of these allegations to take adverse action against Mr. Teyf. However, even if the allegations are assumed to be true, any risk of domestic violence can be mitigated by a release condition prohibiting contact. The statistical fact is pretrial release is granted in the majority of domestic violence cases with no issue. Here it is noteworthy that Mr. Teyf has no criminal record and there is no record of any reported domestic violence incidents.

In sum, the current circumstances alleviate any threat to A.G. and Tatyana Teyf. Even assuming the validity of the Government's allegations related to the scheme against these two individuals, the exposure of the scheme undermines any ongoing risk. To the extent this Court still has concerns related to the safety of either individual, such concerns are easily mitigated by the

---

[18] *Stack v. Boyle*, 342 U.S. 1, 4 (1951) (emphasis in original).

imposition of appropriate release conditions, as suggested by the relevant cases discussed further below.

**B. The weight of the evidence does not favor pretrial detention.**

It is clear that the Magistrate Judge's determination was based primarily on the murder-for-hire and firearm charges (Detention Hr'g Tr. 68-69 ECF 71). Turning first to the firearm charge, the Magistrate Judge's estimation that the "weight of the evidence is very strong" is simply incorrect. The superseding indictment charges that Mr. Teyf, "aiding and abetting others…knowingly possessed a firearm that had been shipped and transported in interstate commerce from which the manufacturer's serial number had been removed, altered and obliterated." However, it is clear from Special Agent Kinney's testimony that Mr. Teyf never physically possessed the firearm. (Detention Hr'g Tr. 17, ECF 71.) Instead, Mr. Teyf allegedly had "his people" place the firearm in some bushes in a public location, to be retrieved by Confidential Human Source ("CHS") 1. (*Id.*). Consequently, the Government must prove at trial that Mr. Teyf constructively possessed the firearm by establishing that he either exercised or had the power and intent to exercise dominion and control over it, a much more difficult burden than would apply for mere physical possession.[19] But even setting aside the difficulty of proving constructive possession, there is no evidence that Mr. Teyf ever even saw the firearm, obviously presenting a significant challenge to the Government's ability to establish that he knew about the obliterated serial number. For all of the foregoing reasons, the defense submits that the weight of the evidence regarding the firearm charge is very weak. Further, mere possession of a firearm or aiding and abetting another's possession of a firearm, allegedly by someone with no criminal record, is completely insufficient to justify a conclusion that no set of circumstances can be

---

[19] *See U.S. v. Scott*, 424 F.3d 431 (4th Cir. 2005).

8

Case 5:18-cr-00452-FL   Document 75   Filed 01/03/19   Page 8 of 16

imposed to protect the community. Indeed, if this were the logic there would be no pretrial release, ever, for this type of alleged offense, even though the presumption does not apply to this offense.

With respect to the murder-for-hire charge, Agent Kinney's characterizations led he Magistrate Judge to conclude that the evidence was "very strong" (Detention Hr'g Tr. 21, ECF 71), but a closer examination of the underlying evidence reveals the tenuous nature of the Government's case. Agent Kinney's discussion of the case against Mr. Teyf glossed over the difficulty the Government will have in its efforts to establish the requisite elements given the lack of definitive statements in support of the allegations. Specifically, Agent Kinney's testimony was that Mr. Teyf tasked CHS 1 to "do whatever means necessary to do away with A.G." (Detention Hr'g Tr. 16, ECF 71) is inconsistent with the evidence provided by the Government. In fact, Mr. Teyf makes no such statement in the transcripts provided by the Government. Agent Kinney also testified that Mr. Teyf provided CHS 1 with $20,000 dollars "for the purpose of killing A.G.," yet failed to support this assertion (Detention Hr'g Tr. 21, ECF 71). An initial review of the transcripts from this interaction reveal no such statements by Mr. Teyf, and the Government's ability to prove the element related to compensation is wholly dependent upon circumstantial evidence.

