IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:18-CR-452-1-FL

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | REDACTED |
| | ) | |
| v. | ) | UNITED STATES |
| | ) | MOTION FOR PROTECTIVE ORDER and |
| | ) | MEMORANDUM IN SUPPORT |
| LEONID ISAAKOVICH TEYF, | ) | |

The United States of America, by and through the United States Attorney for the Eastern District of North Carolina, pursuant to the All Writs Act, 28 U.S.C. § 1651, hereby moves for a protective order allowing for implementation of security measures necessary to protect witnesses and victims in this case. In support hereof, it is stated unto the Court:

The defendant LEONID ISAAKOVICH TEYF has been charged in a thirty-six count superseding indictment.[1] Specifically relevant to this motion are Counts 27 through 29, Bribery of a Public Official and Aiding and Abetting under 18 U.S.C. §§ 201(b)(1) and 2; Murder for Hire and Aiding and Abetting under 18 U.S.C. §§ 1958 and 2; and Possession of a Firearm with Obliterated Serial Number under 18 U.S.C. §§ 922(k) and 924 (a)(1)(B). The defendant was detained by United States Magistrate Judge Robert T. Numbers, II, following a hearing.[2] Following a hearing on his motion to revoke that ruling, this Court, too, ordered defendant detained.[3]

While defendant has been detained, several acts or circumstances have occurred prompting the government to request conditions even upon defendant's

---

[1] DE 20.
[2] DE 68.
[3] Unnumbered DE of 1/22/2019.

detention, in order to assure the safety of witnesses and victims in this matter.

First, the defendant has in the past been represented by immigration attorney Manvel Vasilyev. It was Vasilyev, in fact, who signed both of defendant's requests for work visas. *See*, Detention Hearing Exhibits 3 and 4. Vasilyev is a reported member of the defense team, and as such has been able to have unmonitored, or monitored but not interpreted, communications with defendant. Upon information and belief, none of the counsel who have appeared on behalf of defendant speak Russian.

Specifically as relates to Mr. Vasilyev, the government notes:

- After the present charges had occurred and after TEYF had been arrested, a number of attorneys entered a notice of appearance on behalf of Mr. Teyf. At no point did Manvel VASILYEV enter an appearance or otherwise communicate that he was representing TEYF.

- While in Charlotte for an unrelated matter at an immigration hearing, HSI Agent Tony Bell saw Mr. VASILYEV there. SA Bell approached and informed Mr. Vasilyev that HSI had obtained information which implicated that Vasilyev had instructed defendant TEYF and others on how to commit visa fraud. Mr. Vasilyev informed Special Agent Bell that he had assisted defendant with his application, but that he was not involved in any fraudulent scheme.

- At the Detention hearing on December 18, 2018, the court asked that all counsel identify themselves. Mr. White did so, and noted that he was accompanied by co-counsel Mr. Ben Leighton. The Government then noted that another individual could be observed sitting at defense table.

At that point, Mr. White additionally noted, "This is Mr. Manvel Vasilyev. He is a member of the defense team. He has not appeared in this matter, but he is assisting us both with legal counsel and translation services as well."[4] It seemed clear, following SA Bell's interaction with Mr. Vasilyev, that Mr. Vasilyev was a potential witness in the case; the only question unanswered at the time of the first detention hearing was whether Mr. Vasilyev was a target of the investigation. It was therefore not anticipated Mr. Vasilyev would be a part of the defense team, particularly when defense counsel had previously been explicitly informed of Magistrate Judge Gates' concerns regarding possible implications of N.C. Rule of Professional Conduct, 3.7, triggered by counsel's filing of an affidavit in this action.[5]

- Moments later, the Government admitted its Exhibits 3 and 4 - Petitions for Nonimmigrant Worker, which had been prepared for TEYF by attorney Manvel VASILYEV. As was brought forward at the Detention hearing, these documents disclose that Mr. TEYF sought the ability to remain in the U.S. due to the need to be working for Delta Plus, LLC, for $110,000 per year.

---

[4] DE 71 at 5.

[5] "A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:

    (1) the testimony relates to an uncontested issue;

    (2) the testimony relates to the nature and value of legal services rendered in the case; or

    (3) disqualification of the lawyer would work substantial hardship on the client."

