THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:18-CR-452-1-FL

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | |
| ) | **MOTION TO QUASH SUBPOENA** |
| LEONID ISAAKOVICH TEYF, ) | |
| ) | |
| Defendant. ) | |

Defendant Leonid Teyf, by and through undersigned counsel, pursuant to Federal Rule of Criminal Procedure 17(c), hereby moves this Court to quash the grand jury subpoena *duces tecum* issued to Mr. Teyf on February 22, 2019 (the "Subpoena"), attached hereto as Exhibit A, for the reasons set forth below.

## **FACTS**

Leonid Teyf stands accused of engaging in money laundering (monetary transactions in property derived from specified unlawful activity) and conspiring with and aiding and abetting others in furtherance of those transactions,[1] bribery of a public official,[2] "murder for hire",[3] aiding and abetting others in possessing a firearm with an obliterated serial number,[4] bringing in and

---

[1] 18 U.S.C. §§ 2, 1956(h) and 1957 (2018).

[2] *Id*. § 201(b)(1).

[3] *Id*. § 1958.

[4] *Id*. §§ 2, 922(k) and 924(a)(1)(B).

harboring certain aliens, conspiring with and aiding and abetting others in furtherance of that harboring,[5] and visa fraud.[6]

Mr. Teyf was arrested on December 5, 2018. That same day, the Government executed a search and seizure warrant on Mr. Teyf's home. (Search and Seizure Warrant, attached as Exhibit B to the Notice of Filing of Sealed Exhibit submitted herewith). The receipt for property attached to that warrant identifies over four pages of items seized by the Government, including 17 references to various forms of financial, bank, and tax documents, some of which are identified in Russian; eight references to laptop and desktop computers and tablets; and numerous other references to miscellaneous, foreign language, or other unspecified documents. (*Id.*). The superseding indictment also refers to monetary transactions to accounts in which Mr. Teyf has an interest originating from accounts in numerous foreign countries. (Doc. No. 20 at 3-4). All of Mr. Teyf's financial records identified by the Government in the execution of the warrant, paper and electronic, were seized.

Mr. Teyf's counsel is currently awaiting receipt from the Government of more than a terabyte of data, including the paper and electronic documents seized from Mr. Teyf's home on December 5. The Government has been unable to provide Mr. Teyf's counsel with an expected timeline for producing that information.

Mr. Teyf has been incarcerated since December 6, 2018; he is now in Albemarle County, North Carolina. His lines of communication with the outside world are limited to videoconferences with, and personal visits from, his lawyers, who are located four hours away in

---

[5] 8 U.S.C. §§ 1324(a)(1)(A)(iv), (v)(I) and (v)(II) (2018).

[6] 18 U.S.C. § 1546(a).

2

Case 5:18-cr-00452-FL   Document 175   Filed 03/11/19   Page 2 of 12

Charlotte. Mr. Teyf has almost no ability to communicate with anyone other than his lawyers since he does not speak English.

On February 22, 2019, the Government served Mr. Teyf through counsel with the Subpoena, which requires Mr. Teyf to provide certain foreign financial account records to the grand jury, or alternatively an Internal Revenue Service ("IRS") special agent, on or before March 5, 2019. Specifically, the Subpoena requires:

> Any and all records in your possession, custody, or control that are required to be maintained pursuant to 31 C.F.R. § 1010.420 (formerly 31 C.F.R. § 103.32) for the past 5 years relating to foreign financial bank, securities, or other financial accounts in a foreign country for which you had/have a financial interest in, or signature or other authority over and are required by law to file a Report of Foreign Bank and Financial Account (FBAR). The records required to be maintained pursuant to 31 C.F.R. § 1010.420 (formerly 31 C.F.R. § 103.32) include records that contain the name in which each such account is maintained, the number or other designation of such account, the name and address of the foreign bank or other person with whom such account is maintained, the type of such account, and the maximum value of each such account during the reporting period.

(Ex. A at 3).

