IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:18-CR-452-1-FL

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| ) | |
| v. ) | UNITED STATES' RESPONSE TO |
| ) | DEFENDANT'S MOTION TO |
| ) | SUPPRESS EVIDENCE AND |
| LEONID ISAAKOVICH TEYF, ) | RELEASE PROPERTY |
| Defendant. ) | |

The United States of America, by and through the United States Attorney for the Eastern District of North Carolina, hereby responds in opposition to defendant's motion to suppress evidence and release seized assets, and states unto the Court the defendant's motion to suppress evidence and release properties should be denied without hearing.

I. STATEMENT OF THE FACTS AND ISSUES

On November 8, 2018, the grand jury returned a 29-count indictment against defendant and others, specifically and relevant to the instant motion, charging defendant with involvement in a spending money laundering conspiracy in violation of 18 U.S.C. § 1956(h) and 19 substantive counts of spending money laundering in violation of 18 U.S.C. § 1957.

On December 5, 2018, the government filed applications for eight (8) seizure warrants pursuant to 18 U.S.C. §§ 981 and 982.[1] The resulting warrants allowed seizure of four (4) vehicles and 23 accounts at four different financial institutions.[2]

---

[1] See 5:18-MJ-2082, 5:18-MJ-2083, 5:18-MJ-2084, 5:18-MJ-2085, 5:18-MJ-2086, 5:18-MJ-2088, 5:18-MJ-2089, 5:18-MJ-2090.

[2] One of the four vehicles was never located (5:18-MJ-2082) and 4 of the accounts had been closed prior to execution of the approved warrants. Two of these

On December 6, 2018, a superseding indictment was returned by the grand jury. That superseding indictment alleged the defendant also violated 8 U.S.C. § 1324 by engaging in a conspiracy to harbor illegal aliens, and it added four substantive counts of spending money laundering against defendant relating to the purchase of three of the vehicles to be seized pursuant to the warrant issued the day previous, and for the purchase of $2,600,000 in artwork. D.E. 20. On December 6, 2018, law enforcement conducted searches of the main home of defendant and co-defendant Tayana Teyf, of a townhome owned by defendant, of vehicles and of the belongings of co-conspirators. Numerous firearms, approximately $100,000 in U.S. currency, jewelry, valued at approximately $333,272, and artwork with an estimated value of $560,000 were seized.

On January 11, 2019, a ninth application for a seizure warrant was filed, seeking seizure of an additional account at one of the four previously identified financial institutions. It also sought authority to seize an account listed on a previous warrant that the bank had been unable to effectuate.[3] A tenth application for a seizure warrant was filed that same day, and a seizure warrant was obtained for three accounts located in defendant Tatyana Teyf's name at a fifth financial institution.[4]

On February 6, 2019, a second superseding indictment was returned by the grand jury, adding five (5) substantive spending money laundering counts, two (2) against defendant, in violation of 18 U.S.C. § 1957. D.E. 127. A seizure warrant

---

accounts were from the warrant in 5:18-MJ-2088, and two from the warrant in 5:18-MJ-2090.
[3] 5:19-MJ-1054
[4] 5:19-MJ-1053.

was obtained for a bank account opened by defendant Tatyana Teyf in January 2019.[5]

Upon information and belief, defendant had an interest in at least nine of the various bank accounts seized by warrant.

The defendant now moves the court to suppress evidence and release his seized assets. Summarized, the defendant's motion argues:

1. Allegations which challenge the sufficiency of probable cause underlying the various seizures;

2. Allegations of false and misleading statements contained in the affidavits in support of the warrants;

3. Allegations that the government exceeded the scope of the search warrant of the home at 6510 New Market Way by seizing jewelry;

4. Allegations that the seized assets included assets untainted by the alleged criminal acts; and

The government had probable cause for the seizure of each and every item taken; the affidavits for such search and seizures were executed in good faith and free from the types of false and misleading statements which detract from probable cause; and the government did not need a warrant for the seizure of the jewelry. As to seizure of untainted assets, while the government agrees that it does not at this time have documentary evidence linking the purchase of the jewelry to tainted funds, the defendant has not made the necessary and predicate showing of a private interest to give rise to a hearing under <u>United States v. Farmer</u>. His motion in its entirety should be dismissed.

