UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:18-CR-452-1-FL

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | **REPLY BRIEF TO GOVERNMENT** |
| v. | ) | **RESPONSE TO MOTION TO** |
| | ) | **SUPPRESS EVIDENCE AND RELEASE** |
| | ) | **PROPERTY** |
| LEONID ISAAKOVICH TEYF | ) | |

Judge Flanagan denied Ms. Teyf's request for release of funds seized from her bank accounts based on the Government's argument that those funds (and by extension, the funds seized from Mr. Teyf's accounts) were "involved in" money laundering violations. That argument by the Government is demonstrably inaccurate.[1] It is inaccurate because it effectively presupposes that the bank account itself is the property "involved in" money laundering. How else to interpret the Government's claim that it is not required to trace any funds because forfeitable property "can encompass the entire account (including any 'clean' money comingled with [criminal proceeds]) that was used to launder the tainted money?" DE-197 at 16. The argument is demonstrably inaccurate because untainted funds can be subject to forfeiture only if used to facilitate a money laundering offense, *e.g.*, by using the funds to disguise the nature of comingled criminal proceeds. "'The mere pooling or commingling of tainted and untainted funds in an account does not, without more, render the entire contents of the account subject to forfeiture.'" *See United States v. Puche*, 350 F.3d 1137, 1153 (11th Cir. 2003) (based on the rapid and simultaneous movement of both

---

[1] Mr. Teyf hereby adopts the motions and arguments in support of release of seized assets made by his co-defendant Tatyana A. Teyf in her Motion filed with this Court at DE-186. Mr. Teyf also adopts the arguments set forth in Ms. Teyf's Reply Brief attached to Ms. Teyf's Motion for Leave to file a Reply Brief at DE-199, particularly Ms. Teyf's arguments that: (a) a showing of need in order to pay for legal counsel under *United States v. Farmer* no longer applies in the context of untainted assets; and (b) the Government's argument under *Kaley* fails because the grand jury made no assessment of concealment. DE-199 at 2, 7.

legitimate and illegitimate funds into bank accounts in order to conceal narcotics proceeds, the jury could infer legitimate funds were used to "cover" the illegitimate funds, thus subjecting the legitimate funds to forfeiture) (quoting *United States v. Bornfield*, 145 F.3d 1123, 1135 (10th Cir. 1998)("[f]orfeiture of legitimate and illegitimate funds commingled in an account is proper as long as the government demonstrates that the defendant pooled the funds to facilitate, i.e., disguise the nature and source of, his scheme"). Courts in the Fourth Circuit and other circuits have adopted the Eleventh Circuit's 18 U.S.C. § 982 "involved in" definition. *See United States v. Varner*, 2005 U.S. Dist. LEXIS 19754 at footnote 1; 2005 WL2206083 (September 9, 2005 W.D. Va.) ("if a defendant 'knowingly commingles legitimate funds with property obtained through a specified unlawful activity' and uses the legitimate funds to conceal the criminal proceeds, then 'the entire property, including the legitimate funds, is subject to forfeiture.'")(citing *Puche*); *United States v. One 1987 Mercedes Benz 300E,* 820 F. Supp. 248, 252 (E.D. Va. 1993)(same); *United States v. Beltramea*, 849 F.3d 753, 758 (8th Cir. 2017) (real estate development "integral" to money laundering scheme); *United States v. Cessa*, 872 F.3d 267, 273-74 (5th Cir. 2017) (commingling of funds in accounts and use of aircraft were used to facilitate the money laundering scheme). However, any "involved in" argument is unsupportable here because the Government has not made any allegation in the Superseding Indictment or the papers in support of the seizure that untainted funds were used to disguise or "cover" allegedly tainted funds.

It does not follow that just because a defendant deposits allegedly criminal proceeds into an account at one point in time that all funds subsequently deposited into that account become subject to forfeiture. Yet this is precisely what the Government argues by claiming it is entitled to seize, without tracing, all of the contents of accounts in 2018 because Mr. Teyf allegedly deposited criminal proceeds into those accounts between 2010 and 2012. No, the Government must

demonstrate that all of the untainted funds seized in 2018 were "involved in" the violation, *i.e.,* used to disguise the allegedly tainted funds. It can only do so by tracing them, which the Government has made no effort to do. The Government's position runs afoul of Eighth Amendment protections against excessive and disproportionate civil forfeitures. *Austin v. United States*, 509 U.S. 602 (1993); *United States v. Bajakajian*, 524 U.S. 321, 334 (1998).

Further, the Government's argument is unsupported by any predicate to the seizure because the Government has never alleged nor charged that Mr. Teyf comingled allegedly tainted funds with untainted funds in order to facilitate a violation of the money laundering statute. As noted by counsel for Ms. Tatyana Teyf, the Government might have a point if the defendants had been charged under the concealment theory of money laundering, 18 U.S.C. § 1956(a)(1)(B)(i). DE-199 at 6. Instead, however, the Government has only charged Mr. Teyf with the "spending" money laundering statute. In fact, it has not even alleged that there was a single dollar of untainted proceeds in the accounts at the time of the supposed comingling.

