IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:18-CR-00452-FL-1

| | |
|---|---|
| **United States of America**, <br><br> v. <br><br> **Leonid Isaakovich Teyf,** <br><br> Defendant. | **Order** |

Defendant Leonid Teyf asks the court to quash a grand jury subpoena that requires him to produce certain bank records in his possession, custody, and control. He claims that the subpoena is unreasonable and oppressive in its scope and that requiring him to produce the requested documents would violate his constitutional rights. The Government responds that there is nothing exceptional about the subpoena's request and that circuit precedent precludes Teyf's constitutional arguments. Ultimately, the Government has the better argument and thus the court will deny the motion to quash.

I.  **Background**

A grand jury returned a thirty-six count Superseding Indictment against Teyf in early February 2019. D.E. 127. Charges against him include bribery of a public official, murder for hire, money laundering, and visa fraud. Finding that there were no conditions of release that could reasonably assure the the safety of the community, the court order Teyf's detainment pending trial. D.E. 68.

Despite Teyf's indictment, the Grand Jury has continued to investigate him. As part of that investigation, the Grand Jury issued a subpoena directing Teyf to produce "[a]ny and all records in [his] possession, custody or control that are required to be maintained pursuant to 31 C.F.R. §

1010.420 … for the past five years" related to certain foreign financial accounts. D.E. 175–1. Teyf now challenges the subpoena and seeks to have it quashed. D.E. 175.

**II. Analysis**

Federal grand juries may issue subpoenas as part of their investigative authority. *United States* v. *R. Enters., Inc.*, 498 U.S. 292, 297 (1991). But while the grand jury's subpoena power is broad, it is "not unlimited." *Id.* at 299. A grand jury may not "engage in arbitrary fishing expeditions, nor may they select targets of investigation out of malice or an intent to harass." *Id.* And a subpoena recipient may seek to have a subpoena quashed "if compliance would be unreasonable or oppressive." Fed. R. Civ. P. 17(c).

When a court considers a challenge to a subpoena, it must keep in mind that the Supreme Court has established a presumption that "a grand jury subpoena issued through normal channels" is reasonable. *R. Enters.*, 498 U.S. at 300. Thus, the party seeking to avoid responding to the subpoena bears "the burden of showing unreasonableness." *Id*.

With this framework in mind, the court will consider each of Teyf's arguments against the subpoena.

Teyf first challenges the subpoena on the grounds as unreasonable because of the circumstances confronting him as he tries to respond to the grand jury's request. He begins by pointing out that he "does not speak English and is incarcerated with sporadic access to his attorneys and very little access to anyone else." Memorandum in Support at 5, D.E. 175. He then claims that neither he nor his attorneys "have had a chance to review any of the documents or data seized by the Government from [his] home." *Id.* at 5–6. He finally claims that the grand jury should ask the various financial institutions he banked with to produce the records before seeking them from him. Upon review, none of these arguments are persuasive.

Initially, while Teyf's language issues and detention no doubt present challenges, he has not shown how or why these issues prevent him from responding to the subpoenas. Teyf has not claimed that he cannot communicate with his attorneys. There is thus no reason to believe that Teyf cannot explain to his attorneys where he kept responsive records or what financial institutions might be able to provide copies. Nor has Teyf shown that there is something unique or complex about his method of record keeping that places the task of searching for responsive documents beyond his attorneys' abilities. There is no reason for the court to find that these issues make responding to the subpoena unreasonable.

The court is also unpersuaded by Teyf's argument about his attorney's access to seized materials. To begin with, the subpoena calls for production of documents in his possession, custody, and control. If the Government has seized responsive documents and not made them available to Teyf, they would be outside his possession, custody, and control, and thus he would need not produce them. More importantly, the Government maintains that Teyf's attorneys have had access to all the physical evidence seized by the Government since December 2018 and, as of early February 2019, they have not requested to review it. Resp. to Mot. to Quash at 3, D.E. 181. Under these facts, the court cannot conclude that the subpoena is either burdensome or oppressive.

