THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Case No. 5:18-CR-452-FL-1

UNITED STATES OF AMERICA,    )
    )
    v.    )
    )  **(Oral Argument Requested)**
LEONID ISAAKOVICH TEYF,    )
    )
    Defendant.    )


**DEFENDANT LEONID TEYF'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS COUNTS 1-9, 11-13, 17-19, 21-24, 35-36 AND 40-41 OF THE
THIRD SUPERSEDING INDICTMENT PURSUANT TO FED. R. CRIM. P. 12(b)**


This 29th day of April, 2019        MOORE & VAN ALLEN PLLC

        100 North Tryon Street, Suite 4700
        Charlotte, NC 28202-4003

        James P. McLoughlin, Jr.
        N.C. State Bar No. 13795
        John S. Han
        N.C. State Bar No. 54113
        Fielding E. Huseth
        N.C. State Bar No. 53121

        *Attorneys for Defendant Leonid Teyf*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................1

SUMMARY OF THE INDICTMENT ......................................................................3

ARGUMENT ..........................................................................................................4

    I.     THE INDICTMENT FAILS TO SUFFICIENTLY APPRISE MR. TEYF OF THE ALLEGED "SPECIFIED UNLAWFUL ACTIVITY" THAT HE MUST DEFEND AND THUS MUST BE DISMISSED. ......................................................................................5

          A.    The Indictment Fails to Specify the Statute or at a Minimum Use the Statutory Language of the Alleged Specified Unlawful Activity. ......................................................................6

          B.    The Government Also Appears Not To Know Which Specified Unlawful Activity Has Been Violated. ......................................10

    II.    THE INDICTMENT OMITS AN ESSENTIAL ELEMENT OF THE OFFENSE – AN ENUMERATED SPECIFIED UNLAWFUL ACTIVITY – AND THUS MUST BE DISMISSED. ..........................................11

          A.    The Government's Probable Theories of the Specified Unlawful Activity (If It Has Any at All) Fail as a Matter of Law. ....................................................................................12

          B.    The Fourth Circuit's Decisions in *Pupo*, *Hooker*, and *Daniels* Warrant Dismissal. ......................................14

          C.    The Indictment Fails to Allege an Essential Element *of the Charged Offense*. ....................................................16

CONCLUSION ......................................................................................................18

CHAR2\2141171v4

# TABLE OF AUTHORITIES

**Cases**

*Russell v. United States*,
   369 U.S. 749 (1962) ...........................................................................................5, 8, 14, 16

*United States v. Adkinson*,
   135 F.3d 1363 (11th Cir. 1998) .........................................................................................12

*United States v. Brandon*,
   298 F.3d 307 (4th Cir. 2002) ..........................................................................................5, 11

*United States v. Cherry*,
   330 F.3d 658 (4th Cir. 2003) ......................................................................................6, 16, 17

*United States v. Daniels*,
   973 F.2d 272 (4th Cir. 1992) ....................................................................................... *passim*

*United States v. Engle*,
   676 F.3d 405 (4th Cir. 2012) .............................................................................................3

*United States v. Green*,
   599 F.3d 360 (4th Cir. 2010) .............................................................................................5

*United States v. Hayes*,
   775 F.2d 1279 (4th Cir. 1985) ...........................................................................................16

*United States v. Hooker*,
   841 F.2d 1225 (4th Cir. 1988) (en banc) ....................................................................... *passim*

*United States v. Knowles*,
   2 F. Supp. 2d 1135 (E.D. Wis. 1998).............................................................................7, 9, 17

*United States v. Le*,
   310 F. Supp. 2d 763 (E.D. Va. 2004) ...............................................................................17

*United States v. Porter*,
   591 F.2d 1048 (5th Cir. 1979) ...........................................................................................13

*United States v. Pupo*,
   841 F.2d 1235, 1237 (4th Cir. 1988) (en banc) .......................................................14, 15, 16

*United States v. Rivera*,
   837 F.2d 906 (10th Cir. 1988), *aff'd on reh'g*, 874 F.2d 754 (1989) ...................................8, 9

*United States v. Shirkhani*,
   No. 92-5234, 1993 U.S. App. LEXIS 5405 (4th Cir. Mar. 17, 1993) .................................7, 12

*United States v. Singh*,
    518 F.3d 236 (4th Cir. 2008) ................................................................1, 2

*United States v. Smith*,
    44 F.3d 1259 (4th Cir. 1995) ........................................................6, 7, 16, 17

*United States v. Vinson*,
    852 F.3d 333 (4th Cir. 2017) ....................................................................4

*United States v. Woodley*,
    No. 4:17cr128, 2018 U.S. Dist. LEXIS 20484 (E.D. Va. Feb. 7, 2018).................12

**Statutes**

18 U.S.C. § 2 .......................................................................................3

18 U.S.C. § 1956(c)(7).................................................................1, 2, 5, 12

18 U.S.C. § 1956(c)(7)(A) .........................................................................6

18 U.S.C. § 1956(c)(7)(B) ......................................................................6, 13

18 U.S.C. § 1956(c)(7)(D) .........................................................................6

18 U.S.C. § 1956(h) ..............................................................................1, 3

18 U.S.C. § 1957....................................................................................1

18 U.S.C. § 1957(a) ..............................................................................3, 4

21 U.S.C. § 848 .....................................................................................8

26 U.S.C. § 5861(e) ............................................................................7, 15

**Other Authorities**

B. Frederic Williams, Jr. & Frank D. Whitney, *Federal Money Laundering:*
    *Crimes and Forfeitures* (1999) ..................................................................5

