IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:18-CR-00452-FL-1

**United States of America**,

v.

**Leonid Isakkovich Teyf**,

        Defendant.

**Memorandum & Recommendation**

## I. Background

In November 2018, a grand jury indicted Defendant Leonid Isakkovich Teyf and others on several charges, including over 30 money laundering counts.[1] The Indictment alleged that, while living in Russia, Teyf and others engaged in a kickback and bribery scheme related to Russian defense contracts. Teyf's share of the scheme's proceeds, the Indictment alleges, were eventually transferred to bank accounts in the United States.

After Teyf's indictment, United States Magistrate Judge James E. Gates issued a series of warrants authorizing the seizure of bank accounts and personal property associated with Teyf and his co-defendants. Teyf now challenges whether there was probable cause to support the warrants, whether the Government included false information or failed to include material information in the affidavits[2] supporting the warrants, whether the Government exceeded the warrants' scope when it seized various pieces of jewelry, and whether it improperly seized an untainted vehicle and untainted assets from his bank accounts. The undersigned has determined that there is no reason to invalidate the warrants and that Teyf has not justified returning the vehicle or the funds

---

[1] The grand jury returned a third superceding indictment against Teyf in April 2019.
[2] A separate affidavit supported each warrant, but the affidavit were largely identical.

from his bank accounts. And since the court has entered the parties' stipulated order regarding the return of Teyf's jewelry, this portion of the motion should be denied as moot.

## II. Analysis

This motion requires the court to determine whether it was appropriate for the Government to seize several of Teyf's financial accounts and personal items in anticipation of the items being forfeited upon his conviction for money laundering. The court will begin its discussion with an overview of the various statutory provisions applicable to this matter.

When a defendant is convicted of money laundering under 18 U.S.C. § 1957, the court must order "that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property." 18 U.S.C. § 982(a)(1). The Government has tools at its disposal to seize a defendant's assets before trial if the assets would ultimately be forfeitable upon conviction. *See* 18 U.S.C. § 982(b)(1) (explaining that 21 U.S.C. § 853 governs the procedural aspects of the seizure of forfeitable property). Under 21 U.S.C. § 853(e), the Government may ask the court to issue a restraining order to "preserve the availability of property" directly involved in the criminal conduct at issue. And under 21 U.S.C. § 853(f), a court may issue a warrant allowing the pretrial seizure of assets "[i]f the court determines that there is probable cause to believe that the property to be seized would, in the event of conviction, be subject to forfeiture and that an order under subsection (e) may not be sufficient to assure the availability of the property for forfeiture[.]"

The Government seized several of Teyf's bank accounts and various items of personal property under the authority of warrants issued under § 853(f). He makes two arguments against the warrants' validity. First, Teyf claims that the affidavits accompanying the warrants do not establish probable cause to believe that the seized property would be forfeitable if he were

convicted of money laundering. And then he argues that even if the warrants are valid on their face, they contain several material inaccuracies or omissions which, if corrected, would lead to a finding that there was not probable cause to seize his assets. He also claims that the Government exceeded the scope of the warrant when it seized his personal jewelry and that it improperly seized untainted bank accounts and an untainted vehicle. After considering each of Teyf's arguments, the undersigned recommends that the district court deny Teyf's motion.

### a. Whether the Seizure Warrants were Supported by Probable Cause

The Fourth Amendment requires, among other things, that all warrants must be supported by probable cause. U.S. Const. amend. IV. The requirement that there be probable cause to believe that the seized property would be subject to forfeiture upon the defendant's conviction has two elements. *Kaley* v. *United States*, 571 U.S. 320, 323 (2014). First, there must be probable cause to believe "that the defendant has committed an offense permitting forfeiture[.]" *Id.* at 323–24. And, second, there must be probable cause to believe "that the property at issue has the requisite connection to that crime." *Id.* at 324. The Supreme Court has noted that "[p]robable cause … is not a high bar: It requires only the kind of fair probability on which reasonable and prudent people, not legal technicians, act." *Id.* at 338 (internal quotations and brackets omitted) (quoting *Florida* v. *Harris*, 133 S. Ct. 1050, 1055 (2013)).

### i. Overall Assessment of Probable Cause

When a defendant challenges whether a warrant was supported by probable cause, the reviewing court must consider whether the judge who issued the warrant had a "substantial basis" to find probable cause. *Illinois* v. *Gates*, 462 U.S. 213, 238–39 (1983). A magistrate's "determination of probable cause should be paid great deference by reviewing courts." *Id.* (citing *Spinelli* v. *United States*, 393 U.S. 410, 419 (1969)). When conducting this analysis, the court may

only consider "'the information actually presented to the magistrate during the warrant application process.'" *United States* v. *Lull*, 824 F.3d 109, 119 n.3 (4th Cir. 2016) (quoting *Owens ex rel. Owens* v. *Lott*, 372 F.3d 267, 277 (4th Cir. 2004)). And the court "must construe th[at] evidence in the light most favorable to the prevailing party and give due weight to inferences drawn from those facts by resident judges and law enforcement officers." *Id.* at 115 (internal quotations omitted).

