THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:18-CR-452-1-FL

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM IN RESPONSE TO** |
| | ) | **GOVERNMENT'S MOTION TO** |
| LEONID ISAAKOVICH TEYF, | ) | **COMPEL RESPONSE** |
| | ) | |
| Defendant. | ) | |

Defendant Leonid I. Teyf, by and through counsel, hereby responds in opposition to the Government's Motion to Compel Response (the "Motion to Compel"). (D.E. 245).

Mr. Teyf objects to the Motion to Compel, and the Government's request for an order compelling Mr. Teyf's response to the grand jury subpoena issued on February 22, 2019 (the "Subpoena") within seven days of the order, as premature. Over the past month-and-a-half, the Government has produced more than three terabytes of data to Mr. Teyf, including records and devices seized from Mr. Teyf's home that could contain information responsive to the Subpoena. Much of that data was produced in a format that is not searchable and reviewable in any practical manner, and the Defense is still working to most efficiently process and review the data in order to prepare his criminal defense. Given the consequences of an incomplete production and the breadth of the records sought by the Subpoena, Mr. Teyf should not be ordered to comply at least until the completion of discovery in this matter.

Moreover, the Subpoena should not be enforced at all because it violates Mr. Teyf's Fifth Amendment privilege against self-incrimination. The magistrate judge rejected Mr. Teyf's Fifth Amendment claim on the basis of Fourth Circuit case law applying the required records exception to subpoenas seeking documents required under the Bank Secrecy Act ("BSA") without addressing

Mr. Teyf's arguments as to why that exception should not apply. Additionally, the BSA case law is not as relevant as *United States v. Hubbell*, 530 U.S. 27 (2000) and similar cases in the tax context. Those cases hold that, where the act of production has a testimonial aspect, compelling a defendant to produce documents without granting him immunity violates his Fifth Amendment right against self-incrimination. The Government's recent tax fraud charges against Mr. Teyf show that the records the Subpoena seeks may be used to support a tax prosecution in addition to charges under the BSA. Finally, the required records doctrine has no application here because Mr. Teyf, by placing his money in bank accounts, was not voluntarily engaging in a regulated activity.

## FACTS

Leonid Teyf stands accused of a variety of charges, including most relevant here, engaging in money laundering (monetary transactions in property derived from specified unlawful activity),[1] tax fraud,[2] and failure to report financial interests in, and other authority over, certain financial accounts in Russia.[3]

On February 22, 2019, the Government served Mr. Teyf through counsel with the Subpoena. (D.E. 175-1). The Subpoena requires:

> Any and all records in your possession, custody, or control that are required to be maintained pursuant to 31 C.F.R. § 1010.420 (formerly 31 C.F.R. § 103.32) for the past 5 years relating to foreign financial bank, securities, or other financial accounts in a foreign country for which you had/have a financial interest in, or signature or other authority over and are required by law to file a Report of Foreign Bank and Financial Account (FBAR). The records required to be maintained pursuant to 31 C.F.R. § 1010.420 (formerly 31 C.F.R. § 103.32) include records that contain the name in which each such account is maintained, the number or other designation of such account, the name and address of the foreign bank or other person with whom such account is maintained, the type of such

---

[1] 18 U.S.C. §§ 2, 1956(h), 1957.
[2] 26 U.S.C. § 7206(1).
[3] 31 U.S.C. §§ 5314, 5322(b); 31 C.F.R. §§ 103.24, 103.27(c)-(d).

2

account, and the maximum value of each such account during the reporting period.

(D.E. 175-1 at 4).

Mr. Teyf filed a motion to quash the Subpoena pursuant to Federal Rule of Criminal Procedure 17(c) on March 11, 2019 (the "Motion to Quash"). (D.E. 175). Mr. Teyf sought to quash the Subpoena on the grounds that it (1) was unreasonable and oppressive in requiring Mr. Teyf to produce financial records that he was unable to access due to his incarceration and the Government's failure, at that time, to produce the records and devices seized from Mr. Teyf's home to his attorneys; (2) violated his Sixth Amendment right to counsel given his attorneys' lack of access and inability to review the seized records before having to advise Mr. Teyf regarding the Subpoena; and (3) violated his Fifth Amendment privilege against self-incrimination because the testimonial aspects of production of such records could expose him to criminal liability under the BSA. (*Id.*).

