IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:18-CR-00452-FL-1

| | |
|---|---|
| UNITED STATES OF AMERICA ) <br> ) <br> v. ) <br> ) <br> LEONID ISAAKOVICH TEYF ) | **DEFENDANT LEONID TEYF'S SUPPLEMENTAL ARGUMENTS IN OPPOSITION TO MOTION TO COMPEL** |

Defendant Leonid Isaakovich Teyf, through his attorneys of record, hereby supplements his Memorandum in Response to the Government's Motion to Compel Response (DE 269). In opposition to the Government's Motion, Defendant incorporates his prior briefing and further shows as follows:

## I. Procedural Background

On August 9, 2019, the Court granted Teyf until August 16 to supplement his Memorandum in Opposition to the Government's Motion to Compel (DE 245). Given the Court's familiarity with the procedural background regarding the February 22, 2019 subpoena served upon Teyf, his motion to quash, and his opposition to the Government's motion to compel compliance, this supplemental memorandum will only address the procedural background pertinent to the arguments raised herein.

On November 8, 2018, a grand jury sitting in this district returned an indictment charging Teyf with money laundering violations of 18 U.S.C. §§ 1956(h) and 1957, bribery of a public official, use of a telephone in the commission of murder-for-hire, and a firearms violation. (DE 1). The indictment also contained a forfeiture notice advising Teyf of the Government's intent to

forfeit certain assets, to wit, two real properties, a firearm, and the contents of several domestic bank accounts.

Less than a month later, on December 6, 2018, the grand jury returned a Superseding Indictment adding immigration, visa fraud, and unlawful citizenship or naturalization procurement counts against Teyf. (DE 20). The Government also amended the forfeiture allegations and gave notice of its intent to forfeit four Mercedes Benz vehicles, artwork acquired by Teyf, and the contents of 10 additional domestic bank accounts.

On February 6, 2019, the grand jury returned a Second Superseding Indictment adding four new Section 1957 counts (Counts 33-41) against Teyf's wife, Tatyana Anatolyevna Teyf, and five new §1957 counts (Counts 37-41) against Teyf. (DE 127). The indictment also amended the forfeiture notice by adding two pieces of real property and three new domestic bank accounts.

On February 22, 2019, the Government served the subject subpoena on Teyf asking him to produce records "customarily kept" as required by 31 C.F.R. §1010.420. The subpoena required that Teyf produce the records to the Government by March 9, 2019. (DE 175:1).

Teyf moved to quash the subpoena on March 11, 2019, (DE 175), and the Government filed its opposition on the following day. (DE 181). While these motions were still pending, on April 4, 2019, the grand jury returned a Third Superseding Indictment. (DE 215). This Indictment did not contain new criminal charges, nor did it add any new defendants to the charges contained therein. A comparison between the Second and the Third Superseding Indictments demonstrates, as a matter of fact, that the Third Superseding Indictment's sole purpose was to add new assets to the already existing forfeiture notice. (DE 215). In this regard, the forfeiture allegations now gave Teyf notice of the Government's intent to forfeit a new motor

vehicle, the contents of a new domestic bank account, unidentified pieces of jewelry, and undisbursed funds to be deposited by Lank Ventures LLC. (Id.). The forfeiture notice was also amended by removing five bank accounts originally identified in the Second Superseding Indictment. The factual and legal basis for the forfeiture notices in the Second and Third Superseding Indictments is identical.

A month later, on May 9, 2019, the grand jury returned a Fourth Superseding Indictment adding Section 1956(1)(1) to already charged transactions. (DE 248). More tellingly, as anticipated and forecast by Teyf in his Motion to Quash (DE 175 at p. 4), the Fourth Superseding Indictment contained, for the first time, charges of tax violations by Teyf for purportedly making false statements in his 2012, 2014 and 2015 tax returns regarding his interest in foreign bank accounts, and charges for failing to report said accounts to the Financial Crimes Enforcement Network (FinCEN), in violation of 31 U.S.C. §§5314 and 5322. (DE 248, Counts 44-50, at pp. 25-28).

## II. ARGUMENT

Teyf should not be compelled to respond to the February 22, 2019, grand jury subpoena. The procedural background in this case supports a finding of grand jury abuse by the Government which merits judicial review of what transpired before the grand jury, suppression of any evidence obtained through the use of the grand jury after the subpoena was issued, and the dismissal of the Third and Fourth Superseding Indictments. Additionally, given the grand jury's return of the Fourth Superseding Indictment, the subject subpoena is now moot, and compelling the defendant to produce the records would constitute an impermissible use of the grand jury process to conduct discovery regarding existing charges and obtain evidence in anticipation of trial.

