UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

_____ )
UNITED STATES OF AMERICA,        )
                                 )
            vs.                  )     5:18-CR-452-1-F
                                 )
LEONID ISAAKOVICH TEYF,          )
                                 )
                Defendant.       )
_____ )

AUGUST 23, 2019
HEARING ON MOTION TO COMPEL
BEFORE THE HONORABLE ROBERT T. NUMBERS
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

On behalf of the Government:

BARBARA D. KOCHER, ASSISTANT U.S. ATTORNEY
U.S. Attorney's Office
310 New Bern Avenue, Suite 2100
Raleigh, North Carolina  27601
barb.kocher@usdoj.gov

On behalf of the Defendant:

F. HILL ALLEN, IV, ESQ.
Tharrington Smith
150 Fayetteville Street
Suite 1800
Raleigh, North Carolina 27601
hallen@tharringtonsmith.com

ROBERT S. WOLF, ESQ.
Moses & Singer
405 Lexington Avenue, 12th Floor
New York, New York  10174
rwolf@mosessinger.com

Wanda B. Constantino, CVR-CM-M
WordServices, Inc.
1102 Driftwood Drive
Siler City, North Carolina  27344
919.548.4914
wanda@mywordservices.com
Stenomask with computer-aided transcription

1          (Friday, August 23, 2019, commencing at 10:10 a.m.)

2          (Call to Order of the Court.)

3               THE COURT:  Good morning, everyone.

4               MS. KOCHER:  Good morning, Your Honor.

5               MR. WOLF:  Good morning, Your Honor.

6               MR. ALLEN:  Good morning, Your Honor.

7               THE COURT:  We are here in the United States District

8     Court for the Eastern District of North Carolina, sitting in

9     Raleigh for preliminary criminal proceedings.  I'm going to

10    begin by asking our Clerk to please place the interpreter under

11    oath.

12               ONE INTERPRETER:  Just a second.  Let us make sure

13    that it's working.

14          (Pause in proceedings.)

15          (Two interpreters were sworn by the Clerk.)

16               THE COURT:  We are here in the case of *United States*

17    *of America versus Leonid Isaakovich Teyf*, case number 5:18-CR-

18    452-1 for a hearing on the Government's motion to compel

19    production.  I'll ask attorneys to identify themselves,

20    beginning with counsel for the Government.

21               MS. KOCHER:  Thank you, Your Honor.  Barbara Kocher,

22    Assistant United States Attorney here on behalf of the

23    Government.

24               MR. ALLEN:  Good morning, Your Honor.  Hill Allen,

25    Tharrington Smith here in Raleigh.

1          MR. WOLF:  Good morning, Your Honor.  Robert Wolf,

2     Moses & Singer for Mr. Teyf.

3          THE COURT:  All right.  Good morning, everyone.

4          I want to hear from both sides, and I'm generally

5     going to let the Government proceed first; it's their motion.

6     But I want to address one issue with the defense to begin with.

7          One of the issues at play here is the defense's

8     ability to review the documents at issue and provide responsive

9     documents, setting aside for the brief moment the Fifth

10    Amendment concerns that have been raised.

11         In reviewing the response that you-all filed, I'm

12    taking it that whether I give you seven days to respond or

13    seven months to respond, you're not actually going to respond

14    until the Fourth Circuit or perhaps the Supreme Court has had

15    the opportunity to resolve the Fifth Amendment question.  Is

16    that a accurate assessment of your position?

17         MR. WOLF:  Your Honor, it's not now, but if the Court

18    didn't raise it, we were going to.  We assert that position

19    now, not knowing how these proceedings will go forward.  Our

20    objective is and still is to have the review of what's being

21    produced or, you know, in process of being produced and then be

22    in a position to articulate our position, which may not be --

23    which may very well be different than what it is today.

24         So I'm glad the Court raised it because it's

25    something that we recognized as, you know, as -- as lawyers to

1   be conservative and take the approach as we're both new in the

2   case.  There's an enormous amount of discovery, and I can just

3   say this from the outset.  I saw Ms. Kocher's response.  We're

4   not in any way accusing the Government of being sloppy or -- or

5   slow or anything but, since we've been in the case,

6   cooperative.

7         And, in fact, the position the Government has taken

8   to produce from scratch everything in the case so that there's

9   no issues of whether we got a full file or didn't.  Both --

10  respectfully, I think it is protective of both the Government,

11  the Defendant, and the process to ensure that there's complete

12  discovery in what is voluminous.

