IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:18-CR-00452-FL-1

**United States of America**,

v.

**Leonid Isaakovich Teyf**,

        Defendant.

**Order**

    Before the court is the latest motion related to a grand jury subpoena served on Defendant Leonid Isaakovich Teyf. The subpoena requires Teyf to produce banking records that federal law requires him to maintain if he has an interest in or authority over certain types of foreign financial accounts. D.E. 175–1.

    Previously, Teyf moved to quash the subpoena, containing several arguments. Mot. to Quash Subpoena, D.E. 175. Among Teyf's arguments in support of his motion was the claim that requiring him to produce documents in response to the subpoena would violate his Fifth Amendment right against self-incrimination. *Id.* at 8–10. Teyf acknowledged that the Fourth Circuit has "applied the 'required records' doctrine" to reject "the Fifth Amendment … as a basis to avoid responding to a subpoena for the records required by 31 C.F.R. § 1010.420." *Id.* at 9. But he claimed that the Supreme Court has since "disaffirmed the rationale underlying the required records doctrine" and, thus this court should not follow the Fourth Circuit's precedent. *Id.* at 10. The court ultimately rejected this and Teyf's other arguments and denied the motion to quash. D.E. 212.

    Despite the court denying the motion to quash, Teyf did not produce the requested documents. Mot. to Compel at 1, D.E. 245. After an unsuccessful attempt to resolve the dispute

informally, the Government asked the court to compel Teyf to respond to the subpoena. *Id.* at 1–2.

Teyf responded to the motion to compel with both old and new arguments. He began by arguing that the court should give him more time to respond to the subpoena because of the vast amount of information produced by the Government in the discovery process. Teyf then renewed his argument that requiring him to produce documents in response to the subpoena would violate his Fifth Amendment right against self-incrimination. And after retaining new counsel, he argued that he should not have to respond because the Government abused the grand jury process by using the grand jury to discover evidence to bolster the existing charges. Teyf suggests that the court should dismiss the Third and Fourth Superseding Indictments as a sanction for the alleged abuse of the grand jury process.

### I. Fifth Amendment

Teyf argues that requiring him to respond to the subpoena would violate his Fifth Amendment right against self-incrimination because producing the documents could reveal that he has not been properly reporting his foreign bank accounts. Resp. to Mot. to Compel at 7, D.E. 269. He maintains that although courts have relied on the required records doctrine to reject this argument, the Supreme Court's decision in *United States* v. *Hubbell*, 530 U.S. 27 (2000), "dispenses with the rationale for the required records doctrine" and allows him to invoke his Fifth Amendment rights to refuse to respond to the subpoena. *Id.*

The Fifth Amendment provides, in part, that "[n]o person … shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The Supreme Court has held that "the Fifth Amendment does not independently proscribe the compelled production of every sort of incriminating evidence[.]" *Fisher* v. *United States*, 425 U.S. 391, 408 (1976). Instead, it

2

"applies only when the accused is compelled to make a Testimonial Communication that is incriminating." *Id.* Thus, a person "cannot avoid compliance with [a] subpoena merely by asserting that the item of evidence which he is required to produce contains incriminating writing, whether his own or that of someone else." *Id.* at 410

Yet there are some circumstances where complying with a subpoena would constitute a testimonial communication subject to Fifth Amendment protection. As the Supreme Court noted in *Fisher*, "[c]ompliance with the subpoena tacitly concede[d] the existence of the papers demanded and their possession or control by" the subpoenaed party. *Id.* at 410. Production may also convey the subpoenaed party's "belief that the papers are those described in the subpoena." *Id.* Thus, under what has come to be known as the act of production doctrine, if "the tacit averments" arising out of the production of documents would be "both 'testimonial' and 'incriminating'" the court may relieve the subpoenaed party from responding on Fifth Amendment grounds. *Id.*

But while the act of production doctrine may provide Fifth Amendment protections to certain documents, the required records doctrine exempts documents from the Fifth Amendment's purview altogether. *See United States* v. *Under Seal*, 737 F.3d 330, 333 (4th Cir. 2013) (explaining that the required records doctrine "renders the Fifth Amendment privilege inapplicable"). A party must meet three requirements to invoke the required records doctrine. First, "the purposes of the United States' inquiry must be essentially regulatory[.]" *Id.* at 334 (citing *Grosso* v. *United States*, 390 U.S. 62, 67–68 (1968)). Second, the "information is to be obtained by requiring the preservation of records of a kind which the regulated party has customarily kept[.]" *Id.* And third, "the records themselves must have assumed public aspects which render them at least analogous to a public document." *Id.*

