IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:18-CR-00452-FL-1

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| v. | ) | ORDER |
| | ) | (SEALED)[1] |
| | ) | |
| LEONID ISAAKOVICH TEYF, | ) | |
| | ) | |
| Defendant. | ) | |

This matter comes before the court on defendant's motion to suppress certain evidence and return seized and restrained property, in accordance with the Fourth, Fifth, and Sixth Amendments to the United States Constitution. (DE 182). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Criminal Procedure 59(b), United States Magistrate Judge Robert T. Numbers, Jr., entered memorandum and recommendation ("M&R"), wherein it is recommended that defendant's motion be denied. (DE 247). Following opportunity to secure new retained counsel, defendant timely objected to the M&R. In this posture, the issues raised are ripe for ruling. For the reasons noted, defendant's motion to suppress evidence and return seized and restrained property is denied.

### STATEMENT OF THE CASE

Defendant was indicted for conspiracy to commit money laundering, money laundering, bribery of a public official, murder for hire, possession of a firearm with an obliterated serial

---

[1] Where the court's order relies upon confidential information contained in the sealed materials in this case, the court SEALS this order. Within 14 days from date of entry of this order, the parties shall confer and tender by U.S. Mail to the clerk's office a proposed redacted order, for the court's inspection and approval. If said order meets with its approval, it will be lodged on the public docket. If the court determines proposed redactions of any portion of this order not subject to sealing, the court's further notice will follow.

number, conspiracy to harbor illegal aliens, visa fraud, making false statements on a tax return, and failing to file a report of foreign bank and financial accounts. In the fourth superceding indictment returned May 9, 2019, the government also noticed forfeiture of certain property in this case, including: four tracts of real property; 17 firearms; all related ammunition and accessories; six motor vehicles; artwork purchased on or about August 14, 2015, for $2,600,000.00; 25 bank accounts; miscellaneous jewelry; and sums of currency.

On March 15, 2019, defendant filed the instant motion to suppress. Defendant contends that seizure warrants issued December 5, 2018, pertaining to four motor vehicles and 22 bank accounts, are not supported by probable cause. Defendant argues that, even if the seizure warrants are facially valid, the affidavits supporting the seizure warrants contain false and misleading statements rendering the warrants defective. Defendant further argues the seizures of his property, including his cars, artwork, and currency, made at his residences located on New Market Way and Glenwood Avenue in Raleigh, North Carolina, exceeded the scope of the search warrants issued for those locations. Finally, defendant asserts the government unlawfully restrained assets untainted by defendant's alleged bribery and kickback scheme. In support of the motion, defendant relies upon an officer's affidavit from one of the seizure warrants,[2] administrative notice

---

2     The affidavits supporting the warrant applications are substantively the same. See United States of America v. 2014 Mercedes Benz S55OV, with VIN# WDDUG8CB9EA008419, 5:18-MJ-02082-JG-1, DE 1 (E.D.N.C. Dec. 5, 2018); United States of America v. Branch Bank and Trust Accounts, No. 5:18-MJ-02083-JG-1, DE 1 (E.D.N.C. Dec. 5, 2018); United States of America v. 2014 Mercedes Benz S550, with VIN #WDDUG8CB9EA009828, No. 5:18-MJ-02084-JG-1, DE 1 (E.D.N.C. Dec. 5, 2018); United States of America v. PNC Bank Accounts, No. 5:18-MJ-02085-JG-1, DE14 (E.D.N.C. Dec. 5, 2018); United States of America v. 2018 Mercedes Benz S63 AMG 4MA, with VIN # WDDUG8JB0JA394158, No. 5:18-MJ-02086-JG-1, DE 1 (E.D.N.C. Dec. 5, 2018); United States of America v. Bank of America Accounts, No. 5:18-MJ-02088-JG-1, DE 1 (E.D.N.C. Dec. 5, 2018); United States of America v. 2018 Mercedes Benz S560, with VIN# WDDUG8DB8JA368001, No. 5:18-MJ-02089-JG-1, DE 1 (E.D.N.C. Dec. 5, 2018); USA v. First Citizens Bank Accounts, No. 5:18-MJ-02090-JG-1, DE 1 (E.D.N.C. Dec. 5, 2018). Accordingly, the court refers to the affidavit made in support of seizure of defendant's accounts at Bank of America as the exemplar for all other affidavits. (See Officer's Aff. (DE 182-1)).

of forfeiture, the report of investigation from the United States Department of Homeland Security debriefing confidential source one ("CS-1"), and search warrants issued by a magistrate judge for the New Market Way and Glenwood Avenue properties.[3]

Following hearing on April 24, 2019, the magistrate judge issued M&R, recommending the court deny defendant's motion in its entirety, except for release of defendant's jewelry, which had already been released May 8, 2019, by order of the court. After a delay caused by withdrawal of defense counsel, defendant's newly retained counsel timely filed objections to the M&R.

