IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:18-CR-00452-FL-1

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | **DEFENDANT LEONID TEYF'S MOTION** |
| v. | ) | **FOR RECONSIDERATION OF NOV. 5** |
| | ) | **ORDER ON MOTION TO COMPEL** |
| LEONID ISAAKOVICH TEYF | ) | **(and Incorporated Memorandum of Law)** |

Defendant Leonid Isaakovich Teyf, through his attorneys of record, moves the Court for reconsideration of the November 5, 2019 Order of the Court (Judge Robert T. Numbers, II, presiding) which granted the Government's Motion to Compel a Response to the February 22, 2019 grand jury subpoena. Mr. Teyf makes this motion pursuant to 28 U.S.C. §636(b)(1)(A) and Rule 59(a) of the Federal Rules of Criminal Procedure. In support of this Motion, Mr. Teyf incorporates all of his prior briefing regarding the February 22, 2019 subpoena, and further shows as follows:

### I. INTRODUCTION

To date the Government has sought five different Indictments against Defendant Teyf. The original Indictment was returned on November 6, 2018, and Superseding Indictments were thereafter returned on December 6, 2018, February 6, 2019, April 4, 2019, and May 9, 2019.

Sixteen days after the return of the Second Superseding Indictment, on February 22, 2019, and a little over a month before the return of the Third Superseding Indictment, the Government sought, and the grand jury issued, a subpoena requiring Defendant Teyf to produce any and all records in his possession, custody, or control, relating to foreign bank or financial accounts in which he is / was an owner or had signature authority, to the extent that such records

are required to be maintained by 31 C.F.R. § 1010.420. (DE 175-1). Thereafter, on May 9, 2019, in the Fourth Superseding Indictment, Teyf was charged, for the first time, with offenses relating to foreign bank accounts in which he allegedly had / has an interest or signature authority. (DE 248, Counts 44-50, at pp. 25-28). Only two days earlier, on May 7, 2019, the Government nevertheless moved to compel enforcement of the subpoena to obtain records that would go directly to the new charges relating to foreign bank accounts. (DE 245).

Mr. Teyf now asks this Court to reconsider and reverse the November 5 Order of the Court below granting the Government's Motion to Compel Response to the subpoena, for the reasons that (1) requiring him to respond would violate his Fifth and Sixth Amendment rights; and (2) the subpoena and its enforcement represent grand jury abuse in that its primary purpose is to discover evidence which could be used against Defendant in a trial on the pending charges relating to foreign bank accounts.

## II. PROCEDURAL BACKGROUND AND STANDARD OF REVIEW

### A. TIMING OF THE INDICTMENTS AND THE GRAND JURY SUBPOENA

On November 8, 2018, Mr. Teyf was charged with money laundering violations of 18 U.S.C. §§ 1956(h) and 1957, bribery of a public official, use of a telephone in the commission of murder-for-hire, and a firearms violation. (DE 1). The indictment also contained a forfeiture notice advising Mr. Teyf of the Government's intent to forfeit certain real properties, a firearm, and the contents of several domestic bank accounts.

Less than a month later, on December 6, 2018, the grand jury returned a Superseding Indictment adding immigration, visa fraud, and unlawful citizenship or naturalization procurement counts against Mr. Teyf. (DE 20). The Government also amended the forfeiture

2

Case 5:18-cr-00452-FL   Document 349   Filed 11/19/19   Page 2 of 18

allegations and gave notice of its intent to forfeit four Mercedes Benz vehicles, artwork acquired by Mr. Teyf, and the contents of 10 additional domestic bank accounts.

On February 6, 2019, the grand jury returned a Second Superseding Indictment adding four new Section 1957 counts (Counts 33-41) against Mr. Teyf's wife, Tatyana Anatolyevna Teyf, and five new §1957 counts (Counts 37-41) against Mr. Teyf. (DE 127). The Indictment also amended the forfeiture notice by adding two pieces of real property and three new domestic bank accounts.

