IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:18-CR-00452-FL-1

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) RENEWED MOTION TO SUPPRESS |
| | ) EVIDENCE AND RELEASE PROPERTY, AND |
| | ) INCOPORATED MEMORANDUM OF LAW |
| LEONID ISAAKOVICH TEYF | ) |

Defendant Leonid Teyf, through counsel and pursuant to the Fourth, Fifth, and Sixth Amendments to the United States Constitution and *Franks v. Delaware*, 438 U.S. 154 (1978), moves this Court for an order suppressing evidence seized from his properties by the Government and mandating the release and return of all seized and restrained property, on grounds that (a) the warrants authorizing search and seizure were unsupported by probable cause; (b) the warrants contained misleading statements and omissions intentionally or recklessly made by the affiants; and (c) the Government cannot demonstrate that the seized and restrained property was involved in or traceable to criminal activity.  Mr. Teyf respectfully requests that the Court hold a *Franks* hearing to address the issues raised herein.  In support of this motion, Mr. Teyf shows the following:

## INTRODUCTION

As the Court will recall, Mr. and Mrs. Teyf previously filed separate motions to suppress and release assets seized pursuant to search and seizure warrants issued by Judge Gates in December 2018.  Specifically, on or about December 5, 2018, the government obtained eight warrants to seize four vehicles and funds from 22 bank accounts and also to conduct related searches (the "Warrants").  In support of the applications, the government submitted sworn

affidavits signed by Federal Bureau of Investigation and Internal Revenue Service special agents, alleging, in substance that a "reliable, confidential source… ('CS-1')" provided information to investigators about a "bribe/kickback" scheme involving Mr. Teyf, former Russian Defense Minister Anatoliy Serdyukov ("Serdyukov"), and others. (See Officer's Aff. (DE182-1) at ¶ 62.). According to the sworn affidavits, "CS-1 made three (3) deliveries of large amounts of cash to Defense Minister Serdyukov through Serdyukov's son-in-law "Puzikov" and "CS-1 estimated the cash delivered to Puzikov to be in the amounts of $70 Million (USD), $30 Million (USD), and $50 Million (USD), for a total of $150 Million (USD)." The affidavits also claim that according to CS-1, the $150 Million paid to Serdyukov accounted for "[m]ost of the kickbacks…with TEYF retaining the next largest share, and the remaining amount to be paid to other coconspirators." (DE182-1 at ¶ 62.) The affidavits provide no information from CS-1 identifying how much money Mr. Teyf retained as "the next largest share."

The affidavits state that according to CS-1, TEYF also hired Yelena Zelenova (a/k/a Elena Zelenova), an accountant who maintained records of TEYF's companies, including the kickbacks he extorted from subcontractors… and that TEYF instructed CS-1 to meet couriers at various locations around Russia and pickup large sums of cash. It is alleged that CS-1 never counted it due to the volume. CS-1 took the cash to whichever accountant he was instructed. Lastly, the affidavits say that the accountants were coordinated by Zelenova although they did not work directly for her. (DE182-1 at ¶ 62.)

Based on the seizure and search warrant affidavits, as well as the discovery provided by the government thus far, it is clear that CS-1 is the government's sole witness regarding Mr. Teyf's purported involvement in the specified unlawful activity ("SUA"), which allegedly occurred entirely in Russia and generated the proceeds allegedly involved in financial

2

transactions underlying the money laundering charges. The affidavits supporting the warrants characterized CS-1 as "reliable," with no other corroboration of a purported bribery/kickback scheme involving the Russian Defense Minister. The parties litigated the motions to suppress at some length, including hearings before the Court. The entire time – unbeknownst to counsel for the Teyfs, unbeknownst to Judge Gates when he issued the warrants and unbeknownst to this Court – law enforcement possessed an audio recording of damning contradictory admissions by CS-1 in February 2017 in which he made statements flat out denying that he had **any** knowledge about Mr. Teyf engaging in money laundering or any other unlawful activity.

Through review of the voluminous discovery, counsel has located and transcribed the recording made by the government's other Confidential Human Source ("CS-2") of a conversation between him and CS-1 in February 2017 – produced but **not** previously transcribed or presented by the government – in which CS-2 pressed CS-1 for damaging information about Mr. Teyf. Remarkably, despite being pressured by CS-2 about the need to cooperate to avoid prosecution and/or deportation, CS-1 (the government's star money laundering witness and the basis for multiple orders issued by the Court, including seizure and detention orders) stated the following:

> So they will come, and what? I will say, yes. I will tell what I know. **But I don't know anything, damn.**
>
> \*\*\*\*
>
> **And what do I know? Do I know that he was laundering money? No. Do I have any facts? No.**

*See* Ex. 1, attached hereto, at p. 10 of 20.

