IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:18-CR-00452-FL-1

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | **DEFENDANT LEONID TEYF'S MOTION** |
| v. | ) | **TO DISMISS COUNTS 1-26 AND 33-43** |
| | ) | **Rule 12(b) Fed. R. Crim. Pro.** |
| LEONID ISAAKOVICH TEYF | ) | **(and Incorporated Memorandum of Law)** |

Defendant Leonid Teyf, by and through undersigned counsel, respectfully moves this Court to dismiss Counts 1-26 and 33-43 of the fourth superseding indictment pursuant to Federal Rules of Criminal Procedure 12(b). The indictment fails (i) to sufficiently apprise Mr. Teyf of the charges against him in violation of his Sixth Amendment rights and (ii) to state an essential element of the offense in violation of his Fifth Amendment rights.

**Introduction**

As relevant to this motion, Mr. Teyf stands accused of money laundering in violation of 18 U.S.C. §§ 1957 and 1956(a)(1)(B)(1) and with conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h). An essential element of each of these offenses is the existence of a predicate crime, a "specified unlawful activity." *See United States v. Singh*, 518 F.3d 236, 246, 248 (4th Cir. 2008) ("essential elements" include that "the defendant knew the money laundering proceeds had been derived from [a specified unlawful] activity"). No money laundering offense can exist without a specified unlawful activity resulting in criminally derived property. *See* 18 U.S.C. §§ 1957 and 1956(h). Section 1956(c)(7) provides the exclusive list of more than 175 state, federal, and foreign crimes that constitute specified unlawful activities. Any alleged crime absent from the list is not a specified unlawful activity. *See* Section 1956(c)(7).

In its Introductory paragraphs, the indictment alleges that Mr. Teyf was part of a "kickback" scheme in Russia between 2010 and 2012 in which kickbacks were paid to Serduykov, the Russian Minister of Defense, and others. Specifically, indictment alleges the following about the purported "kickback" scheme: (1) that Anatoliy Serdyukov served as the Russian Minister of Defense between 2007 and 2012, and in this position granted the Russian company Voentorg a contract to provide goods and services to the Russian military; (2) that Mr. Teyf was a Deputy Director of Voentorg between 2010 and 2012; (3) that Voentorg subcontracted with various other companies to provide these goods and services; (4) that Mr. Teyf arranged for subcontractors to fill the various goods and services required by Voentorg's contract; (5) that Mr. Teyf and others devised a scheme in which the subcontractors agreed that a certain percentage of government funds they received for completion of the work on the contract would be paid back as "kickbacks" to Mr. Teyf and others involved in the scheme; (5) that kickbacks were paid in cash over an approximate two-year span between 2010 and 2012; and (6) that most of the kickbacks were paid by Mr. Teyf to the Russian Minister of Defense, Serdyukov, with Teyf retaining the next largest share, and the remaining amount paid to other co-conspirators. (DE 248 at ¶ 8-9). (Neither Teyf nor anyone else is claimed to have been charged, much less convicted, in connection with these alleged events – further confirmation that the claims are manufactured by CS-1.)

Within the text of each money laundering count, the indictment does not refer to a *kickback* scheme at all. Instead, each money laundering count identifies the "specified unlawful activity" supporting the money laundering charge as "an offense against a foreign nation (Russia) involving *bribery of a public official and the misappropriation, theft, or embezzlement of public funds* by or for the benefit of a public official." This language comes straight from 18 U.S.C. § 1956(c)(7)(B)(iv). Subsection (c)(7)(B) lists the foreign crimes that qualify as "specified unlawful

2

activities;" and subsection (c)(7)(B)(iv) lists "bribery of a public official, or the misappropriation, theft, or embezzlement of public funds by or for the benefit of a public official."

The indictment fails to include a statutory reference for a criminal offense in Russia which could be the predicate offense for money laundering in this case. It merely recites the exact language of 18 U.S.C. § 1956(c)(7)(B)(iv) – language that is at odds with the discussion of the Russian "kickback" scheme outlined in the introductory paragraphs of the indictment. The Grand Jury did not agree upon an essential element of the money laundering offenses – that is, which Russian criminal statute was violated – and the indictment does not inform Mr. Teyf of which Russian criminal offense he should prepare to defend against at trial. For these reasons, the indictment on money laundering counts fails (i) to sufficiently apprise Mr. Teyf of the charges against him in violation of his Sixth Amendment rights and (ii) to state an essential element of the offense in violation of his Fifth Amendment rights. The money laundering counts should be dismissed. *United States v. Hooker*, 841 F.2d 1225, 1230 (4th Cir. 1988) (en banc).

