IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:18-CR-00452-FL-1

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | **DEFENDANT LEONID TEYF'S MOTION** |
| v. | ) | **FOR SEVERANCE OF COUNTS 27-29** |
| | ) | **Rules 8 and 14, Fed. R. Crim. Pro.** |
| LEONID ISAAKOVICH TEYF | ) | **(and Incorporated Memorandum of Law)** |

Defendant Leonid Isaakovich Teyf, through undersigned counsel, moves the Court pursuant to Rules 8 and 14 of the Federal Rules of Criminal Procedure for a severance of the Counts related to money laundering (Counts 1-26, 33-43), immigration fraud (Count 30), immigrant visa fraud (Counts 31), tax (Counts 44-47) and FINCEN failure to file report of foreign bank account (Counts 48-49) from the Counts related to the alleged Murder for Hire (Counts 27, 28, and 29). The Counts related to the alleged Murder for Hire offense are not of the same or similar character as, and have no logical relationship to, the other Counts in the Indictment. Joinder of these Counts for trial is improper and prejudicial to Defendant. In support of this Motion, Mr. Teyf shows as follows:

**I. Introduction**

Mr. Teyf is charged with:

(1) beginning in March 2011 and continuing through the present, conspiring, in violation of 18 U.S.C. 1956(h), with Tatyana Teyf, Alexey Timofeev, and others, to "knowingly conduct and attempt to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, an offense against a foreign nation (Russia) involving bribery of a public official and the

misappropriation, theft or embezzlement of public funds by or for the benefit of a public official," in violation of 18 U.S.C. 1956(a)(1)(B(i); and knowingly engaging and attempting to engage in monetary transactions by, through or to a financial institution, affecting interstate and foreign commerce, in said criminally derived property of a value greater than $10,000, in violation of 18 U.S.C. 1957,[1] (**Count One**);

(2) on various specific dates between September 2, 2014 and April 23, 2014, with Tatyana Teyf and Alexey Timofeev, aiding and abetting each other in knowingly engaging or attempting to engage in monetary transactions by, through or to financial institutions including Bank of America, First Citizens, Wells Fargo, and PNC, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is, an offense against a foreign nation (Russia) involving bribery of a public official and the misappropriation, theft, or embezzlement of funds by or for the benefit of a public official, in violation of 18 U.S.C. 1957 and 2 (**Counts Two through Twenty-Six**);

(3) on or about May 23, 2018, giving $10,000 to an employee of the United States Department of Homeland Security to cause an individual (A.G.) to be deported from the United States, in violation of 18 U.S.C. 201(b)(1) (**Count Twenty-Seven**);

(4) on or about June 20, 2018, using a cellular telephone with the intent that the murder for hire of A.G. be committed, in violation of 18 U.S.C. 1958 (**Count Twenty-Eight**);

(5) on or about June 20, 2018, aiding and abetting others to knowingly possess a firearm that had been shipped in interstate commerce with an obliterated serial number, in violation of 18 U.S.C. 922(k), 924(a)(1)(B), and 2 (**Count Twenty-Nine**);

---

[1] Neither Defendant nor anyone else has ever been charged with any related offense in the Russian Federation, and we dispute that any criminal offense or specified unlawful activity ever occurred in Russia.

(6) from on or about October 28, 2014 to October 28, 2018, conspiring with, and aiding and abetting Tatyana Teyf, Alexey Timofeev, and Olesya Timofeeva, and others, to induce an alien to come to, enter, or reside in the United States, knowing such would be a violation of law, in violation of 18 U.S.C. 1324(a)(1)(A)(iv), 18 U.S.C. 1324(a)(1)(A)(v)(I), and 18 U.S.C. 1324(a)(1)(A)(v)(II) (**Count Thirty**);

(7) on or about August 16, 2018, using and possessing an immigrant visa, at the Raleigh Durham Airport, in his own name, which had been procured by means of a false claim (that he was a multinational executive at Delta Plus, LLC, making $110,000 annually), in violation of 18 U.S.C. 1546(a) (**Count Thirty-One**);

(8) on various specific dates between February 4, 2014, and January 9, 2019, engaging and attempting to engage in monetary transactions by, through or to financial institutions, including Bank of America, PNC, Merrill Lynch, and First Citizens, affecting interstate or foreign commerce, with criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is, an offense against a foreign nation (Russia) involving bribery of a public official and the misappropriation, theft, or embezzlement of funds by or for the benefit of a public official, in violation of 18 U.S.C. 1957 (**Counts Thirty-Three to Forty-Three**);

