IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:18-CR-452-1-FL

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) |
| v. | ) UNITED STATES' RESPONSE TO |
| | ) DEFENDANT'S RENEWED MOTION |
| | ) TO SUPPRESS EVIDENCE AND |
| LEONID ISAAKOVICH TEYF, | ) RELEASE PROPERTY |
| Defendant. | ) |

The United States of America, by and through the United States Attorney for the Eastern District of North Carolina, hereby responds in opposition to defendant's renewed motion to suppress evidence and release seized assets, and states unto the Court the defendant's renewed motion to suppress evidence and release properties should be denied.

I. STATEMENT OF THE FACTS AND ISSUES

On November 8, 2018, the grand jury returned a 29-count indictment against defendant and others, specifically and relevant to the instant motion, charging defendant with involvement in a spending money laundering conspiracy in violation of 18 U.S.C. § 1956(h) and 19 substantive counts of spending money laundering in violation of 18 U.S.C. § 1957.

On December 5, 2018, the government filed applications for eight (8) seizure warrants pursuant to 18 U.S.C. §§ 981 and 982.[1] The resulting warrants allowed seizure of four (4) vehicles and 23 accounts at four different financial institutions.[2]

---

[1] See 5:18-MJ-2082, 5:18-MJ-2083, 5:18-MJ-2084, 5:18-MJ-2085, 5:18-MJ-2086, 5:18-MJ-2088, 5:18-MJ-2089, 5:18-MJ-2090.

[2] One of the four vehicles was never located (5:18-MJ-2082) and 4 of the accounts had been closed prior to execution of the approved warrants. Two of these

1

On December 6, 2018, a superseding indictment was returned by the grand jury. That superseding indictment alleged the defendant also violated 8 U.S.C. § 1324 by engaging in a conspiracy to harbor illegal aliens, and it added four substantive counts of spending money laundering against defendant relating to the purchase of three of the vehicles to be seized pursuant to the warrant issued the day previous, and for the purchase of $2,600,000 in artwork. D.E. 20. On December 6, 2018, law enforcement conducted searches of the main home of defendant and co-defendant Tayana Teyf, of a townhome owned by defendant, of vehicles and of the belongings of co-conspirators. Numerous firearms, approximately $100,000 in U.S. currency, jewelry, valued at approximately $333,272, and artwork with an estimated value of $560,000 were seized.

On January 11, 2019, a ninth application for a seizure warrant was filed, seeking seizure of an additional account at one of the four previously identified financial institutions. It also sought authority to seize an account listed on a previous warrant that the bank had been unable to effectuate.[3] A tenth application for a seizure warrant was filed that same day, and a seizure warrant was obtained for three accounts located in defendant Tatyana Teyf's name at a fifth financial institution.[4]

On February 6, 2019, a second superseding indictment was returned by the grand jury, adding five (5) substantive spending money laundering counts, two (2) against defendant, in violation of 18 U.S.C. § 1957. D.E. 127. A seizure warrant

---

accounts were from the warrant in 5:18-MJ-2088, and two from the warrant in 5:18-MJ-2090.
[3] 5:19-MJ-1054
[4] 5:19-MJ-1053.

2

was obtained for a bank account opened by defendant Tatyana Teyf in January 2019.[5]

Upon information and belief, defendant had an interest in at least nine of the various bank accounts seized by warrant.

On March 15, 2019, the defendant moved the court to suppress evidence and release his seized assets. Summarized, the defendant's motion argued:

1. Allegations which challenge the sufficiency of probable cause underlying the various seizures;

2. Allegations of false and misleading statements contained in the affidavits in support of the warrants;

3. Allegations that the government exceeded the scope of the search warrant of the home at 6510 New Market Way by seizing jewelry;

4. Allegations that the seized assets included assets untainted by the alleged criminal acts; and

The government responded that it had probable cause for the seizure of each and every item taken; the affidavits for such search and seizures were executed in good faith and free from the types of false and misleading statements which detract from probable cause; and the government did not need a warrant for the seizure of the jewelry.

On April 24, 2019, United States Magistrate Judge Robert Numbers held a hearing regarding the motion to suppress. On May 8, 2019, he issued a memorandum and recommendation to deny defendant Teyf's motion (D.E. 247), and in light of a request for Teyf's then-counsel to withdraw, this Court stayed the decision on the motion to suppress (See docket of May 30, 2019). Objections to the

---

[5] 5:19-MJ-1243.

