IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:18-CR-452-1-FL

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) |
| v. | ) UNITED STATES' |
| | ) RESPONSE TO DEFENDANT'S |
| LEONID ISAAKOVICH TEYF, | ) MOTION TO SEVER COUNTS |
| | ) 27 - 29 FOR SEPARATE TRIAL |
| Defendant. | ) |

The United States of America, by and through the United States Attorney for the Eastern District of North Carolina, hereby responds in opposition to defendant's motion to sever Counts 27 through 29 pursuant to Rules 8 and 14 of the Federal Rules of Criminal Procedure. The charged offenses are of the same or similar character and constitute parts of a common scheme or plan, and defendant's motion should be denied.

I. STATEMENT OF THE FACTS AND ISSUES

The Fourth Superseding Indictment charges the above-captioned defendant with Spending and Concealment Money Laundering Conspiracy, in violation of 18 U.S.C. §§ 1956(h) and 1957 (Count One), Spending Money Laundering in violation of 18 U.S.C. § 1957 (Counts Two through Nine, Eleven, Twelve, Thirteen, Seventeen through Nineteen, Twenty-One through Twenty-Four, Thirty-Five, Thirty-Six, Forty, and Forty-One), Conspiracy to Harbor Illegal Aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(iv) and 1324(a)(1)(A)(v)(II)(Count Thirty), Visa Fraud in violation of 18 U.S.C. § 1546(a) (Count Thirty-One), False Statements on a Tax Return in violation of 26 U.S.C. 7206(1) (Count Forty-Four through Forty-Six), and failure to file a required report of foreign bank and financial accounts, in violation of 31 U.S.C.

1

§§ 5314 and 5322 (Counts Forty-Eight and Forty-Nine). The indictment also charges defendant Teyf with Bribery of a Public Official, in violation of 18 U.S.C. § 201 (Count Twenty-Seven), Use of Interstate Commerce Facilities in the Commission of a Murder for Hire, in violation of 18 U.S.C. § 1958 (Count Twenty-Eight), and Possession of a Firearm with an Obliterated Serial Number, in violation of 18 U.S.C. § 922(k) (Count Twenty-Nine). D.E. 248.

Defendant Teyf claims that the latter three of the described charges should be severed and tried separately from the others. D.E. 388. He argues that the only link between the charges in Counts Twenty-Seven through Twenty-Nine and the remaining charges is himself, that is, that he is charged in all of them. D.E. 388 at 7. This, argues the defendant, would be insufficient connection between the charges to be a permissible joinder for trial. D.E. 388 at 7. Defendant argues the types of crimes are not similar, some are alleged to have happened in Russia, some here, and the span of time between them is too great. D.E. 7-8. The defendant's arguments are incorrect, as all charged offenses are inextricably intertwined, all occurred here in the United States yet all have connection to actions in Russia, and all are temporally related. The charges are certainly of sufficient interrelatedness to pass review under Rules 8 and 14.

## II. ARGUMENT

Rule 8, Federal Rules of Criminal Procedure, provides:

(a) Joinder of Offenses. The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged—whether felonies or misdemeanors or both—are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.

Fed. R. Crim. P. 8(a). This rule permits "very broad joinder," and joinder is the "rule, rather than the exception." United States v. Hawkins, 776 F.3d 200, 206 (4th Cir. 2015). Thus, while the Fourth Circuit has found that mere existence of the same defendant amongst charges is insufficient for joinder of those charges, it has emphasized that the second and third alternative prongs of Rule 8 should be interpreted "'flexibly, requiring that the joined offenses have a logical relationship to one another,'" and that, "[j]oined offenses have a logical relationship to one another for Rule 8(a) purposes, 'when consideration of discrete counts against the defendant paints an incomplete picture of the defendant's criminal enterprise." United States v. McLaurin, 764 F.3d 372, 385 (4th Cir. 2014) (quoting United States v. Cardwell, 433 F.3d 378, 385 (4th Cir.2005) (internal quotation marks omitted)).

Removing Counts 27-29 in the present instance has the effect of turning the real story into an abridged version–painting an incomplete story of the defendant's criminal enterprise. McLaurin, 764 F.3d at 385. The interwoven nature of the underlying conduct – albeit for separate offenses – is such that it logically presumes one telling and hinders a full understanding when attempted to do so separately. While the evidence at trial will of course be far more fulsome, the Government herein sets forth the basis for these beliefs.

As alleged, each of the substantive money laundering counts results from specific financial transactions taking place in the United States between February 3, 2014 (Count 33) and January 9, 2019 (Count 43). Evidence will be presented to display that these finances were themselves the product of illicit activity that previously took place in Russia. A portion of this evidence will require testimony by a confidential human source (CHS#1) who worked for defendant TEYF in Russia.

3

This will require explanation to the jury of the manner in which Russian businesses operate and the immense power and influence held by those in control – all to help explain how certain corruption takes place. A portion of this will include displaying the ability to conduct strong-arm tactics against employees and to bribe government officials; this will partly be presented via recordings taken in Russia by CHS#1. Moreover, it will be displayed that these are criminal actions that TEYF outsources to others, such as CHS#1 at the time, to engage in on his behalf. Evidence will show that for those actively engaging in crimes for TEYF, he obtains their assistance and maintains control over them through payments or other means.

