IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:18-CR-452-1-FL

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>LEONID ISAAKOVICH TEYF | GOVERNMENT'S NOTICE UNDER<br>FED. R. EVID. 404(b) |

The United States of America, by and through the United States Attorney for the Eastern District of North Carolina, pursuant to Rule 404(b) of the Federal Rules of Evidence, hereby provides notice of its intent to introduce evidence relevant to the defendant's motive, opportunity, intent, preparation, plan, knowledge, identity, and lack of mistake or accident as to the charged crimes, and such evidence is admissible under Fed. R. Evid. 404(b).

## PROCEDURAL BACKGROUND

The defendant has been charged with involvement in a spending money laundering conspiracy in violation of 18 U.S.C. § 1956(h) and numerous substantive counts of spending money laundering in violation of 18 U.S.C. § 1957; Bribery of Public Official and Aiding and Abetting in violation of 18 U.S.C. §§ 201(b)(1) and 2; Use of a Facility of Interstate Commerce in Commission of a Murder for Hire and Aiding and Abetting, in violation of 18 U.S.C. §§ 1958 and 2; Possession of a Firearm with Obliterated Serial Number, in violation of 18 U.S.C. §§ 922(k) and 924 (a)(1)(B); violation of 8 U.S.C. § 1324 by engaging in a conspiracy to harbor

1

illegal aliens; commission of visa fraud, in violation of 18 U.S.C. § 1546(a); False Statements on Tax Returns, in violation of 26 U.S.C. § 7206(1), and Failure to File FinCen Form 114 Reports of Foreign Bank and Financial Accounts (FBAR), in violation of 31 U.S.C. §§ 5314 and 5322(b). A jury trial is scheduled to begin on all charges March 16, 2020.

As forecast in its response to defendant's motion to sever trial on some counts of the indictment from other counts in the same indictment, the government's evidence will include a number of inextricably intertwined pieces of evidence that are necessary to tell the full story of the crimes with which defendant is charged. In this case, the government's evidence will show that each crime charged in the indictment occurred here in the United States, yet either arose in or was to be completed in Russia. For in Russia, Teyf had power, finances, and influences, and his modus operandi was to control his businesses and family in minute detail. He received ledgers daily and discussed down to the ruble what had happened that day and where the money went or should go. He tracked his family, namely, Mrs. Teyf, by her phone, and used a private investigator to track her even more completely. He, as a matter of course, responded generally to failures of comrades (employees or others), disloyalty, or outside threats by: 1) bribing his way out of difficulties or to get something he wanted; 2) arranging for harm to occur to the disloyal, be it physical or psychological harm; or 3) manipulating people and events to his benefit. The manner and means by which Teyf operated his business and personal interests are the same.

# EVIDENCE OF UNCHARGED MISCONDUCT

In its response to the defendant's motion to sever counts, the government forecast that a portion of its evidence would include displaying Teyf's ability to conduct strong-arm tactics against employees and others and to bribe those who have the authority and/or ability to get him what he wants. The government's trial evidence will also demonstrate Teyf's ability to manipulate events and documents to the same end. While the government maintains that the below is direct evidence of the crimes charged, in any event, all is relevant to the defendant's motive, opportunity, intent, preparation, plan, knowledge, identity, and lack of mistake or accident as to the charged crimes. In an overabundance of caution, notice is given defendant that the evidence outlined below is potential 404(b) evidence.

Modus operandi: bribery

    a. In Russia: a recording between CHS#1 and a person closely connected to the prosecutor then investigating alleged wrongdoing by Oboronservis and its subsidiaries, which included Voentorg, on the subject of monies paid by Teyf to that person to stop the investigation as to Teyf.

    b. In the United States: testimony by a co-conspirator regarding Teyf's conduct in his pending charges in the District of Utah[1]; testimony and/or recording of his stated willingness to bribe officials at Duke University to obtain admittance for his son; and testimony regarding

---

[1] United States District Court for the District of Utah, 2:19-CR-394-DB-DBP-4.

his willingness to bribe an inmate with whom he was housed for cigarettes and a cell phone.

Modus operandi: strong-arm tactics

    c. A recording between CHS#1 and Teyf in which Teyf informs CHS#1 that an individual who had interfered in Teyf's business needed to be made "sick," and that someone not connected to Teyf should be found to do it.

    d. Teyf had drugs planted in A.G.'s vehicle and had a tracker planted on A.G.'s vehicle as part of his attempt to get A.G. deported to Russia.

    e. Teyf's promised assistance with immigration, then failed to assist, or affirmatively prevent the person from getting legal status here in the United States, re: CHS#1, Alexey Timofeev, Olesya Timofeeva, and A.G.'s parents.

    f. Teyf's statements that his spouse was able to get out of Russia in light of charges against her in Russia, despite a mugging and theft of her travel papers while there, and his reference to having the entire border shift fired as a result.

    g. Teyf's statement that he would take his spouse outside of the United States, perhaps to Mexico, in light of the pending charges against her in Russia. There, Teyf asserted, she could be arrested and removed back to Russia, while the same could not happen if she stayed in the United States.

    h. Teyf's expressed intent to kill his spouse once she returned to Russia.

    i. Teyf threatened to harm and/or kill the families of those who cross him, to include the family of his spouse.

