# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NORTH CAROLINA
# WESTERN DIVISION

## NO. 5:18-CR-00452-1-FL

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>  Plaintiff<br><br>  v.<br><br>LEONID ISAAKOVICH TEYF,<br><br>  Defendant | **LEONID TEYF'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF CRIMES, WRONGS, OR OTHER ACTS (Rule 404(b), Federal Rules of Evid.)** |

Defendant Leonid Isaakovich Teyf ("Mr. Teyf") respectfully moves the Court, pursuant to Rule 404(b) of the Federal Rules of Evidence, for an order prohibiting the Government from offering evidence of any alleged crime, wrong, or bad act of the defendant other than those charged in the Indictment. Further, defendant moves for an order specifically prohibiting the Government from introducing any of the "uncharged misconduct" evidence referred to in the Government's February 18, 2020, Notice Under Fed. R. Evid, 404(b) (DE 472) because this evidence is not admissible under Rule 404(b) to prove defendant's motive, opportunity, intent, preparation, plan, knowledge, identity, or lack of mistake, accident, *modus operandi*, or for any other reason, and its admission would be highly and unfairly prejudicial to defendant.[1]

---

[1] As previously indicated, Mr. Teyf has requested the Government's exhibit list so that he may file more complete motions *in limine* (DE 512). The Government, however, has refused to provide its exhibit list before Friday, March 13 – the last business day before the trial begins. Therefore, Mr. Teyf requests the opportunity to file additional motion(s) *in limine* once the Government finally provides its exhibit list. Furthermore, after the Government provides final versions of its and the Defendant's designated transcripts that incorporate agreed-upon translations, the Defendant intends to move to redact offensive and inflammatory language he uses in certain transcripts designated for trial, such as racial, sexist, and homophobic slurs – language which has no relevance to any issue in the case and which would unfairly prejudice Mr. Teyf's defense.

# INTRODUCTION

### I. The Charges

Mr. Teyf is charged with:

(1) beginning in March 2011 and continuing through the present, conspiring, in violation of 18 U.S.C. 1956(h), with Tatyana Teyf, Alexey Timofeev, and others, to "knowingly conduct and attempt to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, an offense against a foreign nation (Russia) involving bribery of a public official and the misappropriation, theft or embezzlement of public funds by or for the benefit of a public official," in violation of 18 U.S.C. 1956(a)(1)(B(i); and knowingly engaging and attempting to engage in monetary transactions by, through or to a financial institution, affecting interstate and foreign commerce, in said criminally derived property of a value greater than $10,000, in violation of 18 U.S.C. 1957, (**Count One**);

(2) on various specific dates between September 2, 2014 and April 23, 2014, with Tatyana Teyf and Alexey Timofeev, aiding and abetting each other in knowingly engaging or attempting to engage in monetary transactions by, through or to financial institutions including Bank of America, First Citizens, Wells Fargo, and PNC, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is, an offense against a foreign nation (Russia) involving bribery of a public official and the misappropriation, theft, or embezzlement of funds by or for the benefit of a public official, in violation of 18 U.S.C. 1957 and 2 (**Counts Two through Twenty-Six**);

(3) on or about May 23, 2018, giving $10,000 to an employee of the United States Department of Homeland Security to cause an individual (A.G.) to be deported from the United States, in violation of 18 U.S.C. 201(b)(1) (**Count Twenty-Seven**);

(4) on or about June 20, 2018, using a cellular telephone with the intent that the murder for hire of A.G. be committed, in violation of 18 U.S.C. 1958 (**Count Twenty-Eight**);

(5) on or about June 20, 2018, aiding and abetting others to knowingly possess a firearm that had been shipped in interstate commerce with an obliterated serial number, in violation of 18 U.S.C. 922(k), 924(a)(1)(B), and 2 (**Count Twenty-Nine**);

(6) from on or about October 28, 2014 to October 28, 2018, conspiring with, and aiding and abetting Tatyana Teyf, Alexey Timofeev, and Olesya Timofeeva, and others, to induce an alien to come to, enter, or reside in the United States, knowing such would be a violation of law, in violation of 18 U.S.C. 1324(a)(1)(A)(iv), 18 U.S.C. 1324(a)(1)(A)(v)(I), and 18 U.S.C. 1324(a)(1)(A)(v)(II) (**Count Thirty**)**;**

