IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:18-CR-00452-1-FL

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff<br><br>v.<br><br>LEONID ISAAKOVICH TEYF,<br><br>Defendant | **MOTION TO PRECLUDE OR LIMIT<br>TESTIMONY OF DREW HOLINER<br>(Fed. R. Evid. 702, 401, 402, 403;<br>U.S. Constitution, Amendment VI)**<br>**and Incorporated Memorandum of Law** |

Defendant Leonid Isaakovich Teyf ("Mr. Teyf") respectfully moves to preclude or limit the testimony of Government expert Drew Holiner, pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 526 U.S. 579 (1993), *Kumho Tire Co. v. Carmichael,* 526 U.S. 137 (1999), Rules 702, 401, 402, and 403 of the Federal Rules of Evidence, and the Sixth Amendment to the United States Constitution. Defendant requests a *Daubert* hearing to determine the admissibility of Mr. Holiner's testimony.

## INTRODUCTION

The Government's Notice of Expert Witnesses (DE 348) (the "Notice") identifies Drew Holiner as a Russian law expert and outlines his expected testimony on three subjects: (1) Russian commerce, history, protocols, and procedures, including a system of patronage and frequent criminal activity in the form of embezzlement and fictitious agreements; (2) that the acts alleged to have been undertaken by Leonid Teyf in Russia violate the Russian Criminal Code; and (3) as a potential rebuttal witness.

The Government bears the burden of establishing the reliability of Mr. Holiner's testimony. The Government has not met this burden. Its Expert Report (Summary of Testimony) of Drew Holiner (the "Expert Report"), *Exhibit 1* hereto, does not set forth Mr. Holiner's particular experience or specialized knowledge, skill, training, or education in Russian criminal law, and does not demonstrate how such will be helpful to the jury, as required by F.R.E. 702(a). Mr. Holiner's testimony that defendant violated certain provisions of Russian law should be excluded because this testimony states a legal conclusion that will not help the trier of fact to understand the evidence or a fact in issue, as required by Rule F.R.E. 702(a).

The Expert Report and the Notice also fail to establish that Mr. Holiner's testimony is based on sufficient facts or data, as required by F.R.E. 702(b). Rather, and quite shockingly, in forming his opinion and testimony that Mr. Teyf violated Russian criminal law, Mr. Holiner largely relies on an unsigned, undated, admittedly incomplete, anonymous, purported letter addressed to a Russian Military General, in which the author states that s/he "learned of a scheme developed by Mr. Teyf" involving 10% of budget funds being funneled back to the Ministry of Defense." Mr. Holiner relies on the letter (which he admits may not be a complete document) even though there is absolutely no indication that it was ever actually sent to the addressee, and even though Holiner notes that the anonymous author does not even indicate that s/he has any direct evidence of the purported improper activities (payment of funds to Ministry officials)! Expert Report, at p. 10. Reliance on the unsigned, undated anonymous purported letter as a basis for his testimony violates defendant's Sixth Amendment right to confront his accusers. Finally, there is no explanation of the methodology utilized in developing Mr. Holiner's testimony, or how it is the product of reliable principles and methods, or of the manner in which he reliably applied the principles and methods to the facts of the case, as required by F.R.E. 702(c) and (d).

For these reasons, Mr. Holiner's testimony is irrelevant and not helpful in this matter, and any slight probative value is outweighed by the danger of unfair prejudice. Mr. Holiner's testimony should be precluded or limited.

## ARGUMENT

**1.    Legal Standard**

Under Rule 702 of the Federal Rules of Evidence, "expert testimony must be both reliable and relevant." *Umana-Fowler v. NCL (Bah.) Ltd.,* 49 F. Supp. 3d 1120, 1121 (S.D. Fla. 2014); *United States v. Crisp*, 324 F.3d 261, 268 (4th Cir. 2003); *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). The party offering the evidence has the burden to show that: (1) the expert is qualified due to having knowledge, skill, experience, training or education in the field of said testimony; (2) such testimony will assist the trier of fact to understand evidence or determine a fact in issue; (3) the testimony is based on sufficient facts or data; (4) the testimony is the product of reliable principles and methods; and (5) the witness reliably applies the principles and methods to the facts of the case. F.R.E. 104(a), 702; *see also Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 588 (1993).

