IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:18-CR-00452-FL-1

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| v. | ) | ORDER |
| | ) | (SEALED)[1] |
| | ) | |
| LEONID ISAAKOVICH TEYF, | ) | |
| | ) | |
| Defendant. | ) | |

This matter comes before the court on defendant's motion to reconsider its order denying severance of counts 27–29 of the Fourth Superseding Indictment for separate trial, pursuant to Rules 8 and 14 of the Federal Rules of Criminal Procedure. (DE 498). The issues raised are fully briefed, and in this posture are ripe for ruling. For the reasons that follow, defendant's motion is granted.

## BACKGROUND

Defendant was indicted for conspiracy to commit money laundering, money laundering, bribery of a public official, murder for hire, possession of a firearm with an obliterated serial number, conspiracy to harbor illegal aliens, visa fraud, making false statements on a tax return, and failing to file a report of foreign bank and financial accounts.

---

[1] Where the court's order relies upon confidential information contained in the sealed materials in this case, the court SEALS this order. Within 14 days from date of entry of this order, the parties shall confer and tender by U.S. Mail to the clerk's office a proposed redacted opinion, for the court's inspection and approval. If said order meets with its approval, it will be lodged on the public docket. If the court determines proposed redactions of any portion of this order not subject to sealing, the court's further notice will follow.

On January 13, 2020, defendant filed motion to sever trial of his alleged financial crimes from trial of bribery of a public official, in violation of 18 U.S.C. § 201 ("Count 27"), use of interstate commerce facilities in the commission of a murder for hire, in violation of 18 U.S.C. § 1958 ("Count 28"), and possession of a firearm with an obliterated serial number, in violation of 18 U.S.C. § 922(k) ("Count 29") (collectively, "MFH counts").  The government responded in opposition, arguing that these counts bear a logical relationship to the other offenses, and that defendant will not be unfairly prejudiced by a single trial of all counts for which he has been indicted.

In its order dated February 6, 2020, the court denied defendant's motion.  The court reasoned that the temporal and spatial overlap between defendant's alleged financial crimes and the MFH counts was substantial, and that the counts were connected by defendant's alleged conduct.  The court relied upon the same reasoning to conclude that defendant would not be prejudiced and concluded that a limiting instruction would cure any risk of unfair prejudice to defendant.

At conference on February 10, 2020, defense counsel was heard to complain of the court's ruling but did not orally move for reconsideration at that time.  On March 6, 2020, ten days before commencement of trial, defendant filed the instant motion for reconsideration.

## COURT'S DISCUSSION

A.      Propriety of Joinder

An indictment may charge a defendant in separate counts with two or more offenses if the offenses "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a).  "Rule

2

8(a) 'permit[s] very broad joinder' because of the efficiency in trying the defendant on related counts in the same trial." United States v. Cardwell, 433 F.3d 378, 385 (4th Cir. 2005) (internal citations omitted). "But even the less rigorous requirements of Rule 8(a) 'are not infinitely elastic,' . . . and so 'cannot be stretched to cover offenses . . . which are discrete and dissimilar and which do not constitute parts of a common scheme or plan.'" United States v. Mackins, 315 F.3d 399, 412 (4th Cir. 2003) (internal citations omitted). The court may consider the allegations in the indictment and the evidence to be produced at trial. See United States v. Hawkins, 776 F.3d 200, 208 n.4 (4th Cir. 2015); Cardwell, 433 F.3d at 385 n.1.

1.  Count 27

"Where the prosecution desires to rely upon the cumulative effect of independent violations of law of a similar character, they may and should be charged in the indictment in several counts." Simpkins v. United States, 78 F.2d 594, 598 (4th Cir. 1935). The Fourth Circuit has not expressly defined what constitutes an offense of "similar character."[2] In Hawkins, the United States Court of Appeals for the Fourth Circuit considered the nature of the offenses charged, the connecting evidence, and the closeness in time of the joined offenses to determine that a carjacking and felon in possession of a firearm charge were not of similar character. 776 F.3d at 207–09. In United

