UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:18-CR-452-1-FL

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | GOVERNMENT'S RESPONSE TO |
| ) | DE 518 - DEFENDANT'S MOTION |
| LEONID ISAAKOVICH TEYF, ) | TO EXCLUDE 404(B) EVIDENCE |
| ) | (AS PERTAINS TO COUNTS 27-29) |
| Defendant. ) | |
| ) | |

The United States of America, by and through the United States Attorney for the Eastern District of North Carolina, hereby responds to Defendant's Motion *In Limine* to Exclude Evidence of Crimes, Wrongs, or Other Acts.[1]

**PROCEDURAL BACKGROUND**

The defendant has been charged by Criminal Indictment with multiple instances of Money Laundering under 18 U.S.C. § 1957; Conspiring to do the same under 18 U.S.C. § 1956(h); Bribery of a Public Official and Aiding and Abetting under 18 U.S.C. §§ 201(b)(1) and 2; Murder for Hire and Aiding and Abetting under 18 U.S.C. §§ 1958 and 2; Possession of a Firearm with Obliterated Serial Number under 18 U.S.C. §§ 922(k) and 924 (a)(1)(B); Conspiracy to Harbor Illegal Aliens under 8

---

[1] DE 518.

U.S.C. § 1324(a)(1)(A)(iv), 1324(a)(1)(A)(v)(I), and 1324(a)(1)(A)(v)(II); and Visa Fraud under 18 U.S.C. § 1546(a).[2]

In February of 2020, the Government filed notice of items recognized as arguably uncharged conduct, but which the Government believed either intrinsic to the charged offenses and/or admissible under Fed. R. Evid. 404(b) as relevant to the defendant's modus operandi, motive, opportunity, intent, preparation, plan, knowledge, identity, and lack of mistake or accident as to the charged crimes.[3] On March 9, 2020, the Defense filed a motion *in limine* to exclude all evidence noticed by the Government as possible 404(b) evidence. Subsequent to the Defense motion, the Court severed Counts 27-29[4] and determined that trial on these counts would take place first and upon conclusion of that trial, the Court intended to address scheduling of the remaining counts.[5] However, as a result of the unprecedented COVID-19 pandemic, the trials were continued and, at present, a jury trial on counts 27-29 is scheduled to begin in approximately six weeks on May 18, 2020 with trial on the remaining counts yet to be scheduled.

On March 20, 2020, the Court extended certain deadlines until 7 April 2020 that included a Government supplement to its prior 404(b) notice to specific what asserted bad acts it would seek to introduce as to trial of counts 27-29, and to provide

---

[2] DE 248 (Fourth Superseding Indictment).

[3] DE 472.

[4] Charges which involve Bribery of a Public Official, Murder for Hire, and Possession of a Firearm with Obliterated Serial Number.

[5] DE 524, 532.

a response to Defense motion *in limine* to exclude such evidence.[6] Simultaneously with the present filing, the Government has entered a separate responsive filing to the Court's request to explicitly note the bad acts to be addressed at the first trial. Additionally, the Government has entered a request that it be permitted at this time to respond to Defendant's *motion in limine* to exclude 404(b) evidence only insofar as it concerns matters pertinent to the first trial, thus allowing for separate litigation only related to the second trial to occur at a later date to be determined. Even if the Court were to deny this request, for ease of reference and clarity, the Government is entering separate responses to the defense motion – one pertinent to the counts for trial one and one pertinent to the counts for trial two. Thus, the present filing is the Government's response to the defense motion at DE 518 as relates to trial one on Counts 27-29.

## **BRIEF FACTUAL SUMMARY**

Amongst other evidence, the Government expects the following narrative of events to be presented at trial on Counts 27-29 through both witness testimony and physical evidence. As a result of tips received from individuals not working with or for the Government, an FBI investigation was initiated into the legitimacy of the Defendant TEYF's finances.

One of the tipsters, Alexander Sviridov, began to assist the Government as a confidential human source and at that time was referred to by the FBI as "Snowman."

---

[6] DE 548 (continuing deadlines of 16 March 2020 text Order).