The Magistrate Judge clearly relied heavily on Agent Kinney's characterization of the various recordings and interactions involved in this case, none of which was presented by the Government at the hearing. Presumably, the Government adopted this approach because the recordings and interactions are far more nuanced and ambiguous than the crystal clear picture of malfeasance Agent Kinney presented to the Magistrate Judge. The Government's approach was to provide a big picture overview of the case—they declined to provide the law that the money laundering charges were predicated upon, and opted against playing any of the purportedly

9

Case 5:18-cr-00452-FL   Document 75   Filed 01/03/19   Page 9 of 16

incriminating recordings of Mr. Teyf.[20] Such an approach may be sufficient under circumstances where the elements are satisfied by overwhelming direct evidence and the evidence triggers the statutory presumption against release, but is undoubtedly inappropriate here where proof of the charges will require a far more complex showing and there is no presumption. A review of the transcripts provided in discovery does not reveal an explicit, final and unqualified order by Mr. Teyf to have A.G. killed. Rather, they indicate that Mr. Teyf struggled with how to handle his suspicions of his wife's infidelity and the suspected paramour, and that his de facto solution was to attempt to have A.G. deported.

In another example, the Government characterized an apartment in Raleigh as a "safe house." The discovery indicates this is a wildly misleading exaggeration. In a recording the Government had at the hearing, but the Defense had not been given before the hearing, Mr. Teyf states he bought the apartment, the ownership of which is in no way hidden, for his children. (He has a daughter age 20 and a son age 18). There is no evidence in the discovery to indicate the purpose of the apartment, his ownership interest in which is open an public, is a "safe house."

In sum, while the Government undoubtedly provided a forecast of the case against Mr. Teyf, it neglected to present the requisite support for the Magistrate Judge to find that there was "strong evidence" of the charges and did not identify exculpatory evidence exclusively in its possession.

## C. The nature of the charges against Mr. Teyf does not compel pretrial detention.

A survey of federal courts faced with issues related to pretrial detention in the context of "murder-for-hire" charges undermines the Magistrate Judge's suggestion that such a release goes

---

[20] In fact, when asked for such a law by the Magistrate Judge, the Government stated they did "not have that law this morning." (Detention Hr'g Tr. 41, ECF 71)

*(continued on next page)*

against precedent. For example, in *United States v. Ross*,[21] the defendant, charged with participating in a murder-for-hire conspiracy, was released despite the Court's conclusion that the nature and circumstances clearly favored detention, as she had a clean criminal record, ties to the community, and the Government failed to present any evidence that she was "a current threat to any specific member of the community or to the community generally."[22] Additionally, *United States v. Aron*[23] and *Allen v. Hadden*[24] do not discuss the propriety of pretrial release, but demonstrate that there is precedent in both the Fourth and Fifth Circuits for releasing a defendant charged with murder for hire. In *United States v. Eischeid*,[25] the defendant was charged with Violent Crime in Aid of Racketeering with murder as the underlying offense, but he was released based on his minimal criminal history, community ties, and the failure of the Government to "provide the Court with evidence that supports the charge to demonstrate that conviction is likely." To the extent that there are only a limited number of federal court decisions involving the release of an individual charged with murder-for-hire, this can just as easily be attributed to the small universe of case law in this context or the limited number or reported cases (when release does not generate a reported decision) as it can to an indication that release is disfavored.[26]

---

[21] 2007 U.S. Dist. LEXIS 10992 (S.D. Ohio)

[22] *Id*. at *7.

[23] 904 F.2d 221 (5th Cir. 1990)

[24] 1991 U.S. App. LEXIS 29392 (4th Cir.)

[25] 315 F. Supp. 2d 1033, 1036 (D. Ariz. 2003)

[26] A search for "('murder for hire' or 'murder-for-hire') and 'pretrial detention'" in all United States federal courts in Lexis Advance only reveals thirty-nine results.