Since that hearing, confidential human source #3 (CHS #3) has informed the Government CHS #3 was present for ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮TEYF.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

CHS #3 was also present for meetings between ▮▮▮▮▮▮▮▮▮▮ TEYF for

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Moreover, multiple confidential human sources report that ▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

During the December 18, 2018 detention hearing before Magistrate Judge Numbers, an off-the-record sidebar discussion was had at the request of counsel for the defendant.[6] The defendant's 18-year-old son was undergoing cross-examination by government counsel, and it had come to light that on one occasion, the son had acted as an interpreter for defense counsel at the Wake County jail.[7] Upon information and belief, the purpose of that sidebar was for defense to inform the court that defendant's son would not have been used as a translator, but for previous actions

---

[6] DE 71 at 51.
[7] DE 71, 50-51.

of the government. The court was informed that SA Bell's interaction with Mr. VASILYEV had frightened him such that he would not translate for defense. In response, the government noted that at the time of the interaction, the government had not been aware Mr. Vasilyev was a member of the defense team (VASILYEV uses an independent e-mail address, phone number, and law firm name from that firm representing the defendant), and the government pointed the court to the exhibits then in the record, clearly establishing Mr. Vasilyev was in the very least, a potential witness in the case.

The government recognizes that this issue was inartfully provided to the Court at the January 22 hearing. The government had intended to request to approach the bench at the conclusion of the hearing if TEYF was ordered to remain in pretrial detention, and we would have apprised the Court of the foregoing issue and that we would be filing a separate proposed order requesting additional conditions. After all of the events that had taken place, as noted *supra*, it was of some surprise that Mr. VASILYEV was again seated at defense table as the hearing began and the decision was made to immediately address it rather than proceed with an entire hearing with Mr. VASILYEV present in court acting as counsel. The government, however, recognizes the value and necessity of adequately providing the Court with notice of issues in advance and will seek to do so.

One of the difficulties presented by such a situation is this: defendant has had numerous telephonic contacts from the jail with Mr. VASILYEV, with no other party present on the calls. The conversations are in Russian, and the calls are treated as privileged, legal communications despite the fact that Mr. VASILYEV is not an

Page 5 of 9
Case 5:18-cr-00452-FL   Document 159   Filed 02/26/19   Page 5 of 10

attorney on the criminal case. Further, in the calls at issue, he is not acting as an interpreter for anyone, much less for an attorney of the defendant.

The Government's concerns have only been reinforced by defense counsel's decision to use a family member as an interpreter; upon information and belief, using the unmonitored video access available to attorneys during that visit. The attorneys would not be in a position to confirm whether extraneous messages may have been passed between father and son at that meeting.

Lastly, while unnecessary to a decision on the present request, but of some relevance, the Government believes that there may be evidence that the defendant has bypassed jail monitoring provisions on other occasions by allowing other inmates to use his PIN number for phone calls. The exact circumstances are presently unknown, but on December 18, 2018, another inmate used TEYF's pin, noting that he was using "a Russian dude's line." There are additional calls in which TEYF is not a participant and no participant is speaking in Russian. This is concerning. Despite his lack of English, it seems TEYF may have been able to have enough of a conversation with another inmate to allow that inmate to use his PIN. Swapping PIN numbers is a common tactic used by inmates to attempt to avoid monitoring, because their calls are then occurring under another inmate's call PIN number. In this case, those calls stand out because they are not in Russian. The government is investigating whether TEYF traded PINs with another inmate, and is himself using that other PIN.

In conclusion, the government makes two requests. First, the government requests that the defendant be prohibited from █████████████

Page **6** of **9**
Case 5:18-cr-00452-FL   Document 159   Filed 02/26/19   Page 6 of 10

Second, the government asks the court to determine that for telephonic communications between defendant and any translator used by the defense team, any one of the counsel formally appearing on behalf defendant actually be a party to the conversation, whether or not the translator happens to also be an attorney.

The government further requests that defendant be admonished that violation of these conditions, or violations of the administrative rules of any jail or detention center in which he is housed, will result in the suspension of communication privileges except to counsel.

The Court's equitable power to issue writs is codified in the All Writs Act, which states that courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usage and principles of law." 28 U.S.C. § 1651(a).