## **ARGUMENT**

The Subpoena should be quashed as unreasonable and oppressive under Federal Rule of Criminal Procedure 17(c) based upon a number of supporting grounds. Response to the Subpoena that is incomplete or inaccurate exposes Mr. Teyf to prosecution for obstruction of justice and money laundering; it exposes him also to contempt. The Subpoena requires Mr. Teyf to produce financial records despite his incarceration and lack of access to advisors other than his attorneys, who have not seen and do not know the extent or content of the financial records and other information seized by the Government on December 5. The Subpoena requires Mr. Teyf to produce financial records despite his inability to access his records, meaning he has no way to

research through his records to identify responsive information or to use his financial records to identify sources of information from which records might be obtained. Equally problematic is the inability of his attorneys to review the seized records, which means that as a practical matter his attorneys are unable to assist or to advise him.

The circumstances here, under which the Government has charged Mr. Teyf with money laundering and has announced its intent to file a superseding indictment, combined with the inability to access his financial records, make compliance with the Subpoena a practical impossibility in circumstances under which any glitch in the response can and will expose Mr. Teyf to further charges. Based upon the totality of the circumstances, there are substantial grounds to conclude the purpose of the Subpoena is to do just that—to give the Government ammunition to bring additional charges based upon Mr. Teyf's response to the Subpoena.

The Subpoena violates Mr. Teyf's Sixth Amendment right to counsel by requiring him to produce financial records and information to which both he and his attorneys have no access and cannot review; in addition, the circumstances mean he can get no assistance or advice from his counsel.

The Subpoena violates Mr. Teyf's Fifth Amendment privilege against self-incrimination because the act of producing foreign financial information has testimonial aspects.[7] Specifically, such a production, if it confirmed the existence of foreign accounts that were not reported to the IRS, could expose Mr. Teyf to criminal liability under the Bank Secrecy Act ("BSA"). Under the Supreme Court's precedent, the act of production doctrine permits invocation of the Fifth Amendment privilege. The Supreme Court has never held that this rule may be overridden by the

---

[7] This Court recently denied a motion to quash an identical subpoena filed by Mr. Teyf's co-defendant, Tatyana Anatolyevna Teyf, on the basis of cases in the Fourth Circuit and other circuits regarding the required records doctrine. (Doc. No. 169). For the reasons set forth herein, Mr. Teyf believes those decisions misapply Supreme Court precedent and asks that the Court reconsider its holding in light of his arguments.

4

required records doctrine on which this Court, the Fourth Circuit, and other courts have relied in denying motions to quash similar subpoenas. Mr. Teyf asserts that the precedents obviating the right to rely upon the act of production doctrine are erroneous because there is nothing about the BSA that would elevate it above other statutes to nullify Mr. Teyf's Fifth Amendment rights.

Balanced against Mr. Teyf's interests, the Government's interest in Mr. Teyf's production of documents pursuant to the Subpoena is minimal. The Government has alternative means to access records. As the December 5 return inventory for the search and seizure warrant and superseding indictment demonstrate, the Government already is in possession of a substantial amount of Mr. Teyf's financial information, some of which is presumably foreign. To the extent the Government seeks further information than what is already in its possession, the Government can draw on its analyses of those records and other available information (much of which is not yet available to Mr. Teyf or his counsel) and the Government's Mutual Legal Assistance Treaties ("MLATs") with the relevant foreign countries to obtain the information sought in the Subpoena.

> **A. The Subpoena is Unreasonable and Oppressive Because the Government Has Seized Mr. Teyf's Financial Information and Can Obtain Additional Information Through the MLAT Process.**

Under Rule 17(c) of the Federal Rule of Civil Procedure, a grand jury subpoena for documents may be quashed when the moving party demonstrates that production would be "unreasonable or oppressive." *See U.S. v. R. Enterprises, Inc.*, 498 U.S. 292, 299 (1991). Reasonableness under Rule 17(c) depends on the context in which the subpoena is issued. *Id.* (citation and internal quotation marks omitted).