II. ARGUMENT

---

[5] 5:19-MJ-1243.

Title 21 United States Code, Section 853(f) authorizes a court to issue a warrant for the seizure of any property subject to criminal forfeiture. 21 U.S.C. § 853(f). A criminal seizure warrant is issued in the same manner as any other warrant issued under Rule 41 of the Federal Rules of Criminal Procedure. Id. The government must establish probable cause to believe that the property in question is subject to forfeiture pursuant to an applicable criminal forfeiture statute. Id. Pre-trial restraint of such assets is "constitutionally permissible whenever there is probable cause to believe . . . (1) that the defendant has committed an offense permitting forfeiture, and (2) that the property at issue has the requisite connection to that crime." Kaley v. United States, 571 U.A. 320, 323-24 (2014) (internal citation omitted). If a defendant has been indicted for the offense pertaining to forfeiture, the grand jury's finding of probable cause is conclusive and is not to be revisited by a court assessing the validity of the pre-trial restraint of assets. Kaley, 571 U.S. at 328-330. Moreover, there is no right to use funds seized by the government, even to pay for an attorney in defense of the criminal action, when there is probable cause to believe those funds will "ultimately be proved forfeitable." United States v. Monsanto, 491 U.S. 600, 615 (1989).

If any property subject to forfeiture under § 853(f) cannot be located, has been transferred to another, has been substantially diminished in value, or commingled with other property which cannot be divided with difficulty, Title 21, United States Code, Section 853(p) allows forfeiture of property which would "substitute" for the originally forfeitable property. 21 U.S.C. § 853. There is no authority "to restrain substitute assets prior to trial." United States v. Chamberlain, 868 F.3d 290, 296 (4th Cir. 2017).

4

Thus, a pretrial challenge to the restraint of assets is proper only in limited circumstances. Defendants could claim a restrained asset is a substitute asset, purchased innocently and without connection to criminal acts, in which case the substitute asset should be released in its entirety. Or, as to forfeitable property under § 853(f), due process concerns require consideration of three factors to determine if a defendant is even entitled to a post-seizure, pretrial adversary hearing: 1) whether a private interest will be affected by the official action; 2) the risk of erroneous deprivation of the private interest and the added value, if any, by procedural safeguards; and 3) the government's interest, including consideration of the burden additional procedural safeguards would cause. United States v. Farmer, 274 F.3d 800 (4th Cir. 2001), citing Mathews v. Eldridge, 424 U.S. 319, 344-45 (1976). It is the government's position, explained below, that all assets seized in this case are forfeitable assets, and the defendant must make the showing required by Farmer.

To gain a pretrial, adversarial hearing, a defendant thus must make a claim to a "private interest." Farmer, 274 F.3d at 804. "If a defendant does not make such a threshold showing of need to use wrongly seized assets to pay his attorneys, then the private interest of the Mathews calculus drops out of the picture, tipping the balance of interest against a post-restraint hearing." Id. (internal quotations and citation omitted). "A defendant must show a bona fide need to utilize [seized] assets to conduct his defense in order to be entitled to a hearing. Id. (internal quotations and citation omitted).

When a defendant makes the threshold showing, however, the resulting hearing is of limited purpose. Id. at 805. The hearing is to allow the "opportunity

5
Case 5:18-cr-00452-FL   Document 197   Filed 03/26/19   Page 5 of 18

for [the defendant] to prove by a preponderance of the evidence that the government seized untainted assets without probable cause and that he needs those same assets to hire counsel." Id. At the hearing, the government may present evidence to show the defendant has other assets which could be used to pay attorneys, or evidence establishing probable cause to believe the assets are in fact tainted and forfeitable. Id.