In addition, the Government takes issue with Mr. Teyf highlighting the lack of evidence to support the Government's money laundering theory. Particularly, the Government states that Mr. Teyf "relies on one document from discovery" in a case where "[d]iscovery has included tens of thousands of pages of documents and records." DE-197 at 10. Tellingly, what the Government did not do was point out other documents to demonstrate any material flaw in Mr. Teyf's argument. It is not Mr. Teyf's fault that he points to only one document; rather, it is the fault of the Government, as its theory that funds coming into the United States were the proceeds of specified unlawful activity is based on one report from a confidential human source (CS-1) who set forth a highly improbable scenario in which Mr. Teyf "conspired with senior Russian government officials…" with no subsequent Russian investigation or prosecution. DE-197 at 6.

Surely, if CHS-1's narrative of wrongdoing were true, in a case with thousands of pages of documents and records assembled through at least four years of investigating, the Government would have been able to find some other evidence to corroborate CHS-1's fanciful allegations of a supposed scheme in Russia.

### The Search Warrants Do Not Support Seizure of any Property, including Jewelry, Possession of which is Not *Res Ipsa* Criminal and the Plain View Doctrine Does Not Apply to Seizure of Property.

The Government sets forth two alternative theories under which seizure of property, including cars and jewelry not specified in the search warrants, was legitimate. The first theory posited by the Government is that seizure of the property was lawful under the "plain view" exception to the Fourth Amendment. The Government completely mischaracterizes the exception's requirements by claiming that *United States v. Uzenski*, 434 F.3d 690 (4th Cir. 2006) permits agents to "seize articles [subject to forfeiture] that they come across while performing a search in a given area pursuant to a valid search warrant." ***Uzenski*** **states no such thing.** Rather, it provides that agents may "seize articles *of incriminating character* that they come across while performing a search…" *Id*. at 707 (emphasis added). This distinction is particularly important given the plain view exception's requirement, cited by the *Uzenski* court, that "the object's incriminating character must… be immediately apparent." *Id*. Here, there is nothing of an incriminating nature about the property, including cars and jewelry, that could be apparent at all.

Second, it argues that authorized seizure "include[d], ***but [was] not limited to***, the categories specifically enumerated therein." The Government's argument appears to be that, since Mr. Teyf was not earning much in terms of annual income and "at least some of [the property] was purchased during the timeframe of the charged conduct," a fact not argued in obtaining the warrants, there is a "fair probability" that the seized items were purchased with tainted funds. This

argument goes too far, in that it essentially renders every item of value in Mr. Teyf's homes subject to seizure. Such warrants do not comport with the Fourth Amendment's requirement that they "particularly describe[d] the… things to be seized," nor do they satisfy the Supreme Court's requirement that a "sufficiently particular warrant describe[] the items to be seized in such a manner that it leaves nothing to the discretion of the officer executing the warrant." *United States v. Robinson*, 275 F.3d 371 (4th Cir. 2001), *citing Marron v. United States*, 275 U.S. 192, 196 (1927). Such a general search of Mr. Teyf's residences violated his fundamental rights. *See Marron* at 195. The Government relies on receipts located in the course of the search showing that at least some of the jewelry was purchased after 2010. Given that such receipts were not enumerated by the warrants and the receipts do not demonstrate in any way the property was purchased with allegedly tainted funds, it is readily apparent that the executing agents found the jewelry and subsequently engaged in an illegal general search to try, unsuccessfully, to connect the jewelry to alleged criminal activity. Accordingly, *all* items seized pursuant to these illegitimate warrants should be suppressed and returned.

## CONCLUSION

For the foregoing reasons above and as set forth in Mr. Teyf's Motion, Mr. Teyf respectfully requests the Court grant his Motion to Suppress and Release Property.

This the 4th day of April, 2019.

        By:    /s/ James P. McLoughlin, Jr.
        James P. McLoughlin, Jr.
        N.C. State Bar No. 13795
        Nathan A. White
        N.C. State Bar No. 48684
        Benjamin F. Leighton
        N.C. State Bar No. 50835
        MOORE & VAN ALLEN PLLC
        100 North Tryon Street, Suite 4700
        Charlotte, NC 28202-4003
        Phone: (704) 331- 1054
        Facsimile: (704) 378-2054
        jimmcloughlin@mvalaw.com
        nathanwhite@mvalaw.com
        benleighton@mvalaw.com

# CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of April, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system. I also served a copy of the foregoing upon counsel for the United States in this action by sending a copy to each counsel by electronic communication as referenced below:

Barbara D. Kocher
U.S. Attorney's Office
310 New Bern Ave.
Suite 800
Raleigh, NC 27601
Email: barb.kocher@usdoj.gov

Jason M. Kellhofer
U.S. Attorney's Office
310 New Bern Ave.
Suite 800
Raleigh, NC 27601
Email: jason.kellhofer@usdoj.gov

By: /s/ James P. McLoughlin, Jr.
    James P. McLoughlin, Jr.
    MOORE & VAN ALLEN PLLC
    100 North Tryon Street, Suite 4700
    Charlotte, NC 28202-4003