Teyf concludes this portion of his motion by arguing that the Government could obtain the records it seeks through the Mutual Legal Assistance Treaty ("MLAT"), which allows countries to facilitate legal proceedings involving foreign parties without having to resort to letters rogatory. *In re Grand Jury Subpoena*, 646 F.3d 159, 165 (4th Cir. 2011). "[T]hese treaties provide for bilateral, mutual assistance in the gathering of legal evidence for use by the requesting state in criminal investigations and proceedings." *In re Premises Located at 840 140th Ave. NE, Bellevue, Wash.*, 634 F.3d 557, 564 (9th Cir. 2011).

The Fourth Circuit has addressed this argument and concluded "the existence of an alternative means of obtaining information is insufficient to render a subpoena unreasonable or subpoenaed material irrelevant to a grand jury investigation." *In re Grand Jury, John Doe No. G.J.2005–2*, 478 F.3d 581, 587 (4th Cir. 2007). So the fact that the Government could seek the documents it requests through an MLAT with Russia or another foreign country party does not render the subpoena unreasonable.

Teyf next contends that given the Government's seizure of his financial documents, forcing him to respond to the subpoena would violate his Fifth and Sixth Amendment rights. He claims that responding would violate his Fifth Amendment due process rights because he cannot completely and accurately respond to the subpoena when many documents are in the Government's possession. Teyf maintains that if he were to inaccurately or incompletely respond, he runs the risk of subjecting himself to criminal prosecution or contempt of court. He also claims that he would lose his Sixth Amendment right to counsel if he were forced to respond before his attorneys reviewed the seized records.

These arguments fail for the same reason as his earlier arguments. Teyf need only produce documents in his possession, custody, or control. If he claims that because of the Government's seizure of his financial information he has no additional documents that fit this description, he only need say so. Moreover, his attorneys have had the ability to access and assess the materials in the Government's possession for months. As a result, there is no basis to find that responding to the subpoena would violate Teyf's Fifth Amendment due process rights or his right to counsel under the Sixth Amendment.

Teyf also contends the subpoena implicates his Fifth Amendment right against self-incrimination. Teyf argues that producing foreign financial information has testimonial aspects.

4

By disclosing information related to the existence of foreign bank accounts he may not have reported as required by Internal Revenue Service regulations, Teyf asserts he may subject himself to liability under the be liable under Bank Secrecy Act ("BSA"), 31 U.S.C. § 5311 *et seq.*[1]

In *United States* v. *Under Seal*, the Fourth Circuit considered whether to quash a grand jury subpoena identical in substance to the one here, with the parties raising the same arguments as here. 737 F.3d 330, 332 (4th Cir. 2013). The Fourth Circuit concluded the required records doctrine applied, and that defendants' Fifth Amendment privilege did not apply. *Id.* at 334–38. Because the Fourth Circuit's decision in *Under Seal* is clear and controls the disposition of Teyf's motion, the court denies his motion to quash.

### III. Conclusion

Teyf's has not shown that responding to the grand jury's subpoena would be unreasonable, oppressive, or violative of his constitutional rights. The court thus denies Teyf's motion to quash the subpoena (D.E. 175).

Dated: April 9, 2019

_Robert T. Numbers II_
Robert T. Numbers, II
United States Magistrate Judge

---

[1] The BSA contains several recordkeeping and inspection provisions. Section 241(a) of the Act "require[s] a resident or citizen of the United States ... to keep records, file reports, or keep records and file reports, when the resident, citizen, or person makes a transaction ... with a foreign financial agency." *Id.* § 5314(a). To support that statutory directive, the Treasury Secretary implemented regulations that require (1) U.S. citizens and residents to disclose their foreign bank accounts, *see* 31 C.F.R. § 1010.350, and (2) that the records for such accounts "be retained by each person having a financial interest in or signature or other authority over any such account" for at least five years and be kept "at all times available for inspection as authorized by law," *id.* § 1010.420.

5