Fed. R. Crim. P. 7(c)(1) ........................................................................2, 11

Fed. R. Crim. P. 12(b)(3)(B)(iii) .................................................................5

Fed. R. Crim. P. 12(b)(3)(B)(v) ..................................................................11

U.S. Const. amend. V...................................................................... *passim*

U.S. Const. amend. VI..................................................................... *passim*

# PRELIMINARY STATEMENT

As relevant to his motion, Mr. Teyf stands accused of money laundering and conspiracy to commit money laundering in violation of 18 U.S.C. §§ 1957 and 1956(h), respectively. An essential element of both offenses is the existence of a predicate crime, a "specified unlawful activity." *See United States v. Singh*, 518 F.3d 236, 246, 248 (4th Cir. 2008) ("essential elements" include that "the defendant knew the money laundering proceeds had been derived from [a specified unlawful] activity"). No money laundering offense can exist without a specified unlawful activity resulting in criminally derived property. *See* 18 U.S.C. §§ 1957 and 1956(h). Section 1956(c)(7) provides the exclusive list of more than 175 state, federal, and foreign crimes that constitute specified unlawful activities. Any alleged crime absent from the list is not a specified unlawful activity. *See* Section 1956(c)(7).

The grand jury issued the Third Superseding Indictment (the "Indictment") containing the money laundering allegations on April 4, 2019. The Indictment alleges Mr. Teyf and others committed the following generic underlying crimes: (1) "*theft* of funds belonging to the government of Russia in the form of kickbacks, a crime in that country" (Count 1); and (2) "*illegal kickback* of funds belonging to the government of Russia" (Counts 2-26, 33-41). Indictment ("Ind.") at ¶¶ 18, 21, 63 (emphasis added). The Indictment does not reveal whether the alleged generic underlying crime is premised on "theft" or "illegal kickbacks," or both. It is further unstated whether the underlying crime violates U.S. or Russian law. It alleges that "theft" is "a crime in that country" but is silent on the "illegal kickbacks" allegation. Ind. at ¶¶ 18, 21, 63. Moreover, neither alleged underlying crime appears to be a specified unlawful activity at all. *See* Ind. at ¶¶ 18, 21, 63; § 1956(c)(7).

The Indictment is fatally flawed. First, it fails to sufficiently apprise Mr. Teyf of the essential elements of the charge against him in violation of his Sixth Amendment rights. *See*

*United States v. Hooker*, 841 F.2d 1225, 1230 (4th Cir. 1988) (en banc). The Indictment neither cites the statute nor does it use the statutory language of any specified unlawful activity. *See* Ind. at ¶¶ 18, 21, 63. A diligent review of the more than 175 specified unlawful activities reveals none that match the Indictment's allegations.

The Government appears equally unsure which specified unlawful activity it will attempt to prove at trial. At the pretrial detention hearing on December 18, 2018, Magistrate Judge Robert T. Numbers, II asked the Government point-blank about this exact issue: ". . . what's the Government's theory on what law [Mr. Teyf] actually broke? What Russian law . . . or what American law that [he] broke by doing [this]?" Transcript of Detention Hearing, 12/18/2018 ("Tr."), p. 40 l. 25 – p. 41 l. 3. The Government responded, "with all due respect, I do not have that law for you this morning." Tr. p. 41 ls. 4-5. The grand jury has issued two superseding indictments since then, but the Government has done nothing to identify the alleged specified unlawful activity, including whether it violates U.S. or Russian law. *See* Ind. at ¶¶ 7-8, 18, 21, 63. Thus, the Indictment has failed to sufficiently apprise Mr. Teyf of the charges against him so that he knows "what he must be prepared to meet." *See Hooker*, 841 F.2d at 1227.

Second, the Indictment infringes on Mr. Teyf's Fifth Amendment rights because it omits an essential element of the money laundering offenses. *See Hooker*, 841 F.2d at 1230. A specified unlawful activity is an essential element. *See Singh*, 518 F.3d at 248. However, neither of the alleged generic underlying crimes is an enumerated specified unlawful activity, and the Indictment lacks sufficient facts to support any identifiable specified unlawful activity. *See* Ind. at ¶¶ 18, 21, 63; § 1956(c)(7); Fed. R. Crim. P. 7(c)(1). An indictment that lacks an essential element of the offense is subject to dismissal. *See Hooker*, 841 F.2d at 1229-30.

For these and other reasons, set forth below, the Court must dismiss the Indictment.

CHAR2\2141171v4

## SUMMARY OF THE INDICTMENT[1]

On April 4, 2019, the grand jury issued its Third Superseding Indictment naming Mr. Teyf. Relevant to his motion, the Indictment charges Mr. Teyf with (i) conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) and (ii) committing (or attempting to commit or aiding and abetting others to commit) money laundering in violation of 18 U.S.C. §§ 1957(a) and 2. Ind. at ¶¶ 19, 22, 64.