Teyf claims the affidavits do not establish probable cause to believe that the seized funds were connected to the bribery and kickback scheme alleged in the Indictment. But a review of the affidavits establishes that there was a substantial basis for Judge Gates to find probable cause to believe that the funds at issue were involved in or traceable to Teyf's alleged money laundering.

The affidavits claim that Teyf was involved in a massive kickback scheme that generated well over $100,000,000 in proceeds. The confidential source who supplied information to law enforcement said that he took the money to several different, unrelated accountants and that he has seen evidence that at least some proceeds were transferred internationally.

Then, between 2011 and late 2013, Teyf and his wife received almost 300 international wire transfers into four bank accounts that totaled nearly $40,000,000. The affidavits present no indication that these funds, which were transferred from countries the State Department classifies as major money laundering jurisdictions, originated from a legitimate source. Documentation the Teyfs filed with immigration officials around this time reflect an anticipated joint income in the range of $110,000. Their tax records reflect that during the period in question the Teyfs' annual taxable income never exceeded $100,000. And the Teyfs' returns state that they had no interest or authority over foreign accounts and did not receive funds from foreign trusts during the relevant time. The tax returns associated with their American business entity also shows receipts and

4

proceeds that cannot account for the amounts transferred. It is also worth noting that the explanations included with the transfer instructions appear, at least from the affidavit, to have been fabricated. Once in the funds were in the United States, the Teyfs and others have moved the fund between various accounts nearly 600 times.

Based on the affidavits' contents, Judge Gates had a substantial basis to find probable cause to believe that the seized funds were connected to Teyf's alleged money laundering. The Teyfs received massive amounts of money despite there being no apparent legitimate reason for them to receive it. The total amount of money they received was consistent with the amount of money provided to others allegedly involved in the scheme. And the sources of the funds and they way they both arrived in and moved around the United States raise suspicion. Thus, the district court should deny this portion of Teyf's motion.

### ii. Presence of False Information and Omission of Material Facts

Teyf next argues that even if the warrants were facially valid, the affiants intentionally included false information in the affidavit and intentionally omitted material facts. In his motion, he challenges five specific items in the affidavits: the repeated characterization of Teyf's actions as extortion; stating that a confidential source saw documents showing that "bribe proceeds" had been transferred internationally, when other documents say that the confidential source saw documents suggesting that "money" was transferred internationally; omitting the year (2013) when the confidential source delivered payments to the former Russian Defense Minister; failing to identify the specific Russian law that Teyf allegedly violated; and failing to identify all countries that qualify as "jurisdictions of primary concern" or "jurisdictions of concern" for money laundering. A magistrate reviewing an accurate affidavit, Teyf claims, would conclude that there was not probable cause to support seizure of his assets. He seeks a hearing under *Franks* v.

5

*Delaware*, 438 U.S. 154 (1978) to explore these issues and have the court make a new assessment of probable cause.

To be entitled to a *Franks* hearing (which is a precursor to finding an affidavit insufficient to establish probable cause), a defendant must satisfy both an intentionality and a materiality prong. *United States* v. *Colkley*, 899 F.2d 297, 300 (4th Cir. 1990).

To begin with, a defendant must "make 'a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit.'" *Id.* at 300 (quoting *Franks*, 438 U.S. at 155–56). Allegations of "negligence or innocent mistake" will not do. *Franks*, 428 U.S. at 171. Similarly, a defendant must establish that the affiant "omit[ted] material facts 'with the intent to make, or in reckless disregard of whether they thereby made, the affidavit misleading.'" *Colkley*, 899 F.2d at 300 (quoting *United States* v. *Reivich*, 793 F.2d 957, 961 (8th Cir. 1986)).

The defendant's allegations related to the intentionality prong "'must be more than conclusory' and must be accompanied by a detailed offer of proof." *Colkley*, 899 F.2d at 300 (quoting *Franks*, 438 U.S. at 171). If the defendant cannot submit supporting documentation or statements, the "absence [of these documents] should be satisfactorily explained." *Id.*

If the defendant satisfies the intentionality prong, the court's analysis then moves to the materiality prong. Under this prong, a defendant is only entitled to a *Franks* hearing if he can show that the offending information was "essential to the probable cause determination[.]" *Id.* at 300. "To determine materiality, a court must 'excise the offending inaccuracies and insert the facts recklessly omitted, and then determine whether or not the 'corrected' warrant affidavit would establish probable cause.'" *Miller* v. *Prince George's Cty.*, 475 F.3d 621, 628 (4th Cir. 2007) (quoting *Wilson* v. *Russo*, 212 F.3d 781, 789 (3d Cir. 2000)).