The Government filed a response in opposition to the Motion to Quash (D.E. 181), and the matter was referred to United States Magistrate Judge Robert Numbers for consideration. On April 10, 2019, Magistrate Judge Numbers denied the Motion to Quash. (D.E. 212). Magistrate Judge Numbers found Mr. Teyf's arguments regarding the challenges of responding to the Subpoena unpersuasive, noting that Mr. Teyf could explain to his attorneys where he kept responsive records or which financial institutions might be able to provide copies. (*Id.* at 4). Addressing Mr. Teyf's arguments about his and his attorneys' lack of access to the records and devices seized by the Government, Magistrate Judge Numbers found that any documents seized by the Government and not provided to Mr. Teyf were outside his possession, custody, and control such that Mr. Teyf would not be required to produce them. (*Id.*). Magistrate Judge Numbers further found that Mr. Teyf's counsel had had the ability to access and assess the seized materials for months. (*Id.*).

3

Magistrate Judge Numbers also found that, under *United States v. Under Seal*, 737 F.3d 330, 332 (4th Cir. 2013), Mr. Teyf could not assert his Fifth Amendment privilege against self-incrimination because of the required records doctrine.  (D.E. 212 at 5).

Beginning on April 5, 2019, and continuing through May 3, 2019, the Government produced 3.01 terabytes of data to Mr. Teyf's counsel, including the electronic devices it seized from Mr. Teyf's home on December 5, 2018.  (Aff. of Matthew C. Hawkins ("Hawkins Aff."), attached hereto as Exhibit A, ¶ 6).  To date, the Government has produced 3.67 terabytes of data, approximately 73,400,000 pages, in this matter.  (*Id.* ¶¶ 4-5).  The magnitude of the data is due, in large part, to at least 49 electronic devices, including, without limitation, cell phones, laptops, flash drives, and iPads.  (*Id.* ¶¶ 9-10).  The Government produced those devices as forensic images, the vast majority of which are not searchable or reviewable in any practical manner. (*Id.* ¶¶ 13, 15). On this point, the Defense notes that the Government has provided viewers that would assist in searching and reviewing for only three devices.  (*Id.* ¶ 14).  Moreover, the indices the Government provided with each production, for the most part, do not identify to whom each device belongs and, in some cases, group a number of devices together under a single Bates number.  (*Id.* ¶¶ 11-12).  Due to the format and size of the Government's production, Mr. Teyf is still working to efficiently and economically process and review the data.  Based on estimates obtained by his counsel, the cost to process and review all of the data is in the millions of dollars.  (*Id. ¶* 16).

On May 7, 2019, the Government filed the Motion to Compel, seeking an order compelling Mr. Teyf's response to the Subpoena within a week of issuance of such order.  (D.E. 245 at 2). Less than a week later, on May 9, 2019, the Government superseded the indictment for a fourth time, adding charges against Mr. Teyf for tax fraud and failure to report interests in foreign financial accounts, all in relation to certain financial accounts at Alfa Bank in Russia.  (D.E. 248).

4

## ARGUMENT

**I.      Mr. Teyf Should Not Be Compelled to Respond to the Subpoena Before He and His Attorneys Are Able to Review the Records Seized by the Government.**

Magistrate Judge Numbers' denial of the Motion to Quash was based, in part, on his finding that Mr. Teyf was not required to produce any seized records that—due to the Government's failure to produce them to his counsel—were outside his possession, custody, and control. (D.E. 212 at 3). That reasoning no longer applies because the Government now has provided Mr. Teyf's counsel with the records and devices seized from Mr. Teyf's home on December 5, 2018. However, due to the magnitude and unsearchable format of that data, and the lack of guidance from the Government on its contents, neither Mr. Teyf nor his counsel are presently able to review that data or to isolate from it information that implicates potentially responsive records. Among other defects of the Government's productions, electronic devices seized from Mr. Teyf's home were produced in a format that cannot be processed or reviewed without significant expense to Mr. Teyf, without viewers that would assist in searching and review, and without identification of the person(s) to which each device relates. (Hawkins Aff. ¶¶ 11-15). Mr. Teyf thus faces the same fundamentally unfair dilemma described in the Motion to Quash (D.E. 175 at 6): he faces the risk of being held in contempt now for refusing to respond to the Subpoena or potentially being subject to other, more serious charges in the future if he responds based on incomplete information due to his inability to review the records that are now in his possession, custody, and control.

The sheer size of the data produced by the Government—3.67 terabytes, or approximately 73,400,000 pages—undermines its claim, which Magistrate Numbers credited, that Mr. Teyf's counsel could have chosen to review the data in its offices as early as December 2018. (D.E. 212 at 3). Even now having received the data, Mr. Teyf's counsel are still working to efficiently process and review it given the format in which it was produced. The opportunity to review

forensic images of 49 devices in the Government's offices was of no practical use to Mr. Teyf's counsel in light of the volume of information to be reviewed, particularly when considering that the distance between the Government's offices and counsel's was approximately 200 miles.