### A. THE PROCEDURAL BACKGROUND IN THIS CASE SUPPORTS A FINDING OF GRAND JURY ABUSE BY THE GOVERNMENT.

Courts have recognized that the grand jury is one of the most powerful discovery tools devised. United States v. Doe, 455 F.2d 1270, 1275 (1st Cir. 1972). "This body may call witnesses under compulsory process and examine them in secret under oath, unhampered by the rules of evidence or an adversary counsel's cross-examination, or in the case of a 'prospective defendant' by Fifth Amendment immunity." 8 Moore's Federal Practice¶ 16.08[1], at 16-100 (2nd ed. 1970). However, a grand jury's investigatory power is not unlimited, United States v. R. Enterprises, 498 U.S. 292, 299 (1991), and "prosecutors do not have carte blanche in grand jury matters." United States v. Flemmi, 245 F.3d 24, 28 (1st Cir. 2001). "Grand juries are not licensed to engage in arbitrary fishing expeditions, nor may they select targets of investigation out of malice or an intent to harass." Id.

It is also improper for the Government to use the grand jury for the sole or primary purpose of strengthening its case on a pending indictment or as a substitute for discovery. United States v. Gibbons, 607 F.2d 1320, 1328 (10th Cir. 1979). *See also* United States v. Woods, 544 F.2d 242, 250 (6th Cir. 1976) ("it is improper to use a grand jury solely to prepare a pending indictment for trial."); In re Grand Jury Proceedings, 814 F.2d 61, 70 (1st Cir. 1987) ("It is well established that a grand jury may not conduct an investigation for the primary purpose of helping the prosecution prepare indictments for trial."); Beverly v. United States, 468 F.2d 732, 743 (5th Cir. 1972) ("it is improper to use the grand jury for the purpose of preparing an already pending indictment for trial" and "[i]t is a misuse of the grand jury to use it as a substitute for discovery"); United States v. Moss, 756 F.2d 329, 332 (4th Cir. 1985) ("Although the courts firmly safeguard the investigatory power of the grand jury, it is the universal rule that

4

prosecutors cannot utilize the grand jury solely or even primarily for the purpose of gathering evidence in pending litigation.").

Generally, grand juries lose their authority to issue subpoenas once an indictment is returned. Resolution Corp. v. Thornton, 41 F.3d 1539, 1546-47 (D.C. Cir. 1994). "While a grand jury wields broad investigatory powers prior to returning an indictment, courts uniformly have held that, "once a targeted individual has been indicted, the government must cease its use of the grand jury in preparing its case for trial." United States v. Phibbs, 999 F.2d 1053, 1077 (6th Cir. 1993). *See also* United States v. Badger, 983 F.2d 1443, 1458 (7th Cir. 1993); United States v. Jenkins, 904 F.2d 549, 559 (10th Cir. 1990); United States v. Sellaro, 514 F.2d 114, 122 (8th Cir. 1973); United States v. Star, 470 F.2d 1214, 1217 (9th Cir. 1972); Beverly, 468 F.2d at 743.

Once a defendant has been indicted, the government cannot use the grand jury for the "sole or dominant purpose" of obtaining additional evidence against him. *See* U.S.A.M. §9-11.120 directing prosecutors not to use grand juries for the sole purpose of obtaining additional evidence against a defendant who has already been indicted. In fact, a grand jury may only be used post-indictment to add additional defendants or crimes by an indicted defendant. In re Grand Jury Subpoena Duces Tecum, Dated January 2, 1985 (Simels), 767 F.2d 26, 29-30 (2nd Cir. 1985); In re Grand Jury Proceedings, 586 F.2d 724 (9th Cir. 1978).

Since a presumption of regularity attaches to grand jury proceedings, a defendant seeking a remedy based upon grand jury abuse bears the burden of showing that an irregularity occurred. Moss, 756 F.2d at 332; United States v. Bin Laden, 116 F.Supp.2d 489, 492 (S.D.N.Y. 2000). In addressing grand jury abuse claims, courts focus on factors such as the procedural background of

5

the case, the timing of the subpoena, the events transpiring within the grand jury, and the government's representations. Simels, 767 F.2d at 29-30.