13        And I joke respectfully again, when they use the word

14  terabytes, I -- if I didn't know the context, I would think it

15  was from a Jurassic Park movie, but I know it's enormous and

16  the Government's in the process of doing it, and it's certainly

17  not our position here that they're taking too long or they're

18  not being cooperative.  To the exact contrary.

19        That said, getting back to your question, yes, we

20  would -- we want to review it and then be in a much better

21  position and an informed position to both articulate a position

22  on the motion, discuss it with our client, having reviewed the

23  benefit of all those documents, of one position or what's

24  responsive at that point as well.

25        So I hope that helped.

```
 1          THE COURT:  To some extent it does.  The difficult
 2   position I find myself in is that if I grant the Government's
 3   motion to compel, part of my order needs to say, "Produce the
 4   responsive documents in X days" or "X months," and part of the
 5   reason I wanted you-all to confer before the conference was to
 6   try to get a feel for what that X should be filled in by.
 7          Because what I want to avoid is going around and
 8   around where I say "respond in seven days" that the Government
 9   wants, and then you go to Judge Flanagan or the Fourth Circuit
10   and say, "Well, look at this unreasonable magistrate judge here
11   making us respond in seven days."
12          And I don't have a feel for what the appropriate time
13   frame is for you-all to conduct the review.  And the takeaway I
14   had -- and we've talked about it a little bit, but the takeaway
15   I had from your response was that an order issued either by
16   myself or Judge Flanagan is not the final stop to this
17   question, and I'm trying to figure out how to deal with that
18   because I want this to move forward in a timely manner.
19          And if the Fifth Amendment issues need to be resolved
20   by the Fourth Circuit or the Supreme Court to get you to that
21   point quickly so that that can be resolved one way or the other
22   and if production is ultimately required, to do that in a
23   timely manner.  So that's what I'm struggling with here and --
24          MR. WOLF:  Might I suggest --
25          THE COURT:  -- trying to get --
```

1    MR. WOLF:  Might I suggest this?  And, you know, I

2    don't know how long it would take, but, you know, we're

3    certainly -- would be diligent.  Once we have access to it,

4    there's some orderly way that this can be done, even on a

5    rolling basis, so to speak, so at least there's meaningful

6    review of what's an enormous amount of production.

7        And I'm not going to comment.  Your Honor's certainly

8    very familiar with the papers.  Your order, frankly, I think

9    reflects what was in the Moore & Van Allen response about the

10   millions and everything else.  And I appreciate that, and we do

11   think it's very relevant without any critique, of course.

12       But we do need and, respectfully, as defense counsel

13   and -- and pretty new at this, but it's daunting, but we have a

14   responsibility to our client.  We have a responsibility to the

15   Court.  And respectfully, I think our request would be to allow

16   that time, you know, to have a, you know, meaningful review as

17   expeditiously as we can and then take a position, you know,

18   with regard to, you know, the motion, because it may very well,

19   you know, be a different position.  You know, I don't know

20   what's in those documents but, frankly, I think it's, you know,

21   very conceivable that it would -- you know, it would be

22   relevant to the response.

23       And, you know, and response -- when I say that --

24   and, again, I don't want to speculate too much.  Response

25   meaning responsive, since we're talking about a subpoena.  So,

1    I mean, that I think would be, at least from our side, you

2    know, a responsible way to approach it without just having to

3    take a defensive extreme position while, you know -- you know,

4    right now we don't have this and we're new and we just have to

5    say we're going to, you know, just be overly protective when

6    that position may not, you know, be our position after a

7    review.

8            THE COURT:  Thank you, Mr. Wolf.

9            MR. WOLF:  Thank you.

10           THE COURT:  Ms. Kocher, what do you have to say on

11   this particular aspect of this motion?

12           MS. KOCHER:  On this particular aspect, Your Honor, I

13   would note that your original order which denied the motion to

14   quash pointed out that the subpoena seeks records within

15   Mr. Teyf's possession, custody, or control, and that that

16   definition may not very well encompass the multitude of

17   documents that the Government has turned over in discovery.

18           I have informed counsel on a previous occasion and

19   say to the Court that the Government does not believe

20   responsive documents are within all of those.  There are a few

21   bank statements as noted in the Defendant's plan -- proposed

22   plan.  The fourth superseding indictment does make reference to

23   Alpha Bank, and there was one or two pages from Alpha Bank

24   within all the materials seized that the Government could find.