3

Case 5:18-cr-00452-FL   Document 343   Filed 11/05/19   Page 3 of 11

The Fourth Circuit has held that records a party must keep under the Bank Secrecy Act fall under the required records doctrine. *Id.* at 337–38. Thus, even if the act of production doctrine provides Fifth Amendment protections for the subpoenaed documents, under Fourth Circuit precedent, the required records doctrine strips them of this protection.

Teyf argues that despite the Fourth Circuit precedent he can still rely on the act of production doctrine because "the Supreme Court has never found the required records doctrine to supersede the act of production doctrine set forth in [*United States* v.] *Hubbell*." Resp. to Mot. to Compel. at 7. This argument is unpersuasive.

To begin with, the act of production doctrine predates the Supreme Court's decision in *Hubbell*. It arose out of the Supreme Court's decision in *Fisher*. And since *Fisher*, the Supreme Court has applied the required records doctrine to trump the act of production doctrine. *See Baltimore City Dep't of Soc. Servs.* v. *Bouknight*, 493 U.S. 549 (1990).

What is more, *Hubbell* had nothing to do with the required records doctrine. Instead, *Hubbell* addressed "the precise scope of a grant of immunity with respect to the production of documents in response to a subpoena." *Hubbell*, 530 U.S. at 34. And while the Supreme Court grappled with an exception to the act of production doctrine, it was the foregone conclusion exception, and not the required records doctrine, that came into play in the Court's analysis. *Id.* at 43–46. Thus, *Hubbell* does not affect this matter.

And in *Hubbell*'s aftermath, many courts have found that the required records doctrine overcomes any protections provided by the act of production doctrine for documents a person must maintain under 31 C.F.R. § 1010.420. *See United States* v. *Greenfield*, 831 F.3d 106, 116 n.6 (2d Cir. 2016); *United States* v. *Chen*, 815 F.3d 72, 79 n.7 (1st Cir. 2016); *United States* v. *Chabot*, 793 F.3d 338, 343 (3d Cir. 2015); *In re Grand Jury Proceedings*, 707 F.3d 1262, 1274–75 (11th

4

Cir. 2013); *In re Special February 2011–1 Grand Jury Subpoena Dated September 12, 2011*, 691 F.3d 903, 905–09 (7th Cir. 2012). Thus, Teyf cannot rely on the Fifth Amendment to refrain from responding to the subpoena. *See Under Seal*, 737 F.3d at 334.

## II. Abuse of the Grand Jury Process

Teyf also argues that the subpoena is "an impermissible use of the grand jury process to conduct discovery regarding existing charges and obtain evidence in anticipation of trial." Supp. Resp. in Opp. at 3, D.E. 313. The Government disagrees, arguing that the subpoena seeks to obtain evidence related to additional criminal conduct that Teyf may have committed. After reviewing the arguments of the parties, the court has determined that obtaining evidence for trial was not the subpoena's sole or dominant purpose. Thus, the court rejects Teyf's argument on this point.

In the Fourth Circuit, prosecutors may not "use grand jury proceedings for the 'sole or dominant purpose' of preparing for trial on an already pending indictment." *United States* v. *Alverado*, 840 F.3d 184, 189 (4th Cir. 2016) (quoting *United States* v. *Moss*, 756 F.2d 329, 332 (4th Cir. 1995)). Examples of improper conduct include using "the grand jury to improve its case in an already pending trial by preserving witness statements, locking in a witness's testimony, pressuring potential trial witnesses to testify favorably, or otherwise employing the grand jury for pretrial discovery." *Id*.

But simply because the grand jury has issued an indictment does not mean that it loses its authority to investigate additional crimes. This is because "grand jury witnesses often have information pertinent to both already-indicted charges and new charges." *Id.* at 190. Thus "[t]he Government is allowed to make a good-faith inquiry into charges that are not covered in the indictment, 'even if it uncovers further evidence against an indicted person.'" *United States* v. *Bros. Const. Co. of Ohio*, 219 F.3d 300, 314 (4th Cir. 2000) (quoting *Moss*, 756 F.2d at 332)).