## STATEMENT OF FACTS

The court recites the facts as summarized in the affidavits supporting the warrants for seizure of defendant's bank accounts and motor vehicles. From approximately February 2007 to November 2012, Anatoliy Serdyukov ("Serdyukov") served as Russian Minister of Defense. (Officer's Aff. (DE 182-1) ¶ 62.b.). During that time, the company Voentorg became the primary contractor and private supplier to the Russian military. (Id.). Between 2010 and 2012, defendant served as Deputy Director of Voentorg, and he awarded contracts to subcontractors that fulfilled the government contracts. (Id.).

CS-1 provided security to defendant while in Russia and acted as a go-between for defendant and business associates. (Id. ¶ 62.a.). CS-1 overheard conversations between defendant and subcontractors discussing a "kickback" as a "percentage" of the contract to be paid by the subcontractors to defendant. (Id. ¶ 62.c.). CS-1 was also present for multiple conversations

---

[3]  The search warrants for these residences remain under seal. See United States of America v. 6510 New Market Way, Raleigh, North Carolina, No. 5:18-MJ-02079-JG-1, DE 3 (E.D.N.C. Dec. 5, 2018); United States of America v. 510 Glenwood Ave, Unit 503, Raleigh, North Carolina, No. 5:18-MJ-02079-JG-1, DE 3 (E.D.N.C. Dec. 5, 2018). Defendant filed the search warrants under seal in the instant action as well. (See New Market Way Search Warrant (DE 183-1); Glenwood Avenue Search Warrant (DE 183-2)).

3

between defendant and Andrei Shokin ("Shokin"), who defendant hired to manage his companies. (Id. ¶ 62.d.). The focus of these conversations was on how to transfer the kickback proceeds. (Id.). Defendant also hired Yelena Zelenova ("Zelenova"), an accountant who maintained records of defendant's companies, including any kickbacks received. (Id.).

While the scheme was being perpetrated, defendant instructed CS-1 to meet couriers at various locations around Russia to receive large sums of cash. (Id. ¶ 62.e.). CS-1 opened the packages to ensure money was enclosed but never counted the cash due to the significant amounts involved. (Id.). Upon receipt, defendant would call CS-1 and tell the source where to deliver the proceeds; CS-1 took the cash to the particular accountant as instructed. (Id.). The accountants were coordinated by Zelenova but did not work directly for her. (Id.).

Most of the kickback proceeds were paid by defendant to Serdyukov, with defendant retaining the next largest share, and any remaining amount paid to other co-conspirators. (Id. ¶ 62.f.). CS-1 made three deliveries of large amounts of cash to Serdyukov through Serdyukov's son-in-law "Puzikov." (Id.). CS-1 estimated the cash to be in the amounts of $70,000,000.00, $30,000,000.00, and $50,000,000.00. (Id.). Sometime in or about 2013, defendant's scheme became public. (Id. ¶ 62.g.). An investigation was initiated by Russian authorities. (Id.). At defendant's direction, $400,000.00 was delivered to an associate of the chief prosecutor in order to end the investigation. (Id.).

CS-1 would take money for defendant or sometimes provide escorts for others taking money on behalf of defendant to Alfa Bank in Russia. (Id. ¶ 62.h.). While handling defendant's emails, CS-1 saw documents showing defendant transferred some of the money internationally. (Id.).

In the meantime, defendant made arrangements to move to the United States. In 2010, John P. Cotter ("Cotter"), as shareholder of Delta Plus, LLC, sponsored defendant to receive a United States visa. (Id. ¶ 6). Delta Plus, LLC, is a controlled subsidiary of FG Delta Plus, with FG Delta Plus contributing 80% of the capital or $480,000.00 to Delta Plus, LLC. (Id. ¶¶ 11, 67). On or about December 28, 2010, Cotter testified under oath in a Form I-140[4] that defendant was seeking status as an alien worker in the United States to permanently assume the position of President of Delta Plus, LLC with an annual salary of $110,000.00. (Id. ¶ 66.a.). Defendant signed Forms I-134[5] on or about December 28, 2010. (Id. ¶ 4). He declared that he was president of Delta Plus, LLC, effective May 2010, and had previously served as president of FG Delta Plus from April 2005 to May 2010. (Id. ¶ 4.c.).