On February 22, 2019, the Government served the subject subpoena on Mr. Teyf asking him to produce records "customarily kept" as required by 31 C.F.R. §1010.420. The subpoena required that Mr. Teyf produce the records to the Government by March 9, 2019. (DE 175-1).

Mr. Teyf moved to quash the subpoena on March 11, 2019 (DE 175), and the Government filed its opposition on the following day. (DE 181). On April 4, 2019, while the motion was still pending, the grand jury returned a Third Superseding Indictment. (DE 215). This Indictment did not contain new criminal charges, nor did it add any new defendants to the charges contained therein. The only difference between the Second and Third Superseding Indictments was the addition of new assets to the already existing forfeiture notice. (DE 215). The new forfeiture allegations gave Mr. Teyf notice of the Government's intent to forfeit an additional motor vehicle, the contents of an additional domestic bank account, unidentified pieces of jewelry, and undisbursed funds to be deposited by Lank Ventures LLC. (DE 215). The forfeiture notice was also amended by removing five bank accounts originally identified in the Second Superseding Indictment. The factual and legal basis for the forfeiture notices in the Second and Third Superseding Indictments is identical.

3

A month later, on May 9, 2019, the grand jury returned a Fourth Superseding Indictment adding Section 1956(1)(1) to already charged transactions. (DE 248). And, as anticipated and forecast by Mr. Teyf (DE 175 at p. 4), the Fourth Superseding Indictment contained, for the first time, charges of tax violations by Mr. Teyf for purportedly making false statements in his 2012, 2014 and 2015 tax returns regarding his interest in foreign bank accounts, in violation of 26 U.S.C. § 7206(1), and charges for failing to report said accounts to the Financial Crimes Enforcement Network (FinCEN), in violation of 31 U.S.C. §§5314 and 5322. (DE 248, Counts 44-50, at pp. 25-28).

## B. THE MOTION TO QUASH AND MOTION TO COMPEL RESPONSE

The February 22 subpoena asks that Mr. Teyf produce "[a]ny and all records in [his] possession, custody, or control that are required to be maintained pursuant to 31 C.F.R. §1010.420 . . . for the past 5 years." (DE 175-1). On March 11, 2019, Mr. Teyf filed a Motion to Quash the February 22 subpoena. (DE 175). The Government filed its Response to the Motion to Quash on March 12, 2019. (DE 181). On April 10, 2019, the Court entered an Order denying the Motion to Quash, holding that responding would not be "unreasonable, oppressive, or violative of Defendant's constitutional rights." (DE 212, at p. 5).

On May 7, 2019, only two days before the Fourth Superseding Indictment was returned, the Government filed a Motion to Compel Response to the February 22 grand jury subpoena. (DE 245). On May 21, 2019, Mr. Teyf filed a Memorandum in Opposition to the Government's Motion to Compel. (DE 269). On May 31, 2019, the Court stayed the decision on the Government's Motion to Compel in order to give new defense counsel an opportunity to advance Mr. Teyf's position and supplement previous filings on the Motion to Compel. (DE 288). On July 8 and 9, 2019, Mr. Teyf's present counsel filed Notices of Appearances (DE 294, 296), and

4

thereafter, various orders of the Court were entered relating to a hearing date and deadline for Mr. Teyf's new counsel to respond to the Motion to Compel. (DE 304, 306, 310, 311). On August 16, 2019, Mr. Teyf, by and through his new counsel, filed a Supplemental Response in Opposition to the Motion to Compel. (DE 313).