During the entire conversation, CS-1 says **nothing** whatsoever about the concocted "kickback" scheme that now forms the underlying basis for the money laundering charges, and

3

on which law enforcement asked the Court to rely in issuing the warrants and subsequent orders. *See, e.g.* Order of 11/10/19 (DE 344 at pp. 3-4, 8-9).

As noted, unlike numerous other recordings by CS-2 under FBI supervision since at least 2015, the Feb. 2017 recording was <u>not</u> transcribed or presented to Judge Gates. Counsel only learned its contents by having it independently translated in the course of reviewing incredibly voluminous discovery.

"Any reasonable person would have known that this was the kind of thing that the judge would wish to know." *United States v. Jacobs*, 986 F.2d 1231, 1235 (8th Cir. 1993) (*cited with approval in United States v. Lull*, 824 F.3d 109, 117 (4th Cir. 2016)). In the course of reviewing discovery, counsel has not found any independent corroboration for CS-1's claims. Nor did law enforcement present any independent corroboration of the purported Russian bribery/kickback scheme to Judge Gates. Moreover, as confirmed through the discovery process, the Government has neither produced nor identified any documents whatsoever even quantifying the amount of money Mr. Teyf supposedly received ("the next largest share") as part of the claimed scheme. Because law enforcement intentionally and/or recklessly misrepresented CS-1 as "reliable" and failed to disclose any mention whatsoever of the February 2017 recording and denials by the very witness it relied upon in applying for the warrants, the evidence and substantial assets seized and restrained pursuant to those warrants should be suppressed and released. This is critical and especially compelling in the absence of any independent eyewitness or documentary corroboration that the events claimed by CS-1 actually occurred and the utter lack of any specific dollar amount attributed to Mr. Teyf as purportedly garnered from the claimed scheme.

## BACKGROUND

The Court previously set forth pertinent background in its order of November 7, 2109 (DE 344) denying Mr. Teyf's motion to suppress evidence and return seized property. As summarized therein, the law enforcement affidavits supporting search and seizure warrants focused upon information provided by CS-1 about a purported bribery/kickback scheme involving the former Russian Minister of Defense. The affidavits touted CS-1 as a "reliable" source – and the only source – for facts regarding the purported Russian kickback/bribery scheme. (DE 182–1 Officer's Aff. ¶62; DE 344, pp. 3-4, 8-9.) The affidavits did not offer any independent corroboration of the scheme claimed by CS-1. Based upon the representation in the affidavits, Judge Gates issued a number of warrants, resulting in the search and seizure of considerable properties. *See* DE 182 (Mot. to Suppress), pp. 2-3 (further detailing warrants).

Well prior to the application for search warrants, however, law enforcement worked closely with another confidential source (CS-2) in developing CS-1 as source. In February 2017, under law enforcement supervision, CS-2 recorded a candid conversation with CS-1. In that conversation, CS-2 pressured CS-1 for incriminating information about Mr. Teyf. CS-2 directly threatened that CS-1 would be prosecuted and deported if he could not provide damaging information about Teyf. In response, however, CS-1 declared that "I don't know anything, damn" and that he had "no facts." During the entire conversation, despite repeated threats and continuous pressure, CS-1 made no mention whatsoever of the purported bribery/kickback scheme on which the warrants are based. *See* transcription of Feb. 2017 recording of CS-1 (excerpts attached as Ex. 1 hereto).

The affidavits filed in support of the warrants failed to disclose any mention of the February 2017 recording. During hearings on the subsequent motions to suppress, there is no

reference to the February 2017 recording or even any hint of it. While transcriptions of numerous other recordings were produced to defendants, law enforcement did not disclose or produce any transcription of the Feb. 2017 recording. Counsel for Mr. Teyf only discovered the contents of the recording when reviewing the voluminous discovery in the case and obtaining transcription of previously un-transcribed material.

As noted, counsel has been reviewing the voluminous discovery for any independent corroboration of CS-1's claims and has found none. Further, even the Government has been unable to provide any document, identify any statement or other information quantifying the amount of the purported kickback that Mr. Teyf is claimed to have received, at all – much less quantifying the amount at or above the nearly $40 Million (US Dollars) worth of assets seized and restrained. Based upon the foregoing, it is simply inconceivable how the government's seizure of $39 Million of assets could be justified.

## ARGUMENT

All evidence derived from the search of Mr. Teyf's properties should be suppressed, and all of his properties seized or restrained should be released and returned. The information presented to Judge Gates violated the standards set in *Franks*, and when the offending portions of the warrant applications are excised and/or the omitted information is added, the applications do not establish probable cause to support the search and seizure warrants. The *Leon* good faith exception cannot cure a violation of *Franks*. Suppression should result.