## ARGUMENT

A valid indictment "[1] contains the elements of the offense intended to be charged, [2] sufficiently apprises the defendant of what he must be prepared to meet, [and] [3] shows with accuracy to what extent he may plead a former acquittal or conviction" as a bar to any future prosecutions. *See United States v. Hooker*, 841 F.2d 1225, 1227 (4th Cir. 1988) (en banc) (quoting *Russell v. United States*, 369 U.S. 749, 763-64 (1962)) (internal quotations omitted).

Money laundering is a crime only if the money is "derived from [a] specified unlawful activity[.]" 18 U.S.C. § 1957(a); *see also United States v. Vinson*, 852 F.3d 333, 356 (4th Cir. 2017). Conspiracy to commit money laundering is a crime only if the defendant and others agree

3

to launder money knowing it was derived from a specified unlawful activity. *See United States v. Green*, 599 F.3d 360, 371 (4th Cir. 2010).

In short, the specified unlawful activity—an essential element of either offense—is the underlying crime that must first occur for a money laundering offense to exist at all. Indeed, this underlying crime is what creates the "dirty" money. *See* B. Frederic Williams, Jr. & Frank D. Whitney, *Federal Money Laundering: Crimes and Forfeitures*, p. 49 (1999). Section 1956 provides the exclusive list of more than 175 federal, state, and foreign crimes that constitute specified unlawful activities. 18 U.S.C. § 1956(c)(7). A crime absent from this list is not a specified unlawful activity. *Id.*

## I. THE INDICTMENT FAILS TO SUFFICIENTLY APPRISE MR. TEYF OF THE ALLEGED "SPECIFIED UNLAWFUL ACTIVITY" THAT HE MUST DEFEND AND THUS MUST BE DISMISSED.

An indictment that "lack[s] specificity" fails to sufficiently apprise the defendant of the charges against him and is subject to dismissal. Fed. R. Crim. P. 12(b)(3)(B)(iii). This requirement that the Government sufficiently apprise the defendant "derives from the defendant's Sixth Amendment right to be informed of the nature and cause of the accusation." *See United States v. Hooker*, 841 F.2d 1225, 1230 (4th Cir. 1988) (en banc). An indictment "not framed to apprise the defendant 'with reasonable certainty, of the nature of the accusation against him . . . is defective [even if it] follow[s] the language of the statute.'" *Russell*, 369 U.S. at 765 (quoting *United States v. Simmons*, 96 U.S. 360, 362 (1878)). "[P]arroting the language of the statute in the indictment is insufficient." *United States v. Brandon*, 298 F.3d 307, 310 (4th Cir. 2002). A bill of particulars "cannot save an invalid indictment." *See Russell*, 369 U.S. at 770.

4

### A. The Indictment Fails to Specify the Statute or at a Minimum Use the Statutory Language of the Alleged Specified Unlawful Activity.

The Indictment has failed to sufficiently apprise Mr. Teyf of the specified unlawful activity that he and others allegedly committed. First, the Indictment does not indicate *at all* which statute the Government plans to prove Mr. Teyf and others violated, including whether the statute is one under U.S. or Russian law. Second, the indictment is contradictory in that it describes the Russian conduct, in the Introductory paragraphs, as involving a "kickback" scheme; and in the money laundering counts refers to the specified unlawful activity as "bribery . . . and misappropriation, theft or embezzlement of public funds by or for the benefit of a public official."

This improper situation leaves Mr. Teyf to speculate what Russian criminal offenses the Government will offer evidence on, what the elements of any such offenses are, and what his possible defenses to any such charges would be. And, should an illegal "kickback" be added to the list of crimes the Government will claim Mr. Teyf committed in Russia? Bribery is not the same as a kickback. *See, e.g., United States v. Porter*, 591 F.2d 1048, 1052 (5th Cir. 1979) (finding that "'bribes' and 'kickbacks' do not have the same meaning"). By using the conjunctive in its description of the "specified unlawful activity" in the money laundering counts, the indictment announces that there are potentially four Russian criminal offenses that supply the necessary specified unlawful activity: bribery; misappropriation; theft; and embezzlement of public funds by or for the benefit of a public official. If in fact these activities are unlawful in Russia, what are the elements of each offense? Must Mr. Teyf prepare to defend against evidence that he and others committed each of these purportedly Russian criminal offenses, without so much as knowing the statutory reference to these offenses?