(9) on September 26, 2013, April 9, 2015, June 28, 2016, and August 31, 2016, with Tatyana Teyf, willfully filing tax returns which he did not believe to be true and correct, in that they did not disclose an interest in a foreign financial account, in violation of 26 U.S.C. 7206(1) (**Counts Forty-Four through Forty-Seven**);

(10) on or about June 30, 2015, failing to file FINCEN Form 114 Report of Foreign Bank and Financial Account, disclosing his interest in Alfa Bank account 3381 in Russia, in violation of 31 U.S.C. 5324 and 5322(b), and 31 C.F.R. 103.24 and 103.27 (**Count Forty-Eight**); and

(11) on or about June 30, 2016, failing to file FINCEN Form 114 Report of Foreign Bank and Financial Account disclosing his interest in Alfa Bank accounts 1081, 3381, 5709, and 8721 in Russia, in violation of 31 U.S.C. 5324 and 5322(b), and 31 C.F.R. 103.24 and 103.27 (**Count Forty-Nine**).

Counts 26 through 28 relate exclusively to an alleged attempt to have A.G. deported or to arrange the murder for hire ("MFH") of A.G.  The MFH counts are not of the same or similar character as the money laundering, immigration fraud, tax, and FINCEN counts.  They are not based on the same act or transaction, connected, or parts of a common scheme or plan.  They have no logical relationship with one another, and joinder of these counts is improper under Rule 8.  Defendant will be prejudiced by the joinder of these counts, and they should be severed pursuant to Rules 8 and 14.

## II. ARGUMENT

### A. Joinder under Rule 8

Rule 8 of the Federal Rules of Criminal Procedure permits joinder of offenses that "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. Pro. 8(a).  Offenses that do not have a "logical relationship" with one another should not be joined for trial.  *United States v. Cardwell,* 433 F.3d 378, 385 (4th Cir. 2005); *U.S. v. McLaurin*, 2011 WL 6179955, W.D.N.C. Dec. 13, 2011.  A "temporal" relationship between two counts – that they occurred at the same time – is not sufficient to show that they are logically related.  *United States v. Hawkins,* 776

4

F.3d 200 (4th Cir. 2015) (fact that offenses occurred within three weeks of one another is not enough); *Cardwell,* 433 F.3d at 386 (joinder of firearm and MFH count improper where firearm was seized during investigation of MFH plot); *U.S. v. Singh,* 261 F.3d 530, 532-33 (5th Cir. 2001).

Courts have an interest in judicial economy, and joinder is the rule rather than the exception. *Hawkins,* 776 F.3d at 206 ; *United States v. Acker,* 52 F.3d 509, 514 (4th Cir.1995). "The requirements of Rule 8(a), however, are not infinitely elastic, and so cannot be stretched to cover offenses ... which are discrete and dissimilar." *Hawkins,* 776 F.3d at 206 (internal citations and quotations omitted). Joinder of unrelated charges creates the possibility that a defendant will be convicted based on considerations other than the facts of the charged offense. *Hawkins,* 776 F.3d at 206. An important element of a fair trial is that the jury only consider relevant and competent evidence bearing on the issue of guilt or innocence. *Id., quoting Bruton v. United States,* 391 U.S. 123, 131 n. 6, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

The Court may look to the allegations in the indictment, the evidence to be produced at trial, or a pre-trial proffer of evidence in determining whether joinder is proper. *Cardwell,* 433 F.3d at 385, 385 n. 1. The Indictment, search warrant affidavits on file, and discovery produced to date in this matter make clear that the basis of the money laundering charged here is an alleged bribery or kickback scheme that occurred in Russia. (DE 182–1, Officer's Aff. ¶ 62); Order of Nov. 7, 2019 (DE 344 at pp. 3-4, 8-9). The Indictment alleges that:

- between 2010 and 2012, Mr. Teyf was Deputy Director of Voentorg, a Russian company;

- the Russian Minister of Defense (Serdyukov) granted Voentorg a contact to provide the Russian military with goods and services (e.g., laundry, food and equipment);

5

- Voentorg subcontracted with various other companies to provide these goods and services;