M & R were filed by defendant on September 6, 2019, and the government filed its response on September 19, 2019. D.E. 330 and 337. This Court denied the motion to suppress on November 7, 2019. D.E. 344.

The defendant now alleges he has found "new" evidence of the government's failure to disclose, either intentionally or with reckless disregard, material information omitted from the various affidavits filed in the case. The defendant provides a portion of a recording he had transcribed, and alleges that at a time in February 2017, a witness now used by the government in establishing the specified unlawful activity underpinning the money laundering charges against the defendant, told another man, then a CHS for the government, that he had no knowledge of money laundering by Teyf. While the government agrees the recording is authentic, it is not new evidence and the particular statement was not known to the agent at the time of the affidavit, but more importantly, it in no way negates probable cause.

## II. ARGUMENT

**A. The evidence is not new.**

The recording at issue was turned over to defense in January 2019. Bates-stamped A000114-R.[6] Attached to it was the report by the CHS who had recorded the conversation. Bates-stamp A000114-116. Contrary to the defendant's assertions, the government transcribed the very sentences relied upon by defense now, and provided it to the defendant on March 8, 2019. Bates-stamp A000114-T6. This disclosure was one week prior to the filing of the motion to suppress, and

---

[6] Reference to the Bates-stamp of the actual documents and things herein is made for defendant's use and reference, and are not attached to this filing.

ultimately eight months prior to the Court's decision on the motion. Bates-stamp A000114-T6. This same transcript was disclosed to current defense counsel on July 26, 2019, six weeks before objections were filed to the M&R. The Government has surpassed its discovery obligations in this regard and while it may have been newly discovered by the defendant, it was fulsomely disclosed months before defendant's motion.

### 2. The recording is insufficient to challenge the affidavits.

"Where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause," a hearing is warranted. Franks v. Delaware, 438 U.S. 154, 155–56 (1978). "[T]he defendant must provide facts—not mere conclusory allegations—indicating that the officer subjectively acted with intent to mislead, or with reckless disregard for whether the statements would mislead, the magistrate. United States v. Moody, 931 F.3d 366, 370-71 (4th Cir. 2019) (citing United States v. Colkley, 899 F.2d 297, 301 (4th Cir. 1990)). "Allegations of negligence or innocent mistake are insufficient." Herring v. United States, 555 U.S. 135, 145 (2009) (quoting Franks, 438 U.S. at 171).

A defendant must also "establish that the false statement or omission was material, meaning that its inclusion or exclusion is 'necessary to the finding of probable cause.'" D.E. 344 at 11, quoting Moody, 931 F.3d at 371 (internal citations omitted); citing United States v. Wharton, 840 F.3d 163, 168 (4th Cir. 2016). "To determine materiality, a court must 'excise the offending inaccuracies and insert the facts recklessly omitted, and then determine whether or not the 'corrected'

5

warrant affidavit would establish probable cause.'" Miller v. Prince George's Cty., MD, 475 F.3d 621, 628 (4th Cir. 2007) (quoting Wilson v. Russo, 212 F.3d 781, 789 (3d Cir. 2000). "The burden of making the necessary showing" to be entitled to a Franks hearing "is thus a heavy one to bear." United States v. Tate, 524 F.3d 449, 454 (4th Cir. 2008). D.E. 344 at 11.

Here, the defendant makes two incorrect assertions to support their position that the omission of the referenced statement was intentional or reckless: 1) law enforcement "knew" this recording existed, because it was made by a CHS with whom they were working, and 2) because they did not have it transcribed. D.E. 370 at 8. Taking them in reverse order, as shown above, defendant is incorrect because the recording was transcribed and provided to defense before the motion to suppress was originally filed. .

Similarly, the defendant's first assertion is also incorrect. The recording was not transcribed until late February of 2019, several months after the affidavits were filed. Bates-stamp A000114-T1. This is consistent with the disclosure in discovery originally only of the recording and the source reporting. Upon information and belief, the affiant does not speak Russian, and he relied upon the CHS report, documented at Bates-stamp A000114-116, as a summary of that conversation. In that report to the FBI agents, the CHS said that the witness had told him he was afraid of returning to Russia, because Teyf knows people there who could hurt him. The witness admitted to illegal conduct here in the United States, and expressed the desire to straighten that out. Bates-stamp A000116. There is no showing, circumstantial or otherwise, that the affiant knew of a contradictory statement by the witness at the time he wrote the affidavit of the witness' involvement in

transporting funds for Teyf.