This is then further corroborated by and entirely consistent with evidence that occurs as a result of recordings of TEYF taken by a second CHS (CHS#2) in relation to Counts 27-29. As to Count 27, while it is a different government official, and a different government, it is another instance of TEYF bribing a government official. This is consistent with his method of operating in order to get what he wants and using someone else to do his bidding by paying them off.

Count 27 is directly related to Count 28 in which TEYF pays to have his wife's paramour (A.G.) murdered. The evidence for Count 28 will display that while TEYF ultimately resolved to have A.G. murdered in the U.S., his preference had been to have A.G. deported to Russia due to the ease with which he could murder A.G. in Russia. Something much more understandable if a jury is aware of the criminal endeavors engaged in within Russia and the manner in which they were done and his sphere of influence. Of course, TEYF is yet again paying to have criminal conduct accomplished on his behalf – again consistent with his criminal activity within Russia. In fact, in addition to paying the supposed hitman, TEYF

additionally offers this hitman the opportunity to take a "director" role of a company in Russia for TEYF. The recordings in relation to Count 28 directly display that TEYF does in fact wield power and influence in Russia. Indeed TEYF is certain that if he can ensure the deportation of his wife's paramour, he will be able to have that person killed with relative ease. TEYF repeatedly affirms that others fear him because of his ability to harm their families who are in Russia. TEYF additionally contemplated murdering his wife and was set on obtaining millions back from her that he asserts to be his. Indeed, these are funds that the Government believes relate back to the money laundering. The evidence in relation to Count 28 also involves TEYF asserting that he had a hand in ensuring charges were filed against his wife in Russia. This further link to such influence within Russian governmental affairs continues to interweave with the government's explanation of TEYF's positions and capabilities within Russia for purposes of the money laundering offense. Additionally, a portion of the evidence for Count 28 regards TEYF's intended return to Russia. The evidence, to include the recordings taken by CHS#2, involve TEYF's expectation of returning to Russia to engage in businesses with government related contracts – ones that are extremely similar to those he is alleged to have used in relation to the underlying criminal activity to the money laundering counts. Without understanding all of the activity related to the money laundering offenses in regards to these new ventures, it is much more difficult to comprehend why TEYF would be willing to leave the U.S. for good after the murder of A.G.. For TEYF, these events were coinciding perfectly for him as he intended to return to another opportunity far more lucrative than it would seem on legitimate books. Count 29 involves TEYF's possession of a firearm with an obliterated serial number.

The underlying conduct is direct facts and circumstances related to Counts 28 and 29, but even this count independently continues to display the manner in which TEYF operates, consistent with the criminal activity related to the money laundering counts. In this instance, the Government will present evidence displaying that TEYF again outsourced the hands-on portion of his criminal conduct by having another person obtain the firearm, remove the serial number, and provide the firearm to the expected hitman.

In this case, the government's evidence will show that each crime charged in the indictment occurred here in the United States, yet either arose in or was to be completed in Russia. For in Russia, Teyf had power, finances, and influences, and his modus operandi was to control his businesses and family in minute detail. He received ledgers daily and discussed down to the ruble what had happened that day and where the money went or should go. He tracked his family, namely, Mrs. Teyf, by her phone, and used a private investigator to track her even more completely. He, as a matter of course, responded generally to failures of comrades (employees or others), disloyalty, or outside threats in one of two ways: 1) he would bribe his way out of difficulties or 2) he would arrange for harm to occur to the person, be it physical or psychological. The manner and means by which Teyf operated his business and personal interests are the same; all counts of the indictment are connected and part of the full story of Teyf's criminal endeavors.

This is applicable to the Immigration offenses found within Counts 30 and 31, as well. For instance, the government's evidence will show that the charged immigration crime at Count 30, conspiracy to harbor illegal aliens, was just one part of the larger picture. To continue in the manner in which he was accustomed in

6

Russia, maintaining control over his fiefdom, Teyf needed persons here with a healthy respect and fear of him, persons on whom he had "something" by which he could control them. There are several persons who came to the United States at Teyf's behest on promises of well-being and assistance in obtaining legal status here, and who in the end were denied that assistance, all so that Teyf could keep power over them. That included the confidential source known as Eclipse (CHS#1), co-defendants Alexsey and Olesya Timofeev, and even Mrs. Teyf herself. By bringing persons to the U.S. with the full intent of having them work for him without lawful immigration authority to do so, he was able to exert continuing control of these persons. First, the promised immigration assistance didn't come. Then, when he perceived disloyalty showed in small ways, he fired them or withdrew financial support. Finally, when that disloyalty grew to a larger proportion, he reacted in ways harmful to them. The charges found in Counts 27-29 are but continuations of Teyf's story. A.G.'s parents were actually brought to the United States under the same guise as Eclipse and the Timofeevs–that they would be given jobs and have assistance in getting status here. Yet that assistance never developed and after they made the poor decision to begin illegally working in the U.S. for TEYF, he had a form of control over them. And as to Count 31, Visa Fraud, this involves a false application that, once again, TEYF utilized another person whom he pays and keeps under his thumb with the prospect of even greater pay days. Moreover, the fraudulent statements in the visa application relate back to a company in Russia.