Modus operandi: manipulation of events and documents

    j. Recordings of calls made by Teyf while in jail, regarding attempts to gather and manipulate documents in Russia. Among other things, Teyf directs persons there to "wear high heels" and short skirts" to get what is needed; that everything [on the documents] has to match," that the first set [of documents] sent to the attorneys in the United States was complete "nonsense," and Teyf asked if they had found counterfeiters to complete "all the repairs."

    k. Evidence will be offered concerning Teyf's knowledge about the need to file the FBAR, to include testimony and emails regarding the advice he received from multiple professionals. The evidence will show Teyf declined the advice to file the form, but instead chose alternate advice to divorce his spouse. The associated evidence will include statements made to the local police after the divorce that the divorce was on paper only, that the assets remained his, and other statements to the effect his spouse stole $10 million from him (the approximate amount given her by the divorce papers) and it was best to try and get back in good stead with her to get the money back.

    l. Teyf used and abused others' finances to his ends. He made employees

pay out of their own pockets what should have been company expenses. He stated on multiple occasions to at least one employee, if you have an opportunity not to pay, don't pay." Although literally in possession of millions of dollars, Teyf used others to back loans to his companies and register trucks for his businesses.

m. Similarly, Teyf told CHS#1 on more than one occasion, that the "best money is the money you obtain from the government."

## LAW and ANALYSIS

### *Fed. R. Evid. 404(b)*

Although there are exceptions, character evidence is generally inadmissible for the sole purpose of providing action in conformity therein. *See* Fed. R. Evid. 404(a). Likewise, evidence of a crime, wrong, or other act is not admissible to solely prove up an otherwise inadmissible character trait. *See* Fed. R. Evid. 404(b). However, there are explicitly well-recognized appropriate reasons for admitting other crimes, wrongs, or acts. These include, but are not limited to such things as proving "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or lack of accident." Fed. R. Evid. 404(b)(2). The Fourth Circuit Court of Appeals has "long treated 404(b) as an inclusionary rule, permitting introduction of all evidence except that which proves only criminal disposition." United States v. Sanchez, 118 F.3d 192, 195 (4th Cir. 1997).

Even if evidence is admissible under Rule 404(b), it still must satisfy the strictures of Rule 403 wherein a court may exclude relevant evidence "if its

6
Case 5:18-cr-00452-FL   Document 472   Filed 02/18/20   Page 6 of 12

probative value is substantially outweighed by a danger of" unfair prejudice. Fed. R. Evid. 403. The Fourth Circuit has considered this and found that Rule 404(b) evidence is admissible so long as it satisfies a combined four-part test. The evidence must be: (1) relevant to some issue other than character (the more similar the prior act, the more relevant); (2) necessary to prove an essential claim or element of the offense; (3) reliable; and (4) its probative value must not be substantially outweighed by confusion or unfair prejudice. United States v. Queen, 132 F.3d 991, 997 (4th Cir. 1997); United States v. Aramony, 88 F.3d 1369, 1377 (4th Cir. 1996).

### a. *Intrinsic Evidence*

A "Rule 404(b) inquiry applies only to evidence of other acts that are 'extrinsic to the one charged' [and] 'acts intrinsic to the alleged crime do not fall under Rule 404(b)'s limitations on admissible evidence.'" United States v. Siegel, 536 F.3d 306, 315-316 (4th Cir. 2008) quoting United States v. Chin, 83 F.3d 83, 87-88 (4th Cir. 1996). Thus, evidence is admissible without any need to turn to Rule 404(b) when such evidence furnishes part of the context of the charged crime or is directly applicable to an element of offense. This concept is well-established in the Fourth Circuit. See e.g., United States v. Bajoghli, 785 F.3d 957, 965 (4th Cir. 2015); but see United States v. Fuertes, 805 F.3d 485, 494 (4th Cir. 2015) (footnoting a concern over the potential of having the concept of "intrinsic" evidence too broadly applied). A "not guilty" plea obviously puts into issue every element of the crime for which a defendant is charged. See United States v. Bailey, 990 F.2d 119, 123 (4th Cir. 1993). Of course, as noted above, even under circumstances in which Rule

404(b) is inapplicable, it is still necessary to conduct a Rule 403 analysis.

### b. *Intrinsic Facts Outside the Scope of Rule 404(b)*

The Government has listed above 13 separate paragraphs, enumerated a. through m., all acts and statements by the defendant that are intrinsic to the charged conduct and thus admissible evidence outside the scope of Rule 404(b).