(7) on or about August 16, 2018, using and possessing an immigrant visa, at the Raleigh Durham Airport, in his own name, which had been procured by means of a false claim (that he was a multinational executive at Delta Plus, LLC, making $110,000 annually), in violation of 18 U.S.C. 1546(a) (**Count Thirty-One**);

(8) on various specific dates between February 4, 2014, and January 9, 2019, engaging and attempting to engage in monetary transactions by, through or to financial institutions, including Bank of America, PNC, Merrill Lynch, and First Citizens, affecting interstate or foreign commerce, with criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is, an offense against a foreign nation (Russia) involving bribery of a public official and the misappropriation, theft, or

3

embezzlement of funds by or for the benefit of a public official, in violation of 18 U.S.C. 1957 (**Counts Thirty-Three to Forty-Three**);

(9) on September 26, 2013, April 9, 2015, June 28, 2016, and August 31, 2016, with Tatyana Teyf, willfully filing tax returns which he did not believe to be true and correct, in that they did not disclose an interest in a foreign financial account, in violation of 26 U.S.C. 7206(1) (**Counts Forty-Four through Forty-Seven**);

(10) on or about June 30, 2015, failing to file FINCEN Form 114 Report of Foreign Bank and Financial Account, disclosing his interest in Alfa Bank account 3381 in Russia, in violation of 31 U.S.C. 5324 and 5322(b), and 31 C.F.R. 103.24 and 103.27 (**Count Forty-Eight**); and

(11) on or about June 30, 2016, failing to file FINCEN Form 114 Report of Foreign Bank and Financial Account disclosing his interest in Alfa Bank accounts 1081, 3381, 5709, and 8721 in Russia, in violation of 31 U.S.C. 5324 and 5322(b), and 31 C.F.R. 103.24 and 103.27 (**Count Forty-Nine**).

Counts 27-29 relate exclusively to an alleged attempt to have A.G. deported or to arrange the murder for hire ("MFH") of A.G. The MFH counts are not of the same or similar character as the money laundering, immigration fraud, tax, and FINCEN counts. They are not based on the same act or transaction, connected, or parts of a common scheme or plan. They have no logical relationship with one another, and defendant previously moved for a separate trial on these three counts, pursuant to Federal Criminal Rules 8 and 14 (DE 388). The Court denied defendant's motion on February 6, 2020 (DE 448), and on March 6, 2020, defendant moved for reconsideration. (DE 498) Defendant will be prejudiced by the joinder of the MFH counts in a trial on the other counts. Defendant will be similarly prejudiced if the uncharged misconduct evidence discussed herein is presented to the jury. Defendant therefore again respectfully urges

the Court to sever the trial of Counts 27-29, pursuant to Federal Criminal Rules 8 and 14, in conjunction with its ruling on this 404(b) motion.

**II. The Government's Notice Under Rule 404(b) (DE 472)**

On January 13, 2020, Defendant moved for pre-trial disclosure of any evidence the Government intends to offer pursuant to Rule 404(b). (DE 380)   The Government responded with a Notice Under Rule 404(b) (the "Notice"), filed February 18, 2020.  (DE 472)  The Notice is an extensive and far-reaching recitation of evidence of  alleged "uncharged misconduct" the Government intends to introduce at trial.  The Government contends this uncharged misconduct evidence is admissible under one of three broad headings:  Modus operandi: bribery; Modus Operandi: strong-arm tactics; or Modus operandi: manipulation of events and documents.  (DE 472, at pp. 3-6)  The Government argues some of the evidence is evidence of  "acts intrinsic to the alleged crime," which does not fall under Rule 404(b)'s limitations (DE 472, at p. 7), and that some of it is admissible for one of the stated reasons in Rule 404(b).  (DE 472, at p. 1, 6)

The uncharged misconduct evidence is not intrinsic to the crimes charged and is not admissible under Rule 404(b) as evidence of defendant's motive, opportunity, intent, preparation, plan, knowledge, identity, lack of mistake or accident as to the charged crimes, or *modus operandi,* or for any other reason.   In fact, its only purpose would be to prejudice the jury against the defendant.  The Court should enter an order prohibiting the Government from introducing any such evidence at trial.