This Court's "gatekeeping" responsibility under *Daubert* cannot be overstated. *Frazier*, 387 F.3d at 1260. As the Supreme Court said in *Kumho Tire*, "[t]he objective of that requirement is to ensure the reliability and relevancy of expert testimony. It is to make certain than an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. at 152 (1999). The question of whether an expert's testimony is reliable depends on the facts and circumstances of the particular case. *Id.*

at 158. The party offering the expert testimony bears the burden of establishing reliability and helpfulness. *Frazier*, 387 F.3d at 1260.

Expert testimony "can be both powerful and quite misleading because of the difficulty in evaluating it." *Daubert*, 509 U.S. at 595 (quoting Jack B. Weinstein, *Rule 702 of the Federal Rules of Evidence is Sound; It Should Not Be Amended*, 138 F.R.D. 631, 632 (1991)). "Indeed, no other kind of witness is free to opine about a complicated matter without firsthand knowledge of the facts in the case, and based upon otherwise inadmissible hearsay if the facts or data are "of a type reasonably relied upon by experts in the particular field in forming opinions or inference upon the subject."' *Frazier*, 387 F.3d at 1260 (citing F.R.E 703).

An expert onion should be excluded if it's not "helpful" to the jury. An opinion is not helpful to the jury if the average layperson is "capable of understanding an issue without the aid of an expert." *United Sates v. Navedo-Ramirez*, 781 F.3d 563, 568 (1st Cir. 2015) (citing *United States v. Salimonu*, 182 F.3d 63, 74 (1st Cir. 1999)) (affirming district court's exclusion of expert testimony regarding battered woman syndrome and duress in part because threats defendant received were such that "any person could readily appreciate their impact" unaided by expert testimony." ) "Because of the powerful and potentially misleading effect of expert evidence, . . . sometimes expert opinions that otherwise meet the admissibility requirements may still be excluded by applying Rule 403." *Frazier*, 387 F.3d at 1263. "The judge in weighing possible prejudice against probative force under Rule 403 . . . exercises more control over experts than over lay witnesses." *Id*. (internal quotation omitted); *see also United States v. Stevens*, 935 F.2d 1380, 1399 (3d Cir. 1991).

4

**2.    Mr. Holiner's testimony that the alleged activity in Russia violated Russian criminal law states a legal conclusion and is not helpful to the jury under Rule 702(a).**

Mr. Teyf is charged with money laundering in violation of 18 U.S.C. §§ 1957 and 1956(a)(1)(B)(1) and with conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h). An essential element of each money laundering offense is the existence of illicit proceeds generated from a predicate crime, a "specified unlawful activity." *See United States v. Singh*, 518 F.3d 236, 246, 248 (4th Cir. 2008). No money laundering offense can exist without a specified unlawful activity resulting in criminally derived property. 18 U.S.C. §§ 1957 and 1956(h); *see also United States v. Vinson*, 852 F.3d 333, 356 (4th Cir. 2017). Conspiracy to commit money laundering is a crime only if the defendant and others agree to launder money knowing it was derived from a specified unlawful activity. *See United States v. Green*, 599 F.3d 360, 371 (4th Cir. 2010). Indeed, this underlying specified unlawful activity is what creates the "dirty" money. *See* B. Frederic Williams, Jr. & Frank D. Whitney, *Federal Money Laundering: Crimes and Forfeitures*, p. 49 (1999).

Each money laundering count identifies the "specified unlawful activity" supporting the money laundering charge as "an offense against a foreign nation (Russia) involving *bribery of a public official and the misappropriation, theft, or embezzlement of public funds* by or for the benefit of a public official."

The indictment does not include a statutory reference for any criminal offense in Russia. Neither defendant nor anyone else has been charged, much less convicted, of any offense in Russia which could be the predicate offense here. However, the indictment does allege that Mr. Teyf was part of a "kickback" scheme in Russia between 2010 and 2012 in which kickbacks were paid to Serdyukov, the Russian Minister of Defense, and others.