---

[2] One circuit, applying a categorical approach on the face of the indictment, has defined "similar offenses" to be those "of like class." United States v. Coleman, 22 F.3d 126, 133 (7th Cir. 1994). Other circuits look more broadly to identify common features of the offenses. See, e.g., United States v. Fattah, 858 F.3d 801, 818–19 (3d Cir. 2017) (concluding bank fraud, tax fraud, and fraud on a school district were of similar character because each offense involved a series of false representations about business entities owned or represented by defendant); United States v. Hersh, 297 F.3d 1233, 1242 (11th Cir. 2002) (concluding defendant's child molestation and child pornography charges were of similar character because they involved the extraordinary mistreatment of children); United States v. Kaplan, 895 F.2d 618, 621 (9th Cir. 1990) (holding mail fraud and distribution of controlled substance offenses of similar character because they both revolved around allegations that appellant was acting in a criminal manner outside the usual course of his medical practice). Here, the court applies the approach used in cases such as Fattah, Hersh, and Kaplan.

3

States v. Acker, the Fourth Circuit held that four different robberies were of same or similar character where all the robberies "involved a black female, apparently acting alone, and dressed in basically the same disguise at the time of each robbery." 52 F.3d 509, 513–14 (4th Cir. 1995).

The court begins by comparing the money laundering counts with count 27, bribery of a public official. On the face of the indictment, these offenses are similar. All the money laundering transactions allege the money laundering proceeds were derived from defendant's bribery of the Russian Minister of Defense, while count 27 specifically alleges bribery of a United States immigration official. Each of the substantive money laundering counts results from specific financial transactions taking place in the United States between February 3, 2014 and January 9, 2019. (Fourth Superseding Indictment (DE 248) ¶ 65). Count 27 occurred on or about May 23, 2018. (Id. ¶¶ 25–29). Spatially, all defendant's crimes occurred in the United States, yet all the crimes share a nexus with defendant's activities in Russia.

Most importantly, the counts are connected by defendant's alleged conduct. The government argues that defendant carried out his financial crimes by providing financial incentives to numerous individuals, including CS-1, to perpetrate the kickback and bribery scheme and help launder proceeds on his behalf. Count 27 follows a similar pattern, where defendant allegedly promised financial reward to others, including CS-2, to arrange the deportation A.G., co-defendant Tatyana Teyf's boyfriend and the son of defendants' housekeeper.

The court again concludes that Hawkins differs from the facts of this case. In Hawkins, the United States Court of Appeals for the Fourth Circuit concluded offenses where not properly joined under Rule 8 where "[t]here are no additional factors which indicate the offenses were 'identical or strikingly similar.'" Hawkins, 776 F.3d at 209. Here, the offenses share many

4

similarities including temporal and spatial overlap, in conjunction with the identical conduct by defendant to achieve his alleged criminal ends.

Defendant argues that the money laundering counts do not share temporal overlap with count 27, and that the money laundering counts "must necessarily center upon and establish the alleged Russian bribery-kickback scheme from 2010–2012." (Mot. for Reconsideration (DE 498) at 15). The court disagrees. While the crime of money laundering does depend upon the money being proceeds of specified unlawful activity, the offense is not complete until a prohibited transaction is made. See United States v. Smith, 44 F.3d 1259, 1265 (4th Cir. 1995) ("The core of money laundering, which distinguishes one such offense from another, is the laundering transaction itself.").

Defendant argues that CS-1 and CS-2 were not coerced, because CS-1 was voluntarily employed by defendant as a security guard and CS-2 was employed by the government at the time that defendant engaged in the conduct alleged in Count 27. The court disagrees, where the evidence the government seeks to admit at trial includes but is not limited to evidence of use of financial incentives to solicit CS-1 and CS-2's compliance.

Count 27 is a crime of similar character to that of the money laundering counts in this case and is properly joined for trial.[3] Thus, joinder under Rule 8 is proper.

2. Counts 28 and 29

In determining what constitutes a common plan or scheme under Rule 8, the court "interprets 'connected transactions' flexibly, as 'implying a connection of logical relationship.'"