Snowman had formed a relationship as an employee and confidant of TEYF's prior to reaching out to the Government to report TEYF as involved in criminal activity. During the course of the following FBI investigation, TEYF became aware that his wife had an affair and informed and confided in Snowman that he wished to locate his wife's paramour (A.G.) to have him deported. TEYF's intended purpose in getting A.G. deported was so that TEYF could have A.G. murdered in Russia, something much easier to accomplish in Russia, particular because TEYF had great influence with government officials through bribery and/or established friendships.

In addition to Snowman, TEYF obtained the assistance of multiple individuals in this venture to see that A.G. be deported – to include, a private investigator, two former law enforcement individuals, an immigration attorney, friends/business partners, and his own son. TEYF ultimately bribed a Homeland Security Investigations (HSI) agent to assist in guaranteeing A.G.'s deportation. However, the HSI agent did not effect the deportation because he was acting in an undercover capacity and rather recorded the interactions and logged as evidence the cash payment to him. At the same time, TEYF relied on his previously established confidant relationship with Snowman and conferred separately with Snowman about murdering A.G. in the United States if unable to have A.G. deported.

These parallel tracks ran for some time as TEYF prepared for either possibility to result in his ultimate goal – the murder of A.G.. Central to TEYF's stated goal though was that A.G. first undergo torture so that TEYF could discern the exact nature of the relationship between A.G. and TEYF's wife – this was extremely

important to TEYF as it would decided the fate of TEYF's wife, whom he also planned to have murdered, depending on what A.G. ultimately confessed to under torture. At TEYF's direction, a friend of his obtained a gun that could not be traced to TEYF and then obliterated the serial number. TEYF had this gun then provided to Snowman. TEYF intended to have Snowman murder A.G. once TEYF had left the country. TEYF intended to leave the U.S. with most of his family in mid-December of 2018 and had an understanding with Snowman that the murder of A.G. would take place by Christmas. TEYF had no intent of returning and Snowman would later join him in Russia.

## LAW and ANALYSIS

### *Fed. R. Evid. 404(b)*

Although there are exceptions, character evidence is generally inadmissible for the sole purpose of providing action in conformity therein. *See* Fed. R. Evid. 404(a). Likewise, evidence of a crime, wrong, or other act is not admissible to solely prove up an otherwise inadmissible character trait. *See* Fed. R. Evid. 404(b). However, there are explicitly well-recognized appropriate reasons for admitting other crimes, wrongs, or acts. These include, but are not limited to such things as proving "motive, opportunity, intent, preparation, plan, knowledge, identify, absence of mistake or lack of accident." Fed. R. Evid. 404(b)(2).

The Fourth Circuit Court of Appeals has "long treated 404(b) as an inclusionary rule, permitting introduction of all evidence except that which proves only criminal disposition." United States v. Sanchez, 118 F.3d 192, 195 (4th Cir.

1997). Indeed, the list of appropriate purposes for entry of such evidence under Rule 404(b) is not an exhaustive list; rather, "the cataloging therein is merely illustrative and not exclusionary." United States v. Masters, 622 F.2d 83, 86 (4th Cir. 1980).

Even if evidence is admissible under Rule 404(b), it still must satisfy the strictures of Rule 403 wherein a court may exclude relevant evidence "if its probative value is substantially outweighed by a danger of" unfair prejudice. Fed. R. Evid. 403. The Fourth Circuit has considered this and thus found that Rule 404(b) evidence is admissible so long as it satisfies a combined four part test. The evidence must be: (1) relevant to some issue other than character (the more similar the prior act, the more relevant); (2) necessary to prove an essential claim or element of the offense; (3) reliable; and (4) its probative value must not be substantially outweighed by confusion or unfair prejudice. United States v. Queen, 132 F.3d 991, 997 (4th Cir. 1997); United States v. Aramony, 88 F.3d 1369, 1377 (4th Cir. 1996).

### *Intrinsic Evidence*

However, a "Rule 404(b) inquiry applies ***only*** to evidence of other acts that are 'extrinsic to the one charged' [and] 'acts intrinsic to the alleged crime do not fall under Rule 404(b)'s limitations on admissible evidence.'" United States v. Siegel, 536 F.3d 306, 315-316 (4th Cir. 2008) *quoting* United States v. Chin, 83 F.3d 83, 87-88 (4th Cir. 1996) (emphasis added). Thus, evidence is admissible without any need to turn to Rule 404(b) when such evidence furnishes part of the context of the charged crime or is directly applicable to an element of offense. This concept is well-established in the Fourth Circuit. *See e.g.,* United States v. Bajoghli, 785 F.3d 957, 965 (4th Cir.