*(continued on next page)*

**D. This Court must fashion reasonable conditions to assure community safety and facilitate Mr. Teyf's release.**

The statutory framework of the Bail Reform Act compels this Court to select the least restrictive means necessary should this Court determine that one or more conditions are necessary to assure the safety of others pending Mr. Teyf's trial.[27] Section 3142(c) mandates that detention based on "flight" or "danger" be limited to those narrow circumstances where "**no condition or combination of conditions** will **reasonably** assure the appearance." (emphasis added). This Court's obligation under the statute is to impose the "*least restrictive* further condition or combination of conditions the judicial officer determines that will *reasonably* assure the appearance . . . ."[28] The Court may require no more than an objectively reasonable assurance that the defendant will appear at trial. Absolute, one hundred percent certainty is not the test.[29]

If this Court determines that Mr. Teyf presents some appreciable risk of danger to the community, it must fashion the least restrictive combination of fourteen statutory conditions specified in 18 U.S.C.§ 3142(c) to mitigate the risk. Those fourteen conditions include limitations on personal associations, limitations of travel, telephone calls, contacts, and use of firearms and narcotics, as well as other monitoring restrictions implemented and administered through Pretrial Services that will "reasonably assure" defendant's appearance. Imposition of such conditions will reduce any concerns related to the defendant's propensity for flight or dangerous activity.[30]

---

[27] 18 U.S.C. § 3142(c).

[28] 18 U.S.C. § 3142(c)(1)(B).

[29] *United States v. Orta,* 760 F.2d 887, 892 (8th Cir. 1985) (*en banc*) (district court imposition of detention on grounds defendant's appearance could not be "guaranteed" applied the wrong legal standard, which is reasonable assurance).

[30] *See, e.g. United States v. Giorando,* 370 F. Supp. 2d 1256, 1271 (S.D. Fla. 2005) (explaining that "monetary conditions [] would ameliorate the flight risk that exists" as a result of the defendant's significant financial resources); *United States v. Karni,* 298 F. Supp. 2d 129, 132 (D.D.C. 2004) (imposing conditions in conjunction with release where the defendant had no ties to the United States).

*(continued on next page)*

Here, imposition of such conditions can undoubtedly establish the requisite "reasonable assurance" of community safety. As noted in *United States v. Khashoggi* and *United States v. Barnett*, the consequences for failing to abide by the pretrial release conditions are severe,[31] and it is "implausible and unlikely" that Mr. Teyf would risk subjecting himself to additional personal, financial and penal penalties for noncompliance.

Further, unlike the defendant in the *Liebowitz* case cited by the Magistrate Judge, Mr. Teyf is willing to comply with any and all proposed conditions associated with his release.[32] The appropriateness of his release is affirmed by the adopted findings of the Revised Pretrial Services Report. This report notes Mr. Teyf's community and familial ties, highlights his lack of a criminal record (only traffic violations), and catalogues his numerous health challenges. Given Mr. Teyf's presumption of innocence, willingness to abide by any and all conditions, community ties, and his clean criminal record, the suggestion that no conditions exist to reasonably assure community safety is without merit.

The Revised Pretrial Services Report (ECF No. 57) recommends that Mr. Teyf "be released on a Personal Recognizance bond and with" eight accompanying conditions. Mr. Teyf's accounts have already been frozen, and he is amenable to the imposition of any reasonable condition necessary to ensure his appearance at future proceedings, including all of the conditions outlined in the Revised Pretrial Services Report (ECF No. 57). Those conditions provide reasonable measures to ensure Mr. Teyf's appearance at future proceedings and adequate safeguards to ensure the safety of other persons and the community.

---

[31] *United States v. Khashoggi*, 717 F. Supp. 1048, 1051 (S.D.N.Y. 1989); *Barnett*, 986 F. Supp at 402-03.

[32] *See United States v. Liebowitz*, 699 Fed. Appx. 603, 605 (2nd Cir. 2016).