The Due Process Clause of the Fourteenth Amendment governs the conditions to which pretrial detainees are subjected. Bell v. Wolfish, 441 U.S. 520, 535 (1979). In Bell, the Supreme Court held that a pre-trial detainee "may not be punished prior to adjudication of guilt in accordance to due process of law." Id. at 535. A condition or restriction of confinement is constitutionally impermissible "punishment," when "either . . . it was (1) imposed with an expressed intent to punish or (2) not reasonably related to a legitimate nonpunitive governmental objective, in which case an intent to punish may be inferred." Martin v. Gentile, 849 F.2d 863, 870 (4th Cir.1988) (citing Bell, 441 U.S. at 538–40). Punishments which "involve the unnecessary and wanton infliction of pain" are prohibited. Estelle v. Gamble, 429 U.S. 97, 103 (1976) (quoting Gregg v. Georgia, 428 U.S. 153 (1976)). Pretrial detainees do not have a

Page **7** of **9**
Case 5:18-cr-00452-FL Document 159 Filed 02/26/19 Page 7 of 10

constitutional right to visitation or telephone privileges. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460–461 (1989) (finding no right to visitation guaranteed by the Due Process Clause); United States v. Alkire, 1996 WL 166400 (4th Cir. Apr. 10, 1996) (unpublished)("There is no constitutional or federal statutory right to use a telephone while in prison"). In this case, the government's requests are reasonably related to legitimate, nonpunitive governmental objectives-the security of the defendant in detention and the preservation of the status quo between defendant and potential witnesses, and are not intended to punish the defendant.

For these reasons, it is requested that further restrictions upon defendant's detention be imposed.

Respectfully submitted this 24th day of January, 2019.

ROBERT J. HIGDON, JR.
United States Attorney

By: */s/ Jason M. Kellhofer*
JASON M. KELLHOFER
BARBARA D. KOCHER
Assistant U.S. Attorney
310 New Bern Avenue, Suite 800
Raleigh, NC 27601
Telephone: 919-856-4530
Fax: 919-856-4487
E-mail: jason.kellhofer@usdoj.gov
OH Bar: 0074736
E-mail:barb.kocher@usdoj.gov
NC Bar: 16360

CERTIFICATE OF SERVICE

This is to certify that I have this 24th day of January 2019, served a copy of the foregoing filing upon counsel for the defendant in this action by electronically filing the foregoing with the Clerk of Court, using the CM/ECF system which will send notification of such filing to:

James P. McLoughlin, Jr
jimmcloughlin@mvalaw.com,
johnnathanruff@mvalaw.com

Nathan A. White
nathanwhite@mvalaw.com
melissanazario@mvalaw.com

Benjamin F. Leighton
benleighton@mvalaw.com,
jenniferbraccia@mvalaw.com,
johnhan@mvalaw.com,
victorialyons@mvalaw.com

By: */s/ Jason M. Kellhofer*
JASON M. KELLHOFER
Assistant U.S. Attorney
310 New Bern Avenue, Suite 800
Raleigh, NC 27601
Telephone: 919-856-4530
Fax: 919-856-4487
E-mail: jason.kellhofer@usdoj.gov
OH Bar: 0074736

CERTIFICATE OF SERVICE

This is to certify that I have this 26th day of February 2019, served a copy of the foregoing filing upon counsel for the defendant in this action by electronically filing the foregoing with the Clerk of Court, using the CM/ECF system which will send notification of such filing to:


James P. McLoughlin, Jr
jimmcloughlin@mvalaw.com,
johnnathanruff@mvalaw.com

Nathan A. White
nathanwhite@mvalaw.com
melissanazario@mvalaw.com

Benjamin F. Leighton
benleighton@mvalaw.com,
jenniferbraccia@mvalaw.com,
johnhan@mvalaw.com,
victorialyons@mvalaw.com

      By: */s/ Jason M. Kellhofer*
JASON M. KELLHOFER
Assistant U.S. Attorney
310 New Bern Avenue, Suite 800
Raleigh, NC 27601
Telephone: 919-856-4530
Fax: 919-856-4487
E-mail: jason.kellhofer@usdoj.gov
OH Bar: 0074736