The Subpoena here is unreasonable and oppressive given the context in which it seeks to compel Mr. Teyf to respond. Mr. Teyf does not speak English and is incarcerated with sporadic access to his attorneys and very little access to anyone else. Neither Mr. Teyf nor his counsel have had a chance to review any of the documents or data seized by the Government from Mr. Teyf's

5

home. The Government has been unable to give Mr. Teyf's counsel an expected timeline for their production. Under these circumstances, the Subpoena would force Mr. Teyf to rely solely on his memory of what records might have been in his home and what records might be in other locations in order to respond. To the extent the Government later uncovered evidence of other information or records not included in Mr. Teyf's response, it could seek to bring obstruction of justice or money laundering charges or initiate contempt proceedings against him. The situation in which the Subpoena places Mr. Teyf is fundamentally unfair—he faces the risk of being held in contempt now for refusing to respond to the Subpoena or potentially being subject to other, more serious charges in the future if he responds based on incomplete information.

The Subpoena is further unreasonable and oppressive because the Government may already have much or all of the requested information in its possession and can readily access any additional information it requires. The December 5 search and seizure warrant and Superseding Indictment are evidence that the Government possesses significant financial information pertaining to Mr. Teyf, including any foreign accounts in which he may have an interest or connection. If the Government believes it is missing something, it can obtain the information through MLATs with the countries in which the relevant accounts are located. MLATs provide a streamlined procedure designed to give the Government faster and more reliable access to evidence located in foreign countries than letters rogatory or other similar processes. (*See* U.S. Dep't of Justice, Criminal Resource Manual, CRM 276, Treaty Requests, *available at* https://www.justice.gov/jm/criminal-resource-manual-276-treaty-requests.) The United States currently has MLATs in place with over 50 countries, including Russia and Israel, of which Mr. Teyf is a citizen, and almost all of the countries identified in the Superseding Indictment as having made transfers to accounts associated with Mr. Teyf. (*See* U.S. Dep't of State, Bureau for Int'l Narcotics and Law Enforcement Affairs, *International Narcotics Control Strategy Report, Volume*

*II: Money Laundering and Financial Crimes* 20 (2012), *available at* https://www.state.gov/documents/organization/185866.pdf). Given Mr. Teyf's incarceration and lack of access to his financial records seized by the Government, the Government should be required to utilize every tool available to it before seeking the requested information from Mr. Teyf. The Government has not demonstrated that the records it seeks are missing from the files seized from Mr. Teyf's home, nor has it indicated that it has issued unsuccessful MLAT requests to seek such records. Requiring Mr. Teyf to respond to the Subpoena under these circumstances would be unreasonable and oppressive, and the Subpoena should be quashed.

> **B. Forcing Mr. Teyf to Respond to the Subpoena When That Response Has Not Been and Cannot be Effectively Reviewed by His Counsel and without the Assistance and Advice of his Counsel Violates His Sixth Amendment Right.**

"A criminal defendant's Sixth Amendment right to counsel attaches after judicial proceedings have been initiated against him, and that right applies at all critical stages." *United States v. Williamson*, 706 F.3d 405, 416 (4th Cir. 2013) (citations omitted). Mr. Teyf has a right to counsel in responding to a grand jury subpoena issued by the same Government attorneys who are prosecuting him and that is being used to gather support for additional charges to be brought. Mr. Teyf's right to have his counsel advise and assist him in responding to the Subpoena is beyond dispute. *See, e.g.*, *United States v. Kennedy*, 372 F.3d 686, 692 (4th Cir. 2004) (reciting findings of other circuits that the Sixth Amendment is satisfied when a grand jury witness who has another criminal proceeding pending is permitted to "have an attorney present outside the grand jury room and to consult with the attorney before answering any question"). As part of that right, Mr. Teyf's counsel must be permitted to review any documents Mr. Teyf produces in response to the Subpoena and to assess, based on those documents and a review of them with Mr. Teyf, whether other responsive documents may exist.

7

Requiring Mr. Teyf to respond to the Subpoena without his attorneys having access to the substantial financial information already seized by the Government would violate his Sixth Amendment right. Mr. Teyf either would be required to assert that all responsive information is already in the Government's possession—without his attorneys having a chance to review the documents and confirm that assertion—or to send his attorneys on an expensive and potentially futile hunt for documents that may or may not exist. Mr. Teyf should not be forced to finance such a search and sacrifice the funds he needs for his criminal defense against very serious charges. With respect to the former scenario, the consequences of Mr. Teyf inadvertently making the wrong assessment without the advice and assistance of counsel, as noted, are dire. The Subpoena should be quashed as contrary to Mr. Teyf's Sixth Amendment rights.