### A. Probable Cause for Seizures

The defendant argues that the seizure warrants lack sufficient probable cause to have legally seized the assets. On review, a magistrate judge's finding of probable cause should be accorded great deference in challenges to pretrial warrants to seize assets. Illinois v. Gates, 462 U.S. 213, 236 (1983). The bulk of the argument made by defendant on this point is that the affidavits in support of seizure make no connection between cash couriered in Russia by a confidential source, and the monies ultimately wired to the United States and spent by the Teyfs. "An assessment of the presence of probable cause must be based on the totality of the relevant circumstances," and a "judicial officer must make a practical, commonsense decision whether . . . there is a fair probability" the assets are connected to a particular crime. United States v. Allen, 631 F.3d 164, 172 (4th Cir. 2011). The affidavits set forth in small part:

- TEYF conspired with senior Russian government officials to obtain bribe/kickbacks from subcontractors of large Russian military contracts;
- TEYF employed others to facilitate the transfer of his portion of the proceeds from the criminal scheme to financial institutions in foreign countries, largely consisting of the high-risk jurisdictions of Cyprus and Hong Kong.
- TEYF received 294 wires from foreign sources worth over $39,500,000, into bank accounts in the name of TEYF, Cotter,

6

- and T. Teyf, who stated to U.S. Officials that she was a homemaker. TEYF and co-conspirators attempted to conceal the source of the foreign wire by using shell corporations organized in countries known to harbor money laundering operations;
- The wires received by TEYF included descriptions such as "Payment for Buying Business," for approximately $9,285,000 despite declarations made to U.S. Officials that the owners of FG Delta Plus did not include TEYF; "Payment for Services"/"Payment for Goods" for approximately $8,160,000, despite TEYF reporting a collective net loss in the years 2011 – 2014 on his U.S. Individual Income Tax Returns; and "Transfer for Own Funds" of approximately $4,040,000, despite declaring that neither TEYF or T. Teyf had a financial interest in or signature authority over a financial account located in a foreign country;
- Since January 19, 2011, TEYF and others have made in excess of 575 transfers from and between the four (4) accounts which were used to receive the international wires and other accounts.

This is certainly sufficient evidence to determine there is a fair probability the assets are connected to the charged crimes. Indeed, as will be mentioned below, most of the assets are themselves the subject of a finding of probable cause by the grand jury that they are connected to the crimes – and particularly given the deference required of the magistrate judge's findings, the argument the warrants lacked probable cause is without merit.

In any event, even had the warrants been invalid on their face, the remedy would not be return of the seized assets. United States v. Martin, 662 F.3d 301, 306 (4th Cir. 2011). While an invalid seizure may have evidentiary consequences, it does not "immunize the [subject] property from forfeiture" as long as the government can sustain its forfeiture claim. Martin, 662 F.3d at 306. Here, the grand jury itself determined probable cause not only that the offense of spending money laundering occurred, but that a number of the accounts and assets were specifically involved in that money laundering--those accounts and items listed in

Counts 2 through 26 and 33 through 41, as shown in the table below. As to these accounts and assets, the grand jury's determination is conclusive. Kaley, 571 U.S. at 331.

| Asset | Count No. | In Forf Notice | Sz Wt Case No | Sz Wt date |
|---|---|---|---|---|
| BBT #1502 | 7 | Y | 5:18-MJ-2083 | 12/5/2018 |
| BOA #1991 | 5, 6, 7, 8, 19, 36, 41 | Y | 5:18-MJ-2088 | 12/5/2018 |
| BOA #3905 | 11, 12, 40 | Y | 5:18-MJ-2088 | 12/5/2018 |
| BOA #4884 | 2 | Y | 5:18-MJ-2088 | 12/5/2018 |
| BOA #3285 | 9 | Y | 5:18-MJ-2088 | 12/5/2018 |
| BOA #6014 | 5, 10, 13-20, 33, 34, 40 | Y | 5:18-MJ-2088 | 12/5/2018 |
| BOA #3844 | 10, 15 | Y | 5:18-MJ-2088 | 12/5/2018 |
| BOA #9409 | 21-23 | Y | 5:18-MJ-2088 | 12/5/2018 |
| BOA #9748 | 20, 37 | Y | 5:18-MJ-2088 | 12/5/2018 |
| BOA #1314 | 12 | Y | 5:18-MJ-2088 | 12/5/2018 |
| BOA #7892 | 14 | Y | 5:18-MJ-2088 | 12/5/2018 |
| FCB #3951 | 25, 26 | Y | 5:18-MJ-2090 | 12/5/2018 |
| ML #0857 | 37 | Y | 5:19-MJ-1053 | 1/11/2019 |
| ML #0890 | 39 | Y | 5:19-MJ-1053 | 1/11/2019 |
| ML #1096 | 38 | Y | 5:19-MJ-1053 | 1/11/2019 |
| PNC 4726 | 8, 35 | Y | 5:18-MJ-2085 | 12/5/2018 |
| FCB #3812 | 6 | Y | 5:18-MJ-2090 | 12/5/2018 |
| BOA #1736 | 2, 13, 18 | Y | 5:18-MJ-2088 | 12/5/2018 |
| BOA #1563 | 16 | Y | 5:18-MJ-2088 | 12/5/2018 |
| BOA #0990 | 24 | Y | 5:19-MJ-1054 | 1/11/2019 |
| Artwork | 36 | y | warrantless sz on PC | |
| 2014 Mercedes S550V | 33 | y | 5:18-MJ-2084 | 12/5/2018 |
| 2018 Mercedes S560V | 34 | y | 5:18-MJ-2089 | 12/5/2018 |
| 2018 Mercedes S63 | 35 | y | 5:18-MJ-2086 | 12/5/2018 |