The Indictment alleges that a company named Voentorg received a contract "to provide the Russian military with goods and services (e.g., laundry, food, and equipment)." *Id*. at ¶ 7. Voentorg then engaged with subcontractors to fulfill the contract requirements. *Id*. at ¶ 7. Russia's then-Minister of Defense, Anatoli Serdyokov, awarded Voentorg this contract on some unknown date. *Id*. at ¶ 7.

The Indictment further alleges that Mr. Teyf was Voentorg's Deputy Director between 2010 and 2012, although the exact dates are not given. *Id*. at ¶ 8. The subcontractors that fulfilled the contract requirements – *i.e.*, provided goods and services to the military – were allegedly arranged by Mr. Teyf. *Id*. at ¶ 8. As part of the arrangements, subcontractors allegedly paid a certain percentage of the funds to complete the work to Mr. Teyf and others. *Id*. at ¶ 8. During a roughly two-year span, the individuals involved allegedly placed some monies in accounts that Mr. Teyf controlled. *Id*. at ¶ 8. From there, "[s]ome of the monies belonging to [Mr.] TEYF were transferred to accounts outside of Russia, and ultimately into accounts located in the United States." *Id*. at ¶ 8.

Based on these allegations alone, the Indictment charges Mr. Teyf with significant money laundering crimes. In doing so, the Indictment alleges the generic underlying offense that resulted

---

[1] For purposes of his motion, Mr. Teyf accepts, as he must, the allegations of the Indictment as true. *See United States v. Engle*, 676 F.3d 405, 415 (4th Cir. 2012). However, Mr. Teyf fervently disputes the charges against him.

CHAR2\2141171v4

in the "dirty" proceeds. *Id.* at ¶¶ 18, 21, 63. However, it neither includes a statutory reference, U.S. or Russian, to any specified unlawful activity nor tracks the language of any statute we could find that could serve as the specified unlawful activity. *Id.* at ¶¶ 18, 21, 63. Rather, for the first count, the Government alleges the specified unlawful activity to be the "*theft of funds belonging to the government of Russia in the form of kickbacks, a crime in that country*[.]" *Id.* at ¶ 18 (emphasis added). For the remaining counts, however, the Government alleges "*illegal kickback of funds belonging to the government of Russia.*" *Id.* at ¶¶ 21, 63 (emphasis added). Thus, the Indictment is unclear whether it alleges (a) two underlying offenses ("theft" and "illegal kickbacks") or (b) one underlying offense written in two different ways. *Id.* at ¶¶ 18, 21, 63.

The Indictment alleges nowhere that Mr. Teyf paid any money at all – let alone bribes or kickbacks – to Mr. Serdyokov or any other public official. The only reference to any public official was to the alleged fact that Mr. Serdyokov awarded a contract to Voentorg for providing goods and service to the military, nothing more. *Id.* at ¶ 7.

## ARGUMENT

A valid indictment "[1] contains the elements of the offense intended to be charged, [2] sufficiently apprises the defendant of what he must be prepared to meet, [and] [3] shows with accuracy to what extent he may plead a former acquittal or conviction" as a bar to any future prosecutions. *See United States v. Hooker*, 841 F.2d 1225, 1227 (4th Cir. 1988) (en banc) (quoting *Russell v. United States*, 369 U.S. 749, 763-64 (1962)) (internal quotations omitted).

Money laundering is a crime only if the money is "derived from [a] specified unlawful activity[.]" 18 U.S.C. § 1957(a); *see also United States v. Vinson*, 852 F.3d 333, 356 (4th Cir. 2017). Conspiracy to commit money laundering is a crime only if the defendant and others agree

CHAR2\2141171v4

to launder money knowing it was derived from a specified unlawful activity.  *See United States v. Green*, 599 F.3d 360, 371 (4th Cir. 2010).

In short, the specified unlawful activity—an essential element of either offense—is the underlying crime that must first occur for a money laundering offense to exist at all.  Indeed, this underlying crime is what creates the "dirty" money.  *See* B. Frederic Williams, Jr. & Frank D. Whitney, *Federal Money Laundering: Crimes and Forfeitures*, p. 49 (1999).  Section 1956 provides the exclusive list of more than 175 federal, state, and foreign crimes that constitute specified unlawful activities.  18 U.S.C. § 1956(c)(7).  A crime absent from this list is not a specified unlawful activity.  *Id*.

## I.     THE INDICTMENT FAILS TO SUFFICIENTLY APPRISE MR. TEYF OF THE ALLEGED "SPECIFIED UNLAWFUL ACTIVITY" THAT HE MUST DEFEND AND THUS MUST BE DISMISSED.

An indictment that "lack[s] specificity" fails to sufficiently apprise the defendant of the charges against him and is subject to dismissal.  Fed. R. Crim. P. 12(b)(3)(B)(iii).  This requirement that the Government sufficiently apprise the defendant "derives from the defendant's Sixth Amendment right to be informed of the nature and cause of the accusation."  *See United States v. Hooker*, 841 F.2d 1225, 1230 (4th Cir. 1988) (en banc).  An indictment "not framed to apprise the defendant 'with reasonable certainty, of the nature of the accusation against him . . . is defective [even if it] follow[s] the language of the statute.'"  *Russell*, 369 U.S. at 765 (quoting *United States v. Simmons*, 96 U.S. 360, 362 (1878)).  "[P]arroting the language of the statute in the indictment is insufficient."  *United States v. Brandon*, 298 F.3d 307, 310 (4th Cir. 2002).  A bill of particulars "cannot save an invalid indictment."  *See Russell*, 749 U.S. at 770.