If the defendant can satisfy both the intentionality and materiality prongs, he is then entitled to a hearing where he can try to establish "an affiant's material perjury or recklessness … by a preponderance of the evidence[.]" *Colkley*, 889 F.2d at 300. If he does so, the defendant has a right to have the warrant and evidence obtained through it suppressed. *Id.*

Here, even assuming Teyf can satisfy the intentionality prong, he cannot show that the facts he claims should be included or removed from the affidavits would lead to a finding that there was not probable cause to issue the warrants.

Three of the items Teyf complained about are inadequate to satisfy the materiality standard. Removing the limited number of times the affiant used the word extort or extortion does not affect the finding of probable cause because none of the allegations against Teyf turn on whether he extorted the kickbacks or whether all parties participated willingly. Similarly, describing all the countries that the State Department considers to be "jurisdictions of primary concern" or "jurisdictions of concern" for money laundering would not impact the fact that Teyf was allegedly receiving funds involved with countries that have received this designation. And if the Government were to have included the specific Russian laws that Teyf may have violated by engaging in the bribe and kickback scheme, it would strengthen the case for probable cause, not diminish it.

The remaining two items Teyf complains about require closer examination.

The affidavits include allegations that, at Teyf's direction, the confidential source delivered $150,000,000 to the son-in-law of Russian Defense Minister Serdyukov as part of the kickback scheme. The confidential source delivered the funds on three separate occasions, and the confidential source said he "believes that all three shipments were probably in the 2013 timeframe." According to Teyf, omitting the year the deliveries occurred undermines the

7

confidential source's credibility because both Teyf and Serdyukov left the positions they were allegedly using to facilitate the scheme in 2012.

But just because these individuals changed jobs in 2012 does not seriously call into question that the confidential source delivered proceeds of the kickback scheme to Serdyukov's son-in-law in 2013. In fact, it makes sense that if a public official was trying to hide his involvement in a bribery or kickbacks scheme, he would defer receipt of the scheme's proceeds until he was out of public office. Nor is there any evidence establishing that all amounts owed to Teyf or Serdyukov had to be paid before they left their positions. Teyf has not made a persuasive argument about why including this fact would impact the court's assessment of the confidential source's credibility. The Fourth Circuit has required a more substantial showing of untrustworthiness before finding that it impacts a source's credibility. *See Lull*, 824 F.3d at 114 (finding that a defendant was entitled to a *Franks* hearing when the Government recklessly omitted that a confidential informant, who was the primary source of information for probable cause, had tried to steal some of the money provided by the Government for a controlled purchase because it undermined his reliability). Thus, the undersigned finds that the omission of the year payments were allegedly delivered to the defense minister's son-in-law do not satisfy the materiality prong of *Franks*.

Finally, Teyf argues that Judge Gates would not have found probable cause to support the seizures if the affiants said that the confidential source had "seen documents showing Teyf had at least some of the *money* transferred to banks in Cyprus", rather than say the confidential source had "seen documents showing Teyf had at least some of the *bribe proceeds* transferred to banks in Cyprus."

While Teyf may have a point if this sentence were read in isolation, when it is read in the context of the entire affidavit, it does not eliminate probable cause to issue the warrants. The reference occurs in a section where the confidential source described how the scheme operated. Any use of funds described in this section appear to refer to funds connected to the scheme. In the context of the entire affidavit, a reader would be likely to interpret the phrase "the money" as money involved in the scheme and thus generally synonymous with bribe proceeds. And there is also no indication in the affidavits (and no argument from counsel) that the confidential source was involved with the movement of legitimate funds on Teyf's behalf. In any event, modifying the affidavit's language as Teyf requests does nothing to address the affidavit's contentions that Teyf's scheme generated massive amounts of money for him and others, explain away the absence of any legitimate reason for the Teyfs to receive the funds, or provide an explanation for the curious manner in which the funds moved into and within the United States.

The district court should find that Teyf has failed to make the necessary showing to entitle him to a *Franks* hearing and deny this portion of his motion.

### b. Whether the Government Exceeded the Scope of the Warrants

Teyf argues that the Government exceeded the scope of the seizure warrants when it seized various items of jewelry from his home during the December 2018 search. The Government contends that it did not exceed the scope of the warrant but concedes that it cannot establish that Teyf purchased the jewelry with tainted funds. Hr'g Recording at 1:24:13–1:24:38.[3] Thus, it is amenable to returning the jewelry to Teyf. *Id*. In return, Teyf is willing to withdraw the portion of his motion seeking suppression of these items. Hr'g Recording at 1:25:14–1:25:17. The parties

---

[3] References to the hearing recording refer to the time of day when the statement occurred.

filed a stipulated motion and order releasing these assets which Judge Flanagan granted on May 8, 2019. D.E. 246. Thus this issue is moot.