Magistrate Judge Numbers' reasoning that Mr. Teyf can explain to his counsel where responsive records might be located or which financial institutions could provide them also provides no relief here. (D.E. 212 at 4). The financial account information requested by the Subpoena is so broad as to necessitate assistance of counsel and tax advisors to determine its contours. The records required to be maintained under 31 C.F.R. § 1010.420 are of "bank, securities, or other financial account[s] in a foreign country," which must be reported by persons holding interests in such accounts under 31 C.F.R. § 1010.350. The catchall category of "other financial account" encompasses any "account with a person that is in the business of accepting deposits as a financial agency." *Id.* § 1010.350(c)(3)(i). The Fourth Circuit has held that a capital account recorded on the ledger of a corporation fits within the BSA's definition of "other financial account" because the corporation in question "accepted credits to and transmitted sums from the capital account to [the defendant's] other domestic and foreign accounts." *United States v. Clines*, 958 F.2d 578, 582 (4th Cir. 1992). Because the BSA extends beyond traditional bank accounts to more unconventional methods of sending and receiving money, Mr. Teyf must have access to the full set of his records for his counsel to assist him in complying with the Subpoena.

In light of the issues with the Government's productions and the breadth of records sought by the Subpoena, it is premature to compel Mr. Teyf's compliance with the Subpoena now. Mr. Teyf and his counsel should be permitted to work through their discovery issues with the Government and review the data that may contain relevant information before having to identify records responsive to the Subpoena. The Court should deny the Motion to Compel.

6

## II.    Compelled Response to the Subpoena Violates Mr. Teyf's Fifth Amendment Privilege Against Self-Incrimination.

Beyond the improper timing of the Subpoena, Mr. Teyf should not be compelled to respond to the Subpoena because to do so violates his privilege against self-incrimination.  Magistrate Judge Numbers denied the Motion to Quash based on the Fourth Circuit's decision in *Under Seal* without addressing Mr. Teyf's argument that the Supreme Court has never found the required records doctrine to supersede the act of production doctrine set forth in *Hubbell*.  (D.E. 175 at 9). The act of production doctrine allows the target of a subpoena to invoke the Fifth Amendment privilege where the very act of producing documents would "implicitly communicate statements of fact," such as an admission "that the [requested] papers existed, were in his possession or control, and were authentic."  *Hubbell*, 530 U.S. at 36 (internal quotation marks omitted).  Here, Mr. Teyf's response to the Subpoena fits squarely within the act of production doctrine. Production of the records required by 31 C.F.R. § 1010.420 would reveal foreign bank accounts that are required to be reported to the IRS under the BSA and expose Mr. Teyf to criminal liability if he has not properly reported them.  Moreover, Magistrate Judge Numbers failed to address Mr. Teyf's argument that the Supreme Court's more recent precedent on the Fifth Amendment privilege dispenses with the rationale for the required records doctrine, which is a relic of an era in which the privilege rested on a distinction between public and private records.  (D.E. 175 at 8-10).

The required records doctrine also is not applicable here because Mr. Teyf, in placing his records in a bank account like any other American, was not voluntarily participating in a regulated activity in the same way as the petitioner in *Shapiro v. United States*—the only case in which the Supreme Court has applied the doctrine to bar assertion of the Fifth Amendment privilege in response to a subpoena *duces tecum.  See In re Special February 2011-1 Grand Jury Subpoena*

*Dated September 12, 2011*, 691 F.3d 903, 908-09 (7th Cir. 2012) ("One of the rationales, if not the main rationale, behind the Required Records Doctrine is that the government or a regulatory agency should have the means, over an assertion of the Fifth Amendment Privilege, to inspect the records it requires an individual to keep as a condition of voluntarily participating in that regulated activity."). The petitioner in *Shapiro* was a produce wholesaler subject to the Price Control Act who complied with a subpoena for invoices, ledgers, and other sales records the statute required him to keep while claiming constitutional immunity. *Shapiro v. United States*, 335 U.S. 1, 4-5 (1948). The Supreme Court affirmed his conviction on tying charges, finding that the sales record at issue was required by the regulation and "the transaction which it recorded was one in which the petitioner could lawfully engage solely by virtue of the license granted to him under the statute." *Id.* at 35.

By contrast, the Subpoena does not seek records Mr. Teyf was required to keep as a condition of obtaining a license to engage in his business. As Mr. Teyf is not a "member[] of [a] regulated industr[y]," the required records doctrine has no application. *United States v. Bell*, 217 F.R.D. 335, 340 (M.D. Pa. 2003) ("[The required records] exception applies to members of regulated industries. If an individual chooses to enter a regulated industry, he is required to abide by its rules and cannot complain about being compelled to produce documents that all members must keep in their possession."). To the extent the required records doctrine has any role in relation to the BSA, it is only for those records that banks, as members of a regulated industry, are required to keep and make. *See California Bankers Ass'n v. Shultz*, 416 U.S. 21, 26-27 (1974) (noting BSA's purpose of "insur[ing] that domestic banks and financial institutions continue to maintain adequate records of their financial transactions with their customers" and reporting to the Government "the deposit and withdrawal of large amounts of currency").