In Simels the Government served a court-issued subpoena upon defense counsel commanding him to produce documents regarding his legal fees. Simels, 767 F.2d at 28. The subpoena was served a week after the grand jury returned a superseding indictment. Following an objection, the return of the subpoena was suspended. A few months later, the Government served a grand jury subpoena on defense counsel. By then the grand jury investigation had culminated. The defendant, his counsel and the defense bar argued that the subpoena was an abuse of process because its sole or dominant purpose was to obtain evidence for use at trial and that the subpoena impinged upon the defendant's Sixth Amendment rights. In response, the government asserted that further investigation offered the promise of "additional forfeitures, additional charges against [the defendant] and additional defendants in a superseding indictment." Id., at 28. The district court held the subpoena was within the scope of the grand jury's investigatory power and did not constitute an abuse of the grand jury process. The Second Circuit disagreed and observed that "[t]he timing of the grand jury subpoena cast[] significant light on its purposes." Simels, 767 F.2d at 29. First, the court of appeals took notice of the government's assertion that it sought the court-issued subpoena for evidentiary purposes, given "substantial income and resources" from the drug enterprise were elements of the offense filed against Simels' client. Id. Second, the court saw that the prosecution had not called a single witness before the grand jury between the dates of the two subpoenas. After noticing that the grand jury had otherwise been inactive during the period when the Simels grand jury subpoena was issued, the court held that the defendant persuasively showed that trial preparation was the dominant purpose behind the subpoena. The appellate court also concluded that the

6

government's claim that the subpoena sought evidence as part of an active investigation was weak. Ultimately, the Second Circuit quashed the subpoena. Id., at 30.

A glance at the procedural background in this case should yield a result similar to that in Simels. Well before the February 22, 2019, subpoena, the Government already had Teyf's financial records. In this regard the original November 2018, Indictment alleged that Teyf and others opened at least 70 financial accounts in the United States, and that Teyf and others received over $39.4 million from "[f]oreign corporations and bank accounts." (DE 248; ¶10). Despite adding new charges in the Superseding and Second Superseding Indictment, no new charges or defendants were added to the Third Superseding Indictment.

The forfeiture notices in both the Second and Third Superseding Indictments were based upon offenses alleged in Counts One through Twenty-Six and Thirty-Three to Forty-One. The legal bases for each - 18 U.S.C. §§981(a)(1), 982(a)(1)(C), 18 U.S.C. §924(d) and 28 U.S.C. §2461 – were the same in both indictments. Both allegations also placed the defendant on notice of the Government's intent to forfeit substitute assets as provided for in 21 U.S.C. §853(p).

The Fourth Superseding Indictment subsequently added charges based on failure to report foreign bank accounts (Counts 48-50) and related tax violations (Counts 44-47). The subpoena demands records relating to just such alleged accounts. That is exactly the sort of grand jury abuse – discovery to prove charges in the Fourth Superseding Indictment – that is forbidden. United States v. Moss, 756 F.2d 329, 332 (4th Cir. 1985).

### B. THIS COURT SHOULD COMPEL THE GOVERNMENT TO DEMONSTRATE THE LEGITIMATE PURPOSE OF THE GRAND JURY INVESTIGATION

Given Teyf's showing of grand jury abuse, the Court should now require the Government to reveal the subject of the grand jury's investigation. R. Enterprises, 498 U.S. at 302. Notably, Teyf is at a disadvantage given the secrecy of grand jury proceedings and the Government's

7

Case 5:18-cr-00452-FL   Document 313   Filed 08/16/19   Page 7 of 12

decision not to turn over grand jury transcripts to date. However, those obstacles do not end the inquiry.

> A party who desires to challenge a grand jury subpoena thus may have no conception of the Government's purpose in seeking production of the requested information. Indeed, the party will often not know whether he or she is a primary target of the investigation or merely a peripheral witness. Absent even minimal information, the subpoena recipient is likely to find it exceedingly difficult to persuade a court that compliance would be unreasonable.

R. Enterprises, 498 U.S. at 300 (internal citations omitted). Accordingly, the Supreme Court entrusted upon lower courts the role to "craft appropriate procedures that balance the interests of the subpoena recipient against the strong governmental interests in maintaining secrecy, preserving investigatory flexibility, and avoiding procedural delays." Id. By way of example, the R. Enterprises Court suggested that district courts require the Government reveal the subject of the investigation in camera so they may determine whether the motion to quash has a reasonable prospect of success. Id., at 302.

Other courts have adopted different techniques to ascertain how the grand jury was used when post-indictment subpoenas were issued. In response to the defendant's grand jury abuse claims, the prosecution in In re Grand Jury Proceedings, 1994 U.S. App. LEXIS 18695 (1st Cir. 1994) was required to submit an *ex parte* affidavit, signed by the prosecutor, explaining why the questioning of the defendant did not have the primary purpose of assisting the prosecution of the pending indictment. The First Circuit Court of Appeals held that requiring a sealed *ex parte* affidavit from the prosecution was an adequate procedure under the circumstances of that case, in order to probe whether the prosecution was attempting to abuse the grand jury process in its interrogation of the defendant. Id. at 6-7. *See also* Doe, 455 F.2d at 1275 (following claim of grand jury abuse that prosecutors used Boston grand jury to strengthen case in Central District of California, circuit court ordered prosecution to give California court the Boston grand jury

transcripts of all testifying witnesses for in camera review as to California testifying witnesses); United States v. Thompson, 944 F.2d 1331, 1337 (7th Cir. 1991) (in camera review of witness transcript showed grand jury was used to conduct discovery into charges already pending against defendant).