25           But by and large, the required records are not in the

1    materials seized by the Government.  The presumption on the

2    Government, and it is a presumption, is that they're in Russia,

3    and the Government does not have the ability to get those in

4    any other means but through the subpoena to the Defendant.

5    Under the Required-Records Doctrine, of course, and the

6    regulation issue, he's required to keep those records for five

7    years.  We're not asking for records be reproduce -- although

8    it would be helpful if they are in the discovery, but we're not

9    asking for the records within discovery to be reproduced to us.

10              THE COURT:  I'm sorry, the translator needs you to --

11              MS. KOCHER:  I'm sorry.

12              THE COURT:  -- stop for a moment.

13         (Pause.)

14              THE COURT:  Let me just focus you on what -- and

15    maybe you're going to get there, but let me focus you on what

16    I'm really concerned about.

17              If I want to grant your motion to compel, again, I've

18    got to say Mr. Teyf or his attorneys need to produce the

19    records in *X* days.  And what I'm hearing is that defense

20    counsel is relatively new in this case; it's about two months

21    now or maybe even less than that since they've been in the

22    case.

23              What I've heard is that they don't know what's in

24    there and they can't agree or disagree with your position that

25    the records aren't in there and they can't figure out,

1    apparently, whether they need to go to Russia or some other

2    place to find the records.  So how do you see the order being

3    written in terms of the deadline for production, or how do we

4    handle production if you would win on all the other aspects of

5    this case?

6              MS. KOCHER:  If it -- if the Defendant -- what I

7    understood the Defendant's position today to be is that they

8    are so unfamiliar with the case, that they are not willing to

9    step forward or decline the position as to the Fifth Amendment

10   privilege.  Because what I would ask is that that be addressed

11   first.

12             It would seem to me that that's a legal position; it

13   has nothing to do with the discovery in the case or -- or

14   anything else, and that they would be able to, on very short

15   order, be able to say whether they intend to pursue that.  That

16   would be the end of the current order if they intend to proceed

17   on the Fifth Amendment privilege because then it will need to

18   go up to the Fourth Circuit and potentially up for a writ to

19   the Supreme Court.

20             If they conclude in that very short fashion that they

21   do need to get through the discovery or, you know, that they

22   will release that legal argument perhaps, then a production

23   time line -- and I'm in the same dark spot that Your Honor is.

24   I don't know how long -- I do think the answer needs to come

25   from them in that regard.  We're certainly more than willing to

1  agree to a reasonable time frame; but like you, there's none

2  been given.

3          THE COURT:  Mr. Wolf, in your estimation, you know,

4  how long will it take you to get familiar with these records?

5          MR. WOLF:  May I have one second, Your Honor?

6          Your Honor, first of all, we don't have them yet, so

7  the question is when we'll get them from the Government.  But

8  after we get them --

9          MR. ALLEN:  And, Your Honor, I understand what we're

10  talking about is digital discovery and a forensic image, which

11  will not be searchable when we receive it.  It may require us

12  to engage a corresponding expert to render it into some format

13  that then can be dealt with by translators.  Presumably the

14  records may well be not in English, so we've got to deal with

15  that issue.  So it will require factoring those things in.

16          And I understand you need a time line from us, so

17  what we had tried to propose was 30 days after --

18          THE COURT:  That's what I was just going to say.

19          MR. ALLEN:  -- we receive the digital discovery, to

20  try to deal with some of those issues.

21          MR. WOLF:  And, Your Honor, having now gotten

22  educated procedurally, you know, of what's been sent

23  previously, we're out front already.  I'm not going to wait

24  till we get it and then start looking for experts.  We'll be

25  ready, you know, upon receipt to start being able to search it

1    as best as we can.  And that's why I was going to suggest 30

2    days as well.  I think it's a good-faith period.  Of course,

3    we'd like more, but I'd respect that there's -- this needs to

4    move.  And that might be, you know, more than sufficient to get

5    it, at least the sense for purposes of this motion because

6    we're dealing with a defined issue versus just, you know --

7              THE COURT:  So --

8              MR. WOLF:  -- preparing.  So that's what -- that, I

9    think, 30 days from when we get it would be --

10             THE COURT:  So actually what I'm hearing from you is

11   that you're not even certain if you're going to continue to

12   maintain this Fifth Amendment argument until you've reviewed

13   the records.  Is that correct?