5

Challenging the propriety of a grand jury subpoena is a difficult task because "'[a] presumption of regularity attaches to a grand jury's proceeding[.]'" *Moss*, 756 F.2d at 332 (quoting *United States* v. *Woods*, 544 F.2d 242, 250 (6th Cir. 1976)). And the party resisting the grand jury's attempt to investigate bears "the burden of demonstrating that an irregularity occurred." *Id.* (quoting *Woods*, 544 F.2d at 250).

With these principles in mind, the court turns to its analysis of Teyf's claim.

The grand jury issued the subpoena at issue on February 22, 2019. Mot. to Compel at 1, D.E. 245. It requested that Teyf produce "[a]ny and all records in [his] possession, custody, or control that are required to be maintained pursuant to 31 C.F.R. § 1010.420 … for the past 5 years[.]" Subpoena at 4, D.E. 175–1. The records at issue relate to "foreign financial bank, securities, or other financial accounts in a foreign country for which [Teyf] had/ha[s] a financial interest in, or signature or other authority over and [is] required by law to file a Report of Foreign Bank and Financial Account (FBAR)." *Id.* The subpoena required Teyf to produce the requested records in early March 2019. *Id.* at 1.

When the grand jury issued the subpoena, there were no charges pending that involved foreign financial account records. Teyf conceded as much at the hearing on this motion. Tr. at 17:17–20, D.E. 332 ("When the subpoena was issued, there weren't the pending charges of failure to identify foreign bank accounts and the resulting tax fraud charges for – that go with those.").

Teyf's argument fares no better when considering the Third Superseding Subpoena, issued in April 2019. There are no charges involving foreign financial account records in that document either.

But unlike the other indictments, the Fourth Superseding Indictment, returned in May 2019, implicates records related to foreign bank accounts. In Counts 44–46 of the Fourth Superseding

6

Indictment, the grand jury charged Teyf with falsely claiming on his tax returns that he did not have "a financial interest in or signature authority over a financial account located in a foreign country[.]" Forth Superseding Indictment ¶ 67, D.E. 248. The grand jury also charged Teyf with two counts of failing to file required reports "disclosing his financial interest in, and other authority over" various foreign bank accounts. *Id.* ¶¶ 69–70. The documents requested by the subpoena could provide evidence in support of these charges because they would show that Teyf had a financial interest in or signature or other authority over a foreign bank account.

Even so, just because a subpoena may turn up evidence about charged offenses does not mean that the Government has abused the grand jury process. And the Government has supplied a legitimate reason for seeking the documents: failure to maintain the requested records is a separate violation of federal law. *See* 31 U.S.C. § 5322.

Additionally, the timing of the subpoena and the Fourth Superseding Indictment do not support Teyf's argument. The grand jury issued the subpoena three months before it issued the Fourth Superseding Indictment and set a response date about two months before the return of the Fourth Superseding Indictment. It is hard to conclude that the Government sought the subpoena for the sole or dominant purpose of obtaining evidence for pending charges when those charges would not be pending for months after the subpoena issued.

In contrast, the Government has substantial support for its position. The court begins with a presumption that the subpoena is valid. *Moss*, 756 F.2d at 332. On top of the presumption is the potential for additional charges related to the subpoenaed material and the fact that the grand jury issued the subpoena months before any charges existed related to foreign bank account records. After considering these factors, the court concludes that Teyf has not shown that the Government's

7

sole or dominant purpose for requesting the subpoena was to obtain evidence related to pending charges.

Teyf points the court to the Second Circuit's decision in *In re Grand Jury Subpoena Duces Tecum Dated January 2, 1985 (Simels)*, 767 F.2d 26 (2d Cir. 1985) in support of his position. The defendant in *Simels* faced trial on various federal drug charges. *Id.* at 27. The Government claimed that before withdrawing from the case, one of the defendant's attorneys commented that he expected the defendant to pay him $250,000 in legal fees. *Id.* A grand jury then returned a superseding indictment against the defendant charging him "with organizing and engaging in a continuing criminal narcotics enterprise[.]" *Id.* In connection with the new count, the indictment "sought the forfeiture of 'all profits and proceeds of profits obtained' by [the defendant] from the operation of the enterprise." *Id.* at 27–28.