Between January 18, 2011 and October 2, 2013, defendant and co-defendant Tatyana Teyf received approximately $39,500,000.00 through close to 300 wires into four domestic bank accounts controlled by them. (Id. ¶¶ 31, 71). The money wires originated from bank accounts held by numerous businesses in countries denominated by the United States Department of State as "jurisdictions of concern" and "jurisdictions of primary concern" for money laundering. (Id. ¶ 73). Some of wire instructions accompanying the transfers appear inconsistent with defendant's representations in his tax returns and immigration applications. (See id. ¶ 72 n.2, 3, 4, 5). Since January 19, 2011, defendant and his associates made over 575 transfers between the accounts used to receive the international wires and other bank accounts under their control. (Id. ¶ 74).

---

[4] Form I-140 is an immigrant petition for alien workers. The form is used to apply for an employment-based immigrant visa.

[5] Form I-134 is an affidavit in support of a petition for visa. The form is used to provide supplemental information to the United States Citizenship and Immigration Services agency in reference to immigration applications.

Subsequent to moving to the United States, defendant entered into other ventures with co-defendants Alexey Timofeev, Alexei Polyakov, and others, including CTK Transportation, Inc. (2012); Carolina Transport Group, Inc. (2014); and Lank Ventures, LLC (2017). (See id. ¶¶ 13-15). For calendar years 2011 through 2013, defendant and co-defendant Tatyana Teyf filed joint income tax returns. (Id. ¶ 77). These defendants reported total household income of $53,155.00 in 2011, $99,106.00 in 2012, and $59,296.00 in 2013. (See id. ¶ 77.a.). Defendants reported during those years that they had no financial interest in or signatory authority over a financial account located in a foreign country. (Id. ¶ 77.b.). In addition, CTK Transportation reported no net receipts in 2012 and $432,548.00 in 2013. (Id. ¶ 78).

Additional facts pertinent to the instant motion will be discussed below.

## DISCUSSION

A.  Standard of Review

The district court reviews de novo those portions of a magistrate judge's M&R to which specific objections are filed. 28 U.S.C. § 636(b). The court does not perform a de novo review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

6

B.  Analysis

   1.  Probable Cause for Seizure Warrants

For a warrant seizing a defendant's property to be constitutionally reasonable, it must be supported by probable cause. U.S. Const. amend. IV. Probable cause to seize a criminal defendant's property pending forfeiture requires two distinct determinations. First, there must be probable cause to believe "that the defendant has committed an offense permitting forfeiture." Kaley v. United States, 571 U.S. 320, 323–24 (2014). On this first issue, an indictment by the grand jury is conclusive. Id. at 340–41. Second, there must be probable cause "that the property at issue has the requisite connection to that crime." Id. at 324.

As to the second issue, probable cause means that a person of ordinary prudence, considering the totality of the circumstances, could reasonably believe the assets have a "substantial connection" to the crime on which forfeiture is predicated. United States v. Herder, 594 F.3d 352, 364 (4th Cir. 2010); United States v. Leak, 123 F.3d 787, 791–92 (4th Cir.1997); United States v. Thomas, 913 F.2d 1111, 1117 (4th Cir.1990). In the case of a money laundering offenses under 18 U.S.C. §§ 1956 and 1957, assets bear a "substantial connection" to criminal offenses if the assets are "involved in" or "traceable to" the alleged offenses. See 18 U.S.C. §§ 981(a)(1)(A), 982(a)(1); United States v. Miller, 911 F.3d 229, 232–33 (4th Cir. 2018).

Although the United States Court of Appeals for the Fourth Circuit has not defined the requisite nexus for property to be "involved in" money laundering transactions, several circuits have defined "involved in" to encompass the corpus of a money laundering offense, as well as "any commissions or fees paid to the launderer, and any property used to facilitate the laundering offense." Miller, 911 F.3d at 233 n.4 (collecting cases). Legitimate funds commingled with

7

laundered funds are "involved in" the money laundering offense, and thus the entire property is forfeitable. Id. (finding probable cause that properties were "involved in" money laundering transactions because their value, at least in part, comprised the corpus of those transactions); see also United States v. Moore, 27 F.3d 969, 976–77 (4th Cir. 1994) ("A requirement that the government trace each dollar of the transaction to the criminal, as opposed to the non-criminal activity, would allow individuals effectively to defeat prosecution for money laundering by simply commingling legitimate funds with criminal proceeds."). "The possession or transfer of 'large sums of money, and the manner in which those funds were acquired [are] highly relevant'" in white-collar and fraud investigations. United States v. Srivastava, 540 F.3d 277, 291 (4th Cir. 2008) (quoting United States v. Shamy, 656 F.2d 951, 958 (4th Cir.1981)).