On August 23, 2019, the Court held a hearing on the Motion to Compel. During the hearing, counsel for Mr. Teyf argued that requiring Mr. Teyf to respond violated his rights under the Fifth and Sixth Amendments to the U.S. Constitution. Counsel for Mr. Teyf raised concerns that the Government had not yet completed production of certain digital evidence seized from Mr. Teyf, and that counsel needed to receive and review the evidence in order to respond fully to the Motion to Compel. Following the hearing, the Court entered its August 23 Order setting certain deadlines within which (a) the Government was required to produce all digital evidence; and (b) Mr. Teyf's counsel was required to: (1) complete review of the digital evidence; (2) suggest a timeline for production of documents responsive to the subpoena in the event the Court granted the Government's Motion to Compel; and (3) consult with Mr. Teyf to determine whether he would persist in his arguments that complying with the February 22 subpoena would violate his rights under the Fifth or Sixth Amendments to the U.S. Constitution. (DE 322, and hearing transcript at DE 332).[1]

On November 5, 2019, the Court (Judge Numbers) granted the Government's Motion to Compel. (DE 343). This new order relieved Mr. Teyf from complying with previous deadlines, and ordered the parties to meet, confer, and submit a schedule for the rolling production of responsive documents. Defense counsel was also ordered to submit periodic status reports

---

[1] On September 30 and October 28, 2019, the Court granted Mr. Teyf's unopposed Motions for Extension of Deadlines set forth in the August 23, 2019, order, and granted Mr. Teyf until November 29, 2019 to comply with the deadlines in the August 23 Order. (DE 339; 342).

5

regarding the number of digital pages reviewed and providing time estimates regarding any outstanding reviews. (DE 343, at p. 10). The Court also ordered that all deadlines set forth in the November 5 Order are stayed in the event Mr. Teyf seeks this Court's review. (DE 343, at p. 11).

### C. STANDARD OF REVIEW

Mr. Teyf objects to and seeks the district court's review of the November 5, 2019 Order. The Order is a ruling on a non-dispositive matter. A magistrate judge has authority to rule on non-dispositive matters pursuant to Local Criminal Rule 5.3(b) and 28 U.S.C. § 636(b)(1)(A). "A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A). A party may serve and file objections to a magistrate judge's ruling on a non-dispositive matter within 14 days. Fed.R.Crim.P. 59(a). A district court judge must consider and modify or set aside any part of the order that is clearly erroneous or contrary to law. Id.

### III. LEGAL ARGUMENT

This Court should set aside the November 5, 2019 Order. Mr. Teyf should not be compelled to respond to the February 22, 2019, grand jury subpoena.

The procedural background in this case supports a finding of grand jury abuse by the Government which merits judicial review of what transpired before the grand jury between the return of the pertinent superseding indictments and the current effort to enforce the subpoena. Alternatively, given the grand jury's return of the Fourth Superseding Indictment, the subject subpoena is now moot. Compelling the Defendant to produce the records of foreign bank

6

accounts would constitute an impermissible use of the grand jury process to conduct discovery regarding existing charges (failing to disclose foreign bank accounts).

### A. POST-INDICTMENT USE OF GRAND JURY PANELS TO CONDUCT DISCOVERY ON, AND BOLSTER, PENDING CRIMINAL CHARGES CONSTITUTES IMPERMISSIBLE GRAND JURY ABUSE

Courts have recognized that the grand jury is one of the most powerful discovery tools devised. United States v. Doe, 455 F.2d 1270, 1275 (1st Cir. 1972). "This body may call witnesses under compulsory process and examine them in secret under oath, unhampered by the rules of evidence or an adversary counsel's cross-examination, or in the case of a 'prospective defendant' by Fifth Amendment immunity." 8 Moore's Federal Practice ¶ 16.08[1], at 16-100 (2nd ed. 1970). However, a grand jury's investigatory power is not unlimited, United States v. R. Enterprises, 498 U.S. 292, 299 (1991), and "prosecutors do not have carte blanche in grand jury matters." United States v. Flemmi, 245 F.3d 24, 28 (1st Cir. 2001). "Grand juries are not licensed to engage in arbitrary fishing expeditions, nor may they select targets of investigation out of malice or an intent to harass." Id.