I. **The Warrant Applications Violate *Franks*, Because They Intentionally and/or With Reckless Disregard for the Truth Misrepresented and Omitted Information That Is Material to the Determination of Probable Cause.**

The Fourth Amendment to the United States Constitution provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause." U.S. Constitution, Amend. IV. "An affidavit must provide the magistrate with a substantial basis for determining the existence of probable cause." Illinois v. Gates, 462 U.S. 213, 239 (1983). As such, the Court considers only "the information actually presented to the magistrate during the warrant application process." *United States v. Lull*, 824 F.3d 109, 119 n.3 (4th Cir. 2016) (quoting *Owens ex rel. Owens v. Lott*, 372 F.3d 267, 277 (4th Cir. 2004)). Where a defendant shows that an affiant in a warrant affidavit has made a "false statement knowingly and intentionally, or with reckless disregard for the truth" and, absent such false statement, "the affidavit's remaining content is insufficient to establish probable cause, the warrant must be voided and the fruits of the search excluded." *Franks*, 438 U.S. at 155-56 (1978).

Moreover, the omission of relevant facts from an affidavit, like the inclusion of a false statement, may form the basis for suppression. *United States v. Tate*, 524 F.3d 449, 454-55 (4th Cir. 2008) (reversing district court denial of *Franks* hearing based on material omission from search warrant application); *United States v. Colkley*, 899 F.2d 297, 300 (4th Cir. 1990). To obtain suppression based on an omission, a defendant must first show that the affiant omitted facts from the application "with the intent to make, or in reckless disregard of whether they thereby made, the affidavit misleading." *Tate*, 524 F.3d at 455. An affiant recklessly omits a fact where "[a]ny reasonable person would have known that this was the kind of thing that the judge would wish to know." *United States v. Jacobs*, 986 F.2d 1231, 1235 (8th Cir. 1993) (*cited*

7

*with approval in United States v. Lull*, 824 F.3d 109, 117 (4th Cir. 2016)). Second, a defendant must show by a preponderance of the evidence that "the omitted material ... when included [in the application] would defeat a finding of probable cause." *Tate*, 524 F.3d at 455. To obtain a *Franks* hearing, the defendant must make a "substantial preliminary showing" of the intentionality and materiality prongs, *Franks*, 438 U.S. at 155, supported by a detailed "offer of proof." *Id.* at 171; *Tate*, 524 F.3d at 455. If the defendant does so, "the Fourth Amendment requires that a hearing be held at the defendant's request." *Franks*, 438 U.S. at 155-56. If the defendant is able to satisfy both prongs by a preponderance of the evidence at this hearing, the warrant violates the Fourth Amendment, and suppression is required. *Id.* at 156.

Here, Mr. Teyf satisfies both prongs for a *Franks* hearing and suppression. When law enforcement applied to Judge Gates for the warrants, they offered one eyewitness to the underlying specified unlawful activity. CS-1 was the only supposed eyewitness to the purported Russian bribery/kickback scheme. There was little or no corroboration of the tale spun by CS-1. Meanwhile, law enforcement had in their possession a tape of CS-1 *denying any knowledge* of money-laundering or other incriminating facts and making *no mention whatsoever* of any Russian bribery/kickback scheme. Law enforcement knew of the February 2017 recording because their lead confidential source (CS-2) prepared it while under their supervision. Law enforcement transcribed numerous recordings dating back to 2013, yet did not transcribe this recorded conversation between their two primary confidential sources. Judge Gates had no way of knowing of it. Nor, during the ensuing motions practice and hearings, did the Court or counsel.

Any reasonable person would have known that contradictory declarations by the only eyewitness offered to establish the underlying SUA "was the kind of thing that the judge

8

would wish to know." *Jacobs*, 986 F.2d at 1235 (*cited with approval in Lull*, 824 F.3d 109, 117 (4th Cir. 2016)). That information was all the more material to the magistrate's determination because there was little if any corroboration for CS-1's claims. "When the information forming the basis for probable cause comes from an informant, the informant's 'veracity' and 'reliability' are critical to the totality of the circumstances test." *United States v. Lull*, 824 F.3d 109, 118 (4th Cir. 2016). "While these are not the only factors to be considered, we have held that 'a judicial officer's assessment of probable cause ... *must* include a review of the 'veracity' and 'basis of knowledge' of persons supplying hearsay information.'" *Id.* (emphasis in original).