In essentially every case involving money laundering, the indictment identifies the statute corresponding to the specified unlawful activity. *See, e.g., United States v. Cherry*, 330 F.3d 658,

5

668 (4th Cir. 2003) (alleging "bank embezzlement under [Section] 656"); *United States v. Smith*, 44 F.3d 1259, 1263 (4th Cir. 1995)) (alleging "wire fraud, in violation of 18 U.S.C. § 1343"); *United States v. Shirkhani*, No. 92-5234, 1993 U.S. App. LEXIS 5405, at *8 (4th Cir. Mar. 17, 1993) ("The 'specified unlawful activity' Shirkhani allegedly committed was bank fraud, in violation of 18 U.S.C. § 1344 [and the indictment] tracks the language of § 1344(2)").

If Mr. Teyf did not commit a crime in Russia, there was no money laundering here in the United States. If the indictment provided a statutory reference to Russian law, Mr. Teyf could present a defense that he in fact did not violate said Russian statute. At a bare minimum, the indictment should use or track the statutory language of the specified unlawful activity – that is the language of any Russian statute or law making the conduct a crime in Russia. This is for good reason: identifying the underlying statute allows the defendant to know the charges against him so that he can exercise his constitutional rights to prepare his defense. Tracking the language of 18 U.S.C. § 1956(c)(7)(B)(iv) should not be confused with tracking the language of the underlying statute that is the basis for the predicate offense. While the indictment here tracks the generic language of Section 1956(c)(7) describing one particular set of generic offenses against a foreign nation that can be a predicate offense, this generic language gives Mr. Teyf absolutely no notice of the elements of the supposed Russian law he allegedly violated.

The court in *United States v. Knowles* has addressed this precise issue. In generic terms, the indictment alleged the specified unlawful activity to be the "carrying on of drug trafficking." *United States v. Knowles*, 2 F. Supp. 2d 1135, 1140 (E.D. Wis. 1998). The Government, however, neither cited any statute nor used the language of any specified unlawful activity. *Id*. at 1140-41. As a result, the defendant was "left to guess" which specified unlawful activity "'drug trafficking' falls under[.]" *Id*. at 1141. The court explained that "neither the court nor the defendant should

6

be required to guess concerning the alleged underlying offense that constitutes the 'specified unlawful activity.'" *Id*. at 1141. In short, the Government failed to sufficiently apprise the defendant of the charges against him in violation of his Sixth Amendment rights. *Id*. at 1141. As a result, the court dismissed the indictment. *Id.* at 1141.

The Fourth Circuit has emphasized the same Sixth Amendment concerns in a case involving another criminal statute with an underlying offense requirement. *United States v. Daniels*, 973 F.2d 272, 275-76 (4th Cir. 1992). In that case, the Government charged the defendant with violating 26 U.S.C. § 5861(e) by *unlawfully* transferring a firearm. *Id*. at 273-74. An *unlawful* transfer is one that in some way "violat[es] the provisions of . . . Title 26, Chapter 53." *Id*. at 274. Thus, Section 5861(e)'s *unlawful* transfer element is the same as the specified unlawful activity element: both elements require an underlying offense to have occurred for the Government to prove the charged offense.

Just like in Mr. Teyf's case, the indictment in *Daniels* did not specify which provisions of Title 26, Chapter 53 the defendant allegedly violated. Indeed, the indictment "neither tracked the statutory language . . . nor cited the actual sections of Chapter 53 that the Government maintained Daniels had violated[.]" *Id*. at 275 (dismissing the indictment for failure to allege an essential element).[1] As the court explained, an indictment under Section 5861(e) should specifically "reference the provisions of Title 26, Chapter 53 allegedly violated." *Id*. at 276 n.2. Doing so "**prevents questions from arising as to the sufficiency of the notice** provided to the defendant." *Id*. at 276 n.2 (emphasis added). Failure to provide sufficient notice would violate the defendant's Sixth Amendment rights. *See Id*. at 274.