- Mr. Teyf arranged for subcontractors to fill the various goods and services required by Voentorg's contract;

- Mr. Teyf and others devised a scheme in which the subcontractors agreed that a certain percentage of government funds they received for completion of the work on the contract would be paid back, as "kickbacks," to Mr. Teyf and others involved in the scheme;

- the kickbacks were paid in cash and amounted to more than $150,000,000 over an approximate two year span between 2010 and 2012;

- most of the kickbacks were paid by Mr. Teyf to Serdyukov, with Teyf retaining the next largest share, and the remaining amount to be paid to other co-conspirators; and

- in about 2013, Serdyukov's scheme allegedly became public, an investigation was allegedly initiated by a prosecutor in Russia, and Mr. Teyf allegedly directed that money be delivered to an associate of the Prosecutor in order to end the investigation. (DE 248, par. 8-9).

Mr. Teyf is alleged to have moved some of the proceeds of the Voentorg contracts out of Russia, and eventually into banks and financial institutions in the United States. (DE 248, par. 10). He is charged with money laundering offenses on the theory that approximately $39,500,000 in funds he eventually transferred into the United States were "criminally derived proceeds" of the Russian kickback/bribery scheme, "transferred from foreign corporations and bank accounts in countries commonly known to be used for money laundering," and that all subsequent transactions (between 2011 and the present) with these funds are money laundering. (DE 248. at par. 10-17 and et. seq.)

Under these facts, all money laundering charges may properly be joined for trial as part of an alleged common scheme. The charges that Mr. Teyf made a false statement on his visa application, and thereby entered the United States in August of 2018, failed to report income on tax returns in the United States in 2013, 2015, and 2016, and failed to file FINCEN reports of foreign bank accounts in which he had an interest in 2015 and 2016 may or may not be viewed as part of the alleged money laundering scheme.[2]

The MFH charges are wholly unrelated and in a different category altogether. As the only link between the MFH charges, on the one hand, and the money laundering /immigration /tax /FINCEN charges, on the other, is the Defendant, there is no legal justification for joinder. *See Hawkins*, 776 F.3d at 209 (joinder of carjacking and felon in possession of firearm charges held to be prejudicial to defendant, despite both being firearms offenses and both occurring within 17 days of each other); *Cardwell,* 433 F.3d at 387 (if the Defendant is the only thing the charges have in common, that is not enough). The MFH charges here relate to Mr. Teyf's alleged personal vendetta against A.G., with whom it is alleged Mr. Teyf believed Ms. Teyf was having a romantic relationship, and to Mr. Teyf's alleged attempts to have A.G. deported (Count 27) or killed (Count 28) by means of a firearm (Count 29). There is no allegation that A.G. was involved in the alleged money laundering. There is no allegation that A.G. was involved in inducing aliens to come to, enter, or reside in the United States as alleged in Count Thirty. There is no allegation that A.G. was involved in tax matters for the Teyfs or involved with any of the named or unnamed co-conspirators in any manner. In fact, A.G. was the son of a domestic employee of the Teyfs.

---

[2] The charge that Mr. Teyf induced an alien to come to, enter, or reside in the United States, alleged in Count Thirty, is not logically related to the money laundering/immigrant visa fraud/tax/FINCEN charges; however, Mr. Teyf does not object to Count Thirty being tried with these other counts if the MFH counts are severed.

7

The facts alleged in Counts 27-29 all occurred in May and June of 2018, in the United States. By contrast, the alleged specified unlawful activity underlying the money laundering occurred in Russia, five or more years earlier. The money laundering, tax, immigration, and FINCEN charges are neither similar or logically related to the MFH charges, and they should not be joined for trial. *Hawkins,* 776 F.3d 200; *McLaurin,* at p. 4 (ordering severance of count charging possession of a .40 caliber pistol, seven months earlier than the conspiracy and firearms possession charged in other counts).