Moreover, by the time the affiant wrote the affidavit, it was clear the statement was made out of fear of the unknown allegiances the CHS had. That is, the witness did not know the CHS was a CHS, and could have very well been a confidant of Teyf's sent to find out what the witness knew. The context of the conversation between the CHS and this witness, in February 2017 and several months before law enforcement ever approached the witness directly, was not a confidential conversation between two co-operators. This was a probe by one CHS for more information of a witness who appeared extremely reluctant to trust anyone. The transcript shows he stayed silent in response to several comments and inquiries the CHS made about Teyf's criminal acts. The witness in turn expressed significant fear of Teyf such that the witness will not return to his homeland or family there, and he readily admitted his own criminal conduct here in regard to working while on a guest visa and failing to pay income taxes. At other points in the conversation, the witness clarifies he does not know anything because he did not handle the finances, and at another point, that he does have some documents regarding some of the meetings [presumably those relating to Teyf's criminal activities in Russia]. Indeed, by the time of the indictments and seizures in this case, the witness had turned over documents supportive of his allegations, and even recordings he had of Teyf asking a person in Russia be made "sick" to get him out of the way, and of a conversation the witness had with another person at Teyf's direction, in connection with bribe money paid the person on behalf of Teyf. Additionally, but for having seen monies transferred to Cyprus, the witness actually does not provide information about "money laundering" in contradiction of this statement to the

7

CHS. Rather, the witness provided information about bribery and kickbacks, and as noted, provided documents to the government that pertain to this conduct, consistent with his assertion to the CHS that he had some.

As noted by the Court in its original denial of the motion to suppress, significant other evidence supports probable cause in this instance: "Defendant received tens of millions of dollars in cash from international wires, with no legitimate explanation to account for these wires. CS-1 provided testimony that indicates the amount of money received from the transfers was consistent with the amount provided to others involved in the scheme. Finally, the source of the funds, the way they arrived in the United States, and the unusually frequent transfers of money between accounts once the money arrived in the United States, are indicative of money laundering. The government demonstrate[d] probable cause that the assets seized are involved in defendant's money laundering. See Miller, 911 F.3d at 233 n.4; Moore, 27 F.3d at 976–77." D.E. 344 at 10.

The Government respectfully contends that defendant's mistaken claim of "new" evidence is a second bite at the apple of suppression which continues to fail to meet the heavy burden applied by the Fourth Circuit. Nonetheless, the defendant will have ample opportunity to probe the Government's sources for truthfulness, bias, and mistake through the cross-examination process. As opposed to the question of admission, Defendant's assertions are more appropriately matters of weight and credibility of Government witnesses appropriately handled through the trial process.

## III. CONCLUSION

For all the above-stated reasons, the defendant's renewed motion to suppress and release properties should be denied without hearing as to all assets.

Respectfully submitted this 22nd day of January 2020.

ROBERT J. HIGDON, JR.
United States Attorney

By:  */s/ Barbara D. Kocher*
JASON M. KELLHOFER
BARBARA D. KOCHER
MATTHEW L. FESAK
Assistant U.S. Attorney
310 New Bern Avenue, Suite 800
Raleigh, NC 27601
Telephone: 919-856-4530
Fax: 919-856-4487
E-mail: jason.kellhofer@usdoj.gov
OH Bar: 0074736
E-mail: barb.kocher@usdoj.gov
NC Bar: 16360
E-mail: matthew.fesak@usdoj.gov
NC Bar: 35276

# CERTIFICATE OF SERVICE

This is to certify that I have this 22nd day of January 2020, served a copy of the foregoing filing upon counsel for the defendant in this action by electronically filing the foregoing with the Clerk of Court, using the CM/ECF system that will send notification of such filing to:

| | |
|---|---|
| F. Hill Allen | Robert S. Wolf |
| Tharrington Smith, L.L.P. | Moses & Singer, L.L.P. |
| P.O. Box 1151 | 405 Lexington Ave. 12th Floor |
| Raleigh, NC 27602 | New York., NY 10174-1299 |

By: */s/ Barbara D. Kocher*
BARBARA D. KOCHER
Assistant U.S. Attorney
310 New Bern Avenue, Suite 800
Raleigh, NC 27601
Telephone: 919-856-4530
Fax: 919-856-4487
E-mail: barb.kocher@usdoj.gov
NC Bar: 16360