If charges are properly joined, there may be occasions where resulting prejudice would be so great, that the court may order separate trials in any event. Fed. R. Crim. P. 14(a). Such is not the case here. In many ways, doing so would be

7

to separate the vanilla from the chocolate of the twist ice cream cone. Each flavor, while distinct in many regard, are part of the whole in this instance. Due to the interwoven aspects of the conduct underlying all of the counts, there is a logical relationship between them that denies a full and fair understanding of the evidence if separated.

"Rule 8(a) permit[s] very broad joinder because of the efficiency in trying the defendant on related counts in the same trial." United States v. Cardwell, 433 F.3d 378, 385 (4th Cir. 2005)(internal citations omitted). The same applies for joinder under Rules 8(b) and 14. "Rules 8(b) and 14 are designed to promote economy and efficiency and to avoid a multiplicity of trials, [so long as] these objectives can be achieved without substantial prejudice to the right of the defendants to a fair trial. While an important element of a fair trial is that a jury consider only relevant and competent evidence bearing on the issue of guilt or innocence, a fair trial does not include the right to exclude relevant and competent evidence." Zafiro v. U.S., 506 U.S. 534 (1993) (internal citations and quotations omitted).

In the instant case, the situation is much different than that presented in Hawkins. First, Hawkins did not demonstrate a close connection between the possession of the various firearms, and the carjacking. Hawkins at 207-08. Here, the government does have a strong connection in modus operandi of all charged offenses. Second, in Hawkins, the government argued only that the charges were of the same or similar character, not that the evidence as to each count would be admissible as to the others. The Hawkins court specifically found the different charges bore no similarity to the others. Id. at 208.

This case is more like that presented in United States v. Cole, 857 F.2d 971

(4th Cir. 1988). In Cole, "both the allegations in the indictment and the proof at trial were more than adequate to establish the connection between the drug conspiracy and the alien smuggling charges. Unquestionably, the smuggling counts were 'related to, and ... logically and intimately connected together with' the drug conspiracy." Id. at 973 (quoting United States v. Jamar, 561 F.2d 1103, 1106 (4th Cir.1977)). Here, as in Cole, "some connection" exists between the counts, and in balancing the possible prejudice in trying the counts together against the possible prejudice to the defendant, "the balance tilt[s] in favor of a joint trial." There exists in this case a logical and intimate connection between the offenses which makes joinder proper.

Finally, "less drastic measures, such as limiting instructions, often will suffice to cure the risk of prejudice." Zafiro, 506 U.S. at 539. In this Court, a routinely given instruction in trial on a multi-count indictment includes an instruction to the essence of: "A separate crime is charged in each count of an indictment. Each count, and the evidence pertaining to it, should be considered separately. The fact that you may find the defendant guilty or not guilty as to one of the crimes charged should not control your verdict as to any other." Sec. 1, 5th Cir. PJI Modern Federal Jury Instructions-Criminal 1.21 (2017). Such limiting instruction is usually requested by the government, and would be requested in this case, as well.

## III. CONCLUSION

For all the above-stated reasons, the defendant's motion to sever Counts Twenty-Seven through Twenty-Nine should be denied.

Respectfully submitted this 27th day of January 2020.

        ROBERT J. HIGDON, JR.
        United States Attorney

By:   */s/ Barbara D. Kocher*
        JASON M. KELLHOFER
        BARBARA D. KOCHER
        Assistant U.S. Attorney
        310 New Bern Avenue, Suite 800
        Raleigh, NC 27601
        Telephone: 919-856-4530
        Fax: 919-856-4487
        E-mail: jason.kellhofer@usdoj.gov
        OH Bar: 0074736
        E-mail: barb.kocher@usdoj.gov
        NC Bar: 16360

CERTIFICATE OF SERVICE

This is to certify that I have this 27th day of January 2020, served a copy of the foregoing filing upon counsel for the defendant in this action by electronically filing the foregoing with the Clerk of Court, using the CM/ECF system that will send notification of such filing to:

Joseph E. Zeszotarski, Jr.
For Tatiana Teyf
115 ½ West Morgan Street
Raleigh, NC 27601

David W. Long
For Tatiana Teyf
P.O. Box 1801
Raleigh, NC 27602-1801

F. Hill Allen
Tharrington Smith, L.L.P.
P.O. Box 1151
Raleigh, NC 27602

Robert S. Wolf
Moses & Singer, L.L.P.
405 Lexington Ave. 12th Floor
New York., NY 10174-1299

By: */s/ Barbara D. Kocher*
    BARBARA D. KOCHER
    Assistant U.S. Attorney
    310 New Bern Avenue, Suite 800
    Raleigh, NC 27601
    Telephone: 919-856-4530
    Fax: 919-856-4487
    E-mail: barb.kocher@usdoj.gov
    NC Bar: 16360