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The presently considered facts provide extremely probative insight into Defendant's relationships and mental state at the time of the charged conduct. These facts are exactly what was contemplated within the Fourth Circuit's reasoning that "evidence is necessary where, considered in 'light of the other evidence available to the government,' it is an 'essential part of the crimes on trial, or where it furnishes part of the context of the crime." Queen, 132 F.3d at 998. While this negates the need for a 404(b) analysis, it is noteworthy that these pieces of evidence display Defendant's modus operandi, his intent, his knowledge, and his consciousness of guilt afterward – thus satisfying the Queen four-part test.

First, it is relevant as it tends to prove facts of consequence – facts which either support the Government's proffered motive, modus operandi, and as to paragraphs j. and k., tend to prove that Teyf was acting in a manner that expressed a consciousness of guilt.

Second, the evidence is necessary to the Government's case-in-chief. At the

trial, understanding Defendant's motive, knowledge, and intent in carrying out these crimes will be a looming question in the mind of the jury. Furthermore, actions Defendant took after committing these crimes, which demonstrate his own consciousness of guilt, will be important for the jury to consider. *See* United States v. Hadaway, 681 F.2d 214, 217 (4th Cir. 1982) (noting, "subsequent conduct may be highly probative of prior intent"). There is no other manner by which this evidence can be presented.

Third, the proposed evidence is reliable. As the Fourth Circuit previously noted, evidence is reliable "unless it is so preposterous that it could not be believed by a rational and properly instructed juror." Aramony, 88 F.3d at 1378. Witness' testimony, recordings, and other exhibits corroborate the evidence tending to show motive and modus operandi. First hand testimony, e-mails, and recordings will provide the evidence tending to show consciousness of guilt. Because such evidence will be sufficient to allow the jury to reasonably conclude that the acts occurred and that Defendant was the knowing actor, such evidence is reliable. See United States v. Powers, 59 F.3d 1460, 1467 (4th Cir. 1995).

The Fourth prong of the Queen test incorporates a Rule 403 analysis and is applicable regardless of whether the prior three prongs are applied. Here, the probative value of the evidence is not substantially outweighed by any unfair prejudice. According to the Fourth Circuit, there is no unfair prejudice when an extrinsic act is no more sensational or disturbing than the crimes with which a defendant is charged. United States v. Boyd, 53 F.3d 631, 637 (4th Cir. 1995).

"'[D]amage to a defendant's case is not a basis for excluding probative evidence,' because 'evidence that is highly probative invariably will be prejudicial to the defense.'" United States v. Basham, 561 F.3d 302, 326 (4th Cir. 2009) (citations omitted). Indeed, evidence of other acts should only be excluded for undue prejudice "where the trial judge believes that there is a genuine risk that the emotions of the jury will be excited to irrational behavior and this risk is disproportionate to the probative value of the offered evidence." Bailey, 990 F.2d at 122 (*citing* United States v. Masters, 622 F.2d 83 (4th Cir. 1980); see also Basham, 561 F.3d at 326-27).

It is unreasonable to claim that the facts set forth *supra* "would invoke emotion in place of reason," or "cause any confusion with respect to the charges." Queen, 132 F.3d at 998. The proposed evidence is certainly no more "sensational or disturbing" than the charged crimes. Evidence of the defendant's manner of doing business and his reactions to people and facts contrary to his interests will hardly entice a jury to "irrational behavior," which is the benchmark of finding such evidence unfairly prejudicial. See Masters, 622 F.2d at 87.

Moreover, "Such prejudice, if any, can be generally obviated by a cautionary or limiting instruction, particularly if the danger of prejudice is slight in view of the overwhelming evidence of guilt." Masters, 622 F.2d at 87-88.

Respectfully submitted, this the 18th day of February, 2020.

                                ROBERT J. HIGDON, JR.
                                United States Attorney

                By:    */s/ Barbara D. Kocher*
                         JASON M. KELLHOFER
                         BARBARA D. KOCHER
                         Assistant U.S. Attorney
                         310 New Bern Avenue, Suite 800
                         Raleigh, NC 27601
                         Telephone: 919-856-4530
                         Fax: 919-856-4487
                         E-mail: jason.kellhofer@usdoj.gov
                         OH Bar: 0074736
                         E-mail:barb.kocher@usdoj.gov
                         NC Bar: 16360

CERTIFICATE OF SERVICE

This is to certify that I have this 18th day of February 2020, served a copy of the foregoing upon the defendants by filing the foregoing with the Clerk of Court, using the CM/ECF system that will send notification of such filing to the defendant's counsel of record.

| | |
|---|---|
| F. Hill Allen | Robert S. Wolf |
| Tharrington Smith, L.L.P. | Moses & Singer, L.L.P. |
| P.O. Box 1151 | 405 Lexington Ave. 12th Floor |
| Raleigh, NC  27602 | New York., NY  10174-1299 |

By:   */s/ Barbara D. Kocher*
  BARBARA D. KOCHER
  Assistant U.S. Attorney
  310 New Bern Avenue, Suite 800
  Raleigh, NC 27601
  Telephone: 919-856-4530
  Fax: 919-856-4487
  E-mail: barb.kocher@usdoj.gov
  NC Bar: 16360