## ARGUMENT

1. **Legal Standard**

"Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."

5

Fed. R. Evid. 404(b)(1). Such evidence is admissible only for the specific purposes set out in Rule 404(b)(2), "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* at 404(b)(2). The government first bears the burden of demonstrating admissibility under the Fourth Circuit's four-part test. *United States v. Hall*, 858 F.3d 254, 260 (4th Cir. 2017). The government must establish that: (i) the evidence is relevant to an issue and not offered to prove a defendant's general character; (ii) it is necessary to prove an element of the charged offense; (iii) it is reliable; and (iv) its probative value is not substantially outweighed by "confusion or unfair prejudice." *United States v. Queen*, 132 F.3d 991, 997 (4th Cir. 1997); *see also Hall*, 858 F.3d at 260 (not substantially more prejudicial than probative). Finally, the Government must provide "reasonable notice of the general nature" of the evidence in advance of trial. Fed. R. Evid. 404(b)(2)(A); *see also Hall,* 858 F.3d at 260. Notice given during trial is too late (and the evidence excludable *ab initio*) absent a finding of excusable neglect. Fed. Rule Evid. 404(b)(2)(B).

The inadmissibility of evidence under Rule 404(b) is "based on the danger that this type of evidence will overly influence the finders of fact and thereby persuade them 'to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge.'" *United States v. McBride*, 676 F.3d 385, 395 (4th Cir. 2012) (quoting *Michelson v. United States,* 335 U.S. 469, 475-76 (1948)). Thus, the rule "protects against juries trying defendants for *prior acts* rather than *charged acts*." *Hall*, 858 F.3d at 266 (quoting *Queen*, 132 F.3d at 995) (emphasis in *Hall*). And the Fourth Circuit has recognized that the distinction between character evidence and use of the same evidence for some purpose other than propensity is "complex and difficult," leading to a restriction on the otherwise "broad discretion generally given to trial

6

judges in regulating the admissibility of evidence." *See Queen*, 132 F.3d at 995; *see also McBride*, 767 F.3d at 395-96.

### 2. The uncharged misconduct evidence should not be admitted because it is not intrinsic to the crimes charged, probative of a relevant issue, or reliable; and is highly prejudicial.

The wide range of broadly described "uncharged misconduct" evidence listed in the Government's Notice is not, in fact, intrinsic to the crimes charged, and it is not admissible under Rule 404(b). The Government's own characterization of this evidence as "*modus operandi*" evidence gives the lie to the notion that its purpose is other than to prove defendant acted in conformity with his character in committing the charged offenses. Essentially, the Government argues that evidence – which it takes the Government a full five pages to enunciate – of a long list of prior and dissimilar bad acts should be admitted because, in committing the prior acts, defendant behaved in accordance with his predisposition to strong-arm, manipulate, bribe, threaten, and psychologically and physically harm others. This is no more than a thinly veiled attempt to prove that defendant has a propensity, character, or predisposition, to behave in a certain way. Evidence of this type is not admissible under Rule 404(b).

Notably, the Government's Notice is replete with references to *modus operandi*. The thrust of the Government's argument is that, in all spheres of life, defendant's *modus operandi* is "to control his businesses and family in minute detail," to "respond to failures of comrades (employees or others), disloyalty, or outside threats by (1) bribing his way out of difficulties or to get something he wanted; (2) arranging for harm to occur to the disloyal, be it physical or psychological harm; or (3) manipulation people and events to his benefit." This description of the defendant's conduct is so broad as to be nearly meaningless. Psychological harm is equated with physical harm. Defendant's dealings with his employees are equated with his dealings with

7

his family. Failures of employees or family members are equated with disloyalty and outside threats. While all of the uncharged misconduct evidence cited by the Government unquestionably paints the defendant as a bad person, it has no legitimate relevance to an issue in the case, is not necessary, is not reliable. It therefore fails to meet the four prong test set out in *United States v. Queen*, 132 F.3d 991, 997 (4th Cir. 1997) and *United States v. Hall*, 858 F.3d 254, 260 (4th Cir. 2017).