5

Specifically, the indictment alleges the following about the purported "kickback" scheme: (1) that Anatoliy Serdyukov served as the Russian Minister of Defense between 2007 and 2012, and in this position granted the Russian company Voentorg a contract to provide goods and services to the Russian military; (2) that Mr. Teyf was a Deputy Director of Voentorg between 2010 and 2012; (3) that Voentorg subcontracted with various other companies to provide these goods and services; (4) that Mr. Teyf arranged for subcontractors to fill the various goods and services required by Voentorg's contract; (5) that Mr. Teyf and others devised a scheme in which the subcontractors agreed that a certain percentage of government funds they received for completion of the work on the contract would be paid back as "kickbacks" to Mr. Teyf and others involved in the scheme; (5) that kickbacks were paid in cash over an approximate two-year span between 2010 and 2012; and (6) that most of the kickbacks were paid by Mr. Teyf to the Russian Minister of Defense, Serdyukov, with Teyf retaining the next largest share, and the remaining amount paid to other co-conspirators. (DE 248 at ¶ 8-9). The Indictment alleges that the allegedly dirty money eventually made its way to the United States and was laundered here.

The question for the jury, as to the predicate offense, is whether the alleged Russian bribery or kickback scheme occurred, and whether it violated Russian law. The fact that no one has been charged in Russia is a telling indication that it did not. The fact that there is no evidence of any formal investigation is yet another. However, the evidence of the alleged bribery or kickback, as outlined in the indictment, does not require expert embroidering. The jury does not need expert assistance to determine whether the alleged crime involving the money actually occurred in Russia.

6

The touchstone of Rule 702 is whether the testimony will assist the jury. *U.S. v. Offill,* 666 F.3d 168 (4th Cir. 2011). It does not help the jury for an expert to "state a legal standard or draws a legal conclusion by applying law to the facts, because it supplies the jury with no information other than the witness's view of how the verdict should read." *U.S. v. Offill,* 666 F.3d at 175 (internal citations and quotations omitted). The Judge should instruct the jury as to the law, and the jury should apply the law to the evidence presented. When a witness gives an opinion about the meaning of a specialized legal term, the witness is giving a legal conclusion that is better handled by the judge, and coming from the witness, will be of little assistance to the jury. *Id.*

In certain cases involving a complex legal regime, and highly technical legal issues, such as securities fraud and complex concepts such as securities registration, registration exemptions, and specific regulatory practices, expert testimony that arguably states a legal conclusion may be allowed. *Id.* However, such is not the case here. Bribery, misappropriation, theft and embezzlement are not part of a complex legal regime. In *Offill,* expert testimony was allowed because complex concepts of federal securities registration requirements were involved, as well as the operation of several obscure Texas Code provisions and their relationship with the federal regime. *Id.* at 175. *Compare Adalman v. Baker, Watts & Co.,* 807 F.2d 359 (4th Cir.1986), *abrogated on other grounds by Pinter v. Dahl,* 486 U.S. 622, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988) (expert testimony in less complex securities fraud case would hinder the jury's deliberations, because it would concern an ultimate issue).

In this circumstance, Mr. Holiner's testimony will not help the trier of fact. The facts that the Government claims amount to bribery or a kickback in Russia are simple enough to understand. It is for the jury to assess whether the evidence bears out these facts, and upon hearing the law

7

explained to them by the Judge, to determine whether the asserted offense in fact occurred. Expert testimony on this subject would only serve to confuse and mislead the jury.

**3. Mr. Holiner's testimony regarding Russian criminal law should be excluded because the Government has not established that he has specialized knowledge, skill, experience, training or education in Russian criminal law.**

The Expert Report establishes that Mr. Holiner has worked as a lawyer for an international NGO with operations in all 12 Commonwealth of Independent States ("CIS), has a degree in Russian law and the qualification of a Jurist (the rough equivalent of an integrated LL.B/LL.M degree in the UK) from a Moscow University, has consulted with international businesses, and that he is a member of the Russian Bar. Expert Report, at p. 2. The Expert Report and Notice indicate, however, that his 20 years of litigation advocacy and advisory work in Russia are in the commercial, not the criminal, arena. He cites no particular experience in the Russian criminal law or specialized knowledge or education in Russian criminal law that could form the basis for his opinion about a criminal law violation in Russia.