---

[3] On reconsideration, the court concludes that the MFH counts collectively do not constitute part of a common plan or scheme in relation to the money laundering counts. As explained in the court's discussion of Rule 14, there is no evidence connecting defendant's financial crimes to his personal vendetta against A.G.

5

United States v. Hirschfeld, 964 F.2d 318, 323 (4th Cir. 1992) (internal citations omitted); United States v. Jamar, 561 F.2d 1103, 1106 (4th Cir. 1977). "Joined offenses have a logical relationship to one another for Rule 8(a) purposes, 'when consideration of discrete counts against the defendant paints an incomplete picture of the defendant's criminal enterprise.'" United States v. McLaurin, 764 F.3d 372, 385 (4th Cir. 2014) (quoting Cardwell, 433 F.3d at 385, 387 (holding joinder of felon in possession of a firearm and murder for hire offenses permissible where, after defendant's arrest, defendant told police officers he would have started a gunfight if he had known they were coming to arrest him)); see, e.g., United States v. Clark, 928 F.2d 639, 644 (4th Cir. 1991) (holding tax and drug offenses connected where evidence about the drug transactions would have been admissible in the tax case to prove income and show its probable source); United States v. Cole, 857 F.2d 971, 973 (4th Cir. 1988) (holding drug conspiracy and alien smuggling charges connected where the indictment alleged that defendant's smuggling of aliens was a means by which the drug conspiracy acquired new workers); United States v. Eades, 615 F.2d 617, 624 (4th Cir.), on reargument, 633 F.2d 1075, 1078 (4th Cir. 1980) (permitting joinder of assault and theft charges where repeated unauthorized entries into the same area of the Naval Academy with such close proximity in time established the existence of a common scheme or plan).

Turning to counts 28 and 29, the court concludes that those counts are inextricably intertwined with count 27. On or around May 23, 2018, defendant allegedly incented CS-2 to bribe an immigration official to get A.G. deported to Russia. On or around June 20, 2018, defendant then paid CS-2 to murder A.G. with a firearm with obliterated serial number sent by defendant through another individual. All three of the counts address conduct directed towards defendant's intended victim A.G., and all three counts involve defendant soliciting CS-2 to engage

6

in criminal activity on his behalf. The closeness in time, mutuality of victim, the commonality of participants between count 27 and counts 28 and 29 indicate that joinder of the remaining MFH counts is proper under Rule 8.

B.      Risk of Prejudice

"If the joinder of offenses . . . in an indictment . . . appears to prejudice a defendant or the government, the court may order separate trials of counts . . . or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). "A defendant making a motion for severance pursuant to Rule 14 has the burden of demonstrating a strong showing of prejudice." United States v. Goldman, 750 F.2d 1221, 1225 (4th Cir. 1984). However, "[t]he mere showing of prejudice is not enough to require severance." United States v. Hayden, 85 F.3d 153, 160 (4th Cir. 1996). Rather, "a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of [the defendant], or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro v. United States, 506 U.S. 534, 539 (1993).

Where, as here, joinder is made because offenses are of same or similar character, prejudice under Rule 14 may arise if "the jury may confuse and cumulate the evidence, and convict the defendant of one or both crimes when it would not convict him of either if it could keep the evidence properly segregated" or "the jury may conclude that the defendant is guilty of one crime and then find him guilty of the other because of his criminal disposition." United States v. Foutz, 540 F.2d 733, 736 (4th Cir. 1976). This risk of prejudice "is greatly diminished where . . . evidence of the joined crimes 'would be mutually admissible for legitimate purposes in separate trials for each offense.'" Cole, 857 F.2d at 974; Foutz, 540 F.2d at 736. "Complete, mutual admissibility, however, is not a requirement for a valid joinder of offenses." Jamar, 561 F.2d at 1108 n.8.

7

Moreover, in certain circumstances, "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." Zafiro, 506 U.S. at 539 (1993) (citing Richardson v. Marsh, 481 U.S. 200, 211 (1987)).