2015); *but see* United States v. Fuertes, 805 F.3d 485, 494 (4th Cir. Md. Aug. 18, 2015) (footnoting a concern over the potential of having the concept of "intrinsic" evidence too broadly applied). A "not guilty" plea obviously puts into issue every element of the crime for which a defendant is charged.[7] *See* United States v. Bailey, 990 F.2d 119, 123 (4th Cir. 1993). Of course, as noted above, even under circumstances in which Rule 404(b) is inapplicable, it is still necessary to conduct a Rule 403 analysis.

In the case at hand, the defendant asserts that any of the previously noticed acts would be "highly and unfairly prejudicial to defendant," that the noticed bad acts "not, in fact, intrinsic to the charged crimes," and the "only purpose would be to

---

[7] For the trial consisting of Counts 27-29, the following elements must be met for each charge:

**COUNT 27**

18 U.S.C. §201(b)(1)(2) (Bribery of Public Official) & aiding/abetting

   i. Defendant gave money to a public official;
   ii. He did so corruptly with intent to influence an official act or to induce a public official to do or omit and act; and
   iii. An identifiable official act was affected.

**COUNT 28**

18 U.S.C. §1958 (Murder for Hire) and aiding and abetting

   i. Defendant used (or caused to be used) a facility of interstate commerce;
   ii. With intent that murder be committed in violation of State or Federal Law;
   iii. (that specific state law and elements applicable); and
   iv. As consideration for receipt of or promise to pay

**COUNT 29**

18 U.S.C. §922(k) (Possession of firearm w/ obliterated serial #)

   i. The defendant possessed or received a firearm;
   ii. The firearm had the serial number removed, obliterated, or altered;
   iii. The firearm had traveled in interstate or foreign commerce at some point during its existence; and
   iv. The defendant acted knowingly, including knowing that the serial number had been removed, obliterated, or altered

Page **7** of **17**

Case 5:18-cr-00452-FL   Document 559   Filed 04/06/20   Page 7 of 17

prejudice the jury against the defendant.[8] The defendant fails to acknowledge or address even any arguable basis for any of the noticed acts and summarily asserts that the evidence is a "thinly veiled attempt" to prove propensity, is "replete with assertions of fact and events that may have never actually occurred," and that the Government's evidence on certain charges is "unreliable and weak."[9] The defendant broadly attacks each asserted act but clearly avoids a structured item by item analysis. However, doing so very clearly displays that the Defendant's allegations are excessive and inaccurate. For the reasons previously set forth within the Government's notice and now more fully explained, the bad acts to be admitted at trial are vastly part and parcel of the charged conduct, have a valid purpose for admission, and are not unfairly prejudicial to the defendant. For ease of reference, the Government addresses each bad act within a separately numbered paragraph.

### *Intrinsic Facts Outside the Scope of Rule 404(b)*

These bad acts by the Defendant are intrinsic to the all three counts and is thus admissible evidence outside the scope of Rule 404(b). Presentation of the facts and circumstance underlying these charges requires introduction of related misconduct by the Defendant because they are part and parcel to the charged conduct. This evidence is necessary to tell the story of what occurred, to display the Defendant's relationship to various individuals, to show how and why witnesses acted in the

---

[8] DE 518 at 1, 7.

[9] DE 518 at 7, 14-15.

manner they did – all in addition to explaining the Defendant's motive, intent, knowledge, and modus operandi:

1. **Defendant TEYF entrusted Snowman with taking care of funding TEYF's paramour in Chicago. This included obtaining an apartment, paying the rent on the apartment and providing funds directly to this person (both with cash received from TEYF), and on occasion driving TEYF to the woman's apartment.[10]**

    The relationship between TEYF and Snowman is a cornerstone to presentation of the facts in this case. TEYF fully believed that Snowman was reliable and could keep a secret, which are obviously important factors when paying someone to murder another person. Moreover, this is important evidence displaying the nature of what was an established relationship prior to Snowman assisting the FBI on this case. This is part of what Snowman's "job" was for TEYF while working for TEYF. How they knew each other is crucial to a jury member's understanding of the evidence obtained as a result of that relationship. For these reasons, it is believed to be intrinsic to the case at hand.