13

### E. Mr. Teyf's continued pre-trial detention has a disproportionate impact on him and on his ability to mount a defense.

Mr. Teyf's continued incarceration at the Edgecombe County Detention Center is having a profound impact on his health. As the Pretrial Services Report noted, Mr. Teyf suffers from hypertension, Type II Diabetes, Hepatitis B, an irregular heartbeat, a hernia, and chronic pain in his shoulders, back and hips stemming from a car accident over a decade ago. Each of these conditions is exacerbated by his detention, particularly his gastrointestinal illness and diabetes as a result of the detention center diet, and the chronic pain issues as a result of his inability to get appropriate exercise. On this latter point, Mr. Teyf is suffering from muscle spasms and lack of sleep.

His continued incarceration is also having a more severe effect on his ability to defend himself than would be true of other defendants. First, the complexity of the money laundering charges will require the collection of aged information, primarily in Russian, from sources in Russia and other countries outside the United States. His assistance in collecting and interpreting that information is absolutely critical, but it is severely hampered by his detention. And second, Mr. Teyf's inability to speak English effectively doubles the amount of time necessary for him to communicate with his attorneys. This fact is aggravated by the complex nature of the charges. Consequently, his continued incarceration greatly prejudices his ability to consult with counsel as fully and consistently as necessary.

If the court is disinclined to issue a release order outright, Mr. Teyf urges it to hold an evidentiary hearing in connection with its de novo review of the magistrate's order. Mr. Teyf is prepared to present additional evidence on his medical issues at such hearing. And even more importantly, now that the Defense has been provided access to materials in discovery, a more fair and accurate portrayal of the evidence can be provided than what was presented at the detention

14

Case 5:18-cr-00452-FL   Document 75   Filed 01/03/19   Page 14 of 16

hearing by Agent Kinney, who admittedly had no involvement in the investigation and could only provide what amounted to hearsay statements of, in most instances, already secondhand information. Finally, while not due to any fault by the Government, Mr. Teyf notes that the lead counsel in his defense was unavoidably unavailable at the detention hearing but will be present at any evidentiary hearing conducted by this court.

## CONCLUSION

Mr. Teyf respectfully requests that this Court adopt the recommendations of the Pretrial Services Report, conduct a further evidentiary hearing if deemed necessary, revoke Magistrate Judge Number's detention order, and order Mr. Teyf's release.

/s/ James P. McLoughlin, Jr.
James P. McLoughlin, Jr.
N.C. State Bar No. 13795
Nathan A. White
N.C. State Bar No. 48684
Benjamin F. Leighton
N.C. State Bar No. 50835
MOORE & VAN ALLEN PLLC
100 North Tryon Street, Suite 4700
Charlotte, NC 28202-4003
Phone: (704) 331- 1054
Facsimile: (704) 378-2054
Email: jimmcloughlin@mvalaw.com
nathanwhite@mvalaw.com
benleighton@mvalaw.com

# CERTIFICATE OF SERVICE

      I hereby certify that on January 3, 2019, I caused to be filed electronically with the Clerk of Court through the CM/ECF system the foregoing **MOTION TO REVOKE OR AMEND THE MAGISTRATE'S ORDER DETAINING DEFENDANT,** and that service will be accomplished by the CM/ECF system sending notification of such filing to the following counsel of record:

      Jason Kellhofer
      U.S. Attorney's Office
      310 New Bern Avenue
      Federal Building, Suite 800
      Raleigh, North Carolina 27601-1461
      Jason.kellhofer@usdoj.gov

      Barbara Kocher
      310 New Bern Avenue
      Federal Building, Suite 800
      Raleigh, North Carolina 27601-1461
      Barb.kocher@usdoj.gov

      Attorneys for the United States of America

      /s/ James P. McLoughlin, Jr.
      James P. McLoughlin, Jr.