**C. Forcing Mr. Teyf to Produce Records of Foreign Accounts Has Testimonial Aspects and Violates His Fifth Amendment Right.**

While the Fifth Amendment does not shield a subpoenaed party from producing documents merely because they "contain incriminating assertions of fact or belief," it does protect witnesses whose responses would have "a compelled testimonial aspect." *United States v. Hubbell*, 530 U.S. 27, 35-36 (2000). The Supreme Court explained in *Hubbell* that this "act of production" doctrine applies where the very act of producing documents "implicitly communicate[s] statements of fact," such as an admission by the witness "that the [requested] papers existed, were in his possession or control, and were authentic." *Id.* at 36 (internal quotation marks omitted).

Few acts are as testimonial as the act of revealing, through production of the records required by 31 C.F.R. § 1010.420, foreign bank accounts that are required to be reported to the IRS under the BSA. That act affirms the existence of foreign accounts and, if the witness has failed to make the required reports of such accounts, exposes him to criminal liability. 31 U.S.C. § 5322. The BSA recognizes the testimonial nature of the reports it compels, stating that such

8

reports are intended to "have a high degree of usefulness in criminal, tax, or regulatory investigations or proceedings." *Id.* § 5311.

Mr. Teyf acknowledges that the Fourth Circuit and other circuits have applied the "required records" doctrine in rejecting the Fifth Amendment privilege as a basis to avoid responding to a subpoena for the records required by 31 C.F.R. § 1010.420.[8] Mr. Teyf believes these courts have erred in relying on the required records doctrine because the Supreme Court has never held that it supersedes the act of production doctrine. Significantly, the Fourth Circuit in *Under Seal* did not even reference the act of production doctrine, articulating the Fifth Amendment privilege only as barring compulsion of incriminating testimony. *Under Seal*, 737 F.3d at 333.

The "required records" doctrine is a relic of Supreme Court jurisprudence when a witness's ability to invoke the Fifth Amendment privilege rested on the public or private nature of the documents; private documents were protected by the privilege, while public documents were not. Daniel M. Horowitz & Stephen K. Wirth, *The Death and Resurrection of the Required-Records Doctrine*, 86 Miss. L.J. 513, 518-21 (2017) (citing *Boyd v. United States*, 116 U.S. 616 (1886)); *see also Boyd*, 116 U.S. at 634-35 ("[A] compulsory production of the private books and papers . . . . is compelling [the producing party] to be a witness against himself, within the meaning of the Fifth Amendment to the Constitution . . . ."). To prevent litigants from shielding all documents under the Fifth Amendment, the Supreme Court subsequently developed the required records doctrine to identify records with "public aspects" such that *Boyd*'s private papers rationale would not apply. Horowitz & Wirth at 524-25 (citing *Shapiro v. United States*, 335 U.S. 1 (1948)); *see also Shapiro*, 335 U.S. at 34 (citation and internal quotation marks omitted) ("[T]here is an

---

[8] *See United States v. Under Seal*, 737 F.3d 330 (4th Cir. 2013); *United States v. Chabot*, 793 F.3d 338 (3d Cir. 2015); *In re Grand Jury Subpoena Dated February 2, 2012*, 741 F.3d 339 (2d Cir. 2013); *In re Grand Jury Proceedings*, 707 F.3d 1262 (11th Cir. 2013); *In re Grand Jury Subpoena*, 696 F.3d 428 (5th Cir. 2012); *In re Special February 2011-1 Grand Jury Subpoena Dated September 12, 2011*, 691 F.3d 903 (7th Cir. 2012); *In re Grand Jury Investigation M.H.*, 648 F.3d 1067 (9th Cir. 2011).

important difference in the constitutional protection afforded their possessors between papers exclusively private and documents having public aspects . . . .").