Although not specifically argued by defendant, there were two bank accounts seized, which were not the subject of money laundering counts in the second

8

superseding indictment. These two accounts are FCB #0918 (5:18-MJ-2090) and BBT # 2890 (5:19-MJ-1243), and upon information and belief, the defendant held no interest in them. Even so, both are traceable to the SUA proceeds and there was probable cause for the seizure. As noted in paragraph 17 of the affidavit in 5:19-MJ-1243, one of the four original accounts funded by the transfer of the bribe proceeds, BOA #6014, transferred money to BOA 9748, which transferred money to FCB #3951, which transferred money to FCB #0918 (subject of 5:18-MJ-2090 seizure), which had transferred funds to an account that was unknown to the government at the time of the December seizures, BOA #8455, which defendant Tatyana Teyf then used, after her arrest on the instant charges and after the seizures of the other accounts, to open and fund BBT #2890 (subject of 5:19-MJ-1243). Under Monsanto, these accounts, too, are properly restrained.

**B. There are no false or misleading statements in the affidavits.**

Defendant argues there were false and misleading statements in the affidavit sufficient to warrant a hearing under Franks v. Delaware, 438 U.S. 154 (1978). Under scrutiny, defendant's arguments wilt for lack of substance and fall far short of necessitating a Franks hearing. First, defendant claims the affidavit "repeatedly characterize[s]" the alleged criminal conduct as extortion. D.E. 182 at 6. The affidavits do use the verb "extort," in three places, simply to describe the act of obtaining money that represents illegal bribes or kickbacks; the word is never used as a noun with a legally operative meaning to describe a particular type of criminal offense. It is used in a heading above ¶ 19, "Scheme to Extort Bribes/Kickbacks," in a reference within ¶ 19 to "kickbacks he extorted from subcontractors," and in ¶ 26, explaining in summary that the scheme was to "extort

9

bribe/kickbacks from subcontractors. See e.g., 5:19-MJ-1243 and 5:18-MJ-2090, heading above ¶ 62, ¶ 62, and ¶ 79. The affidavits from these two examples were 21 and 50 pages long, respectively. Even were the allegations false, which the government disputes, this minimal reference to extortion, and as a descriptor to the crime of bribery, hardly affects probable cause. The word could be deleted in its entirety, or changed to any verb such as received or obtained, and probable cause is not impacted.

Second, defendant relies on one document from discovery to assert both that allegations in the affidavit that CS-1 saw reference to bribe proceeds being transferred to Cyprus, was false, as the one document mentions only "money," and that a material omission was made because the same document indicates CS-1 saw the monies in 2013, a time unlikely to have been part of the scheme. Discovery has included tens of thousands of pages of documents and records, and the government submits this one document, a summary by an agent of statements made by the CS, does not rise to a "substantial preliminary showing" of deliberate falsehood or omission. Franks, 438 U.S. 155-56; see also United States v. Colkley, 899 F2d 297, 301 (4th Cir. 1990).