5

**A.      The Indictment Fails to Specify the Statute or at a Minimum Use the Statutory Language of the Alleged Specified Unlawful Activity.**

The Indictment has failed to sufficiently apprise Mr. Teyf of the specified unlawful activity that he and others allegedly committed.  First, the Indictment does not indicate *at all* which statute the Government plans to prove Mr. Teyf and others violated, including whether the statute is one under U.S. or Russian law.  Second, the Indictment provides two inconsistent (and possibly different) specified unlawful activities.  In the first count, it alleges the specified unlawful activity to be "theft of funds belonging to the Government of Russia in the form of kickbacks, a crime in that country."  Ind. at ¶ 18.  In the remaining counts, however, it alleges "illegal kickbacks of funds belonging to the Government of Russia."  Ind. at ¶¶ 21, 63.  The two inconsistent allegations— one premised on "illegal kickbacks" and the other on "theft"—also neglect to use or track the statutory language of any specified unlawful activity.

The exclusive list of specified unlawful activities incorporates all the predicate offenses of the Racketeer Influenced and Corrupt Organizations ("RICO") Act.  *See* 18 U.S.C. § 1956(c)(7)(A).  Some foreign crimes can also serve as specified unlawful activities.  18 U.S.C. § 1956(c)(7)(B).  In addition, scores of wide-ranging offenses under Title 18 of the U.S. Code can be specified unlawful activities.  18 U.S.C. § 1956(c)(7)(D).[2]  Without providing a reasonable indication of the specified unlawful activity that the Government plans to prove at trial, Mr. Teyf cannot know "what he must be prepared to meet."  *See Hooker*, 841 F.2d at 1227.

In essentially every case involving money laundering, the indictment identifies the statute corresponding to the specified unlawful activity.  *See, e.g., United States v. Cherry*, 330 F.3d 658, 668 (4th Cir. 2003) (alleging "bank embezzlement under [Section] 656"); *United States v. Smith*,

---

[2] There are dozens of other statutes under Titles 7, 16, 19, 21, 22, 33, 42, and 50 that can also serve as specified unlawful activities.

6

44 F.3d 1259, 1263 (4th Cir. 1995)) (alleging "wire fraud, in violation of 18 U.S.C. § 1343");

*United States v. Shirkhani*, No. 92-5234, 1993 U.S. App. LEXIS 5405, at *8 (4th Cir. Mar. 17, 1993) ("The 'specified unlawful activity' Shirkhani allegedly committed was bank fraud, in violation of 18 U.S.C.A. § 1344 [and the indictment] tracks the language of § 1344(2)").  At a bare minimum, the indictment should use or track the statutory language of the specified unlawful activity.  This is for good reason: identifying the underlying statute allows the defendant to know the charges against him so that he can exercise his constitutional rights to prepare his defense.

The court in *United States v. Knowles* has addressed this precise issue.  In generic terms, the indictment alleged the specified unlawful activity to be the "carrying on of drug trafficking." *United States v. Knowles*, 2 F. Supp. 2d 1135, 1140 (E.D. Wis. 1998).  The Government, however, neither cited any statute nor used the language of any specified unlawful activity.  *Id*. at 1140-41. As a result, the defendant was "left to guess" which specified unlawful activity "'drug trafficking' falls under[.]"  *Id*. at 1141.  The court explained that "neither the court nor the defendant should be required to guess concerning the alleged underlying offense that constitutes the 'specified unlawful activity.'"  *Id*. at 1141.  In short, the Government failed to sufficiently apprise the defendant of the charges against him in violation of his Sixth Amendment rights.  *Id*. at 1141.  As a result, the court dismissed the indictment.  *Id.* at 1141.

The Fourth Circuit has emphasized the same Sixth Amendment concerns in a case involving another criminal statute with an underlying offense requirement.  *United States v. Daniels*, 973 F.2d 272, 275-76 (4th Cir. 1992).  In the case, the Government charged the defendant with violating 26 U.S.C. § 5861(e) by *unlawfully* transferring a firearm.  *Id*. at 273-74.  An *unlawful* transfer is one that in some way "violat[es] the provisions of . . . Title 26, Chapter 53."  *Id*. at 274. Thus, Section 5861(e)'s *unlawful* transfer element is the same as the specified unlawful activity

CHAR2\2141171v4

element: both elements require an underlying offense to have occurred for the Government to prove the charged offense.

Just like in Mr. Teyf's case, the indictment in *Daniels* did not specify which provisions of Title 26, Chapter 53 the defendant allegedly violated. Indeed, the indictment "neither tracked the statutory language . . . nor cited the actual sections of Chapter 53 that the Government maintained Daniels had violated[.]" *Id*. at 275 (dismissing the indictment for failure to allege an essential element).[3] As the court explained, an indictment under Section 5861(e) should specifically "reference the provisions of Title 26, Chapter 53 allegedly violated." *Id*. at 276 n.2. Doing so "**prevents questions from arising as to the sufficiency of the notice** provided to the defendant." *Id*. at 276 n.2 (emphasis added). Failure to provide sufficient notice would violate the defendant's Sixth Amendment rights. *See Id*. at 274.