### c. Whether the Government Seized Untainted Assets

Teyf argues that even if the seizure warrants were valid, the court should order the Government to return the money and a seized vehicle because the Government has not shown that they are subject to forfeiture. Teyf claims that the Government must trace all the funds in the accounts and the funds used to purchase the vehicle to a specified unlawful activity.

Teyf's argument is based on the Fourth Circuit's decision in *United States* v. *Chamberlain*, 868 F.3d 290 (4th Cir. 2017), which held that the Government has no right to pretrial restraint of a defendant's untainted assets under 21 U.S.C. § 853(e). *Chamberlain* abrogated the Fourth Circuit's long-standing rule that a court could order the pretrial restraint of substitute property.[4]

But *Chamberlain* did not modify the Fourth Circuit's prior decisions about which party has the burden of proof when challenging a pretrial seizure of assets.[5] The Fourth Circuit has has explained that the defendant bears the burden of showing by a preponderance of the evidence that the Government improperly seized untainted assets.[6] *United States* v. *Farmer*, 274 F.3d 800, 805

---

[4] The undersigned notes that the Fourth Circuit's analysis in *Chamberlain* focused heavily on the language in Section 853(e) that limited its reach to "property described in subsection (a)" of Section 853. Section 853(a) is a provision with assets directly tainted by criminal conduct. It contrasts with Section 853(p), which allows the government to substitute untainted property for tainted property that has either diminished in value or is unavailable. The court issued the warrant at issue under the authority granted by Section 853(f), which does not contain the same limiting language as Section 853(e). Instead, Section 853(f) "authoriz[es] the seizure of property subject to forfeiture under this section." Thus, arguably, *Chamberlain*'s reasoning does not apply to warrants under Section 853(f) because, unlike Section 853(e), it authorizes the seizure of both tainted property and untainted substitute property. But the Government does not wish to pursue this argument, so the court will presume without deciding that *Chamberlain* applies with equal force to warrants issued under Section 853(f).

[5] After the defendant's conviction, the Government will need to show by a preponderance of the evidence that the assets are forfeitable. *United States* v. *Herder*, 594 F.3d 352, 364 (4th Cir. 2010) (discussing the burden of proof required for a forfeiture of assets under 21 U.S.C. § 853(a)).

[6] *Farmer* also required the defendant to show that he needed the seized assets to afford an attorney. 274 F.3d 800, 805 (4th Cir. 2001). The Government contends that a defendant need not make this showing if he is bringing a *Chamberlain* challenge. *Chamberlain* did not directly address this issue. But the court will accept, for this motion only, that the Government's position is a correct statement of the law.

10

(4th Cir. 2001). *See United States* v. *Bokhari*, No. 3:14-30044-MGM, 2015 WL 4529611, at *5 (D. Mass. July 27, 2015) (discussing approaches of various circuit courts to burden of proof on challenges to pretrial seizure of assets). This standard continues to apply after *Chamberlain*. *See United States* v. *Cohen*, 888 F.3d 667, 673 n.4 (4th Cir. 2018) ("[D]ue process requires a pretrial hearing on the propriety of an asset seizure if the accused can show that a portion of the restrained assets are untainted.").

Teyf has conceded that he cannot show that the accounts contain untainted assets because he has not completed a tracing analysis of the seized funds. Hr'g Recording at 2:23:58–2:24:24. And unlike *Chamberlain*, the Government has not conceded that it seized untainted property. *Chamberlain*, 868 F.3d at 291 ("[T]he government conceded that the property at issue is not traceable to any alleged crime and is thus subject to pretrial restraint, if at all, as substitute property[.]"). Thus, Teyf has no right to release of the seized funds and the district court should deny this portion of his motion.

### III. Conclusion

For the reasons outlined above, the undersigned recommends that the district court deny Teyf's motion. Except for the portion of the motion dealing with the return of Teyf's jewelry, which should be denied as moot, the motion should be denied on the merits.

The Clerk of Court must serve a copy of this Memorandum and Recommendation ("M&R") on each party who has appeared in this action. Any party may file a written objection to the M&R within 14 days from the date the Clerk serves it on them. The objection must specifically note the portion of the M&R that the party objects to and the reasons for their objection. Any other party may respond to the objection within 14 days from the date the objecting party serves it on them. The district judge will review the objection and make their own determination about the

11

matter that is the subject of the objection. If a party does not file a timely written objection, the party will have forfeited their ability to have the M&R (or a later decision based on the M&R) reviewed by the Court of Appeals.

Dated:  May 8, 2019

_____
Robert T. Numbers, II
United States Magistrate Judge