Fourth Circuit and other case law addressing the Fifth Amendment privilege solely in the BSA context is also an improper basis on which to compel response to the Subpoena. As the Government's fourth superseding indictment shows, a defendant's failure to report interests in foreign financial accounts can lead to liability under the income tax laws in addition to the BSA. Mr. Teyf has been charged both with violating the BSA and committing tax fraud in allegedly failing to report interests or other authority over certain Alfa Bank account. (D.E. 248). The Subpoena thus should be treated similarly to the subpoena in *Hubbell* and other cases related to prosecutions for tax offenses.

*Hubbell* involved a subpoena seeking 11 categories of documents, including bank records and tax returns, which led to the respondent's prosecution for tax-related crimes and mail and wire fraud. The Supreme Court dismissed the indictment, finding that it was "abundantly clear that the testimonial aspect of respondent's act of producing subpoenaed documents was the first step in a chain of evidence that led to [the instant] prosecution." 530 U.S. at 42. In doing so, the Supreme Court rejected the government's argument that "the existence and possession of [the subpoenaed] records by any businessman is a 'foregone conclusion,'" noting that the government had not "shown that it had any prior knowledge of either the existence or whereabouts of the 13,210 pages of documents ultimately produced by respondent." *Id.* at 44-45; *see also United States v. Bright*, 596 F.3d 683, 692 (9th Cir. 2010) (finding that defendants' act of producing documents responsive to part of IRS summons seeking "any other offshore credit cards" was protected by the Fifth Amendment where IRS made no showing of independent knowledge of defendants' possession or custody of two credit card accounts not named during enforcement proceeding).

Here, similarly, the Government has made clear in its most recent superseding indictment that it intends to prosecute Mr. Teyf for tax-related offenses and has not offered any showing of

independent knowledge of Mr. Teyf's accounts at Alfa Bank or any other foreign financial institution. Nor can the Government claim that the existence of such accounts is a foregone conclusion merely because Mr. Teyf previously resided in Russia, has extensive business interests in the United States and elsewhere, and holds interests in a number of financial accounts in the United States. Through the Subpoena, the Government is fishing for information from Mr. Teyf to support its most recent charges and others it may bring in the future. Under *Hubbell* and its progeny, forcing Mr. Teyf to respond to the Subpoena would violate his Fifth Amendment privilege against self-incrimination.

For the reasons set forth herein, Mr. Teyf respectfully requests that the Court deny the Motion to Compel.

This 21st day of May, 2019.

/s/ Kathryn G. Wellman
James P. McLoughlin, Jr.
N.C. State Bar No. 13795
John S. Han
N.C. State Bar No. 54113
Kathryn G. Wellman
N.C. aState Bar No. 51163
Fielding E. Huseth
N.C. State Bar No. 53121
Benjamin F. Leighton
N.C. State Bar No. 50835
MOORE & VAN ALLEN PLLC
100 North Tryon Street, Suite 4700
Charlotte, NC 28202-4003
Phone: (704) 331- 1054
Facsimile: (704) 378-2054
Email: jimmcloughlin@mvalaw.com
johnhan@mvalaw.com
katewellman@mvalaw.com
fieldinghuseth@mvalaw.com
benleighton@mvalaw.com

# CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of May, 2019, I electronically filed the foregoing with

the Clerk of Court using the CM/ECF system, which will send notification of such filing to:

Barbara D. Kocher
U.S. Attorney's Office
310 New Bern Ave.
Suite 800
Raleigh, NC 27601
Email: barb.kocher@usdoj.gov

Jason M. Kellhofer
U.S. Attorney's Office
310 New Bern Ave.
Suite 800
Raleigh, NC 27601
Email: jason.kellhofer@usdoj.gov

Matthew L. Fesak
U.S. Attorney's Office
310 New Bern Ave.
Suite 800
Raleigh, NC 27601
Email: matthew.fesak@usdoj.gov

/s/ Kathryn G. Wellman
James P. McLoughlin, Jr.
N.C. State Bar No. 13795
John S. Han
N.C. State Bar No. 54113
Kathryn G. Wellman
N.C. State Bar No. 51163
Fielding E. Huseth
N.C. State Bar No. 53121
Benjamin F. Leighton
N.C. State Bar No. 50835
MOORE & VAN ALLEN PLLC
100 North Tryon Street, Suite 4700
Charlotte, NC 28202-4003
Phone: (704) 331- 1054
Facsimile: (704) 378-2054
Email: jimmcloughlin@mvalaw.com
johnhan@mvalaw.com
katewellman@mvalaw.com
fieldinghuseth@mvalaw.com
benleighton@mvalaw.com

11