Here, there is every reason to conclude that the Government is attempting to use the grand jury subpoena as a discovery tool. The Third Superseding Indictment contained no additional defendants or criminal charges. The Fourth Superseding Indictment (Counts 44-50) alleges that Defendant violated tax laws by failing to disclose foreign bank accounts. The grand jury subpoena seeks information about any foreign bank accounts in which he has an interest. Clearly, any records produced in response to the subpoena would be used by the Government as evidence at trial. Compare United States v. Moss, 756 F.2d 329, 332 (4th Cir. 1985) (Ervin, J.) (explaining that "[w]hen applied correctly," the test "permits grand juries to investigate additional individuals who become suspects only after an indictment has been returned, while precluding use of the grand jury for discovery."). Therefore, just as in Simels, the prosecution in this case should be required to provide evidence as to what transpired after the grand jury subpoena was issued. At a minimum, it would be expected that the Government maintained contemporary notes detailing the witnesses and evidence presented before the grand jury panels that returned the five indictments and their connection to the possible charges or persons. The Court should also review those notes and logs to ensure that grand jury proceedings were not abused.

### C. FOLLOWING A FINDING OF GRAND JURY ABUSE, THE COURT SHOULD SUPPRESS THE EVIDENCE OBTAINED AS A RESULT OF SAID ABUSE AND DISMISS THE THIRD AND FOURTH SUPERSEDING INDICTMENTS.

Since the Government's sole or primary reason to use the grand jury between the Second and Third Superseding Indictments was to improve a forfeiture allegation in existence since the original November 2018 indictment, this Court should suppress any evidence obtained after the February 2, 2019, Second Superseding Indictment. Bin Laden, 116 F.Supp.2d at 491. Moreover, since the Third, and hence subsequent Fourth, Superseding Indictments were obtained as a result of the grand jury abuse, this Court should enter an order dismissing both indictments. Moreover, the subpoena served upon Teyf should be set aside as moot given the Government's decision to add failure to report foreign account violations (Counts 48-50) and related tax violations (Counts 44-47) in the Fourth Superseding Indictment (DE 248). To force Teyf to comply with the subpoena in spite of the existing charges would enable the grand jury investigative process to be used to help the Government prepare for trial. Beverly, 468 F.2d at 743; Dardi, 330 F.2d 316, 336, (2nd Cir. 1964);.

### III. CONCLUSION

To date, the Government has sought five different indictments against Mr. Teyf. The February 22 subpoena appears intended for discovery against an existing defendant (Teyf) now already subject to a Fourth Superseding Indictment. The Government should be required to demonstrate otherwise. Such use of the Grand Jury merits close scrutiny by the Court as indicated in R. Enterprises, Simels, and Thornton, and Moss. Based on the reasons set forth above and in Defendant's previous submissions, the motion to compel should be denied. Additionally, the Court should suppress any evidence obtained as a result of any subpoenas

10

issued between the Second and Third Superseding Indictments. The Court also should dismiss the Third and Fourth Superseding Indictments insofar as they were the product of such abuse.

Respectfully submitted, this the 16th day of August, 2019.

/s/ F. Hill Allen
F. Hill Allen
THARRINGTON SMITH, L.L.P.
P.O. Box 1151
Raleigh, NC 27602
Phone: (919) 821-4711
Fax: (919) 829-1583
hallen@tharringtonsmith.com
N.C. State Bar No. 18884
*Counsel for Defendant*

/s/ Robert S. Wolf
Robert S. Wolf
MOSES & SINGER LLP
The Chrysler Building
405 Lexington Ave., 12th Floor
New York, NY 10174-1299
Phone: (212) 554-7825
Fax: (212) 554-7700
rwolf@mosessinger.com
*Counsel for Defendant*

## CERTIFICATE OF SERVICE

    I hereby certify that on this 16th day of August, 2019, I electronically filed the foregoing **DEFENDANT LEONID I. TEYF'S SUPPLEMENTAL ARGUMENTS IN OPPOSITION TO MOTION TO COMPEL** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

                                                   /s/ F. Hill Allen
                                                  F. Hill Allen
                                                  THARRINGTON SMITH, L.L.P.
                                                  P.O. Box 1151
                                                  Raleigh, NC 27602
                                                  Phone: (919) 821-4711
                                                  Fax: (919) 829-1583
                                                  hallen@tharringtonsmith.com
                                                  N.C. State Bar No. 18884
                                                  *Counsel for Defendant*