14             MR. ALLEN:  Your Honor, we're not prepared to make an

15   affirmative representation to the Court without having seen the

16   records.  We wanted to make sure we weren't over-promising in

17   our proposed plan.

18             To try to give you some sense of how we're coming at

19   it, we want to be protective appropriately as a Fifth Amendment

20   concern, but we do have concerns on that front, but we also --

21   it makes great sense to see if it can be resolved and rendered

22   moot in some other way by looking at the records.

23             MR. WOLF:  Yeah.  And, Your Honor, if I could just

24   add to that.  Needless to say, if there are records that are

25   provided by the Government which, in our view, you know, would

1   provide a basis to be a response, in some respects it's kind of

2   moot because the Government has those records.  So they

3   wouldn't -- those -- the whole Fifth Amendment concern, at

4   least, doesn't really strike me as popping out in there, and

5   that's why I think it's a very, you know, productive way to do

6   things in an orderly way because it may eliminate the issues

7   altogether, frankly.

8           If it's in there, the Government already has it, even

9   if it's not something that's readily apparent.  It doesn't

10  strike me as any Fifth Amendment privilege at the production

11  privilege.  It's something that's already in the Government's

12  possession anyway.

13          THE COURT:  So you would be proposing 30 days from

14  the date you receive the materials from the Government to do

15  what exactly, to complete the review, or to assess the time

16  line for the review?

17          MR. WOLF:  We would try to complete it, Your Honor,

18  at least for purposes of this motion.  And if there's any issue

19  that comes up right away, we can promptly inform the Court, but

20  that would be our goal to do that.

21          MS. KOCHER:  Your Honor, that -- for any records that

22  might be on the digital evidence, the Government has no issue

23  or objection to that particular time line.  I would, however,

24  request an affirmative statement at an earlier point that there

25  are no other records in existence.

1      This still begs the question as to whether Mr. Teyf

2  has other records in his possession, custody, or control.  And

3  to those, a simple conversation with the client would disclose

4  whether or not those records exist, where they are, and they

5  should know today whether they're in Russia and whether they

6  need an elongated period of time to retrieve them or to go see

7  them.  That's not been offered.

8      So, again, no objection to the 30 days for what's in

9  the Government's possession, but this still begs the question

10 as to what is not there.

11     THE COURT:  Would the defense be persisting in its

12 Fifth Amendment argument regarding documents that are not in

13 the Government's possession?

14     MR. WOLF:  Well, Your Honor, we're not in a position

15 right now to determine.  For one, the subpoena asks for and I

16 think this Court has already said, whatever is in his custody

17 and control; and if it's not in his control, then -- you know,

18 then it's not -- there's no obligation to respond to it.

19     We're not there yet in terms of our involvement and

20 investigation and learning information as to what exists or

21 doesn't exist.  And if it does exist, in what form.  It's just

22 at this point we're not prepared to take a position on that,

23 you know, responsibly.  I say that responsibly to you.

24     You just can't -- you can't say, "Oh, no problem,"

25 and then as defense lawyers we're acting professionally and

1    responsible.  So until we get there -- and we're doing a lot in

2    a very short period of time here, but it needs to get done.

3    And, you know, we need time actually to -- you know, to fully

4    assert that position as well.  We've inherited the motions and

5    the positions that have been taken, and we're not giving them

6    up.  But we're prepared to go forward at this point, you know,

7    and try to make use of, you know, the next process to see

8    whether that might, you know, obviate the need for certain

9    objections to continue to proceed or not.

10            I mean, there's the Fifth Amendment, there's the

11   Sixth Amendment right which, you know, relates to the ability

12   to review.  That's -- Your Honor, in our view, that's totally

13   separate from just going through this exercise responsibly to

14   just review it.  I'm not attaching any constitutional

15   dimensions to it.  It's just something that needs to get done

16   to, you know, respond to the subpoena, you know, accordingly.

17   So -- *(no further response)*.

18            THE COURT:  I guess my other overarching concern in

19   this case is that Mr. Teyf has his Speedy Trial right -- Act

20   and just a general concern about the amount of time this has

21   taken. I know it's a very complex case with a lot of documents.

22   I know that Mr. Wolf and Mr. Allen, you are new to this case.

23   I don't want this case to drag on unnecessarily long, but

24   obviously I need to give you the time to prepare a defense for

25   Mr. Teyf.  So that's another concern I have.

1    What I'm hearing is, I think, that there's a need for

2 some additional time to do some additional work, and it may be

3 beneficial to reconvene on some or all of this in about a

4 month's time to see where things stand.  So what I'm hearing a

5 lot from the defense is that you have not had the opportunity

6 to get familiar enough with the records to adequately respond

7 to some of these issues.