Soon after, the Government sent a trial subpoena to the defendant's new attorney requiring him to produce documents related to payment or proposed payments for legal services from the defendant. *Id.* at 28. The attorney and members of the bar strongly objected to the subpoena. *Id.* The Government ultimately decided not to pursue the trial subpoena, but then the attorney received a grand jury subpoena for the same information. *Id.*

The attorney moved to quash the subpoena because its sole or dominant purpose was to obtain evidence for trial. *Id.* On appeal the Second Circuit noted that "[t]he timing of the subpoena casts significant light on its purposes." *Id.* at 29. The Government conceded that "[t]he trial subpoena was served solely for evidentiary purposes." *Id.* And although the Government eventually abandoned the trial subpoena in favor of a grand jury subpoena, the court saw "no reason to believe that this concession signified a shift in the uses to which the government intended to put the information sought." *Id.* at 29–30. Ultimately, the Court of Appeals concluded that the

8

Case 5:18-cr-00452-FL   Document 343   Filed 11/05/19   Page 8 of 11

government was unable "to rebut the defendant's strong showing that the government's dominant purpose, both in October 1984 and January 1985, was pretrial preparation." *Id.* at 30. As a result, the Court of Appeals reversed the district court's denial of the motion to quash. *Id.*

There are substantial, material distinctions between *Simels* and this case. For one thing, the Government did not use a trial subpoena to obtain the documents before the grand jury issued its subpoena. And when the subpoena issued, there were no pending charges related to foreign bank accounts that the documents could support. What is more, the Government can identify additional uncharged crimes that the documents relate to. Thus, *Simels* provides no support for Teyf's position.

When considering all evidence before the court, Teyf has not shown that the subpoena's sole or dominant purpose is to obtain evidence for trial. Given the presumption of regularity that attaches to grand jury proceedings, the timing of the subpoena's issuance, and the potential for the requested documents to lead to additional criminal charges, the Government has not abused the grand jury process. Thus, this argument does not justify denying the motion to compel.

### III. Production of Responsive Documents

Teyf maintains that the court should not require him to produce the documents until his attorneys have had the chance to review them. Practically speaking, there is no other way that production can take place. Counsel cannot produce responsive documents until they know if responsive documents exist.

At the hearing on this matter, Teyf's counsel asserted that they would need 30 days to review the documents produced by the Government.[1] Since that time, Teyf has requested (and

---

[1] The court also instructed Teyf to notify the court if he wishes to persist in his arguments that complying with the February 22, 2019 subpoena would violate his Fifth or Sixth Amendment rights and propose a timeline for production of documents. D.E. 322.

9

received) two 30-day extensions of time to complete the document review. D.E. 338, 339, 341, 342.

The court is sympathetic to the difficulties of reviewing a substantial amount of electronically stored information. But with arraignment set for mid-January 2020 and the trial set for March 2020 (D.E. 334), Teyf needs to produce responsive documents promptly to allow the grand jury to complete its work. The parties also need to know the charges against Teyf so that they can prepare for trial. Thus, the court believes it is appropriate to require Teyf to engage in rolling production of responsive documents so that this aspect of the case can move ahead. Thus, the court will require the parties to develop a schedule for rolling production of documents.

## IV. Conclusion

For all these reasons, the motion to compel is granted. The court orders that:

1. No later than 14 days after entry of this order the parties must meet and confer and submit a schedule for rolling production of responsive documents. Teyf will make his first production of responsive documents on November 29, 2019, and he will complete the production in enough time to allow the parties to prepare for arraignment and trial. If the parties cannot agree on a schedule for production, each side must submit a proposed schedule. If Teyf has located no responsive documents by a deadline, he must serve a notice on the Government stating so.

2. No later than three days after each production deadline, Teyf's counsel must file a status report that specifies the number of pages or amount of data reviewed since the prior production, the approximate number of pages or amount of data his counsel must still review, and a good-faith estimate of the time required to complete review and production.

3. If counsel anticipate a need to move the arraignment date, trial date, or any other date set out in the scheduling order to accommodate the review and production of documents, they should promptly address that issue with the district judge.

4. These deadlines are stayed if Teyf seeks review of this order. The stay will remain in place until the review is resolved.

5. The court relieves Teyf from complying with Paragraphs 2 and 3 of the August 23, 2019 Order.

Dated: November 5, 2019

_____
Robert T. Numbers, II
United States Magistrate Judge