"An affidavit must provide the magistrate with a substantial basis for determining the existence of probable cause." Illinois v. Gates, 462 U.S. 213, 239 (1983). As such, the court considers only "the information actually presented to the magistrate during the warrant application process." United States v. Lull, 824 F.3d 109, 119 n.3 (4th Cir. 2016) (quoting Owens ex rel. Owens v. Lott, 372 F.3d 267, 277 (4th Cir. 2004)).

The affidavits allege CS-1, a reliable confidential source that provided security and acted as a go-between for defendant, had personal knowledge of defendant's business dealings while in Russia. (See Officer's Aff. (DE 182-1) ¶ 62.a.). Between 2010 and 2012, defendant served as Deputy Director of Voentorg, a major contractor for the Russian military. (Id. ¶ 62.b). CS-1 overheard conversations between defendant and subcontractors discussing that a "kickback" as a "percentage" of the contract would be paid by the subcontractor to defendant. (Id. ¶ 62.c.). While the bribe/kickback scheme was being perpetrated, defendant instructed CS-1 to meet couriers at

various locations around Russia, pickup large sums of cash and deliver the money to several different, unrelated accountants coordinated by Zelenova. (Id. ¶ 62.e.). The proceeds of the scheme totaled more than $150,000,000.00. (See id. ¶ 62.f.). In helping defendant handle his emails, CS-1 saw documents showing at least some of the bribe proceeds were transferred internationally. (Id. ¶ 62.h.).

Between 2011 and late 2013, defendant and his wife, co-defendant Tatyana Teyf, received approximately 294 international wire transfers in four domestic bank accounts totaling $39,500,000.00. (See id. ¶ 71). The funds were transferred from countries the State Department classifies as major money laundering jurisdictions. (Id. ¶ 73 n.6). More importantly, the affidavits offer evidence that these wires did not originate from legitimate sources. Defendant's immigration petition reflected anticipated income of $110,000.00. (Id. ¶ 66.a.). His joint tax returns for 2011, 2012, and 2013 indicate defendant's total household income never exceeded $100,000.00. (Id. ¶ 77.a.). Defendant's tax returns also state he and co-defendant Tatyana Teyf had no interest in any accounts located in a foreign country. (Id. ¶ 77.b.). His receipts for CTK Transportation do not account for money transferred. (Id. ¶ 78). The instructions describing the alleged purposes of the wires appear fabricated. (See id. ¶ 72 n. 2–5). Finally, once the funds were moved to the United States, they have been moved between various accounts approximately 575 times. (Id. ¶ 74). Taken together, these facts establish probable cause to believe the property seized by the government was involved in defendant's money laundering.

Defendant argues that the allegations in the affidavit do not establish a nexus between the seized property and the alleged kickback scheme. Defendant points to several purported flaws in the affidavit, including 1) that CS-1 was never expressly instructed to pick up funds from a

9

subcontractor, and 2) that the affidavit supporting the seizure warrant does not allege facts connecting the transfer of "some bribe" proceeds to Cyprus to the international transfer of funds to defendant in the United States through numerous corporations. (Def. Obj. (DE 330) at 6–7).

The court rejects defendant's argument. Defendant received tens of millions of dollars in cash from international wires, with no legitimate explanation to account for these wires. CS-1 provided testimony that indicates the amount of money received from the transfers was consistent with the amount provided to others involved in the scheme. Finally, the source of the funds, the way they arrived in the United States, and the unusually frequent transfers of money between accounts once the money arrived in the United States, are indicative of money laundering. The government demonstrates probable cause that the assets seized are involved in defendant's money laundering. See Miller, 911 F.3d at 233 n.4; Moore, 27 F.3d at 976–77.

2.Alleged False Information and Omission of Material Facts in Officer's Affidavits

Defendant asserts that, even if the seizure warrants are facially valid, the affiants made false statements and omissions that render the warrants invalid. "An accused is generally not entitled to challenge the veracity of a facially valid search warrant affidavit." United States v. Allen, 631 F.3d 164, 171 (4th Cir. 2011). However, the Fourth Amendment requires a hearing on the validity of a warrant "[w]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause." Franks v. Delaware, 438 U.S. 154, 155–56 (1978).