It is also improper for the Government to use the grand jury for the sole or primary purpose of strengthening its case on a pending indictment or as a substitute for discovery. United States v. Gibbons, 607 F.2d 1320, 1328 (10th Cir. 1979). *See also* United States v. Woods, 544 F.2d 242, 250 (6th Cir. 1976) ("it is improper to use a grand jury solely to prepare a pending indictment for trial."); In re Grand jury Proceedings, 814 F.2d 61, 70 (1st Cir. 1987) ("It is well established that a grand jury may not conduct an investigation for the primary purpose of helping the prosecution prepare indictments for trial."); Beverly v. United States, 468 F.2d 732, 743 (5th Cir. 1972) ("it is improper to use the grand jury for the purpose of preparing an already pending indictment for trial" and "[i]t is a misuse of the grand jury to use it as a substitute for

7

discovery"); United States v. Moss, 756 F.2d 329, 332 (4th Cir. 1985) ("Although the courts firmly safeguard the investigatory power of the grand jury, it is the universal rule that prosecutors cannot utilize the grand jury solely or even primarily for the purpose of gathering evidence in pending litigation.").

Generally, grand juries lose their authority to issue subpoenas once an indictment is returned. Resolution Corp. v. Thornton, 41 F.3d 1539, 1546-47 (D.C. Cir. 1994). "While a grand jury wields broad investigatory powers prior to returning an indictment, courts uniformly have held that, "once a targeted individual has been indicted, the Government must cease its use of the grand jury in preparing its case for trial." United States v. Phibbs, 999 F.2d 1053, 1077 (6th Cir. 1993). *See also* United States v. Badger, 983 F.2d 1443, 1458 (7th Cir. 1993); United States v. Jenkins, 904 F.2d 549, 559 (10th Cir. 1990); United States v. Sellaro, 514 F.2d 114, 122 (8th Cir. 1973); United States v. Star, 470 F.2d 1214, 1217 (9th Cir. 1972); Beverly, 468 F.2d at 743.

Once a defendant has been indicted, the government cannot use the grand jury for the "sole or dominant purpose" of obtaining additional evidence against him. *See* U.S.A.M. § 9-11.120, (directing prosecutors not to use grand juries for the sole purpose of obtaining additional evidence against a defendant who has already been indicted.) In fact, a grand jury may only be used post-indictment to add additional defendants or crimes by an indicted defendant. In re Grand jury Subpoena Duces Tecum, Dated January 2, 1985 (Simels), 767 F.2d 26, 29-30 (2nd Cir. 1985); In re Grand jury Proceedings, 586 F.2d 724 (9th Cir. 1978).

**B. THE COURT BELOW ERRED IN REFUSING TO FIND THAT THE FACTS MIRROR THOSE IN <u>SIMELS</u> AND THAT THE PROCEDURAL BACKGROUND IN THIS CASE SUPPORTS A FINDING OF GRAND JURY ABUSE BY THE GOVERNMENT.**

The Court, in its November 5 Order, held that a presumption of regularity attaches to grand jury proceedings, and a defendant seeking a remedy based upon grand jury abuse bears the burden of showing that an irregularity occurred. <u>Moss</u>, 756 F.2d at 332; <u>United States v. Bin Laden</u>, 116 F.Supp.2d 489, 492 (S.D.N.Y. 2000). Mr. Teyf submits that he met the required burden, and that notwithstanding the identification of factors which courts should consider in determining whether the Government has abused the grand jury process, the Court did not address and in fact ignored them in its ruling.

In addressing grand jury abuse claims, courts focus on factors such as the procedural background of the case, the timing of the subpoena, the events transpiring within the grand jury, and the government's representations. <u>Simels</u>, 767 F.2d at 29-30. Here, the Court erred in failing to consider the suspicious timing between the return of the Second Superseding Indictment, the subpoena, Mr. Teyf's objection to it, the return of an "empty" Third Superseding Indictment and the Fourth Superseding Indictment. The Government's persistent efforts to *enforce* the subpoena after the Section 5322 and 5314 charges (regarding foreign bank accounts) were added to the Fourth Superseding Indictment is indicative of a clear abuse of the grand jury process.