Here, the only information as to CS-1's "veracity" and "reliability" was the officer's allegation that CS-1, a reliable confidential source that provided security and acted as a go-between for defendant, had personal knowledge of defendant's business dealings while in Russia. (*See* Officer's Aff. (DE 182-1) ¶ 62.a.; 11/7/19 Order (DE 344), pp. 8-9). This was not a situation where there were multiple informants claiming to have witnessed the scheme, independent corroboration, and contemporaneous law enforcement observations supporting the existence of the Russian bribery/kickback scheme claimed by CS-1 – he was essentially the only eyewitness to the claimed SUA offered in support of the warrants. There was no independent corroboration that what he claimed actually occurred. The false claim that CS-1 was "reliable" – omitting and failing to disclose any reference to the February 2017 recording or any contradictory statements by CS-1 – "therefore prevented a neutral magistrate from being able to accurately assess the reliability and the veracity, and thus the significance, of the informant's statements." *Lull*, 824 F.3d at 118. The February 2017 recording fundamentally undermines CS-1's reliability. *See* Ex. 1, pp. 10 of 20 (expressly disclaiming any knowledge of

9

incriminating facts or money-laundering and making no mention of a Russian bribery/kickback scheme).

The absence of any independent corroboration that what he claimed actually occurred and lack of detail even as to the amount Mr. Teyf supposedly made from the scheme further undermine CS-1's reliability. As noted, counsel has been reviewing the voluminous discovery for any independent corroboration of CS-1's claims and has found none. Indeed, even the Government has been unable to provide any document or other information quantifying the amount of the purported kickback that Mr. Teyf is claimed to have received – much less fixing the amount at or above the nearly $40 Million (US Dollars) worth of assets seized and restrained.

When the narrative concerning CS-1's claimed Russian bribery/kickback scheme are excised from the affidavits, there is no basis to find probable cause that specified unlawful activity occurred. (*See* Officer's Aff. (DE 182-1) ¶ 62.a.; 11/7/19 Order (DE 344), pp. 8-9). Nor is there any basis to conclude that Mr. Teyf made any amount from the purported bribery scheme, much less an amount sufficient to support the seizure and restraint of nearly $40 Million in accounts and assets.

Finally, the consequences of these material false statements and omissions cannot be avoided under the good faith exception of *United States v. Leon*, 468 U.S. 897 (1984). The Fourth Circuit has held: "A warrant that violates *Franks* is not subject to the good-faith exception to the exclusionary rule announced in [*Leon*]." *United States v. Colkley*, 899 F.2d 297, 300 (4th Cir. 1990).

## II.     Mr. Teyf's Prior Arguments Further Support the Motion and *Franks* Request.

As the Court is aware, the warrants have already been the subject of significant litigation, hearings and rulings. (DE 247 & 344). The prior motions to suppress and briefing by Mr. Teyf

(DE 182, 210 & 330) and Mrs. Teyf (DE 186 & 199) would have benefited greatly from the disclosure of the February 2017 recording.  Mr. Teyf hereby renews those prior arguments in support of this motion.  Like Judge Gates in his evaluation of the warrant application, the Court had to rely upon the averments of law enforcement without the benefit of the February 2017 recording.  (*See* DE 344 at pp. 3-4, 8-9).  Mr. Teyf submits that the defendants' prior arguments together with the February 2017 recording require a *Franks* hearing and suppression because CS-1 is patently not the "reliable" source presented.

## **CONCLUSION**

For the foregoing reasons, Mr. Teyf requests that the Court order a *Franks* hearing and submits that all evidence and property seized pursuant to the warrants must be suppressed and released from restraint.

Respectfully submitted, this the 12th day of January, 2020.

/s/ F. Hill Allen
F. Hill Allen
THARRINGTON SMITH, L.L.P.
P.O. Box 1151
Raleigh, NC 27602
Phone:  (919) 821-4711
Fax:  (919) 829-1583
hallen@tharringtonsmith.com
N.C. State Bar No. 18884

/s/ Robert S. Wolf
Robert S. Wolf
MOSES & SINGER LLP
The Chrysler Building
405 Lexington Ave., 12th Floor
New York, NY 10174-1299
Phone:  (212) 554-7825
Fax:  (212) 554-7700
rwolf@mosessinger.com
*Counsel for Defendant*

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 12th day of January, 2020, I electronically filed the foregoing RENEWED MOTION TO SUPPRESS EVIDENCE AND RELEASE PROPERTY, AND INCOPORATED MEMORANDUM OF LAW with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

                                    /s/ F. Hill Allen  
                                    F. Hill Allen  
                                    THARRINGTON SMITH, L.L.P.  
                                    P.O. Box 1151  
                                    Raleigh, NC 27602  
                                    Phone:  (919) 821-4711  
                                    Fax:  (919) 829-1583  
                                    hallen@tharringtonsmith.com  
                                    N.C. State Bar No. 18884  
                                    *Counsel for Defendant*

12

Case 5:18-cr-00452-FL   Document 370   Filed 01/12/20   Page 12 of 12