---

[1] Eleven days before trial, the Government tried to amend the indictment (without presenting it to the grand jury) to allege the specific statutory violation that made the transfer of the firearm *unlawful*. The court refused to evaluate the merits of the amended indictment, however, because the grand jury did not issue it.

The Tenth Circuit has also held that the Sixth Amendment requires the indictment to allege sufficient facts supporting the underlying offense of the charged crime. *United States v. Rivera*, 837 F.2d 906, 920 (10th Cir. 1988), *aff'd on reh'g*, 874 F.2d 754 (1989).[2] There, the Government charged the defendant with engaging in a "continuing criminal enterprise" in violation of 21 U.S.C. § 848. *Id*. at 910. To meet the essential element at issue, the indictment had to sufficiently allege the underlying offenses – that is, a "continuing series of **violations of this subchapter or subchapter II** of this chapter." *Id*. at 914, n.5 (emphasis added). At trial, the Government tried to introduce evidence of "violations" absent from the indictment. *Id*. at 915. Moreover, the indictment did not track the statutory language of any such "violations." *Id*. at 915. The court reversed the conviction and held the insufficient notice to violate the defendant's Sixth Amendment rights. *Id.* at 915.

In so holding, the court spelled out the "several harms" in failing to provide sufficient notice of the underlying offenses. *Id.* at 918-19. First, the defendant "cannot adequately prepare his defense[.]" *Id*. at 918. Second, the Government "gains an unfair advantage in being 'free to roam at large – to shift its theory of criminality so as to take advantage of each passing vicissitude of the trial and appeal.'" *Id*. at 918 (quoting *Russell v. United States*, 369 U.S. 749, 768 (1962)). If the Government later determines that one underlying offense theory is weak, it can "simply admit evidence of a different offense of which defendant had no prior notice." *Id*. at 918. In other words, the Government "would not be required to decide ahead of time which uncharged offenses, if any, he or she planned to prove at trial." *Id*. at 918. Third, an indictment that allows the

---

[2] On rehearing, the en banc panel was evenly divided. As a result, the court affirmed while also determining that the case would not be binding in the circuit. The case is thus persuasive authority. In addition, the case relies heavily on the Supreme Court's decision in *Russell*, which is controlling authority on this Sixth Amendment issue.

Government to "roam at large" can cause "conviction to rest on one point and the affirmance of the conviction to rest on another." *Id*. at 919 (quoting *Russell*, 369 U.S. at 766).

Like in *Knowles*, *Daniels*, and *Rivera*, the Indictment here neglects to point to any statute or even parrot the language of any underlying offense. The Indictment's inconsistent allegations add to the ambiguity. One is premised on "bribery, theft, misappropriation" and the other on "kickbacks." As a result, Mr. Teyf has been "left to guess" the (1) specified unlawful activity the Government intends to prove. At the same time, the Government is "free to roam at large [and] shift its theory of criminality" with respect to the specified unlawful activity as the case proceeds.

### B. The Government Has Also Appeared Not To Know Which Specified Unlawful Activity Has Been Violated.

Further demonstrating the inadequacy of the notice, the Government has appeared to be equally unsure which specified unlawful activity it plans to prove at trial. As noted above, during the pretrial detention hearing on December 18, 2018, Magistrate Judge Robert T. Numbers, II asked point-blank about this exact issue. "[W]hat's the Government's theory on what law [Mr. Teyf] actually broke? What Russian law . . . or what American law that [he] broke by doing [this]?" Transcript of Detention Hearing, 12/18/2018 ("Tr."), p. 40 l. 25 – p. 41 l. 3. The Government responded, "with all due respect, I do not have that law for you this morning." Tr. p. 41 ls. 4-5. This statement demonstrate that the Grand Jury also did not know, and did not agree on, the particular Russian or American law that Mr. Teyf allegedly "broke by doing this."

The operative indictment still does not provide the law for Mr. Teyf or this Court. That is further confirmation that the Grand Jury also did not know, and did not agree on, the particular Russian or American law that Mr. Teyf allegedly "broke by doing this."