### B. Severance under Rule 14

#### 1. Unfair prejudice would result from the jury hearing evidence of a different, unrelated crime allegedly committed by Defendant

Even where joinder is proper, the Court may sever counts if joinder "appears to prejudice a defendant." Fed. R. Crim. Pro. 14. A defendant seeking severance pursuant to Rule 14 must make a sufficient showing of prejudice. As set forth above, joinder of the designated offenses is not proper, and the Counts must be severed under Rule 8. Additionally, even if joinder was deemed proper, the unfair prejudice resulting from a jury hearing testimony about an alleged murder for hire, in a trial which otherwise concerns a purported Russian bribe/kickback scheme, money laundering, immigration and financial crimes, is extraordinary and certain. Conversely, the prejudice where a jury deciding the MFH Counts hears evidence of unrelated criminal allegations – suggesting that the defendant has engaged in other unlawful conduct, or otherwise has a criminal propensity – is likewise undeniable.

There is no allegation of any act of violence occurring in connection with the alleged Russian bribery/kickback scheme. There is no allegation that the firearm referenced in Count 29 was used, or ever referred to by any witness, except in connection with the MFH charges. The evidence relating to the MFH is not "inextricably intertwined with the evidence regarding" the

8

alleged money laundering/tax/FINCEN/immigration charges. *Compare United States v. Nixon,* 396 F. Appx. 1, 3 (4th Cir. 2010) ("[e]vidence is inextricably intertwined with the evidence regarding the charged offense if it forms an integral and natural part of the witness's accounts of the circumstances surrounding the offenses for which the defendant was indicted," quoting *United States v. Wilson,* 624 F.3d 640, 652 (4th Cir.2010)). The evidence for these two groups of Counts is not intertwined at all. *Compare McLaurin*, 2011 WL 6179955, at p. 3 (evidence of firearms possession charge was "inextricably intertwined" with the evidence regarding conspiracy to rob a drug dealer, where Defendant sold undercover officer two firearms during their two meetings in which the robbery was planned.)

In determining prejudice to the Defendant that could result from improper joinder, the Court should consider whether evidence would be mutually admissible in both trials. *Hawkins,* 776 F.3d at 209. The evidence relating to the MFH would not be admissible in the money laundering/tax/FINCEN/immigration trial to prove motive, intent, opportunity, identity, and plan. *See id.;* Fed. Rule Evid. 404(b); *United States v. Carmichael,* 685 F.2d 903, 910 (4th Cir.1982); *United States v. Foutz,* 540 F.2d 733, 737 (4th Cir.1976). The evidence relating to the MFH has no probative value in the money laundering/tax/FINCEN/immigration trial, and the danger of unfair prejudice that would result if a jury heard this evidence is unquestionable. Likewise, the danger of introducing the evidence of other alleged violations in the MFH trial is clear. In the MFH trial, the suggestion that Defendant bribed Russian officials and engaged in broad scale money laundering around the globe has the potential to prejudice the jury as to the Defendant's character and to predispose them to convict Defendant on the MFH charges. Evidence of unrelated bad conduct that suggests Defendant's propensity to commit crimes can

9

have a "substantial and injurious effect or influence in determining the jury's verdict," which a limiting instruction cannot cure. *Hawkins,* 776 F.3d at 211.

### 2. A joint trial would violate Mr. Teyf's Sixth Amendment rights because he would be foreclosed from eliciting crucial favorable testimony for his defense from Defendant Tatyana Teyf on the MFH charge.

Defendant Tatyana Teyf is not charged in Counts 27-29, the MFH charges. If these counts are severed, and Mr. Teyf is the sole defendant in a subsequent trial of these counts, he would exercise his Sixth Amendment right to compulsory process and to present a defense by offering testimony of a material witness to his defense of those charges, specifically Tatyana Teyf. Ms. Teyf can testify as to critical facts, including the fact of her extra-marital relationship with A.G., the alleged victim of the attempted MFH. Ms. Teyf could also testify about A.G.'s threatening criminal conduct towards her which was communicated to Mr. Teyf and relevant to his lack of intent to commit the MFH offense for which he stands charged. She is the only witness who would be in a position to competently testify about those crucial facts. Most importantly, unlike other lines of cases where a testifying co-defendant must otherwise agree to testify and waive his or her Fifth Amendment Privilege, such is not the case with Ms. Teyf, who at a subsequent MFH trial would have no such privilege and whose voluntary commitment to testify would be obviated by Mr. Teyf's constitutional right to have the court compel her testimony.