The Government's reliance on *modus operandi* is entirely misplaced. None of the reasons supporting admissibility under Rule 404(b) in the decided cases apply to the facts here. Proof of *modus operandi* under Rule 404(b) should only be relevant where the prior bad act is the same or very similar to the charged offense, and when there is an issue regarding defendant's identity. For example, in *United States v. Foutz*, 540 F.2d 733 (4th Cir. 1976), because the identity of bank robbers was in question, the court considered whether the *modus operandi,* or fingerprint, of two robberies was sufficiently similar that evidence of one could be admitted in a trial of the other. Even where the robbers on both occasions wore similar clothing and hats, entered the bank from the same place, jumped over the counter near the second teller, and exited down the same alley, the Court found the similarities were not strong enough to support admissibility under Rule 404(b). In *U.S. v. Montoya*, 898 F. Supp.2d 1279, 1296 (D. 2012) the Court held evidence of *modus operandi* under Rule 404(b) inadmissible because there was no issue as to identity of defendants; therefore, evidence that defendants used similar *modus operandi* in arresting different suspects on different occasions only proved their propensity to violate the civil rights statute. In *Chavez v. City of Albuquerque*, 402 F.3d 1039, 1046 (10th Cir. 2005), the court similarly found evidence of *modus operandi* should have been excluded under Rule 404(b) because the identity of the defendant was not in question. When the identity of the defendant is clear, and the prior bad act

8

is dissimilar, evidence of defendant's *modus operandi* with respect to prior bad act is nothing more than character evidence – a suggestion that because defendant behaved in a certain manner in the past, he probably behaved in that same manner with respect to the case at hand. *Id.*; *see also United States v. Hall*, 858 F.3d 254, 260 (4th Cir. 2017) (prior conviction for possession of marijuana not admissible to prove intent to distribute marijuana) In *Hall*, the Court stated that allowing evidence of an unrelated, though similar, crime "would eviscerate almost entirely the character evidence rule." *Id.* at 267.

The uncharged acts cited by the Government under the heading *modus operandi*: bribery are not substantially similar to the offenses charged. That defendant sought to bribe a Russian prosecutor to cover up an uncharged alleged Russian bribery scheme is not similar to defendant seeking to bribe an official of U.S. Homeland Security in order to have someone deported; nor is evidence that he sought to bribe officials at Duke University to gain admittance for his son; nor is evidence that he sought to bribe a fellow inmate to obtain cigarettes and a cell phone. *See* Notice, (DE 472 at p. 3). Even a defendant's prior conviction of the same kind of offense is not admissible, "absent some additional connection between the prior offense and the charged offense." *United States v. Hall*, 858 F.3d 254, 268 (4th Cir. 2017).

Perhaps even more troubling is the Government's startling proposal to introduce conduct charged in the District of Utah – pending but not adjudicated. (DE 472 at p. 3). The Government's proposal would unfairly prejudice Defendant in the extreme, and threatens to create multiple mini-trials within this already complex trial. Furthermore, the defendant has grave concerns about the reliability of the evidence of these prior alleged bribes and, if necessary, will hotly contest the allegations. *See United States v. Queen*, 132 F.3d 991, 997 (4th Cir. 1997) (unreliable evidence should not be admitted under Rule 404(b)).

9

The items listed in the Government's "Modus Operandi: strong-arm tactics" section are also not similar enough to charged offenses to satisfy the requirements of Rule 404(b). (DE 472 at p. 4-5). The fact that defendant is alleged to have committed another offense in which deportation or murder was allegedly threatened, involving different people and a different alleged plan, is no more than evidence of bad character. *See U.S. v. Rudolph*, 403 F.2d 805 (6th Cir. 1968) (inquiring of defendant, on cross-examination, as to whether he participated in unrelated criminal act is prejudicial error that cannot be cured by limiting instruction).