The Government's Notice simply lists the opinions Mr. Holiner is expected to give regarding Russian commerce – essentially that criminal activity, patronage, and money laundering is common in Russian – and that the acts undertaken by Mr. Teyf in Russia violated the criminal law. *Id.;* Notice, at p. 4. These bald assertions do not satisfy Rule 702's requirement that Mr. Holiner have specialized knowledge, skill, experience, training, or education in Russian criminal law necessary to support his opinion that Mr. Teyf's alleged conduct violated Russian criminal law.

**4. Mr. Holiner's testimony that defendant violated Russian criminal law should be excluded because the Government has not established that he relied on sufficient facts or data in forming his opinion, and because his opinion is based on an unreliable unsigned, and anonymous purported letter.**

Mr. Holiner bases his opinion that defendant violated the criminal law on an undated, unsigned, anonymous purported letter addressed to the Military Attorney General of Russia. Expert Report, at par. 28, p. 9. Mr. Holiner goes on to note that "[a]lthough the author of the complaint does not state s/he has direct evidence of the payment of funds to Ministry officials, if the description contained in the complaint is correct, this is not a normal way of conducting a lawful business." Expert Report, at par. 30, p. 10. He also uses words such as "typically," throughout his testimony, and asserts that certain kinds of conduct are "typically" engaged in for the purpose of concealing crimes in Russia.

Reliance on an anonymous hearsay purported letter that is unsigned, undated, unsworn and inadmissible gives no assurance whatsoever that Mr. Holiner's testimony is based on "sufficient facts or data," as required by Rule 702(b). Indeed, as set forth above, Holiner further concedes that the anonymous letter may not even be a complete document. Additionally, there is no claim that this anonymous document was ever even sent to anyone. Reliance on what people in Russia "typically" do to conceal crime, to support a conclusion that defendant violated the Russian criminal law, is certainly not the kind of sufficient facts or data envisioned by Rule 702. There is no assertion – nor could there be – that this is the type of information typically relied upon by experts in his field.

Mr. Holiner's testimony that defendant violated the Russian criminal law must be excluded. Allowing Mr. Holiner to state such an opinion based on an anonymous hearsay statement and what other alleged criminals in Russia "typically" do also violates Rules 401, 402 and 403 of the Federal Rules of Evidence, in that such an opinion is not relevant and is unfairly

9

prejudicial to defendant. Furthermore, admission of this opinion, and the bases for it, violates defendant's Sixth Amendment right to confront his accusers. Defendant may be able to ask Mr. Holiner for the bases of his opinion, but will be unable to confront and cross-examine the author of the unsigned, anonymous letter. *See Crawford v. Washington,* 541 U.S 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

**5. All of Mr. Holiner's testimony should be excluded because the Government has not established that it is the product of reliable principles and methodologies, or that his methodology or experience is reliable to establish his particular opinions.**

Neither the Government's Notice nor the Expert Report states the basis for Mr. Holiner's testimony. Instead, they set out the specific opinions Mr. Holiner will give, and his job and educational experience. There is no discussion whatsoever of how Mr. Holiner's methodologies support his opinions. Based on the showing made by the Government so far, Mr. Holiner's testimony is insufficient under *Daubert* and *Kumho Tire.* An expert cannot rely on "experience" without explaining in detail how the experience and other materials consulted support the opinion rendered. *United States v. Frazier,* 387 F.3d 1244, 1260 (11th Cir. 2004); *Umana-Fowler v. NCL (Bah.) Ltd.,* 49 F. Supp. 3d 1120, 1121 (SD. Fla. 2014). Because the court's gatekeeping function requires more than simply taking the expert's word for it, the burden is on the party offering the expert testifying based on experience to explain how that experience led to the conclusion he reached, why that experience was sufficient a basis for the opinion, and just how that experience was reliably applied to the facts of the case. *Umana-Flowler,* 49 F. Supp.3d at 1122.