"Rule 404(b) prohibits evidence of other crimes or bad acts to show bad character or propensity to break the law." United States v. Young, 248 F.3d 260, 271 (4th Cir. 2001). However, "This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). "Rule 404(b) is viewed as an inclusive rule, admitting all evidence of other crimes or acts except that which tends to prove only criminal disposition." Young, 248 F.3d at 271 (4th Cir. 2001) (internal quotation marks omitted). "To be admissible under Rule 404(b), evidence must be (1) relevant to an issue other than character; (2) necessary; and (3) reliable." United States v. Siegel, 536 F.3d 306, 317 (4th Cir. 2008) (internal quotation marks omitted). Additionally, evidence should be excluded if its probative value is substantially outweighed by its unfair prejudice to the defendant. United States v. Johnson, 617 F.3d 286, 296–97 (4th Cir. 2010).

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Evidence is necessary where it "furnishes part of the context of the crime." United States v. Rawle, 845 F.2d 1244, 1247 n.4 (4th Cir. 1988). Evidence is reliable unless it is "so preposterous that it could not be believed by a rational and properly instructed juror." United States v. Aramony, 88 F.3d 1369, 1378 (4th Cir. 1996). Finally, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue

8

delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403; United States v. Masters, 622 F.2d 83, 87–88 (4th Cir. 1980).

In Siegel, the United States Court of Appeals for the Fourth Circuit held that a defendant's typical pattern of "obtaining the personal information of another person, use that information to obtain credit in that person's name, and take whatever steps were necessary to prevent that person from learning about the new accounts until it was too late" was sufficient to be admissible to prove modus operandi in a murder case. 536 F.3d at 318. In another case, the court held that how defendant took refill orders without a prescription, provided double or triple amounts to his customers prior to going on vacation, and did most of this business on an informal cash basis without bills or other records was admissible under Rule 404(b) to show modus operandi, knowledge, and lack of mistake. United States v. Tanner, 61 F.3d 231, 237 (4th Cir. 1995).

On reconsideration, the court determines that the MFH counts are not mutually admissible at trial of the remaining counts in the indictment. As discussed above, count 27 and the specified unlawful activity underlying the money laundering counts in this case are similar. However, the risk of unfair prejudice presented by evidence of evidence of count 27 substantially outweighs the probative value of introducing such evidence. As defendant succinctly puts it, the money laundering counts concern a sprawling $150,000,000.00 kickback scheme involving the highest levels of the Russian Government. (Mot. for Reconsideration (DE 498) at 14). Count 27 alleges an affair between co-defendant Tatyana Teyf and defendant's housekeeper's son, A.G., and defendant's plan to settle the score by seeking to have A.G. deported. (Mot. for Reconsideration (DE 498) at 14). The motives of these crimes are widely at variance — one involves a financial crime while the other implicates a personal vendetta.

Further compounding the problem with joinder of the MFH counts is that counts 28 and 29 are inextricably intertwined with count 27, but bear no similarity to the money laundering charges at all. Although the government obliquely refers to defendant using "strong-arm tactics" in Russia to advance his business interests, the government offers no evidence that the money laundering counts ever involved murder to advance the crime of money laundering. (See Gov. Resp. (DE 417) at 4). Moreover, federal law is replete with admonishments that murder is one of the most severe crimes recognized in our country. See, e.g., Enmund v. Fla., 458 U.S. 782, 797–98 (1982); Gregg v. Georgia, 428 U.S. 153, 187 (1976). Thus, the risk of this evidence being used for purposes of proving propensity to commit other crimes is particularly high.

Defendant is at risk of suffering unfair prejudice if the MFH counts are tried together with the other counts in the indictment. Moreover, the risk posed to defendant is not curable by limiting instruction. Defendant's motion for reconsideration under Rule 14 is granted.

## CONCLUSION

Based on the foregoing, defendant's motion for reconsideration (DE 498) is GRANTED. Pursuant to Rule 14 of the Federal Rules of Criminal Procedure, counts 27–29 of the Fourth Superseding Indictment are SEVERED for separate trial at a date to be determined following trial to commence March 16, 2020, on all other counts against this defendant.

SO ORDERED, this the 11th day of March, 2020.

LOUISE W. FLANAGAN
United States District Judge