    However, the admissibility of this evidence easily satisfies an additional 404(b) analysis in light of the purpose of introducing this evidence. The evidence is reliable as it will be presented through the testimony of Snowman, who is subject to cross-examination; moreover, TEYF is recorded on more than one occasion, talking about his own affairs, (however these are not intended to be played or publicized in trial unless Snowman were attacked as being untruthful in this regard). In the case of United States v. Poole, 451 F. App'x 298, 307 (4th Cir. 2011) (*unpub*.), under the abuse of discretion standard, the Fourth Circuit reviewed and affirmed a District Court's introduction of a defendant's adulterous activity by a defendant as it related to charged counts that in turn factually related to acts of murder. In that instance, the evidence displayed motive of the defendant to finance an extravagant lifestyle and was also necessary context for the testimony of other individuals. In this regard, testimony took place by two witnesses who "briefly described their sexual escapades" with the defendant, and the district court issued an instruction not to use that evidence improperly.

---

[10] Although facts known to the Defendant, this item was not originally noticed within the Government's February 2020 filing. Simply put, the degree of relevance of the matter became much clearer, after the Government had filed its notice, during additional discussions with the witness, Sviridov (i.e., Snowman).

Page **9** of **17**

Similarly, the present evidence is relevant and necessary to fully place in context the relationship between Snowman and TEYF, and dissimilarly, the Government does not need to introduce any substantive evidence of said sexual exploits; merely the existence of the paramour and Snowman's assistance to TEYF in this regard. The probative value far outweighs inconsequential prejudice that can be cured via an instruction as to the appropriate consideration of such evidence (which the Government would agree to regardless of whether the Court determined the evidence admissible as intrinsic or as admissible under 404(b)).

**2. Defendant TEYF had drugs planted in A.G.'s vehicle and had a tracker planted on A.G.'s vehicle as part of his attempt to get A.G. deported to Russia.**

This was part of the overall scheme by Defendant TEYF to murder A.G. – preferably in Russia where violence, according to TEYF, would be much easier to accomplish. Recordings of Teyf indicate he believed that setting up A.G. to get caught in criminal behavior would assure (or facilitate a deportation. This evidence will further be presented through multiple witness testimony, and physical evidence of trackers used by TEYF.

**3. Defendant TEYF stated that his spouse was able to get out of Russia in spite of false charges he had brought against her in Russia, and that as a result of the failures of Russian Border patrol to act on this, an entire border shift was fired**.

This was part of the overall scheme by Defendant TEYF to murder A.G. in which he paid the would-be-assassin, Snowman. TEYF's direction to Snowman explicitly and repeatedly demanded that A.G. be tortured and questioned as to the nature of the infidelity with TEYF's spouse. TEYF's purpose in attempting to confine his spouse w/in RUSSIA was to wait and see what information was obtained from A.G. so that TEYF could make a decision on whether to murder his spouse as well – again, something much easier to accomplish in Russia. Clearly, this further displays the level of relationship, knowledge of criminal intent, and lack of mistake between TEYF and the Snowman, who will be a testifying witness. It additionally, displays the level of rage by TEYF motivating him to act in such a violent manner. Moreover, it displays modus operandi by TEYF of attempting to have government officials do his bidding. Finally, it is strong evidence of the level of influence that TEYF is able to have in Russia with the capability of causing harm to other

people. This evidence will be presented through recordings with TEYF, testimony from the would-be-assassin, and physical evidence of charges being lodged in Russia against TEYF's spouse.

4. **Defendant TEYF stated that he would take his spouse outside of the United States, perhaps to Mexico, in light of the pending charges against her in Russia. There, Teyf asserted, she could be arrested and removed back to Russia, while the same could not happen if she stayed in the United States.**

   Same basis as paragraph #2. This evidence will be presented through recordings with TEYF and testimony from Snowman

5. **Defendant TEYF contemplated murder of his spouse in the U.S., but ultimately decided that he may decide to have to kill his spouse once she returned to Russia.**

   Same basis as paragraph #2. This evidence will be presented through recordings with TEYF and testimony from Snowman

6. **Defendant TEYF threatened to harm and/or kill the families of those who cross him, to include the family of his spouse**.