In *Fisher v. United States*, 425 U.S. 391 (1976), in which the Supreme Court first recognized the act of production doctrine, the Supreme Court also uncoupled the Fifth Amendment privilege from the public/private distinction that necessitated the required records doctrine. Horowitz & Wirth at 530-31; *see also Fisher*, 425 U.S. at 409 ("[T]he prohibition against forcing the production of private papers has long been a rule searching for a rationale consistent with the . . . Fifth Amendment . . . ."). Since *Fisher*, the Supreme Court has discussed the required records doctrine in detail only once, under distinguishable circumstances, to prevent a mother from invoking the Fifth Amendment to refuse to produce her son to a juvenile court. Horowitz & Wirth at 542 (citing *Balt. City Dep't of Social Servs. v. Bouknight*, 493 U.S. 549 (1990)). Meanwhile, the Supreme Court has reaffirmed the act of production doctrine repeatedly, most recently in *Hubbell* in 2000.

Since the Supreme Court has disaffirmed the rationale underlying the required records doctrine, it should not play a role in decisions regarding invocation of the Fifth Amendment privilege. It certainly should not bar a witness from objecting to a subpoena on Fifth Amendment grounds where, as here, he can demonstrate that the act of producing the subpoenaed records would have compelled testimonial aspects. Mr. Teyf respectfully requests this Court reconsider its decision regarding application of the required records doctrine to subpoenas for the records required by 31 C.F.R. § 1010.420 and quash the Subpoena.

### D. Forcing Mr. Teyf to Respond to the Subpoena without Access to his Financial Records Seized by the Government Violates his Fifth Amendment Due Process Rights.

The Government's seizure of Mr. Teyf's financial records makes a complete and accurate response to the Subpoena a practical impossibility. At the same time, his failure to make a

10

Case 5:18-cr-00452-FL Document 175 Filed 03/11/19 Page 10 of 12

complete and accurate response could enable the Government to charge Mr. Teyf with a felony or criminal contempt. The Fifth Amendment Due Process clause bars the Government from compelling Mr. Teyf to take an action that the Government's own actions make impossible or perilous. U.S. Const. amend. V (no person shall "be deprived of life, liberty, or property, without due process of law"); *see also Love v. Pepersack*, 47 F.3d 120, 122 (4th Cir. 1995) (citation omitted) (holding that due process is divided into "'substantive' and 'procedural' prongs" and that substantive due process provides "an absolute check on certain governmental actions notwithstanding 'the fairness of the procedures used to implement them'"); *Sylvia Dev. Corp. v. Calvert Cty.*, 48 F.3d 810, 826 (4th Cir. 1995) (holding that procedural due process claim arises where a party had a protectable interest of which a state actor deprived him without due process of law).

WHEREFORE, Mr. Teyf respectfully requests that this Court issue an Order, substantially in the form of Exhibit C hereto, quashing the Subpoena attached as Exhibit A.

Dated this 11th day of March, 2019.　　　By:　　/s/ James P. McLoughlin, Jr.
James P. McLoughlin, Jr.
N.C. State Bar No. 13795
Nathan A. White
N.C. State Bar No. 48684
Benjamin F. Leighton
N.C. State Bar No. 50835
Kathryn G. Wellman
N.C. State Bar No. 51163
MOORE & VAN ALLEN PLLC
100 North Tryon Street, Suite 4700
Charlotte, NC 28202-4003
Phone: (704) 331- 1054
Facsimile: (704) 378-2054
jimmcloughlin@mvalaw.com
nathanwhite@mvalaw.com
benleighton@mvalaw.com
katewellman@mvalaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of March, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system. I also served a copy of the foregoing upon counsel for the United States in this action by sending a copy to each counsel by electronic communication as references below:

Barbara D. Kocher
U.S. Attorney's Office
310 New Bern Ave.
Suite 800
Raleigh, NC 27601
Email: barb.kocher@usdoj.gov

Jason M. Kellhofer
U.S. Attorney's Office
310 New Bern Ave.
Suite 800
Raleigh, NC 27601
Email: jason.kellhofer@usdoj.gov

/s/ James P. McLoughlin, Jr.
James P. McLoughlin, Jr.
MOORE & VAN ALLEN PLLC
100 North Tryon Street, Suite 4700
Charlotte, NC 28202-4003