Finally, defendant argued it was misleading to the magistrate judge to include in the affidavit that the countries of origin of the majority of the funds at issue were "jurisdictions of primary concern" and/or "jurisdictions of concern" in regard to money laundering, without including the fact that the United States was also a jurisdiction of primary concern. This argument is nonsensical. The fact that the United States is also a jurisdiction of primary concern is of no import – negative or positive – to establishing probable cause concerning money coming from Cyprus

and the British Virgin Islands.

Defendant claims that his arguments combine to render the affidavits incapable of establishing probable cause. D.E. 182 at 10. However, three unpersuasive arguments do not transform character in the aggregate. Rather, they remain, individually and in combination, unpersuasive. As discussed above, the grand jury's finding of probable cause both as to the existence of a specified unlawful activity and as to the involvement of specific property in spending money laundering, is conclusive as to those assets. Even so, should defendant succeed in establishing a defect in the seizure warrant, the remedy at most would be suppression of the seized items as evidence. Martin, 662 F.3d at 306. The defendant has not stated sufficient cause for a Franks hearing.

**C. The government did not exceed the scope of the search warrants.**

Defendant next argues that agents exceeded the scope of the search warrants authorized because they seized more than 70 pieces of jewelry from the New Market Way residence that did not fit within the enumerated categories of items authorized for seizure. However, the warrant allowed seizures of items other than those categories specifically enumerated, as authorized seizures could "include, *but are not limited* to the following, but seizure is permitted only to the extent such items constitute or contain evidence, fruits and instrumentalities of the described crime." Warrant, 5:18-MJ-2079 (emphasis added). There is a fair probability the jewelry are fruits of the described crime.

Additionally, 18 U.S.C. § 981(b)(2) provides that "a seizure may be made without a warrant if … (B) there is probable cause to believe that the property is subject to forfeiture and—(i) the seizure is made pursuant to a lawful arrest or

11
Case 5:18-cr-00452-FL Document 197 Filed 03/26/19 Page 11 of 18

search; or (ii) another exception to the Fourth Amendment warrant requirement would apply." Here, the seizure of the jewelry and artwork was made incident to a lawful search. Furthermore, the "plain view" exception to the Fourth Amendment, in conjunction with 18 U.S.C. § 981(b)(2), permits agents to "seize articles [subject to forfeiture] that they come across while performing a search in a given area pursuant to a valid search warrant." United States v. Uzenski, 434 F.3d 690, 707 (4th Cir. 2006). Thus, courts have routinely upheld the seizure for purposes of forfeiture of items like jewelry and vehicles that are discovered during the execution of a search warrant even if the items were not explicitly named therein. See, e.g., United States v. $149,442.43, 965 F.2d 868, 875 (10th Cir. 1992) (firearms, jewelry, and vehicles may be seized as proceeds or property used to facilitate when found incident to execution of search warrant even if items were not specifically listed in the warrant); United States v. Nelson, 530 F. Supp. 2d 719, 729–30 (D. Md. 2008) (seizure of two vehicles from defendant's residence while agents were there to execute a search warrant was proper even though the vehicles were not named in the warrant because the agents had probable cause to believe the vehicles had previously been used to transport drugs and thus were subject to forfeiture).

There was authority to seize the jewelry, either as fruit of the described crime under the search warrant itself, or warrantlessly as potentially forfeitable items. $149,442.43, 965 F.2d at 875. Receipts were located during the search that indicated at least some of it was purchased during the timeframe of the charged conduct. Given the earned annual income of defendant was less than a single one of the receipts located, there is a fair probability the jewelry was purchased with tainted funds. That being the case, the jewelry would be directly forfeitable under

§ 853(f) and would not constitute "substitute property." However, the government currently does not have documentary evidence the specific accounts from which the money came to purchase the various pieces.[6] To this extent, the defendant might have right to access these assets to pay attorney fees, but did not set forth a sufficient showing, "a bona fide need to utilize [seized] assets . . . to conduct his defense, in order to be entitled to a hearing." Farmer, 274 F.3d at 804.