The Tenth Circuit has also held that the Sixth Amendment requires the indictment to allege sufficient facts supporting the underlying offense of the charged crime. *United States v. Rivera*, 837 F.2d 906, 920 (10th Cir. 1988), *aff'd on reh'g*, 874 F.2d 754 (1989).[4] There, the Government charged the defendant with engaging in a "continuing criminal enterprise" in violation of 21 U.S.C. § 848. *Id*. at 910. To meet the essential element at issue, the indictment had to sufficiently allege the underlying offenses – that is, a "continuing series of **violations of this subchapter or subchapter II** of this chapter." *Id*. at 914, n.5 (emphasis added). At trial, the Government tried to introduce evidence of "violations" absent from the indictment. *Id*. at 915. Moreover, the indictment did not track the statutory language of any such "violations." *Id*. at 915. The court

---

[3] Eleven days before trial, the Government tried to amend the indictment (without presenting it to the grand jury) to allege the specific statutory violation that made the transfer of the firearm *unlawful*. The court refused to evaluate the merits of the amended indictment, however, because the grand jury did not issue it.

[4] On rehearing, the en banc panel was evenly divided. As a result, the court affirmed while also determining that the case would not be binding in the circuit. The case is thus persuasive authority. In addition, the case relies heavily on the Supreme Court's decision in *Russell*, which is controlling authority on this Sixth Amendment issue.

CHAR2\2141171v4

reversed the conviction and held the insufficient notice to violate the defendant's Sixth Amendment rights. *Id.* at 915.

In so holding, the court spelled out the "several harms" in failing to provide sufficient notice of the underlying offenses. *Id*. at 918-19. First, the defendant "cannot adequately prepare his defense[.]" *Id*. at 918. Second, the Government "gains an unfair advantage in being 'free to roam at large – to shift its theory of criminality so as to take advantage of each passing vicissitude of the trial and appeal.'" *Id*. at 918 (quoting *Russell v. United States*, 369 U.S. 749, 768 (1962)). If the Government later determines that one underlying offense theory is weak, it can "simply admit evidence of a different offense of which defendant had no prior notice." *Id*. at 918. In other words, the Government "would not be required to decide ahead of time which uncharged offenses, if any, he or she planned to prove at trial." *Id*. at 918. Third, an indictment that allows the Government to "roam at large" can cause "conviction to rest on one point and the affirmance of the conviction to rest on another." *Id*. at 919 (quoting *Russell*, 369 U.S. at 766).

Like in *Knowles*, *Daniels*, and *Rivera*, the Indictment here neglects to point to any statute or even parrot the language of any underlying offense. The Indictment's inconsistent allegations add to the ambiguity. One is premised on "theft" and the others on "kickbacks," and only one of the allegations is alleged to be a "crime in [a foreign] country." *Id*. at ¶¶ 18, 21, 63. As a result, Mr. Teyf has been "left to guess" the (1) specified unlawful activity the Government intends to prove and (2) whether the specified unlawful activity is one that allegedly violated U.S. or Russian law. At the same time, the Government is "free to roam at large [and] shift its theory of criminality" with respect to the specified unlawful activity as the case proceeds.

## B. The Government Also Appears Not To Know Which Specified Unlawful Activity Has Been Violated.

Further demonstrating the inadequacy of the notice, the Government appears to be equally unsure which specified unlawful activity it plans to prove at trial. As noted above, during the pretrial detention hearing on December 18, 2018, Magistrate Judge Robert T. Numbers, II asked point-blank about this exact issue. "[W]hat's the Government's theory on what law [Mr. Teyf] actually broke? What Russian law . . . or what American law that [he] broke by doing [this]?" Transcript of Detention Hearing, 12/18/2018 ("Tr."), p. 40 l. 25 – p. 41 l. 3. The Government responded, "with all due respect, I do not have that law for you this morning." Tr. p. 41 ls. 4-5.

The Government still does not have the law for Mr. Teyf or this Court. In fact, the grand jury issued the second superseding indictment on February 6, 2019, and then the third superseding indictment on April 4, 2019. But nothing in either indictment addresses Magistrate Judge Numbers' precise question of "what's the Government's theory on what law [Mr. Teyf] actually broke?" The Government thus still has not sufficiently apprised Mr. Teyf – and this Court – of the specified unlawful activity that Mr. Teyf must prepare to defend.

In *United States v. Hooker*, the Government charged the defendant with a RICO conspiracy. *United States v. Hooker*, 841 F.2d 1225, 1227 (4th Cir. 1988) (en banc). The indictment, however, did not allege facts to support the fifth element—*i.e.*, that the enterprise "had an effect on interstate commerce." *Id.* at 1227. The Government received notice of the issue but then neglected to correct it in its superseding indictment. *Id.* at 1233. The Fourth Circuit ordered dismissal of the indictment because it failed to allege an essential element. *Id.* at 1229-30 (adding

CHAR2\2141171v4

that, without alleging the essential facts, "a mere statutory reference in the indictment to supply an essential element . . . is contrary to implicit precedent in this circuit").[5]

The court noted that "the facial deficiency in the indictment is even more intolerable because the [G]overnment had **actual notice of the defect** well before trial, and had available a frequently-used mechanism for curing that defect by way of a superseding indictment." *Id.* at 1233 (emphasis added). The defective indictment, even in the absence of prejudice to the defendant, was a "substantive, jurisdictional" one that could not be cured. *Id.* at 1232.