8    So I think that that may be part of what we do.  I

9 don't know if that's going to be the sum total of it, but we

10 may reconvene in a month to figure things out.  I know that

11 delays the grand jury's work, but this is a unique case that

12 has some unique aspects to it in terms of the volume of

13 documents that are at issue.

14    I want to shift a little bit to the argument that was

15 raised in the defense's supplemental response of abuse of the

16 grand jury process and whether this motion -- I'm sorry,

17 whether this subpoena is now moot.

18    Ms. Kocher, you didn't have an opportunity to respond

19 to that in writing, so I'll be glad to hear from you now.

20    MS. KOCHER:  Your Honor, in short, if that argument

21 has legs, then the recipients of grand jury subpoenas simply

22 have to delay in order to avoid responding to the subpoena.  At

23 the time the subpoena was sent, none of the triggering events

24 that are described -- that is, the third and the fourth

25 superseding indictments had been issued.

1    Moreover, the grand jury subpoena is in regard to

2    records that are not fully accounted for in the current

3    charges, so the subject of the grand jury investigation is

4    clearly known to the Defendants.  There is a reasonable

5    possibility that those records will, in fact, turn something up

6    for the grand jury's consideration.  And, again, I think that

7    it's just a false premise that because timely response wasn't

8    made that they now don't have to respond.  So it certainly is

9    not true that the current charges encompass all potential

10   criminal charges.

11           THE COURT:  What other potential charges do you think

12   are there?

13           MR. KOCHER:  Well, I would -- first of all, there are

14   charges for the failure to maintain the records as required.

15   In addition, in looking at the tax charges, and I'm looking at

16   the indictment on my computer.  But the tax charges, Count 50,

17   and so these are the particular ones for failing to file that

18   report of foreign bank and financial accounts are alleged --

19   I'm sorry, they're lengthy paragraphs.

20           So beginning in paragraph 48, Mr. Teyf is charged

21   with failure to file that for 2015.  And in Count 49, he is

22   charged with failure to file the 2016.  I would note, Your

23   Honor, that there are other years yet that would be potentially

24   reviewed by the grand jury.

25           THE COURT:  You mentioned a moment ago failure to

1    maintain records could be an offense as well.  So you're saying

2    the failure to maintain could be additional charges beyond

3    what's in 48 and 49 for failing to file?

4            MR. KOCHER:  I believe that to be true, Your Honor.

5    So, yes.

6            THE COURT:  Does the defense wish to respond at all

7    in the abuse of process matter?

8            MR. WOLF:  Yes, Your Honor.  Your Honor, I -- under

9    the *Moss* case and the applicable cases, and Your Honor knows

10   the standard is -- and, frankly, it's uniform, you know, in the

11   Supreme Court as well, you know, that universal rules and

12   prosecutors can't utilize the grand jury solely or even

13   primarily for the purpose of gathering evidence in pending

14   litigation.  The Fourth Circuit applies what they call the sole

15   or dominant purpose test.

16           But, Your Honor, I see the current situation with a

17   different characterization than Ms. Kocher, here.  When the

18   subpoena was issued, there weren't the pending charges of

19   failure to identify foreign bank accounts and the resulting tax

20   fraud charges for -- that go with those.  There's now an

21   additional seven counts in the indictment.

22           But I think when Your Honor used the word moot, that

23   was my view.  I think the landscape has now changed.  You know,

24   this is now the fifth indictment in this case, and now the

25   subpoena addresses, you know, or seeks information that's

1    directly relevant to charged conduct.  And it's the -- you

2    know, it gets back to like the -- you know, once a target -- an

3    individual has been indicted, the Government must cease using

4    the grand jury in preparation for trial or, you know, more

5    focused on the sole or dominant purpose test.

6           But Your Honor has read our supplement, and you see

7    from indictments -- superseding two and superseding three,

8    there's no additional defendants, there's no additional

9    charges.  It's just a tightening up of the forfeiture

10   allegations.  And then from three to four, now we have

11   additional charges, but they're the very charges now that the

12   subpoena addresses.  I dare to say when it was first looked at,

13   these charges weren't there, but it directly relates to the

14   purpose of the subpoena.