A showing of falsity "'must be more than conclusory' and should include affidavits or other evidence to overcome the 'presumption of [the warrant's] validity.'" United States v.

Clenney, 631 F.3d 658, 663 (4th Cir. 2011) (quoting Franks, 438 U.S. at 171). "[T]he defendant cannot rely on a purely subjective disagreement with how the affidavit characterizes the facts. Rather, there must be evidence showing that the statements at issue are objectively false." United States v. Moody, 931 F.3d 366, 370–71 (4th Cir. 2019).

"[T]he defendant must [also] provide facts—not mere conclusory allegations—indicating that the officer subjectively acted with intent to mislead, or with reckless disregard for whether the statements would mislead, the magistrate. Id. (citing United States v. Colkley, 899 F.2d 297, 301 (4th Cir. 1990)). "Allegations of negligence or innocent mistake are insufficient." Herring v. United States, 555 U.S. 135, 145 (2009) (quoting Franks, 438 U.S. at 171); United States v. Lull, 824 F.3d 109, 115 (4th Cir. 2016) (internal citations omitted).

Finally, the defendant must establish that the false statement or omission was material, meaning that its inclusion or exclusion is "necessary to the finding of probable cause." Moody, 931 F.3d at 371 (internal citations omitted); United States v. Wharton, 840 F.3d 163, 168 (4th Cir. 2016). "To determine materiality, a court must 'excise the offending inaccuracies and insert the facts recklessly omitted, and then determine whether or not the 'corrected' warrant affidavit would establish probable cause.'" Miller v. Prince George's Cty., MD, 475 F.3d 621, 628 (4th Cir. 2007) (quoting Wilson v. Russo, 212 F.3d 781, 789 (3d Cir. 2000). "The burden of making the necessary showing" to be entitled to a Franks hearing "is thus a heavy one to bear." United States v. Tate, 524 F.3d 449, 454 (4th Cir. 2008).

Defendant asserts five different items in the affidavits were false statements or omissions: 1) characterization of defendant's actions as extortion, 2) stating CS-1 saw "bribe proceeds" being transferred instead of "money," 3) omitting the year when CS-1 delivered payments to the former

Russian Defense Minister, 4) failing to identify the specific Russian law defendant violated in perpetrating the kickback scheme, and 5) failing to identify all countries flagged by the State Department as jurisdictions of concern or jurisdictions of primary concern for money laundering.

Turning to first to the affidavit's use of the word "extortion," the affidavit uses the term "extort" in three places. (See Officer's Aff. (DE 182-1) at 33, ¶¶ 62.d., 79.d.). Defendant's point that extortion involves a threat, and that no threats appear on the face of the affidavit, is well taken as to showing of falsity. See, e.g., 18 U.S.C. §§ 875, 876, 3559(c)(2)(C). However, defendant fails to carry his burden to show use of the term "extort" in the affidavits was intentional or in reckless disregard of the truth, as opposed to innocent or merely negligent. See Moody, 931 F.3d at 370–71. Moreover, striking the term "extort" from the affidavit does not undermine issuing magistrate judge's probable cause determination, because whether or not the kickbacks were obtained by threat is irrelevant to the charge of bribery of a public official.

Second, defendant argues that the affidavit misrepresents CS-1's statement by stating that "at least some of the bribe proceeds" were transferred to banks in Cyprus, when the report of investigation says that "money" was transferred to Cyprus. (See Officer's Aff. (DE 182-1) ¶ 62.h.; Report of Investigation (DE 182-3) at 7). Defendant's citation to the report of investigation does not show the statement contained in the affidavit is false. CS-1 told agents that he or she "saw documents indicating money was transferred to Cyprus." (Report of Investigation (DE 182-1) at 7). Reading the report, the documents CS-1 refers to are records of defendant's money laundering. (See Report of Investigation (DE 182-1) at 5 ("CHS gained some knowledge of TEYF's dealings through emails.")). In addition, no evidence appears in the record to suggest that CS-1 moved money other than money from the kickback scheme for defendant. For the same reasons,

12

defendant cannot show that use of the words "bribe proceeds" instead of "money" was intentional or in reckless disregard for the truth. Moreover, excising the language identified by defendant does not defeat a finding of probable cause. As the magistrate judge correctly notes, defendant's argument does not change the fact that defendant allegedly generated massive amounts of money for him and others, received a large some of money from international wires without legitimate reason, or received and moved the money through suspect transfers.