Mr. Teyf argued that the facts in this case mirror those in <u>Simels,</u> where the government served a court-issued subpoena upon defense counsel commanding him to produce documents regarding his legal fees. <u>Simels</u>, 767 F.2d at 28. The subpoena was served a week after the grand jury returned a superseding indictment. Following an objection, the return of the subpoena was suspended. A few months later, the government served a grand jury subpoena on defense

9

counsel. By then the grand jury investigation had culminated. The defendant, his counsel, and the defense bar argued that the subpoena was an abuse of process because its sole or dominant purpose was to obtain evidence for use at trial and that the subpoena impinged upon the defendant's Sixth Amendment rights. In response, the government asserted that further investigation offered the promise of "additional forfeitures, additional charges against [the defendant] and additional defendants in a superseding indictment." Id., at 28. The district court held the subpoena was within the scope of the grand jury's investigatory power and did not constitute an abuse of the grand jury process. The Second Circuit disagreed and observed that "[t]he timing of the grand jury subpoena cast[s] significant light on its purposes." Simels, 767 F.2d at 29.

First, the Court of Appeals took notice of the government's assertion that it sought the court-issued subpoena for evidentiary purposes, given "substantial income and resources" from the drug enterprise were elements of the offense filed against Simels' client. Id. Second, the court saw that the prosecution had not called a single witness before the grand jury between the dates of the two subpoenas. After noticing that the grand jury had otherwise been inactive during the period when the Simels grand jury subpoena was issued, the court held that the defendant persuasively showed that trial preparation was the dominant purpose behind the subpoena. The appellate court also concluded that the government's claim that the subpoena sought evidence as part of an active investigation was weak. Ultimately, the Second Circuit quashed the subpoena. Id., at 30.

A look at the procedural background in this case should yield a result similar to that in Simels. Well before the February 22, 2019, subpoena, the Government already had Mr. Teyf's financial records. The original November 2018 Indictment alleged that Mr. Teyf and others

10

counsel. By then the grand jury investigation had culminated. The defendant, his counsel, and the defense bar argued that the subpoena was an abuse of process because its sole or dominant purpose was to obtain evidence for use at trial and that the subpoena impinged upon the defendant's Sixth Amendment rights. In response, the government asserted that further investigation offered the promise of "additional forfeitures, additional charges against [the defendant] and additional defendants in a superseding indictment." Id., at 28. The district court held the subpoena was within the scope of the grand jury's investigatory power and did not constitute an abuse of the grand jury process. The Second Circuit disagreed and observed that "[t]he timing of the grand jury subpoena cast[s] significant light on its purposes." Simels, 767 F.2d at 29.

First, the Court of Appeals took notice of the government's assertion that it sought the court-issued subpoena for evidentiary purposes, given "substantial income and resources" from the drug enterprise were elements of the offense filed against Simels' client. Id. Second, the court saw that the prosecution had not called a single witness before the grand jury between the dates of the two subpoenas. After noticing that the grand jury had otherwise been inactive during the period when the Simels grand jury subpoena was issued, the court held that the defendant persuasively showed that trial preparation was the dominant purpose behind the subpoena. The appellate court also concluded that the government's claim that the subpoena sought evidence as part of an active investigation was weak. Ultimately, the Second Circuit quashed the subpoena. Id., at 30.

A look at the procedural background in this case should yield a result similar to that in Simels. Well before the February 22, 2019, subpoena, the Government already had Mr. Teyf's financial records. The original November 2018 Indictment alleged that Mr. Teyf and others

10

opened at least 70 financial accounts in the United States, and that Mr. Teyf and others received over $39.4 million from "[f]oreign corporations and bank accounts." (DE 248; ¶10). Despite adding new charges in the Superseding and Second Superseding Indictment, no new charges or defendants were added to the Third Superseding Indictment, which was returned after the issuance of the February 22 subpoena.