In *United States v. Hooker*, the Government charged the defendant with a RICO conspiracy. *United States v. Hooker*, 841 F.2d 1225, 1227 (4th Cir. 1988) (en banc). The

9

indictment, however, did not allege facts to support the fifth element—*i.e.*, that the enterprise "had an effect on interstate commerce." *Id.* at 1227. The Government received notice of the issue but then neglected to correct it in its superseding indictment. *Id*. at 1233. The Fourth Circuit ordered dismissal of the indictment because it failed to allege an essential element. *Id*. at 1229-30 (adding that, without alleging the essential facts, "a mere statutory reference in the indictment to supply an essential element . . . is contrary to implicit precedent in this circuit").[3]

The court noted that "the facial deficiency in the indictment is even more intolerable because the [G]overnment had **actual notice of the defect** well before trial, and had available a frequently-used mechanism for curing that defect by way of a superseding indictment." *Id.* at 1233 (emphasis added). The defective indictment, even in the absence of prejudice to the defendant, was a "substantive, jurisdictional" one that could not be cured. *Id*. at 1232.

Here, the fourth superseding indictment does not improve upon the third. The money laundering counts in the third superseding did not have any language whatsoever describing the purported specified unlawful activities that form the predicate offenses, and the Introductory paragraphs of the third superseding did not even allege that any of the "kickbacks" or payments were made to any public official in Russia. (DE 215, at par. 8). The insertion of the exact generic language describing the "types" of foreign offenses—in any country around the globe -- that may qualify as predicate offenses, however, does not solve the problem. Like in *Hooker*, the Government has failed to sufficiently apprise Mr. Teyf (and the Grand Jury and this Court) of the charges against him with respect to an essential element. The Government received actual notice of this deficiency, but neglected to fix it. As a result, the Indictment on the money laundering

---

[3] As discussed in Section I(A), the Indictment here even falls short of providing a "mere statutory reference . . . to supply an essential element."

charges does not sufficiently apprise Mr. Teyf of the charges against him in violation of his Sixth Amendment rights and must be dismissed.

## II. THE INDICTMENT OMITS AN ESSENTIAL ELEMENT OF THE OFFENSE – AN ENUMERATED SPECIFIED UNLAWFUL ACTIVITY – AND THUS MUST BE DISMISSED.

An indictment that omits an essential element fails to state an offense and is subject to dismissal. Fed. R. Crim. P. 12(b)(3)(B)(v). The need to allege all essential elements "derives from the Fifth Amendment, which requires that the grand jury have considered and found all elements to be present." *Hooker*, 841 F.2d at 1230. "[P]arroting the language of the statute in the indictment is insufficient." *United States v. Brandon*, 298 F.3d 307, 310 (4th Cir. 2002). In alleging the essential elements, the indictment must contain a "plain, concise and definite written statement of the **essential facts** constituting the offense charged." Fed. R. Crim. P. 7(c)(1) (emphasis added); *see also Brandon*, 298 F.3d at 310 ("the indictment must also contain a 'statement of the *essential facts* constituting the offense charged'"). The inclusion of every element is "essential in a federal indictment because it establishes the court's jurisdiction." *Hooker*, 841 F.2d at 1231-32. Furthermore, the recital in the indictment of the exact generic language of 18 U.S.C. § 1956(c)(7)(B)(iv) makes clear that the Grand Jury did not consider whether one or more specific Russian criminal laws were violated by considering each element of any such Russian criminal offense. The generic language used in this indictment could be applied to any number of criminal offenses in any number of different countries around the world.

### A. The Indictment Fails to State an Essential Element of Money Laundering

The Indictment does not sufficiently allege a specified unlawful activity – an essential element. *See United States v. Shirkhani*, No. 92-5234, 1993 U.S. App. LEXIS 5405, at *9 (4th Cir. Mar. 17, 1993) ("By alleging the underlying 'specified unlawful activity' of bank fraud, Count

11

Forty subsumes the essential elements of bank fraud as a necessary predicate to conviction under § 1957"); *United States v. Woodley*, No. 4:17cr128, 2018 U.S. Dist. LEXIS 20484, at *5 (E.D. Va. Feb. 7, 2018) (citing *United States v. Singh*, 518 F.3d 236, 248 (4th Cir. 2008) ("essential elements [include that] the defendant knew the money laundering proceeds had been derived from [a specified unlawful] activity"); *see also United States v. Adkinson*, 135 F.3d 1363, 1378 (11th Cir. 1998) (citing *United States v. Alford*, 999 F.2d 818, 822 (5th Cir. 1993) ("essential element of the money laundering count is that proceeds of financial transactions represent proceeds of specified unlawful activity"). Without alleging an essential element of money laundering, the Indictment fails to state an offense.