If substantial prejudice springs from a joint trial, severance is mandated. *U.S. v. Shuford*, 454 F.2d 772, 775 (4th Cir. 1971). The facts peculiar to each case will determine whether sufficient prejudice exists to call for severance. Severance is required where, as here, one defendant's case rests heavily on the potentially exculpatory testimony of his co-defendant, willing to give such testimony but for the fear that taking the stand in the joint trial would

10

jeopardize her own defense. *Id.; see also U.S. v. Echeles,* 352 F.2d 892 (7th Cir. 1965) (court erred in failing to grant severance so that Echeles could call his co-defendant to testify in his behalf, where statements previously made by co-defendant, absolving defendant, would only be admissible if co-defendant repeated them on witness stand).

In *Shuford,* the defendant sought testimony from co-defendant Jordan in regard to "a crucial fact on which the Government and Shuford were in sharp disagreement." *Shuford*. at 777. No other witness testified regarding Shuford's instructions to Long about allegedly improper billing, the centerpiece of the case. Jordan, the only potential witness with direct knowledge of Shuford's instructions to Long, declined to take the stand because he was also a defendant. The Court held that "[i]n a situation where the elusive quality of credibility is of such importance, the jury should have the benefit of all relevant testimony likely to shed light on the situation," and found that the denial of Shuford's motion for severance "so tipped the scales against Shuford that he failed to receive a fair trial." *Id.* And that "[a] verdict based so heavily on less than the full available testimony, where the missing testimony could, with relative ease, have been procured, should not stand." *Id.*

The *Shuford* court noted that, while both Shuford and Jordan indicated to the trial judge that Jordan would testify if granted a severance, and the precise content of his expected testimony,

> it was not beyond question that Jordan's testimony would be forthcoming after the severance. The movant is not put to such stringent proof. A reasonable probability appearing that the proffered testimony would, in fact, materialize, Shuford should not have been foreclosed from the benefits of Jordan's pivotal testimony simply because that probability was not an absolute certainty.

*Id.* at 778.
11

Here, as in *Shuford,* Ms. Teyf's testimony is crucial in that she is the most competent if not only witness who can provide key evidence of her relationship to A.G., his threatening conduct towards her and Mr. Teyf's family (which was reported to law enforcement), and other relevant criminal conduct of A.G. material to the defense. If separate trials are ordered, there is more than a reasonable possibility that she would do so voluntarily and provide favorable testimony, since as set forth above, her testimony can otherwise be compelled through the enforcement of Mr. Teyf's Sixth Amendment rights. *Compare U.S. v. Reavis,* 48 F.3d 763, 768 (4th Cir 1995) (severance is not required where witness would provide no more than vague and conclusory statements of purely cumulative or negligible weight or probative value, and where it is not likely or guaranteed that witness would waive Fifth Amendment privilege if necessary to testify at a second trial), and cases cited therein.

As in *Shuford*, the facts of each particular case make clear whether sufficient prejudice exists to call for severance. In this case, because of the critical need for Ms. Teyf's testimony and the lack of any other witness who could competently testify so effectively for the defense, severance should also be ordered for these reasons.

### III. CONCLUSION

For the foregoing reasons, Counts 27-29 should be severed from the other Counts of the Fourth Superseding Indictment, and the Defendant should be afforded a separate trial on these Counts.

Respectfully submitted, this the 13th day of January, 2020.

/s/ F. Hill Allen
F. Hill Allen
THARRINGTON SMITH, L.L.P.
P.O. Box 1151
Raleigh, NC 27602
Phone: (919) 821-4711
Fax: (919) 829-1583
hallen@tharringtonsmith.com
N.C. State Bar No. 18884
*Counsel for Defendant*


/s/ Robert S. Wolf
Robert S. Wolf
MOSES & SINGER LLP
The Chrysler Building
405 Lexington Ave., 12th Floor
New York, NY 10174-1299
Phone: (212) 554-7825
Fax: (212) 554-7700
rwolf@mosessinger.com
*Counsel for Defendant*

# CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of January, 2020, I electronically filed the foregoing **DEFENDANT LEONID TEYF'S MOTION FOR SEVERANCE OF COUNTS 27-29 (and Incorporated Memorandum of Law)** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/ F. Hill Allen
F. Hill Allen
THARRINGTON SMITH, L.L.P.
P.O. Box 1151
Raleigh, NC 27602
Phone: (919) 821-4711
Fax: (919) 829-1583
hallen@tharringtonsmith.com
N.C. State Bar No. 18884
*Counsel for Defendant*