Moreover, the Government proposes to introduce alleged acts of marital abuse (DE 472, p. 4 at f.-g.) when Mrs. Teyf was severed to avoid unfair prejudice from claims of marital abuse. This is not evidence of "modus operandi" but a patent smear campaign that is highly prejudicial and calculated to overwhelm the jury's consideration of the actual offenses charged. And, as discussed further below, the reliability of evidence of these prior acts is highly questionable.

The Government's argument that evidence of defendant's "Modus operandi: manipulation of events and documents" should be admitted is similarly unpersuasive. (DE 472 at p. 5-6) That a person has in his life frequently engaged in "manipulating events and documents" is as broad a description as one can imagine, and it cannot satisfy the requirements of Rule 404(b). This evidence would serve only to paint the defendant as a person of bad character. If this argument is accepted, virtually any manipulative thing a person has done in his lifetime would be admissible in a trial for any criminal offense. Certainly, Rule 404(b) does not require or allow this. For example, the Government proposes to present evidence that Teyf "made employees pay out of their own pockets what should have been company expenses. He stated on multiple occasions to at least one employee, ["] if you have an opportunity not to pay, don't pay." (DE 472 at pp. 5-6, at l.-m.).

10

Even more problematic is the Government's proposal to introduce recordings of jail calls. For starters, this will reveal to the jury that Defendant has been detained, which is improperly prejudicial and surely cannot be permitted. The Government focuses on "calls made by Teyf while in jail, regarding attempts to gather and manipulate documents in Russia." Defendant, however, does not presently intend to introduce documents from Russia, other than a set of investment brokerage documents introduced during deposition to which the Government had no objection (Grisheshkin depo. exs. 1-11). Furthermore, remarkably, the Government proposes to introduce a call in which "Teyf asked if they had found counterfeiters to complete 'all the repairs.'" (DE 472 at p. 5, at j.). But the Government itself has now acknowledged that its translator misunderstood the conversation – which actually concerned finding "craftsmen or finishers" to complete some "furniture repairs" (and not counterfeiting or forging documents). All of which speaks to the reliability of the evidence or allegations of uncharged misconduct that the Government proposes to introduce at the trial, and its attempt to present every facet of Defendant's life in the worst possible light. Doing so will not only prejudice Defendant unfairly, in an attempt to tar him as a bad person, but will create numerous mini-trials within a trial that already promises to be complex and lengthy.

None of the decisions holding evidence of a defendant's *modus operandi* admissible under Rule 404(b) involve a defendant committing different and disconnected crimes or bad acts using the same or a somewhat similar manner or means. In *United States v. Queen,* 132 F.3d 991, 996-97 (4th Cir. 1997), the Court held that, in order for repeated acts to have probative value, the earlier actions must be similar in nature to the charged acts, because similarity of the acts provides a logical nexus between the extrinsic act and the charged act. *Id.* The Court held that such similarity also provides a cognizable divide between evidence introduced to show a

11

particular state of mind and evidence introduced to show propensity. *Id.* A "high degree of similarity" between the prior acts and the act with which defendant is charged supports a finding that prior acts are relevant to defendant's intent. *Id.* None of the broad categories or the actions listed by the Government in its Notice are admissible under this interpretation of Rule 404(b).

### 3. The uncharged misconduct evidence is not admissible to prove propensity to commit the crimes charged, in the event that defendant presents a defense of entrapment.

Prior bad acts may also be admissible under Rule 404(b) when defendant asserts an entrapment defense, as evidence of the defendant's predisposition to commit the crime charged (here, murder-for-hire). However, even in the entrapment context, this uncharged misconduct evidence should be excluded, because it does not suggest defendant engaged in crimes that are the same as, or very similar to, those with which he is charged.

The assertion of an entrapment defense puts into issue the defendant's predisposition *to commit the crime charged*, not a general predisposition toward criminal behavior. *Compare U.S. v. Squillacote,* 221 F.3d 542 (4th Cir. 2000) (evidence, in a trial for espionage, that defendant actively sought employment as a spy, and had possession of classified national defense information, before the Government first contacted her, was admissible to prove predisposition.) It certainly does not put into issue whether defendant is a controlling person, towards both family and business associates, and whether he generally engages in bribery, physical and psychological threats, and other controlling types of behavior, on a routine basis.