Here the Government's showing under Rule 702 is woefully insufficient. The Government has not explained how Mr. Holiner's experience led to the conclusions he reached, why his experience was a sufficient basis for these opinions, or how he applied his experience to reach his conclusions. The Government has not made any showing whatsoever of a particularized

10

knowledge and a reliable method underlying the testimony. The Court should preclude his testimony.

**6. The Court should exclude or limit Mr. Holiner's testimony under 401, 401, 403, and 702 because, to the extent it is relevant at all, it is substantially more unfairly prejudicial than probative.**

Evidence must be relevant before it is admissible. *United States v. Gomez*, 763 F.3d 845, 853 (7th Cir. 2014) ("All evidentiary questions begin with Rule 402, which contains the general principal that '[r]elevant evidence is admissible' and '[i]relevant evidence is not.'"). Relevant evidence, defined by Rule 401 of the Federal Rules of Evidence, is any evidence that "has a tendency to make a fact of consequence more or less probable." *United States v. Richards*, 719 F.3d 746, 760-761, (7th Cir. 2013); see also *Gomez*, 763 F.3d at 853 ("Rule 401 defines relevant evidence as that which is both probative (having 'any tendency to make a fact more or less probable than it would be without the evidence') and material (the fact must be 'of consequence in determining the action.'")).

Mr. Holiner's testimony is based on insufficient facts and data and is not the product of reliable principles and methods applied to the facts of the case. In addition, it is based largely on an anonymous letter, and contains legal conclusions which are not helpful to the jury. For these reasons, it is not probative or material.

Furthermore, it should be excluded under Rule 403, because of the "danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, and wasting time." F.R.E. 403. The Advisory Committee Note to Rule 403 explains that "'[u]nfair prejudice' within [this] context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" To determine whether the prejudicial effect of evidence substantially outweighs it probative value, courts conduct a balancing test, weighing the probative

11

value of the evidence against the dangers listed in Rule 403. *Old Chief v. United States*, 519 U.S. 172, 182 (1997). Expert testimony is especially susceptible to exclusion under Rule 403 because the jury is likely to attach more weight to the testimony of a witness who has qualified as an expert. *Frazier*, 387 F.3d at 1263. Here, because the Government's evidence on the money laundering charge, and on the element of the predicate offense against a foreign nation, is particularly weak, the unfair prejudice resulting from admission of Mr. Holiner's testimony is exacerbated.

## **CONCLUSION**

For the foregoing reasons, Defendant respectfully moves that the testimony of Drew Holiner be precluded or limited. Further, Defendant requests that all portions of his Expert Report, opinions and proposed testimony based on unreliable evidence (such as the anonymous letter) be stricken.

Respectfully submitted, this the 9th day of March, 2020.

/s/ F. Hill Allen
F. Hill Allen
THARRINGTON SMITH, L.L.P.
P.O. Box 1151
Raleigh, NC 27602
Phone: (919) 821-4711
Fax: (919) 829-1583
hallen@tharringtonsmith.com
N.C. State Bar No. 18884

/s/ Robert S. Wolf
Robert S. Wolf
MOSES & SINGER LLP
The Chrysler Building
405 Lexington Ave., 12th Floor
New York, NY 10174-1299
Phone: (212) 554-7825
Fax: (212) 554-7700
rwolf@mosessinger.com
*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of March, 2020, I electronically filed the foregoing **MOTION TO PRECLUDE OR LIMIT TESTIMONY OF DREW HOLINER and Incorporated Memorandum of Law** with the Clerk of the Court using the CM/ECF system which will send electronic notification with a copy of the foregoing of the following to counsel of record:

Barbara D. Kocher
barb.kocher@usdoj.gov

Jason M. Kellhofer
jason.kellhofer@usdoj.gov

/s/ F. Hill Allen
F. Hill Allen
THARRINGTON SMITH, L.L.P.
P.O. Box 1151
Raleigh, NC 27602
Phone: (919) 821-4711
Fax: (919) 829-1583
hallen@tharringtonsmith.com
N.C. State Bar No. 18884
*Counsel for Defendant*