   TEYF repeatedly references harming people in Russia and explicitly noting that these people know what he is capable of doing in Russia; this evidence directly supports the Government's explanation that in those instances in which TEYF is seeking to have A.G. deported, it is in fact because TEYF is able to have A.G. more easily murdered in Russia. The threats about other persons are in direct relation to the affair between TEYF's spouse and A.G. and resulting fall out, all of which display the level of anger by TEYF supporting his decision to act in the violent manner charged. This evidence will be presented through recordings with TEYF and testimony from Snowman.

The above evidence is directly relevant to placing in context Defendant TEYF's actions regarding seeking to have A.G. killed and is at the center of each charge to be litigated within Trial #1. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The presently

considered facts provide extremely probative insight into the Defendant's relationships and mental state at the time of the charged conduct. These facts are exactly what was contemplated within the Fourth Circuit's reasoning that "evidence is necessary where, considered in 'light of the other evidence available to the government,' it is an 'essential part of the crimes on trial, or where it furnishes part of the context of the crime." Queen, 132 F.3d at 998. While this negates the need for a 404(b) analysis, it is noteworthy that these pieces of evidence display the Defendant's motives in relation to the charges throughout the charged time frame, his intent, his knowledge, realistic capabilities, and nature of relationships with witnesses and would-be-victims – thus satisfying the Queen four-part test.

First, each of these facts are relevant as they tends to prove facts of consequence – facts which either support the Government's proffered motive, intent, means, and method in relation to the desired murder (and thus need for a gun with an obliterated serial number, and need to bribe an ICE official in attempt to ensure A.G.'s deportation to Russia).

Second, the evidence is necessary to the Government's case-in-chief. At the trial, understanding the discussions between Defendant TEYF and Snowman are vital to understanding the scope of that relationship; moreover, it is necessary to provide Defendant's motive, knowledge, and intent in carrying out these crimes which will naturally be a looming question in the mind of the jury. There is no other manner by which this evidence can be presented.

Third, the proposed evidence is reliable. As the Fourth Circuit previously noted, evidence is reliable "unless it is so preposterous that it could not be believed by a rational and properly instructed juror." Aramony, 88 F.3d at 1378. The evidence is largely recorded statements of the defendant; moreover Snowman will testify about these conversations and be subject to cross-examination. Because such evidence will be sufficient to allow the jury to reasonably conclude that the acts occurred and that the Defendant was the knowing actor, such evidence is reliable. *See* United States v. Powers, 59 F.3d 1460, 1467 (4th Cir. 1995).

The Fourth prong of the Queen test incorporates a Rule 403 analysis and is applicable regardless of whether the prior three prongs are applied. Here, the probative value of the evidence is not substantially outweighed by any unfair prejudice. According to the Fourth Circuit, there is no unfair prejudice when an extrinsic act is no more sensational or disturbing than the crimes with which a defendant is charged. United States v. Boyd, 53 F.3d 631, 637 (4th Cir. 1995). "'[D]amage to a defendant's case is not a basis for excluding probative evidence,' because 'evidence that is highly probative invariably will be prejudicial to the defense.'" United States v. Basham, 561 F.3d 302, 326 (4th Cir. 2009) (citations omitted). Indeed, evidence of other acts should only be excluded for undue prejudice "where the trial judge believes that there is a genuine risk that the emotions of the jury will be excited to irrational behavior, and this risk is disproportionate to the probative value of the offered evidence." Bailey, 990 F.2d at 122 (*citing* Masters, 622 F.2d at 87; *see also* Basham, 561 F.3d at 326-27).

It is unreasonable to claim that the facts set forth *supra* "would invoke emotion in place of reason," or "cause any confusion with respect to the charges." Queen, 132 F.3d at 998. The proposed evidence in paragraphs 1-6 above are certainly no more "sensational or disturbing" than the charged crimes. Namely, the Defendant hired someone to assassinate his wife's lover. Evidence of the Defendant's own infidelity, his obsession over the affair of his wife, interrelated plan to possibly have his wife killed for the same conduct, and threats of ability to enact similar violence in Russia more easily than in the U.S. would not entice a jury to "irrational behavior," which is the benchmark of finding such evidence unfairly. *See* Masters, 622 F.2d at 87. The probative value of the evidence is not substantially outweighed by any unfair prejudice.