### D. The only potentially "untainted" asset in the custody of the government is jewelry.

As explained above, the vast majority of assets were specifically included in a substantive money laundering count, conclusively determining there is probable cause those assets are tainted by criminal conduct. As to the two bank accounts owned by defendant Tatyana Teyf which were not charged, the government has shown probable cause that money, too, was tainted. Paragraph 17 of the affidavit in 5:19-MJ-1243, one of the four original accounts funded by the transfer of the bribe proceeds, BOA #6014, transferred money to BOA 9748, which transferred money to FCB #3951, which transferred money to FCB #0918 (subject of 5:18-MJ-2090 seizure), which had transferred funds to an account that was unknown to the government at the time of the December seizures, BOA #8455, which defendant Tatyana Teyf then used, after her arrest on the instant charges and after the seizures of the other accounts, to open and fund BBT #2890 (subject of 5:19-MJ-1243).

Defendant suggests that the government is obliged to provide a detailed

---

[6] Process is being served upon the merchant of the known pieces, collectively valued at $128,251, to determine the source of the funds used for the purchases.
13

tracing analysis of the SUA proceeds from one account to another, and is limited to seizing only what can be shown to be such proceeds without touching what may be clean money that has been comingled with the SUA proceeds. This argument is wrong on two accounts.

First, the tracing requirement only applies when the government is seeking to forfeit criminal proceeds as proceeds. But here, the government's theory of forfeiture is predicated on violations of the money laundering statutes, and pursuant to 18 U.S.C. § 982(a)(1), all property "involved in" the offense is subject to forfeiture. Thus, the directly forfeitable (i.e., "tainted") property for purposes of a money laundering violation is not just the specified amount of criminal proceeds within a financial account, but can encompass the entire account (including any "clean" money comingled with it) that was used to launder the tainted money. See, e.g., United States v. $688,670.42, 449 F. App'x 871, 877 (11th Cir. 2011) (distinguishing between forfeiture of proceeds "traceable to" fraud under 18 U.S.C. § 981(a)(1)(C), and forfeiture of property "involved in" money laundering under 18 U.S.C. § 982(a)(1), only the latter of which would permit the forfeiture of the "entire balance" of a bank account). The same reasoning applies to the real and personal property identified for forfeiture in this case. See In re 650 Fifth Ave., 777 F. Supp. 2d 529, 566 n.11 (S.D.N.Y. 2011) (noting that under a money laundering theory, real property purchased or improved with laundered funds may be forfeited in its entirety as "involved in" property; forfeiture need not be proportional to the amount of tainted funds invested).

The defendant's reliance on the Fourth Circuit case United States v. Miller, 911 F.3d 229 (2018) is wholly misplaced, and this case actually supports the

government's position as articulated above.  In Miller, the court analyzed the forfeitability of certain property under two separate theories: as property "involved in" money laundering, and as proceeds "traceable to" fraud proceeds.  The tracing analysis undertaken by the Miller court, including the use of LIBR (lowest intermediate balance rule) [7], is all subsumed under the latter issue – which is not the theory of forfeiture advanced by the government in this case.  While discussing the "involved in" theory relevant here, the Miller court twice emphasized that "[p]roperty involved in a money laundering offense is forfeitable in its entirety," even if legitimate funds have also been invested in the property or its value at the time of forfeiture exceeds the amount of tainted money funneled into the asset. Miller, 911 F.3d at 232, 234.  See also United States v. Kivanc, 714 F.3d 782, 794 (4th Cir. 2013) ("[W]hen legitimate funds are commingled with property involved in money laundering or purchased with criminally derived proceeds, the entire property, including the legitimate funds, is subject to forfeiture."); United States v. McGauley, 279 F.3d 62, 75-76 (1st Cir. 2002).  Furthermore, the value of the property that the government has identified for forfeiture in this case is less than half of the $39.5 million that was initially laundered through U.S. financial institutions.  In contrast to the massive, overreaching forfeiture painted by

---

[7] Furthermore, the LIBR is applicable only when the government applies a "proceeds-in, last-out" tracing analysis to funds remaining in a particular account. See United States v. Banco Cafetero Panama, 797 F.2d 1154, 1159 (2d Cir. 1986); see also Miller, 911 F.3d at 235 ("LIBR circumscribes what can be traced into an account, rather than out of it.").  However, the government may also elect to apply a "proceeds-in, first-out" rule.  Banco Cafetero, 797 F.2d at 1159-60.  Thus, every time cash is withdrawn, transferred or spent from a tainted account, the government may assume that tainted money was used and equally taints the account or assets into which the funds were put.