Like in *Hooker*, the Government has failed to sufficiently apprise Mr. Teyf (and this Court) of the charges against him with respect to an essential element. The Government then received actual notice of this deficiency, but neglected to fix it in **both** superseding indictments that followed. As a result, the Indictment does not sufficiently apprise Mr. Teyf of the charges against him in violation of his Sixth Amendment rights and must be dismissed.

## II. THE INDICTMENT OMITS AN ESSENTIAL ELEMENT OF THE OFFENSE – AN ENUMERATED SPECIFIED UNLAWFUL ACTIVITY – AND THUS MUST BE DISMISSED.

An indictment that omits an essential element fails to state an offense and is subject to dismissal. Fed. R. Crim. P. 12(b)(3)(B)(v). The need to allege all essential elements "derives from the Fifth Amendment, which requires that the grand jury have considered and found all elements to be present." *Hooker*, 841 F.2d at 1230. "[P]arroting the language of the statute in the indictment is insufficient." *United States v. Brandon*, 298 F.3d 307, 310 (4th Cir. 2002). In alleging the essential elements, the indictment must contain a "plain, concise and definite written statement of the **essential facts** constituting the offense charged." Fed. R. Crim. P. 7(c)(1) (emphasis added); *see also Brandon*, 298 F.3d at 310 ("the indictment must also contain a 'statement of the *essential*

---

[5] As discussed in Section I(A), the Indictment here even falls short of providing a "mere statutory reference . . . to supply an essential element."

*facts* constituting the offense charged'"). The inclusion of every element is "essential in a federal indictment because it establishes the court's jurisdiction." *Hooker*, 841 F.2d at 1231-32.

### A. The Government's Probable Theories of the Specified Unlawful Activity (If It Has Any at All) Fail as a Matter of Law.

The Indictment does not sufficiently allege facts to support any specified unlawful activity – an essential element. *See United States v. Shirkhani*, No. 92-5234, 1993 U.S. App. LEXIS 5405, at *9 (4th Cir. Mar. 17, 1993) ("By alleging the underlying 'specified unlawful activity' of bank fraud, Count Forty subsumes the essential elements of bank fraud as a necessary predicate to conviction under § 1957"); *United States v. Woodley*, No. 4:17cr128, 2018 U.S. Dist. LEXIS 20484, at *5 (E.D. Va. Feb. 7, 2018) (citing *United States v. Singh*, 518 F.3d 236, 248 (4th Cir. 2008) ("essential elements [include that] the defendant knew the money laundering proceeds had been derived from [a specified unlawful] activity"); *see also United States v. Adkinson*, 135 F.3d 1363, 1378 (11th Cir. 1998) (citing *United States v. Alford*, 999 F.2d 818, 822 (5th Cir. 1993) ("essential element of the money laundering count is that proceeds of financial transactions represent proceeds of specified unlawful activity"). Without alleging an essential element of money laundering, the Indictment fails to state an offense.

The Government's most likely theory (if it has one at all) is that Mr. Teyf and others violated the second category of specified unlawful activities under Section 1956(c)(7).[6] Within the second category, two specified unlawful activities include "an offense against a foreign nation involving . . . [1] bribery of a public official or [2] misappropriation, theft, or embezzlement of public funds by or for the benefit of a public official[.]" 18 U.S.C. § 1956(c)(7)(B)(iv). As noted

---

[6] As discussed in Section I, the Indictment has failed to "sufficiently apprise" Mr. Teyf of the specified unlawful activity, a separate reason for dismissal. Without knowing the specified unlawful activity that the Government plans to prove at trial, Section II focuses on the most likely theories the Government intends to prove, based on a review of more than 175 specified unlawful activities.

earlier, the Indictment alleges some combination of "theft" and "kickbacks" and alleges only one of the counts to be "a crime in that country." Ind. at ¶¶ 18, 21, 63.

As a matter of law, however, the factual allegations in the Indictment cannot support either specified unlawful activity. First, the Indictment lacks any allegation whatsoever involving "bribery of a public official." Section 1956(c)(7)(B)(iv). The only allegation related to a public official provides that Russia's Minister of Defense "granted [Voentorg] a contract to provide the Russian military with goods and services[.]" Ind. at ¶ 7. The separate allegation of "kickbacks" involves the private company Voentorg and private subcontractors, *not* any public official. *Id*. at ¶ 8. There is no allegation at all that a public official received a kickback. *Id*. at ¶¶ 7-8. Even if the Government had alleged a kickback to a public official in the Indictment (which it has not), the specified unlawful activity pertains only to "bribery" and not kickbacks.[7]

Second, the Indictment states nowhere that the alleged "theft . . . of public funds" was "*by or for the benefit of a public official*." Section 1956(c)(7)(B)(iv) (emphasis added). As noted above, the only allegation concerning a public official was that Russia's Minister of Defense "granted [Voentorg] a contract . . . ." Ind. at ¶ 7. Nothing in the Indictment remotely suggests that the alleged "theft . . . of public funds" was by or for the Minister of Defense's benefit. In fact, there's no allegation of any benefit at all for the Minister of Defense. Similarly, there is no allegation of any *quid pro quo* involving any alleged payment or other benefit for a public official. Thus, the Government's probable theories of the specified unlawful activity fail as a matter of law.