15          And, Your Honor, respectfully, under the *Moss* case

16   and other cases, I believe there's an obligation of the Court

17   or, you know, to inquire.  I think in the *Fisk* [phonetic] case,

18   which is a First Circuit case, the Court required a sworn

19   affidavit from the Government and, in fact, indicated had it

20   not been challenged by a witness that they didn't believe had

21   much standing, they would have asked for more than a sworn

22   affidavit from the Government as to the purpose of the subpoena

23   and what was going on in the grand jury.

24          I think in this case it is -- you know, with the

25   Defendant challenging it, it goes right to the very charges

1    that are contained in this indictment.  We're now at indictment

2    number five.  I respectfully think the Court should review the

3    grand jury transcripts and make a determination whether the

4    sole or dominant purpose of this subpoena, you know, in

5    comparison demonstrates the sole or dominant purpose, as to

6    whether it's an abuse of the grand jury or not, or rendered

7    moot.

8           THE COURT:  Now, you claim that the Government is

9    trying to use the grand jury to obtain discovery for these

10   Counts 48 and 49.  48 and 49 charge your client with failing to

11   report certain -- file certain reports with the IRS about

12   foreign bank accounts.  The subpoenas seek documents that he's

13   supposed to maintain about those accounts.  And what I've heard

14   from Ms. Kocher is there's a potential for additional charges

15   based upon the failure to maintain those records separate from

16   the failure to file the reports.

17          And I've got the statutes here in front of me.  They

18   do allow the secretary to require maintenance of records and

19   filing of records, and the failure to do so in both cases can

20   be a criminal offense, so her argument is not -- doesn't seem

21   to be frivolous, so why is there -- why is this not just the

22   grand jury continuing to investigate potential criminal conduct

23   by your client and not discovery in preparation of trial?

24          MR. WOLF:  Well, Your Honor, for one, if the -- if

25   there were documents that were responsive from Alpha Bank, that

1  would be subpoenaing documents from the client to help the

2  Government prove Counts 48 and 49 -- or 47, 48, and 49, to

3  demonstrate with more evidence than they now have.  I don't

4  know what evidence they have.  We're not --

5      You know, as the Court's recognized, we're kind of

6  the defense lawyer disadvantage.  We're shooting in the dark on

7  these abuse of grand jury motions, but that would be a perfect

8  example of how the subpoena is then being used to, you know,

9  gather evidence against existing charges; to make those charges

10  stronger, in fact, and that's exactly what would -- it would

11  encompass.  So I'd just use that as an example.

12      But the Government always presents the position to

13  the Court.  I don't know if there's one case where the

14  Government comes forward and says, "Yes," you know, "We're

15  really doing this for," you know, "trial preparation to gather

16  evidence on existing charges."  The Government always takes the

17  position that it's investigation and, you know, the right to

18  add defendants or add charges.  But the Courts have

19  nevertheless determined that, you know, the Court still will

20  make an inquiry of whether to accept that representation.

21      I think in the *Simels* case -- it's one of the cases

22  we cited -- the Second Circuit ultimately rejected the

23  Government's position, having reviewed further the record of

24  what was presented or, in fact, what wasn't presented, you

25  know, to the grand jury and saw, you know, I guess in their

1    view, that the subpoena, you know -- and to use their words,

2    had a sole or dominant purpose for, you know, something that's

3    not permissible or that would be an abuse.

4          Respectfully here, I would -- we would request that

5    the Government should have to provide the transcripts of the

6    grand -- so the Court can make its independent determination as

7    the Courts do as to, you know, whether, you know, the

8    subpoena's being used for the sole and dominant purpose of, you

9    know, acquiring more evidence or, you know, against existing

10   charges or helping the Government prepare for trial against the

11   Defendant.  I think it's even more focused now.

12         That's really where I was going to start.  The

13   landscape has changed.  This indictment now does have these

14   charges.  I think it would have been difficult for me to stand

15   here back in February with an indictment that said nothing

16   about foreign bank accounts or anything else.  And it is to do

17   today.

18         Plus, you know, of course as Your Honor recognizes,

19   they're much further along as well.  I mean, there comes a

20   point in time where a court will say, "Enough of the

21   superseding indictments.  There's -- you know, the case needs

22   to move forward and the Defendant has to prepare and know what

23   the charges are and prepare against those, and it just

24   constantly can't be a continuum of superseding indictments."