Third, defendant argues that failure to include CS-1's testimony that payments were made to the Russian Defense Minister "in the 2013 timeframe" is a misleading omission. (See Report of Investigation (DE 182-3) at 5). Defendant argues this information undermines the credibility of CS-1's testimony, because paying bribes to the Russian Defense Minister did not make sense once he was no longer in public office, because defendant had nothing to gain. (Def. Obj. (DE 330) at 9). Even if the court assumes the omission was false, defendant has not presented any evidence that the exclusion of this information from the affidavit was intentional or in reckless disregard of the truth, or that the exclusion was material to determination of probable cause. As the United States Court of Appeals for the Fourth Circuit has observed, "[b]ribes often are paid before the fact, but 'it is only logical that in certain situations the bribe will not actually be conveyed until the act is done.'" United States v. Harvey, 532 F.3d 326, 335 (4th Cir. 2008) (internal citations omitted); United States v. Jennings, 160 F.3d 1006, 1014 (4th Cir. 1998) (internal citations omitted). Therefore, the warrant would be supported by probable cause even if CS-1 delivered payments to the Russian Defense Minister in 2013, after defendant left Voentorg.

Fourth, defendant argues that failure to cite a particular Russian law violated by defendant's kickback scheme renders the warrant fatally defective, because the federal money

13

laundering statute is directed at proceeds of specified unlawful activity. See 18 U.S.C. § 1956(c)(7)(B)(iv) (defining specified unlawful activity). The affidavit expressly charges that defendant's kickback scheme involves "offenses against a foreign nation involving the bribery of a public official." (See Officer Aff. (DE 182-1) ¶¶ 1, 2). Here, defendant has not provided any evidence to show the government's omission of a statutory citation makes the statement false or misleading. See Moody, 931 F.3d at 370–71; cf. Fed. R. Crim. P. 7(c)(2) ("Unless the defendant was misled and thereby prejudiced, neither an error in a citation nor a citation's omission is a ground to dismiss the indictment or information or to reverse a conviction."). Indeed, the initiation of a criminal investigation by Russian authorities cuts the other way, suggesting that the kickback scheme does violate Russian law involving bribery of a public official. (See id. ¶ 62.h.). Similarly, defendant has not provided any evidence that the failure to exclude the citation is intentional or in reckless disregard for the truth, as opposed to merely negligent or innocent. Finally, for the same reasons that defendant has not shown the government's failure to include a statutory citation is false, defendant also has not shown that mere failure to cite to a statute defeats probable cause.[6]

Finally, defendant argues that characterizing the foreign countries from which he received international wires as "jurisdictions of primary concern" or "jurisdictions of concern" is technically true, but misleading to the point of being deceptive without additional context. (Def. Obj. (DE 330) at 11–12; see Officer's Aff. (DE 182-1) ¶ 73). At the outset, defendant concedes that the statements are not false. This defeats any claim that defendant has to a Franks hearing on

---

[6] Defendant also argues that he does not have sufficient notice of the theories of forfeiture under which the government is proceeding under 18 U.S.C. §§ 981 and 982. (See Officer's Aff. (DE 182-1) ¶ 79). However, the officer's affidavit cites 18 U.S.C. §§ 981(a)(1)(A) and 982(a)(1) in the plea for relief. (See Officer's Aff. (DE 182-1) ¶¶ 80, 81). As to the portions of the affidavit discussing property facilitating the offense, defendant fails to show any statement was intentional or in reckless disregard for the truth, as several circuits define property "involved in" money laundering to include property that facilitates an offense. Miller, 911 F.3d at 233 n.4.

14

the statement. See Moody, 931 F.3d at 370–71 ("[T]he defendant cannot rely on a purely subjective disagreement with how the affidavit characterizes the facts."); Allen, 631 F.3d at 171. In addition, clarifying that "jurisdictions of primary concern" is based on the amount of proceeds laundered rather than a jurisdiction's anti-money laundering measures does not undermine the probable cause determination in this case.

For these reasons, the court concludes defendant has not carried the "heavy" burden that must be met to show entitlement to a Franks hearing. See Tate, 524 F.3d at 454.