The Court distinguished Simels on the ground that, here, the Government did not first issue a trial subpoena, and then replace it with a grand jury subpoena seeking the same materials. (DE 343, at p. 9). This is a distinction without a difference. The Simels holding was based on the Government's attempt to enforce a grand jury subpoena to obtain records that could be used as evidence at trial on existing charges. This is the same scenario Mr. Teyf is facing. Here, as in Simels, this Court must consider whether the grand jury was investigating new charges and defendants during the period between the grand jury subpoena and the Third Superseding Indictment. If the grand jury was inactive during this period and received no evidence leading to a probable cause finding, then there is a presumption that the Government abused the grand jury process. The Court erred by refusing to conduct an in camera review of what, if anything, transpired before the grand jury between the Second and Third Superseding Indictments.

The Court also distinguished this case from Simels because, in the present case, there were no pending charges relating to foreign bank accounts *when the subpoena was issued* (DE 343, at p. 9). This difference between the two cases is equally insignificant. Today, Mr. Teyf *is* facing Section 5322 charges and Section 5314 charges. If a grand jury cannot issue a subpoena for the sole or dominant purpose of discovering evidence to bolster existing charges, surely the Government cannot ask a Court to *enforce* a *previously issued* subpoena, to serve that same

11

purpose. To allow the Government to enforce the subpoena in this context clearly violates the rule and the spirit of Simels and other cases.

> C. **THE COURT BELOW ERRED IN FINDING THAT THE GOVERNMENT'S SUBPOENA WAS JUSTIFIED DESPITE FINDING THAT MR. TEYF'S RESPONSE TO THE SUBPOENA COULD INCULPATE HIM AND BASED ON THE GOVERNMENT'S VAGUE ASSERTION THAT THE RESPONSE TO THE SUBPOENA MIGHT PROVIDE A BASIS FOR ADDITIONAL CHARGES AGAINST MR. TEYF.**

The November 5 Order also erroneously noted that, in contrast to Simels, here, "the Government can identify additional uncharged crimes that the documents relate to," without specifying what those uncharged crimes might be. (DE 343, at p. 9). In Simels, the government also argued that "further investigation offers the promise of additional charges against [the defendant]." Simels, 767 F.2d at 28. This argument did not persuade the Court in Simels, and it is not persuasive here.

In its November 5 Order, the court also noted that the grand jury did not return the Fourth Superseding Indictment until three months after it issued the February 22, 2019 subpoena. Therefore, the Court concluded, "it is hard to conclude that the Government sought the subpoena for the sole or dominant purpose of obtaining evidence for pending charges when those charges would not be pending for months after the subpoena was issued." (DE 343, at p. 7).

The fact that the Government is seeking to *enforce* a subpoena in order to obtain or discover evidence on charges which are *currently pending* is in direct violation of the rule that the Government cannot use a grand jury, post-indictment, for the sole or dominant purpose of conducting discovery and bolstering already existent criminal charges. The Court below conceded that much when it held that "[t]he documents requested by the subpoena could provide evidence in support of these charges [Counts 44-50 of the Fourth Superseding Indictment; DE 248, at par. 67-70] because they would show that Mr. Teyf had a financial interest in or signature

12

or other authority over a foreign bank account." (DE, at p. 7). The Court also held that "just because a subpoena may turn up evidence about charged offenses does not mean that the Government has abused the grand jury process." (DE 343, at p. 7). And the Court noted that, if Defendant failed to maintain the records required by Section 5322 and 5314, this would be a separate violation of federal law, and found that this justified the subpoena. Id.

The Court's decision to ignore the purpose and impact of enforcing the February 22 subpoena now was clearly erroneous and contrary to law.