### B. The Fourth Circuit's Decisions in *Pupo, Hooker*, and *Daniels* Warrant Dismissal.

The Fourth Circuit has made clear that indictments lacking an essential element violate a defendant's Fifth Amendment rights and thus must be dismissed.[4]

In *United States v. Pupo*, the Government charged the defendant with certain drug offenses. 841 F.2d 1235, 1237 (4th Cir. 1988) (en banc). The indictment, however, omitted the *mens rea* element of the offenses. *Id*. at 1238-39. Although the indictment included a statutory citation to the offenses, the court found the citation to be insufficient for two reasons. *Id*. at 1239. First, the statutory citation, on its own, provided inadequate notice to the defendant in violation of the Sixth Amendment. *Id*. at 1239. Second, the mere inclusion of the statutory citation did "not ensure that the grand jury ha[d] considered and found **all essential elements of the offense charged** [and] therefore fail[ed] to satisfy the Fifth Amendment." *Id*. at 1239 (emphasis added). As the court

---

[4] For many of the same reasons as discussed here, the Indictment also falls short of protecting Mr. Teyf against double jeopardy. This Fifth Amendment right requires that "the record shows with accuracy to what extent he may plead a former acquittal or conviction." *Russell*, 369 U.S. at 764.

12

further noted, "when an indictment fails to include an essential element of the offense charged, it thereby fails to charge *any* federal offense and a conviction under the indictment may not stand." *Id*. at 1239. The court held the indictment to be defective and thus ordered dismissal. *Id*. at 1239.

The Government in *Hooker* (as discussed in Section I) charged the defendant with a RICO conspiracy. *United States v. Hooker*, 841 F.2d 1225, 1227 (4th Cir. 1988) (en banc). The indictment, however, did not allege facts to support the fifth element—*i.e.*, that the enterprise "had an effect on interstate commerce." *Id.* at 1227. The Government's omission of this essential element resulted in a "substantive, jurisdictional defect . . . [that could not] be cured by a later jury instruction." *Id.* at 1232. Indeed, an attempt to cure the deficient indictment "after the fact" cannot satisfy "the Fifth Amendment right to be tried upon charges found by a grand jury." *Id*. at 1232. Consistent with *Pupo*, the Fourth Circuit ordered dismissal of the indictment for failure to allege an essential element of the charged offense. *Id*. at 1229-30.

The Government in *Daniels* (as also discussed in Section I) charged the defendant with violating 26 U.S.C. § 5861(e) by *unlawfully* transferring a firearm. *United States v. Daniels*, 973 F.2d 272, 273-74 (4th Cir. 1992). As explained earlier, an *unlawful* transfer is one that in some way "violat[es] the provisions of . . . Title 26, Chapter 53." *Id*. at 274. Thus, Section 5861(e)'s *unlawful* transfer element is the same as the specified unlawful activity element: both elements require an underlying offense to have occurred for the Government to prove the charged offense.

Just like in Mr. Teyf's case, the indictment in *Daniels* did not specify which provisions of Title 26, Chapter 53 the defendant allegedly violated. Indeed, the indictment "neither tracked the statutory language . . . nor cited the actual sections of Chapter 53 that the Government maintained Daniels had violated." *Id*. at 275. By failing to sufficiently allege the underlying offense, the court held that the indictment omitted an essential element. *Id*. at 275. As the court explained, "the

13

Government cannot cure . . . an indictment presented by the grand jury that fails to allege each essential element because there is no assurance that the grand jury considered and found each essential element." *Id.* at 274. The court thus dismissed the indictment. *Id.* at 276.

Like in *Pupo*, *Hooker*, and *Daniels*, the Indictment here omits an essential element—*i.e.*, an enumerated specified unlawful activity. Therefore, it falls short of the Fifth Amendment's requirement that "the grand jury have considered and found **all elements** to be present." *Hooker*, 841 F.2d at 1230 (emphasis added); *see also Pupo*, 841 F.2d at 1239; *Daniels*, 973 F.2d at 274; *United States v. Hayes*, 775 F.2d 1279, 1282-83 (4th Cir. 1985). Indeed, if the Government were to proceed, the defendant could be convicted "on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him." *Russell v. United States*, 369 U.S. 749, 770 (1962) (dismissing indictment). Thus, the Fifth Amendment and this circuit's precedents in *Pupo*, *Hooker*, and *Daniels* require dismissal of the Indictment.