The Fourth Circuit requires that propensity evidence in an entrapment case relate specifically to defendant's "propensity to commit crimes *of the nature charged." United States v. Burkley,* 591 F.2d 903, 921 (D.C.Cir.1978) (emphasis added) (cited with approval in *U.S. v. McLaurin*, 764 F.3d 372, 379 (4th Cir. 2014). In *McLaurin,* the court found prior possession of a semi-automatic handgun and an AK-47, eight months earlier, combined with defendant's

statement that he would need powerful weapons to commit the robbery so that he could "chop ligaments," admissible to prove predisposition to commit a drug stash house robbery. *Id.* at 376-77. However, "[t]he assertion of an entrapment defense does not justify admission of every bad act ever done by the defendant." *McLaurin,* at 381. The past conduct must be "similar enough and close enough in time to be relevant to the matter at issue." *McLaurin,* at 383.

The *McLaurin* court also noted there was no issue as to reliability of the evidence of defendant's predisposition to commit the stash house robbery, because there was first-person testimony from law enforcement officers who witnessed the prior possession of firearms. *McLaurin,* at 384; *see also United States v. Queen,* 132 F.3d 991, 996-97 (4th Cir. 1997) (reliability must be established before evidence is admitted under Rule 404(b); and prior actions must be similar in character, and not too remote in time, so that there is a logical nexus). In contrast, here, the many and varied "strong-arm tactics," instances of alleged "bribery," and "manipulating events and documents" allegedly occurred over many years, and are not similar enough to the crimes charged. Furthermore, the reliability of the Government's evidence of these alleged prior events is highly questionable. *See also U.S. Swiatek,* 819 F.2d 721, 728 (7th Cir 1987) (evidence that defendant participated in jewelry fencing operation, and advised others on selling stolen cars, not admissible in illegal sale of firearms case because prior acts were "minimally relevant" to the accused's predisposition); *U.S. v. Bramble,* 641 F.2d 681, 682-83 (9th Cir. 1981), *cert. denied*, 459 U.S. 1072, 103 S.Ct. 493, 74 L.Ed.2d 635 (1982) (in entrapment case, conviction for sale of cocaine reversed because evidence of defendant's prior conviction for sale of marijuana was admitted to show his propensity to sell cocaine.)

As with other 404(b) evidence, the unfair prejudice resulting from propensity evidence must be considered by the court. *Bramble,* at 693 (minimal probative value of evidence of prior

13

marijuana sales, to show defendant's propensity to sell cocaine, was outweighed by danger of unfair prejudice). Here, any probative value is vastly outweighed by the unfair prejudice that would result from the jury hearing evidence of the uncharged misconduct.

### 4. The uncharged misconduct evidence should be excluded based on lack of reliability alone

The "uncharged misconduct" described in the Government's Notice has significant and pervasive reliability problems. As one example, under "modus operandi: manipulation of events and documents," the Notice alleges that in a jail recording, defendant was attempting to "gather and manipulate documents in Russia." The Notice states that defendant "asked if they had found counterfeiters to complete all the repairs." However, after filing the Notice, the Government informed defendant that its own linguist listened again to this recording and determined that her translation, in which she used the word "counterfeiters," was mistaken. Instead of "counterfeiters," according to the Government linguist, defendant actually said "<u>craftsmen</u> or <u>finishers</u>," in a discussion about <u>furniture</u>. Yet the Government made no attempt to correct its admittedly incorrect 404(b) Notice. This kind of unreliable evidence invites the jury to convict defendant based on conjecture or a questionable, if not outright false, basis.