Moreover, "Such prejudice, if any, can be generally obviated by a cautionary or limiting instruction, particularly if the danger of prejudice is slight in view of the overwhelming evidence of guilt." Masters, 622 F.2d at 87-88.

### *Extrinsic Facts Requiring 404(b) Analysis*

The Government concedes that item seven (7) is conduct which falls squarely within Rule 404(b), but admissible only for the following purposes and under the following circumstances.

**7. TEYF's statement that he had located officials at Duke University whom he could bribe to obtain admittance for his son.**

> This is a recorded statement of TEYF made during a conversation with Snowman. This further displays the level of confidentiality understood to exist between Snowman and TEYF – that is, the value of this statement is not the conduct, but mere fact that TEYF would so blithely

inform Snowman of this without any prompting or even related discussion – it very clearly crystalizes the nature of the relationship existing between TEYF and Snowman. The Government recognizes however that this is slightly different from the evidence set out in paragraph 1 above. While the evidence in paragraph 1 deals directly with actions by Snowman and TEYF within their relationship, this is only a statement by TEYF to Snowman – which the Government believes for that reason it may not be "intrinsic" to the facts underpinning the case; however, it is relevant to displaying the confidentiality TEYF believed he had with Snowman, it is probative to that conclusion, it is highly reliable as it is the Defendant's recorded statement, and it is not unfairly prejudicial – particularly when considered as relative to severity of the charges at issue. Though, the Government does not believe necessary to consider for initial admission, the Government fully expects that the defense will attempt to infer that TEYF was entrapped (see Defense proposed jury instructions at DE 516) and evidence such as this rebuts assertions that TEYF was not already predisposed towards criminal conduct he is charged with.

The Government does **NOT** intend to offer item eight (8) **UNLESS** the Defendant opens the door to introduction of said evidence.

### 8. TEYF bribed an inmate he was housed with for cigarettes and a cell phone.

The inmate will testify at trial that during a conversation with the inmate, TEYF described himself as a gangster. Should the nature of the relationship between TEYF and the inmate become an issue such as inference that they would not have talked or had any dealings – or any inference during trial of the character of TEYF such that he would not engage in criminal behavior or bribe persons; then the above evidence becomes relevant and has some probative value. The prejudicial effect of such testimony is *de minimus*. Moreover, any reliability of the claim would be subject to cross-examination.

## CONCLUSION

With response to the Defendant's Motion to exclude the evidence as it pertains to trial one on Counts 27-29, the Government request that such Motion be denied; the Government requests

Page **15** of **17**

that the Court permit the Government to admit the evidence as set forth in the numbered paragraphs 1-8 herein.

Respectfully submitted, this the 6th day of April, 2020.

<div style="margin-left: 40%;">
ROBERT J. HIGDON, JR.
United States Attorney

*/s/ Jason M. Kellhofer*
JASON M. KELLHOFER
BARBARA D. KOCHER
Assistant United States Attorney
U.S. Attorney's Office
Eastern District of North Carolina
Criminal Division
150 Fayetteville St. Suite 2100
Raleigh, NC 27601
Telephone: 919-856-4530
Facsimile: 919-856-4828
E-mail: Jason.Kellhofer@usdoj.gov
Ohio Bar #0074736
E-mail:barb.kocher@usdoj.gov
NC Bar: 16360
</div>

CERTIFICATE OF SERVICE

    I hereby certify that I have this 6th day of April 2020, served a copy of the present document on counsel for the Defendant by electronically filing the foregoing with the Clerk of Court using the CM/ECF system, which will send notification to:

| | |
|---|---|
| F. Hill Allen | Robert S. Wolf |
| Tharrington Smith, L.L.P. | Moses & Singer, L.L.P. |
| P.O. Box 1151 | 405 Lexington Ave. 12th Floor |
| Raleigh, NC 27602 | New York., NY 10174-1299 |

By:   */s/ Jason M. Kellhofer*
JASON M. KELLHOFER
BARBARA D. KOCHER
Assistant United States Attorney
U.S. Attorney's Office
Eastern District of North Carolina
Criminal Division
150 Fayetteville St Suite 2100
Raleigh, NC 27601
Telephone: 919-856-4530
Facsimile: 919-856-4828
E-mail: Jason.Kellhofer@usdoj.gov
Ohio Bar #0074736
E-mail:barb.kocher@usdoj.gov
NC Bar: 16360