15

defendant, purportedly caused by the government's accounting method (D.E. 182 at 12), the government has seized approximately $9,150,000 from bank accounts. All property restrained, including those bank accounts, jewelry, vehicles, artwork, and real property against which there are lis pendens filed, total a value less than $17,000,000.

Second, it is important to recall that the standard at this stage is merely probable cause, while defendant seems to be demanding a higher standard that requires every dollar to be traced utilizing accepted accounting principles. "Probable cause to believe the [bank account] funds are traceable to illegal activity does not require itemized proof; the Government need show only a fair probability the funds are traceable to illegal activity." United States v. Cobb, 2015 WL 518548, at *4 (D. Nev. Feb. 9, 2015). Thus, evidence that "a majority of funds" were traceable to illegal activities has been deemed sufficient to seize an entire account. Id. But even to sustain a conviction for money laundering, "the government is not required to prove that no 'untainted' funds were involved, or that the funds used in the transaction were exclusively derived from the [SUA]," or to "trace each dollar of the transaction to the criminal, as opposed to the non-criminal activity." United States v. Moore, 27 F.3d 969, 976-77 (4th Cir. 1994).

Here, the government has established probable cause to believe that the $39.5 million that was laundered into the United States through various offshore accounts was proceeds of specified unlawful activity. That money was then transferred among and between more than twenty different bank accounts; ownership of the accounts was transferred among individuals and back again; and the funds were used to invest in legitimate business and purchase assets like real

16

estate, vehicles, artwork and jewelry. That the "tainted" funds have been put through a series of transactions that render them difficult to trace, or are comingled with "untainted" funds, is the very essence of what makes this a concealment money laundering conspiracy as charged in Count One. At a minimum, the government has demonstrated that probable cause exists to believe that each of the bank accounts and other pieces of property seized and/or listed in the Indictment were involved in one or more money laundering transactions, and their pretrial seizure and restraint are therefore proper.

### III. CONCLUSION

For all the above-stated reasons, the defendant's motion to suppress and release properties should be denied without hearing as to all assets.

Respectfully submitted this 26th day of March 2019.

                                      ROBERT J. HIGDON, JR.
                                      United States Attorney

By:    */s/ Barbara D. Kocher*
          JASON M. KELLHOFER
          BARBARA D. KOCHER
          MATTHEW L. FESAK
          Assistant U.S. Attorney
          310 New Bern Avenue, Suite 800
          Raleigh, NC 27601
          Telephone: 919-856-4530
          Fax: 919-856-4487
          E-mail: jason.kellhofer@usdoj.gov
          OH Bar: 0074736
          E-mail: barb.kocher@usdoj.gov
          NC Bar: 16360
          E-mail: matthew.fesak@usdoj.gov
          NC Bar: 35276

## CERTIFICATE OF SERVICE

This is to certify that I have this 26th day of March 2019, served a copy of the foregoing filing upon counsel for the defendant in this action by electronically filing the foregoing with the Clerk of Court, using the CM/ECF system that will send notification of such filing to:

**Benjamin F. Leighton**
Moore & Van Allen PLLC
100 North Tryon Street, Suite 4700
Charlotte, NC  28202-4003

**James P. McLoughlin, Jr.**
Moore & Van Allen
100 N. Tryon St., Suite 4700
Charlotte, NC  28202-4003

**Nathan A. White**
Moore & Van Allen PLLC
100 North Tryon Street, Suite 4700
Charlotte, NC  28202-4003

By: */s/ Barbara D. Kocher*
BARBARA D. KOCHER
Assistant U.S. Attorney
310 New Bern Avenue, Suite 800
Raleigh, NC 27601
Telephone: 919-856-4530
Fax: 919-856-4487
E-mail: barb.kocher@usdoj.gov
NC Bar: 16360