---

[7] Although "bribery" is not defined under 18 U.S.C. § 1956(c)(7)(B)(iv), courts analyzing other criminal statutes have held that "bribes" and "kickbacks" are not the same. *See, e.g., United States v. Porter*, 591 F.2d 1048, 1052 (5th Cir. 1979) (finding that "'bribes' and 'kickbacks' do not have the same meaning").

CHAR2\2141171v4

None of the other specified unlawful activities concerning an "offense against a foreign nation" are relevant. Moreover, the Government has pointed to no other possible specified unlawful activity, nor can any be found that the factual allegations in the Indictment could support.

## B. The Fourth Circuit's Decisions in *Pupo*, *Hooker*, and *Daniels* Warrant Dismissal.

The Fourth Circuit has made clear that indictments lacking an essential element violate a defendant's Fifth Amendment rights and thus must be dismissed.[8]

In *United States v. Pupo*, the Government charged the defendant with certain drug offenses. 841 F.2d 1235, 1237 (4th Cir. 1988) (en banc). The indictment, however, omitted the *mens rea* element of the offenses. *Id.* at 1238-39. Although the indictment included a statutory citation to the offenses, the court found the citation to be insufficient for two reasons. *Id.* at 1239. First, the statutory citation, on its own, provided inadequate notice to the defendant in violation of the Sixth Amendment. *Id.* at 1239. Second, the mere inclusion of the statutory citation did "not ensure that the grand jury ha[d] considered and found **all essential elements of the offense charged** [and] therefore fail[ed] to satisfy the Fifth Amendment." *Id.* at 1239 (emphasis added). As the court further noted, "when an indictment fails to include an essential element of the offense charged, it thereby fails to charge *any* federal offense and a conviction under the indictment may not stand[.]" *Id.* at 1239. The court held the indictment to be defective and thus ordered dismissal. *Id.* at 1239.

The Government in *Hooker* (as discussed in Section I) charged the defendant with a RICO conspiracy. *United States v. Hooker*, 841 F.2d 1225, 1227 (4th Cir. 1988) (en banc). The indictment, however, did not allege facts to support the fifth element—*i.e.*, that the enterprise "had an effect on interstate commerce." *Id.* at 1227. The Government's omission of this essential

---

[8] For many of the same reasons as discussed here, the Indictment also has fallen short of protecting Mr. Teyf against double jeopardy. This Fifth Amendment right requires that "the record shows with accuracy to what extent he may plead a former acquittal or conviction." *Russell*, 369 U.S. at 764.

CHAR2\2141171v4

element resulted in a "substantive, jurisdictional defect . . . [that could not] be cured by a later jury instruction." *Id*. at 1232.  Indeed, an attempt to cure the deficient indictment "after the fact" cannot satisfy "the Fifth Amendment right to be tried upon charges found by a grand jury." *Id*. at 1232. Consistent with *Pupo*, the Fourth Circuit ordered dismissal of the indictment for failure to allege an essential element of the charged offense.  *Id*. at 1229-30.

The Government in *Daniels* (as also discussed in Section I) charged the defendant with violating 26 U.S.C. § 5861(e) by *unlawfully* transferring a firearm.  *United States v. Daniels*, 973 F.2d 272, 273-74 (4th Cir. 1992).  As explained earlier, an *unlawful* transfer is one that in some way "violat[es] the provisions of . . . Title 26, Chapter 53."  *Id*. at 274.  Thus, Section 5861(e)'s *unlawful* transfer element is the same as the specified unlawful activity element: both elements require an underlying offense to have occurred for the Government to prove the charged offense.

Just like in Mr. Teyf's case, the indictment in *Daniels* did not specify which provisions of Title 26, Chapter 53 the defendant allegedly violated.  Indeed, the indictment "neither tracked the statutory language . . . nor cited the actual sections of Chapter 53 that the Government maintained Daniels had violated." *Id*. at 275.  By failing to sufficiently allege the underlying offense, the court held that the indictment omitted an essential element.  *Id*. at 275.  As the court explained, "the Government cannot cure . . . an indictment presented by the grand jury that fails to allege each essential element because there is no assurance that the grand jury considered and found each essential element."  *Id*. at 274.  The court thus dismissed the indictment.  *Id*. at 276.

Like in *Pupo*, *Hooker*, and *Daniels*, the Indictment here omits an essential element—*i.e.*, an enumerated specified unlawful activity.  Therefore, it falls short of the Fifth Amendment's requirement that "the grand jury have considered and found **all elements** to be present."  *Hooker*, 841 F.2d at 1230 (emphasis added); *see also Pupo*, 841 F.2d at 1239; *Daniels*, 973 F.2d at 274;

CHAR2\2141171v4

*United States v. Hayes*, 775 F.2d 1279, 1282-83 (4th Cir. 1985). Indeed, if the Government were to proceed, the defendant could be convicted "on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him." *Russell v. United States*, 369 U.S. 749, 770 (1962) (dismissing indictment). Thus, the Fifth Amendment and this circuit's precedents in *Pupo*, *Hooker*, and *Daniels* require dismissal of the Indictment.