25         And I believe that's, you know -- it's a fairly --

1    five indictments is not an insignificant number of indictments

2    in a case, but I think we're in that area where the Court

3    inquiries is more than appropriate.

4            THE COURT:  Thank you.  Ms. Kocher, any rebuttal?

5            MS. KOCHER:  First, Your Honor, *Simels* is the only

6    case that I found that the Court actually quashed the subpoena.

7    And in that case, the Government had issued a trial subpoena

8    first under Rule 17, and it was withdrawn or -- at any rate, it

9    no longer was relevant.  After that, they issued an identical

10   grand jury subpoena.

11           So the evidence that the Second Circuit was

12   considering there was literally on the record that the sole and

13   dominant purpose was for preparation for trial.  No other case

14   that I find concluded that, and certainly not in this case.

15   The purpose presupposes at the time of issuance.  The effect is

16   not what the Court's to consider, and the sole and dominant

17   purpose was clearly not for discovery.

18           I would remind the Court that the Government's

19   evidence at the time of the original indictment was that the

20   Defendant and his family was getting ready to leave the

21   country, which caused a more quick process in the beginning,

22   thus the need to continue the investigation on beyond the time

23   of indictment.  The -- there are additional charges here.

24           I am also not aware of any case where the Court

25   actually reviewed the transcripts of the grand jury.  Now, in

1    other respects, I've seen it in whether there's any *Brady*

2    material or those types of reviews.

3         But in this context, the presumption of the

4    reasonableness of the issuance of the subpoena is very, very

5    strong.  And but for Courts requesting in cases that it's not

6    apparent to the Defendant, for the Government to inform the

7    Defendant of the general topic under investigation, there has

8    not been cases requiring the Government to put forth evidence

9    in regard to that grand jury investigation, and certainly not

10   to turn over transcripts to the Court.  And that's said with

11   all due respect to the Court, of course.  I don't mean that --

12   anything disrespectful to any extent.

13        But in this case, again, I come back to none of this

14   what we're here about today is the Government's doing.  The

15   Government issued this subpoena in February.  The Government

16   allowed an extension when asked by original counsel, and then

17   through legal process and through a significant period of time

18   where the Defendant was not represented by counsel, we got to

19   where we are today.

20        I do have to say that I do find it kind of ironic

21   that -- the statement that we're well down the path and, you

22   know, we've got five indictments and at some point we have to

23   cut this off, when the beginning of the hearing was all about

24   we're brand-new and we're just starting.  And, again, I say

25   that with all respect as well.  But it's not as if the case has

1  progressed down the path.  We're at the beginning with these

2  counsel and with their reviewing discovery, so I think that

3  that should bear little weight, if any at all, to the Court.

4       But what -- the subpoena is valid as issued.  The --

5  there was no evidence that the sole or dominant purpose was

6  preparing for trial.  There are other charges validly being

7  investigated by the grand jury and reasonably to investigate,

8  and the possibility that these records will provide information

9  from their review is clear from the record, Your Honor.

10       And I am greatly concerned, as I said earlier, that

11  the lesson to be learned from this Defendant, recipient of the

12  subpoena and all others, is if we delay long enough then the

13  landscape changes and things become moot, and that that can't

14  be the answer that justice would require, Your Honor.

15       THE COURT:  All right.  Thank you, Counsel.

16       Ms. Kocher, any other points you wish to make today

17  based upon what's been filed before the Court?

18       MS. KOCHER:  Your Honor, the only other concern the

19  Government had was just if those filings -- the plans that had

20  been submitted to your office, if those be a public record, I

21  am concerned about the way that the statements about the

22  Government's discovery could be interpreted by others outside

23  of the case, so before I go further, will those be a part of

24  the record?

25       THE COURT:  I had not planned to put those on the

1    record unless one or both parties wished to have them on the

2    record.  They were more for my own consideration in formulating

3    a production time line.

4         MS. KOCHER:  All right.  I appreciate counsel opening

5    this morning by making it clear that they did not intend to --

6    'cause we're -- we're actually very excited with the discovery

7    we've done.  It's been a good production.  It's been very

8    organized, and I thank Sarah Foster, our intelligence

9    specialist, for having done such a great job on that.

10        THE COURT:  And I'll definite -- I'll hear from the

11   defense before we wrap up, but to bring things full circle, the

12   proposal is 30 days to review things once everything's been

13   produced.

14        From the Government's standpoint, when can that

15   production be completed?