3. Pretrial Restraint of Defendant's Assets

Defendant repeatedly argues that the government is required to perform a tracing analysis before it may seize his property. The principal case defendant relies upon, United States v. Chamberlain, held that the statute authorizing pretrial forfeiture only "permits the government to obtain a pretrial restraining order over only those assets that are directly subject to forfeiture as property traceable to a charged offense." 868 F.3d 290, 297 (4th Cir. 2017) (en banc). Defendant's reliance on Chamberlain is misplaced. The court's use of the phrase "traceable to a charged offense" in its holding does not require a tracing analysis in the technical sense. See Moore, 27 F.3d at 976–77. Rather, it means that the property must have the requisite connection to an alleged crime provided by the forfeiture statute. See Kaley, 571 U.S. at 324. In the instant case, the statutes authorizing forfeiture provide that property is forfeitable if it is "involved in" or "traceable to" money laundering. 18 U.S.C. §§ 981(a)(1)(A), 982(a)(1). By the plain language of the statute, the government is not required to engage in a tracing analysis if it can show probable cause that the seized property is "involved in" the alleged money laundering. See Miller, 911 F.3d at 233–35 (analyzing separately whether property was "involved in" or "traceable to" the alleged crime).

15

Defendant may produce a tracing analysis of his own to probable cause for seizing the assets. See United States v. Cohen, 888 F.3d 667, 673 n.4 (4th Cir. 2018) (citing United States v. Farmer, 274 F.3d 800, 803–05 (4th Cir. 2001)) ("[D]ue process requires a pretrial hearing on the propriety of an asset seizure if the accused can show that a portion of the restrained assets are untainted."). However, as discussed by the court above, the government has elicited sufficient facts to show probable cause that property seized was involved in defendant's kickback scheme. Moreover, defendant has failed to come forward with evidence that any property seized by the government is untainted. Accordingly, the court denies defendant's motion to release assets.

4. Scope of Search Warrants

Finally, defendant contends that the government exceeded the scope of its search warrants for the New Market Way and Glenwood Avenue properties.[7] In addition to requiring probable cause, the Fourth Amendment requires that warrants must "particularly describe[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The particularity requirement prevents general searches and "assures the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search." Groh v. Ramirez, 540 U.S. 551, 561 (2004) (citing Maryland v. Garrison, 480 U.S. 79, 84 (1987)); see Stanford v. State of Tex., 379 U.S. 476, 483–86 (1965) (describing the history underpinning the particularity requirement); United States v. Williams, 592 F.3d 511, 519 (4th Cir.2010) (holding the particularity requirement "is fulfilled when the warrant identifies the

---

[7] The government and defendant agreed to the release of certain jewelry. The magistrate judge found that the agreement mooted the parties' contentions regarding the scope of the warrant. Defendant does not object to the finding that the issue regarding release of the jewelry is moot, and the court finds no clear error in this determination. However, defendant objects to other property seized, such as his cars and artwork, as outside the scope of the search warrant.

16

items to be seized by their relation to designated crimes and when the description of the items leaves nothing to the discretion of the officer executing the warrant").

"It is fair to gauge the breadth of a warrant with an eye toward the purposes for which it was secured." United States v. Lyles, 910 F.3d 787, 795 (4th Cir. 2018) (finding three stems of smoked marijuana did not support a warrant for a host of things seemingly unconnected to marijuana possession). "The complexity of an illegal scheme may not be used as a shield to avoid detection when the State has demonstrated probable cause to believe that a crime has been committed and probable cause to believe that evidence of this crime is in the suspect's possession." Andresen v. Maryland, 427 U.S. 463, 481 n. 10 (1976); United States v. Phillips, 588 F.3d 218, 225–26 (4th Cir. 2009). In construing the particularity requirement, "courts must refrain from interpreting warrant terms in a 'hypertechnical' manner, and should instead employ a 'commonsense and realistic' approach." United States v. Dargan, 738 F.3d 643, 647–48 (4th Cir. 2013) (quoting Williams, 592 F.3d at 519). As the Fourth Circuit has explained:

> The fact that the warrant does not explicitly mention receipts is not determinative: law enforcement officers may seize an item pursuant to a warrant even if the warrant does not expressly mention and painstakingly describe it. Indeed, [a] warrant need not—and in most cases, cannot—scrupulously list and delineate each and every item to be seized.

Id. at 648 (internal quotations omitted); Phillips, 588 F.3d at 225; United States v. Dornhofer, 859 F.2d 1195, 1198 (4th Cir. 1988).