### D. THIS COURT SHOULD COMPEL THE GOVERNMENT TO DEMONSTRATE THE LEGITIMATE PURPOSE OF THE GRAND JURY INVESTIGATION.

As previously argued, Defendant has met the burden to establish that the Government abused the grand jury process. The Court erred in finding that the Defendant failed to do so. The Court should now require the Government to reveal the subject of the grand jury's investigation during the period leading up to its current effort to enforce the subpoena. R. Enterprises, 498 U.S. at 302. Notably, Mr. Teyf is at a disadvantage given the secrecy of grand jury proceedings and the Government's decision not to turn over grand jury transcripts to date. However, those obstacles do not end the inquiry.

> A party who desires to challenge a grand jury subpoena thus may have no conception of the Government's purpose in seeking production of the requested information. Indeed, the party will often not know whether he or she is a primary target of the investigation or merely a peripheral witness. Absent even minimal information, the subpoena recipient is likely to find it exceedingly difficult to persuade a court that compliance would be unreasonable.

R. Enterprises, 498 U.S. at 300 (internal citations omitted). Accordingly, the Supreme Court entrusted upon lower courts the role to "craft appropriate procedures that balance the interests of the subpoena recipient against the strong governmental interests in maintaining secrecy, preserving investigatory flexibility, and avoiding procedural delays." Id. By way of example,

13

the R. Enterprises Court suggested that district courts require the government reveal the subject of the investigation in camera so they may determine whether the motion to quash has a reasonable prospect of success.  Id., at 302.

Other courts have adopted different techniques to ascertain how the grand jury was used when post-indictment subpoenas were issued.  In response to the defendant's grand jury abuse claims, the prosecution in In re Grand jury Proceedings, 1994 U.S. App. LEXIS 18695 (1st Cir. 1994) was required to submit an *ex parte* affidavit, signed by the prosecutor, explaining why the questioning of the defendant did not have the primary purpose of assisting the prosecution of the pending indictment.  The First Circuit Court of Appeals held that requiring a sealed *ex parte* affidavit from the prosecution was an adequate procedure under the circumstances of that case, in order to probe whether the prosecution was attempting to abuse the grand jury process in its interrogation of the defendant.  Id. at 6-7.  *See also* Doe, 455 F.2d at 1275 (following claim of grand jury abuse that prosecutors used Boston grand jury to strengthen case in Central District of California, circuit court ordered prosecution to give California court the Boston grand jury transcripts of all testifying witnesses for in camera review as to California testifying witnesses); United States v. Thompson, 944 F.2d 1331, 1337 (7th Cir. 1991) (in camera review of witness transcript showed grand jury was used to conduct discovery into charges already pending against defendant).

Here, there is every reason to conclude that the Government is using the grand jury subpoena as a discovery tool.  The Third Superseding Indictment contained no additional defendants or criminal charges.  The Fourth Superseding Indictment (Counts 44-50) included tax and FBAR violations, and was returned two days after the Government moved to compel a response to a subpoena which required Mr. Teyf to produce records of foreign bank and

14

investment accounts. Clearly, any records produced in response to the subpoena would be used by the prosecution as evidence at trial. Compare United States v. Moss, 756 F.2d 329, 332 (4th Cir. 1985) (Ervin, J.) (explaining that "[w]hen applied correctly," the test "permits grand juries to investigate additional individuals who become suspects only after an indictment has been returned, while precluding use of the grand jury for discovery."). To force Mr. Teyf to comply with the subpoena in spite of the existing charges would enable the grand jury investigative process to be used to help the Government prepare for trial. Beverly, 468 F.2d at 743; Dardi, 330 F.2d 316, 336, (2nd Cir. 1964).

Therefore, just as in Simels, the prosecution in this case should be required to provide evidence as to what transpired after the grand jury subpoena was issued. At a minimum, it would be expected that the Government maintained contemporary notes detailing the witnesses and evidence presented before the grand jury panels that returned the five indictments and their connection to the possible charges or persons. Defendant submits that the Court should review those notes and logs to ensure that grand jury proceedings were not abused.