### C. The Indictment Fails to Allege an Essential Element *of the Charged Offense.*

In two separate cases, the Fourth Circuit has addressed an unrelated issue (not present here)—whether an indictment must allege every element *of the specified unlawful activity*. *See United States v. Cherry*, 330 F.3d 658, 667 (4th Cir. 2003). The argument in those two cases was quite different. In *Cherry*, the indictment alleged the specified unlawful activity to be "bank embezzlement, in violation of [Section] 656." *Id.* The defendant moved to dismiss on the grounds that the indictment did not allege every element of bank embezzlement. *Id.* at 666. The court held that it need not allege "all of the elements of the specified unlawful activity." *Id.* at 667 (citing *United States v. Smith*, 44 F.3d 1259, 1265 (4th Cir. 1995)) (stating the "details about the nature of the unlawful activity underlying the [money laundering] need not be alleged"). The court explained that it already "addressed the precise question [in *United States v. Smith* of] whether an

14

indictment charging money laundering must allege all of the elements of the specified unlawful activity." *Cherry,* 330 F.3d at 667.

In *Smith*, the relevant count in the indictment alleged "wire fraud, in violation of 18 U.S.C. § 1343" as the specified unlawful activity. *Smith*, 44 F.3d at 1263. The defendant moved to dismiss the indictment on the same grounds as in *Cherry* – failure to allege every element of the specified unlawful activity. The court held the indictment to be sufficient. *Id.* at 1265. As another district court clearly explained, the *Smith* Court found the indictment sufficient because it "(i) alleged that defendant engaged in the predicate offense; and (ii) **identified the predicate statute violated**." *United States v. Le*, 310 F. Supp. 2d 763, 780 (E.D. Va. 2004) (citing *Smith*, 44 F.3d at 1265) (emphasis added)).[5]

Here, the Indictment has failed to allege an element of the money laundering charge itself – an enumerated specified unlawful activity. The Indictment fails to even "identif[y] the predicate statute violated." *See Le*, 310 F. Supp. 2d at 780. In *Cherry* and *Smith*, in contrast, the Government sufficiently alleged the specified unlawful activities: "bank embezzlement, in violation of [Section] 656" and "wire fraud in violation of 18 U.S.C. § 1343[,]" respectively. *See Cherry*, 330 F.3d at 667, *Smith*, 44 F.3d at 1263. Here, without sufficiently pleading an element of the charged offense, the Indictment fails to state an offense and thus must be dismissed.

### III. CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Court grant his motion to dismiss Counts 1-26 and 33-43 of the Indictment.

---

[5] The *Le* court's reading is consistent with the reasoning in *Knowles*, as discussed in Section I(A). In short, the *Knowles* court dismissed the indictment that failed to allege the predicate statute. The indictment alleged in generic terms that the specified unlawful activity was the "carrying on of drug trafficking." *Knowles*, 2 F. Supp. 2d at 1140.

15

Respectfully submitted, this the 13th day of January, 2020.

/s/ F. Hill Allen
F. Hill Allen
THARRINGTON SMITH, L.L.P.
P.O. Box 1151
Raleigh, NC 27602
Phone: (919) 821-4711
Fax: (919) 829-1583
hallen@tharringtonsmith.com
N.C. State Bar No. 18884
*Counsel for Defendant*


/s/ Robert S. Wolf
Robert S. Wolf
MOSES & SINGER LLP
The Chrysler Building
405 Lexington Ave., 12th Floor
New York, NY 10174-1299
Phone: (212) 554-7825
Fax: (212) 554-7700
rwolf@mosessinger.com
*Counsel for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 13th day of January, 2020, I electronically filed the foregoing **DEFENDANT LEONID TEYF'S MOTION TO DISMISS COUNTS 1-26 AND 33-43 Rule 12(b) Fed. Rules Crim. Pro. (and Incorporated Memorandum of Law)** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/ F. Hill Allen
F. Hill Allen
THARRINGTON SMITH, L.L.P.
P.O. Box 1151
Raleigh, NC 27602
Phone: (919) 821-4711
Fax: (919) 829-1583
hallen@tharringtonsmith.com
N.C. State Bar No. 18884
*Counsel for Defendant*