The Notice is replete with assertions of facts and events that *may not have ever actually occurred.* Obviously, the Government has the burden of proving that an alleged prior bad act actually occurred before it may even be considered for admissibility under Rule 404(b). *See United States v. Queen*, 132 F.3d 991, 997 (4th Cir. 1997); *Huddleston v. U.S.,* 485 U.S. 681, 689, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988) (government may not "parade past the jury a litany of potentially prejudicial similar acts that have been established . . . only by unsubstantiated innuendo;" court must examine all the evidence in the case and decide whether the jury could reasonably find that the prior act was committed"); *U.S. v. Beechum* 582 FF.2d 898, 912 (5th Cir.

14

1978) (extrinsic offense is only relevant if an offense was in fact committed and the defendant in fact committed it; as a predicate to determination of relevancy, Government must offer proof demonstrating that defendant committed the offense). Defendant requests a hearing outside the presence of the jury, with respect to each and every item of alleged "uncharged misconduct" evidence, so that the Court may determine whether any such misconduct actually occurred, before the evidence is presented to the jury.

**5. The uncharged misconduct evidence should be excluded under Rule 403**

The uncharged evidence the Government seeks to introduce here has little probative value and is dramatically and unfairly prejudicial. The Court must "balance the relevance of the proposed use of the evidence to the case – and the evidence's relevance to that proof – against the high risk that the evidence will also tend to establish bad character and propensity to commit the charged crime." *United States v. Hall*, 858 F.3d 254, 260 (4th Cir. 2017) (prejudicial impact of evidence of prior drug offenses outweighed probative value in subsequent drug prosecution). The prejudicial impact of evidence of the defendant Teyf's prior allegedly violent, threatening, and salacious actions – combined with the sheer volume of uncharged misconduct the Government seeks to introduce – in a trial for financial crimes, money laundering, FBAR, tax, and immigration counts will be highly inflammatory and pervasively detrimental to defendant. *See U.S. v. Rudolph*, 403 F.2d 805 (6th Cir. 1968) (inquiring of defendant, on cross-examination, as to whether he participated in unrelated criminal act is prejudicial error that cannot be cured by limiting instruction). This is especially true because the Government's evidence on the money laundering charge is based on the testimony of a paid confidential informant (Strogii), unsupported and weak, as argued in defendant's Motion to Reconsider, which is hereby adopted and incorporated by reference. (DE 498). *See also Hall,* at 403 F.2d at 269 (prejudicial impact

15

is greater when evidence against defendant is "scarce and equivocal," because of the risk that jury will convict on the basis of propensity alone.) The uncharged misconduct evidence cited by the Government should be excluded under Rule 403.

## **CONCLUSION**

For the foregoing reasons, defendant respectfully requests that the Court enter an order excluding (1) any evidence of any alleged crime, wrong, or other act as proof of defendant's character and (2) any evidence referred to in the Government's Notice Under Fed. R. Evid. 404(b) or similar to the evidence referred to in the Government's Notice. (DE 472). Further, with respect to any evidence referred to in the Notice, or any other evidence the Government seeks to introduce under Rule 404(b), defendant requests a hearing outside the presence of the jury before the evidence is presented.

Respectfully submitted, this the 9th day of March, 2020.

/s/ F. Hill Allen
F. Hill Allen
THARRINGTON SMITH, L.L.P.
P.O. Box 1151
Raleigh, NC 27602
Phone: (919) 821-4711
Fax: (919) 829-1583
hallen@tharringtonsmith.com
N.C. State Bar No. 18884

/s/ Robert S. Wolf
Robert S. Wolf
MOSES & SINGER LLP
The Chrysler Building
405 Lexington Ave., 12th Floor
New York, NY 10174-1299
Phone: (212) 554-7825
Fax: (212) 554-7700
rwolf@mosessinger.com
*Counsel for Defendant*

## CERTIFICATE OF SERVICE

      I hereby certify that on this 9th day of March, 2020, I electronically filed the foregoing **MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF CRIMES, WRONGS, OR OTHER ACTS (Rule 404(b), Federal Rules of Evid.)** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

      /s/ F. Hill Allen
F. Hill Allen
THARRINGTON SMITH, L.L.P.
P.O. Box 1151
Raleigh, NC 27602
Phone: (919) 821-4711
Fax: (919) 829-1583
hallen@tharringtonsmith.com
N.C. State Bar No. 18884
*Counsel for Defendant*