### C. The Indictment Fails to Allege an Essential Element *of the Charged Offense*.

In two separate cases, the Fourth Circuit has addressed an unrelated issue (not present here)—whether an indictment must allege every element *of the specified unlawful activity*. *See United States v. Cherry*, 330 F.3d 658, 667 (4th Cir. 2003). The argument in those two cases was quite different. In *Cherry*, the indictment alleged the specified unlawful activity to be "bank embezzlement, in violation of [Section] 656." *Id*. The defendant moved to dismiss on the grounds that the indictment did not allege every element of bank embezzlement. *Id*. at 666. The court held that it need not allege "all of the elements of the specified unlawful activity." *Id*. at 667 (citing *United States v. Smith*, 44 F.3d 1259, 1265 (4th Cir. 1995)) (stating the "details about the nature of the unlawful activity underlying the [money laundering] need not be alleged"). The court explained that it already "addressed the precise question [in *United States v. Smith* of] whether an indictment charging money laundering must allege all of the elements of the specified unlawful activity." *Cherry,* 330 F.3d at 667.

In *Smith*, the relevant count in the indictment alleged "wire fraud, in violation of 18 U.S.C. § 1343" as the specified unlawful activity. *Smith*, 44 F.3d at 1263. The defendant moved to dismiss the indictment on the same grounds as in *Cherry* – failure to allege every element of the specified unlawful activity. The court held the indictment to be sufficient. *Id*. at 1265. As another district court clearly explained, the *Smith* Court found the indictment sufficient because it "(i)

CHAR2\2141171v4

alleged that defendant engaged in the predicate offense; and (ii) **identified the predicate statute violated**." *United States v. Le*, 310 F. Supp. 2d 763, 780 (E.D. Va. 2004) (citing *Smith*, 44 F.3d at 1265) (emphasis added)).[9]

Here, the Indictment has failed to allege an element of the money laundering charge itself – an enumerated specified unlawful activity. The Indictment fails to even "identif[y] the predicate statute violated." *See Le*, 310 F. Supp. 2d at 780. In *Cherry* and *Smith*, in contrast, the Government sufficiently alleged the specified unlawful activities: "bank embezzlement, in violation of [Section] 656" and "wire fraud in violation of 18 U.S.C. § 1343[,]" respectively. *See Cherry*, 330 F.3d at 667, *Smith*, 44 F.3d at 1263. Here, without sufficiently pleading an element of the charged offense, the Indictment fails to state an offense and thus must be dismissed.

---

[9] The *Le* Court's reading is consistent with the reasoning in *Knowles*, as discussed in Section I(A). In short, the *Knowles* Court dismissed the indictment that failed to allege the predicate statute. The indictment alleged in generic terms that the specified unlawful activity was the "carrying on of drug trafficking." *Knowles*, 2 F. Supp. 2d at 1140.

CHAR2\2141171v4

## CONCLUSION

For the foregoing reasons, defendant Leonid Teyf respectfully requests that this Court grant his motion to dismiss Counts 1-9, 11-13, 17-19, 21-24, 35-36, and 40-41 of the Indictment.

This 29th day of April 2019.        Respectfully Submitted,

By:    /s/ James P. McLoughlin, Jr.
       James P. McLoughlin, Jr.
       N.C. State Bar No. 13795
       John S. Han
       N.C. State Bar No. 54113
       Fielding Huseth
       N.C. State Bar No. 53121
       MOORE & VAN ALLEN PLLC
       100 North Tryon Street, Suite 4700
       Charlotte, NC 28202-4003
       Phone: (704) 331-1054
       Facsimile: (704) 378-2054
       Email: jimmcloughlin@mvalaw.com
       johnhan@mvalaw.com
       fieldinghuseth@mvalaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of April, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system. I also served a copy of the foregoing upon counsel for the United States in this action by sending a copy to each counsel by electronic communication as referenced below:

Barbara D. Kocher                     Jason M. Kellhofer
U.S. Attorney's Office                U.S. Attorney's Office
310 New Bern Ave.                     310 New Bern Ave.
Suite 800                             Suite 800
Raleigh, NC 27601                     Raleigh, NC 27601
Email: barb.kocher@usdoj.gov          Email: jason.kellhofer@usdoj.gov

Tracy L. McGurk, RMR, CRR
413 Middle St.
New Bern, NC 28560
Email: Tracy_McGurk@nced.uscourts.gov

By:      /s/ James P. McLoughlin, Jr.
         James P. McLoughlin, Jr.
         N.C. State Bar No. 13795
         John S. Han
         N.C. State Bar No. 54113
         Fielding E. Huseth
         N.C. State Bar No. 53121
         MOORE & VAN ALLEN PLLC
         100 North Tryon Street, Suite 4700
         Charlotte, NC 28202-4003
         Phone: (704) 331-1054
         Facsimile: (704) 378-2054
         Email: jimmcloughlin@mvalaw.com
         johnhan@mvalaw.com
         fieldinghuseth@mvalaw.com

CHAR2\2141171v4