16        MS. KOCHER:  So the hard drive was provided by -- a

17   blank hard drive was provided by the Defendant to us, I think

18   perhaps maybe as much as two weeks ago.  We have digital

19   evidence housed both in the Raleigh FBI and the Charlotte FBI.

20   I had hoped to have it to them by now, so I will go back to the

21   FBI as soon as I'm free today and request a specific time line.

22   My expectation would be no further out than the end of next

23   week, then five additional business days.

24        THE COURT:  All right, thank you.

25        MS. KOCHER:  And, Your Honor, actually, if I may, if

1   you would -- if you consider writing an order with time lines

2   in it, if you would put that in the order, that might be

3   helpful to give us a deadline on that.  It helps.

4          THE COURT:  What would the -- given that you know the

5   universe of discovery a lot better than I do in this case, what

6   is it that you would like me to tell you to do?

7          MR. KOCHER:  That the --

8      (Laughter.)

9          MR. KOCHER:  That the Government produce the

10  outstanding digital evidence.

11         THE COURT:  Does that sound sufficient to the

12  defense, the outstanding digital evidence is what should be

13  produced by next Friday?

14         MR. WOLF:  Yes, Your Honor.

15         THE COURT:  And then you-all anticipate approximately

16  30 days to review that and be able to make a determination as

17  to whether there are responsive documents in there?

18         MR. WOLF:  Yes, Your Honor.  And if for some reason,

19  you know, we feel the need to inform the Court to do it

20  quickly, that I think will -- maybe that was a little too

21  ambitious, but that's certainly going to be the goal.

22         THE COURT:  Well, likely due as well as set, you

23  know, whatever the end of September, end of October time frame

24  for us to reconvene to discuss that issue.  And I also expect

25  by that time you-all have had the conversations with your

1   client to determine whether you're going to persist in the

2   arguments that have been raised regarding records that may not

3   be in the Government's possession.

4           I don't know and you may not know, no one else may

5   know whether those records exist at all, and that may impact

6   your -- the position you take. But I'll expect whenever we

7   reconvene in late September or early October to be able to

8   really assess what the scope of the issues I have to decide on

9   'cause I --

10          And Mr. Wolf and Mr. Hill, you're -- Mr. Allen,

11  you're here, you know, as relative newcomers, but this case has

12  been going on for a while. Your client is detained, which I'm

13  sure is not his preferred place to be, and so the sooner this

14  case moves forward and gets to whatever its ultimate conclusion

15  is, the better for him, for sure, so he can have certainty and

16  these things can be resolved. So it's my expectation that

17  we'll -- you know, we'll likely reconvene, and then I'll decide

18  those issues promptly after that.

19          Any serious heartburn from either side about that

20  proposal?

21          MR. WOLF: No, Your Honor.

22          MS. KOCHER: No, Your Honor.

23          THE COURT: All right. And anything the defense

24  wishes to add on anything that's been filed or anything we've

25  talked about today?

1          MR. WOLF:  Nothing else, Your Honor.  Thank you.

2          THE COURT:  All right.  Thank you very much, Counsel.

3          I will enter an order in the vein we've talked about

4   here regarding production and review of the records and

5   reconvening in a few weeks.  Obviously, if circumstances

6   warrant changing that, let me know and we'll address it.

7          And, again, I do -- my expectation, this case will

8   start moving forward now that we've got counsel here, and we'll

9   be able to resolve this aspect of the case in a relatively

10  short period of time.

11         All right.  Thank you very much, Counsel.  I'll

12  remand the Defendant to the custody of the Marshals, and we'll

13  be in recess.

14         MR. ALLEN:  Thank you, Your Honor.

15      (Proceedings ends at 10:44 a.m.)

16  _____

17                      (END OF TRANSCRIPT.)

18  _____

19

20

21

22

23

24

25

NORTH CAROLINA

CHATHAM COUNTY

<u>CERTIFICATION OF REPORTER</u>

    I, Wanda B. Constantino, CVR-CM-M, contract court reporter for the United States District Court for the Eastern District of North Carolina, do hereby certify that pursuant to Section 753, Title 28, United States Code, that the forgoing is a true and correct transcript of the proceedings held in the above-entitled matter;

    That the proceedings were reported by me using the voice-writing (Stenomask) method; and

    That the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

    Dated this 9th day of September, 2019.


                              /s/ WANDA B. CONSTANTINO
                              Wanda B. Constantino, CVR-CM-M
                              Contract Court Reporter