In Srivastava, the Fourth Circuit considered whether a warrant for evidence including "fruits, evidence and instrumentalities of false claims submissions" and listed items, "including but not limited to" certain contraband, failed under the particularity requirement. 540 F.3d at 289. The court upheld the search, concluding that a warrant was sufficiently particular where a warrant issued for evidence sought documents related to defendant's business and that may constitute

evidence of health care fraud. Id. at 291. In Phillips, the court construed "broadly inclusive" language to seize records not explicitly mentioned by the affidavit, observing that "the evidentiary significance of each and every item may not be instantly apparent." 588 F.3d at 223–24.

Similar to Srivastava and Phillips, the search warrants in this case allow for seizure of items that are "evidence, fruits, and instrumentalities" of defendant's complex money laundering scheme. (New Market Way Search Warrant (DE 183-1) at 32; Glenwood Avenue Search Warrant (DE 183-2) at 7). The search warrants list several categories of items that may fall into such categories, "including but not limited to" currency, records of real properties,[8] car titles,[9] and evidence of financial transactions. (New Market Way Search Warrant (DE 183-1) at 33; Glenwood Avenue Search Warrant (DE 183-2) at 7–8). The affidavits supporting the search warrant describe how defendant allegedly received approximately $39,500,000.00 in kickback proceeds and represented his annual salary to be $110,000.00. (See New Market Way Search Warrant (DE 183-1) at 13–14; Search Warrant Application, Glenwood Avenue, No. 5:18-MJ-02079-JG-1, DE 1, at 5–6 (E.D.N.C. Dec. 5, 2018)). In the instant case, the government's search yielded significant sums of currency, as well as numerous financial documents, such as bank

---

[8] Defendant argues placing the lis pendens on his real property constitutes a seizure in violation of his constitutional rights. The Fourth Circuit has not addressed this issue. However, other circuit courts have held placement of lis pendens does not implicate a party's constitutional rights. Diaz v. Paterson, 547 F.3d 88, 98 (2d Cir. 2008); United States v. Register, 182 F.3d 820, 837 (11th Cir. 1999) ("In short, a filing of a lis pendens pursuant to state statute does not constitute a "seizure" and does not affect property interests to an extent significant enough to implicate the Due Process Clause of the Fifth Amendment."); Chrysler Corp. v. Fedders Corp., 670 F.2d 1316, 1331 (3d Cir. 1982). The court finds the reasoning of these circuits persuasive. Therefore, the government did not seize defendant's real property by ultimately placing a lis pendens on the property.

[9] In the instant case, defendant's three vehicles seized by the government during its search of the New Market Way property were subject to seizure warrants separate from the warrant authorizing search of the New Market Way property. See United States of America v. 2014 Mercedes Benz S550, with VIN #WDDUG8CB9EA009828, No. 5:18-MJ-02084-JG-1 (E.D.N.C. Dec. 5, 2018); United States of America v. 2018 Mercedes Benz S63 AMG 4MA, with VIN # WDDUG8JB0JA394158, No. 5:18-MJ-02086-JG-1 (E.D.N.C. Dec. 5, 2018); United States of America v. 2018 Mercedes Benz S560, with VIN# WDDUG8DB8JA368001, No. 5:18-MJ-02089-JG-1 (E.D.N.C. Dec. 5, 2018).

18

records and an artwork purchase agreement. (New Market Way Search Warrant (DE 183-1) at 3–8; Glenwood Avenue Search Warrant (DE 183-2) at 10–11). Interpreting the inclusive language of the warrants broadly, seizure of the items of value identified by defendant was contemplated by the warrants issued in this case for the evidence, fruits, or instrumentalities of defendant's alleged crimes.[10]

## CONCLUSION

Based on the foregoing, upon de novo review of those portions of the M&R to which specific objections were raised, and considered review of the remainder thereof, the court DENIES defendant's motion to suppress and to release his assets. (DE 182).

SO ORDERED, this the 7th day of November, 2019.

LOUISE W. FLANAGAN
United States District Judge

---

[10] Even if the court were to conclude otherwise, upon seizing defendant's financial records, such as the artwork purchase agreement, it would be "immediately apparent" to the officers searching the premises that defendant's artwork and other property valued vastly in excess of his income was contraband, justifying a plain view seizure. See Horton v. California, 496 U.S. 128, 135 (1990); United States v. Uzenski, 434 F.3d 690, 707 (4th Cir. 2006); cf. United States v. Wells, 98 F.3d 808, 810 (4th Cir. 1996) (holding that, while seeing a firearm might not in itself make it immediately apparent that the firearm was contraband, an officer's knowledge of a person's felony conviction makes the object's incriminating nature immediately apparent).