### E. REQUIRING DEFENDANT TO RESPOND TO THE SUBPOENA VIOLATES HIS FIFTH AMENDMENT RIGHT AGAINST SELF-INCRIMINATION.

The Court noted that Mr. Teyf's failure to maintain the records sought by the subpoena would constitute a separate violation of 31 U.S.C. § 5322. It actually held that Mr. Teyf could be charged under 31 U.S.C. § 5322 if his response to the subpoena showed that he has not maintained the required records under this statute (and 31 U.S.C. § 5314). But the Fourth Superseding Indictment already charges Mr. Teyf with violating 31 U.S.C. §§ 5314 and 5322 in connection with accounts at Alfa Bank in Russia (See DE 248, Counts 48-49).

Under the holding of U.S. v. Hubbell, 530 U.S. 27 (2000), requiring Mr. Teyf to respond to the subpoena would violate his Fifth Amendment rights. *See* Defendant's previously filed

15

Motion to Quash (DE 175), Memorandum in Opposition to Government's Motion to Compel (269), and Supplemental Arguments in Opposition to Motion to Compel (DE 313), which are hereby adopted and incorporated by reference.  Hubbell makes clear that the Supreme Court has never found that the required records doctrine supersedes the act of production doctrine set forth in Hubbell.  Hubbell, 530 U.S. 27 (2000)  The Court's November 5, 2019 finding that Hubbell is inapplicable, and that Mr. Teyf cannot rely on his Fifth Amendment rights to refrain from responding to the subpoena, (DE 343, pp. 2-5) is clearly erroneous and contrary to law, for the reasons stated in Mr. Teyf's previous filings.

## IV.    CONCLUSION

For the foregoing reasons, the Court's November 5, 2019 is clearly erroneous and contrary to law, and the Motion to Compel should be denied.

Requiring Mr. Teyf to respond to the February 22 subpoena violates his Fifth Amendment right against self-incrimination. To date, the Government has sought five different indictments against Mr. Teyf.  Enforcement of the  February 22 subpoena would have the sole or primary purpose of conducting  discovery against an existing defendant (Teyf) now already subject to a Fourth Superseding Indictment and charges related to the very records sought.  The Government should be required to demonstrate otherwise.  Such use of the grand jury merits closer scrutiny by the Court as indicated in R. Enterprises, Simels, and Thornton, and Moss.

16

Case 5:18-cr-00452-FL   Document 349   Filed 11/19/19   Page 16 of 18

Respectfully submitted, this the 19th day of November, 2019.

/s/ F. Hill Allen
F. Hill Allen
THARRINGTON SMITH, L.L.P.
P.O. Box 1151
Raleigh, NC 27602
Phone: (919) 821-4711
Fax: (919) 829-1583
hallen@tharringtonsmith.com
N.C. State Bar No. 18884
*Counsel for Defendant*


/s/ Robert S. Wolf
Robert S. Wolf
MOSES & SINGER LLP
The Chrysler Building
405 Lexington Ave., 12th Floor
New York, NY 10174-1299
Phone: (212) 554-7825
Fax: (212) 554-7700
rwolf@mosessinger.com
*Counsel for Defendant*

## CERTIFICATE OF SERVICE

   I hereby certify that on this 19th day of November, 2019, I electronically filed the foregoing **DEFENDANT LEONID TEYF'S MOTION FOR RECONSIDERATION OF NOV. 5 ORDER MOTION TO COMPEL (and Incorporated Memorandum of Law)** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

           /s/ F. Hill Allen
           F. Hill Allen
           THARRINGTON SMITH, L.L.P.
           P.O. Box 1151
           Raleigh, NC 27602
           Phone: (919) 821-4711
           Fax: (919) 829-1583
           hallen@tharringtonsmith.com
           N.C. State Bar No. 18884
           *Counsel for Defendant*