# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NORTH CAROLINA
# WESTERN DIVISION

## NO. 5:18-CR-00452-1-FL

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>  Plaintiff<br><br>  v.<br><br>LEONID ISAAKOVICH TEYF,<br><br>  Defendant | **MOTION TO CONTINUE TRIAL** |

Defendant Leonid Isaakovich Teyf ("Mr. Teyf"), through undersigned counsel, respectfully moves this Court for an order continuing the trial in this matter currently scheduled for July 27, 2020 until on or after at least August 31, 2020 for reasons related to this Court's Standing Order dated June 18, 2020 governing criminal proceedings at the United States Courthouse at New Bern, North Carolina, the Court's prior Standing Order, and to ensure a fair trial under the United States Constitution, all arising out of the COVID-19 pandemic. Defense counsel has conferred with Government counsel, who does not object to the granting of a continuance and whose position is specifically stated as follows:

> "The government has adjusted its expected trial time on Counts 27-29 as requiring 8 to 10 hours of testimony for its case-in-chief, forecasting a total of three days' trial time. Given that, it has no objection to a continuance of trial on Counts 27-29 (Trial 1) to begin August 31 and then to roll directly into the trial on the remaining counts (Counts 1-26 and 30-50), currently set for August 31. If the continuance of trial on Counts 27-29 is beyond August 31, and/or trial on Counts 1-26 and 30-50 is to be moved entirely from its current setting, then the speedy trial rights of defendant Tatyana Teyf may be impacted, and the government is unable to take a position without input from Tatyana Teyf's counsel as to her position in regards to any potential delay in her own trial."[1]

---

[1] The Government's concern with respect to Tatyana Teyf's trial relates to having sufficient time to provide her trial counsel with transcripts of Mr. Teyf's trial in advance of her own December trial. Mr. Teyf will be ordering daily transcript; therefore, there is no issue with respect to obtaining transcripts well

Accordingly, Mr. Teyf requests a continuance until at least August 31, 2020 or a date thereafter as determined by the Court, which provides the defense at least two weeks from the conclusion of the trial on Counts 27-29 and the commencement of trial on the remaining counts. As the Court is aware, the current schedule provides for approximately 30 days between the two trials, which would of course be preferable if the Court's calendar permits. This request for a continuance does not seek to or affect the order of the trials previously determined by the Court.

Consistent with this Court's Standing Order, other courts have recognized that underlying medical conditions can "cause defendant to be at a higher risk of severe illness from COVID-19." *United States v. Howard*, No. 4:15-CR-00018-BR, 2020 WL 2200855, at *3 (E.D.N.C. May 6, 2020) (listing "COPD, obesity, and diabetes" as applicable underlying medical conditions)[2]; *United States v. Lassister*, No. CR ELH-17-232, 2020 WL 3639988, at *5 (D. Md. July 6, 2020) (noting that "[t]he scientific literature . . . suggests that hypertension increases the risk of mortality due to COVID-19"). This Court's June 18, 2020 Standing Order (DE 586) acknowledges and incorporates this guidance from public health authorities by deeming "people of all ages with underlying medical conditions" as "vulnerable individuals [who] are not required to appear for a hearing at the courthouse." More specifically, as set forth in that Order, "[d]ue to increased risk of severe illness from COVID-19, vulnerable individuals (including counsel) with underlying medical conditions, such as chronic lung disease, moderate to severe asthma, *serious heart conditions*, immune disorders, *obesity*, *diabetes* or chronic kidney or liver disease including are not required to appear." (Emphasis supplied).

---

in advance of Mrs. Teyf's trial. Defense counsel has also spoken with Tatyana Teyf's counsel, and the daily transcripts will alleviate any concern about the defendant's request for a continuance which provides at least two weeks from the conclusion of the trial on Counts 27-29 and the commencement of trial on the remaining counts.

[2]*See id.* (citing Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last visited July 7, 2020).

In accordance therewith, Defendant Leonid Teyf is a "vulnerable individual" with a risk of severe illness from COVID-19. Specifically, as confirmed by his medical records, Mr. Teyf is 59 years of age and suffers from numerous physical and medical conditions, including Type II diabetes, chronic gastritis, arterial hypertension, obesity, and gastroesophageal reflux disease. *See* DE 103, Ex. 10; 1/22/19 Tr. at 44:4-16, 45:8-14 ("Mr. Teyf has diabetes; he has an irregular heartbeat; he has chronic gastritis from a hiatal hernia; he has a variety of other ailments, including injuries from an accident that left him with significant muscular and bone issues that require him to do certain kinds of exercises or he suffers pain and is unable to sleep.").

Since the issuance of the Court's June 18, 2020 Standing Order, the situation with respect to infections and hospitalizations due to COVID-19 has dramatically worsened. In recent weeks, the Nation has confronted a dangerous and alarming surge in coronavirus infections and hospitalizations. In North Carolina, "catastrophic conditions resulting from the COVID-19 outbreak . . . exist in all counties of the state," which is experiencing record highs in COVID-19 hospitalizations on a near-daily basis.[3] Jury trials across the Nation, including those scheduled before this Court, have been and continue to be postponed based upon COVID-19 related issues as the virus spreads. This Court has also continued several trials scheduled in June and July based upon COVID related issues. *See, e.g., U.S. v. Brinson*, No. 7:18-cr-184-FL-1, DE 182 (E.D.N.C. June 18, 2020); *USA v. Kim et al.*, 7:18-cr-00200-FL, DE 97 (E.D.N.C. June 26, 2020); *U.S. v. Rizzuto,* 5:20-cr-00228-FL, DE 37 (E.D.N.C. July 6, 2020). Accordingly, Mr. Teyf makes the instant motion on the grounds that a continuance of this jury trial is necessary to protect the health

---

[3] *See* Order of the Chief Justice Extending Emergency Directives 9 to 16, https://www.nccourts.gov/covid-19/; News & Observer, NC reports another high for coronavirus hospitalizations, dozens of deaths this week: https://www.newsobserver.com/news/local/article244081007.html (last accessed July 8, 2020).

3

of Mr. Teyf, as well as jurors, counsel, witnesses, and Court staff and personnel and to ensure a fair trial.

Additionally, Mr. Teyf's lead counsel based in New York has not been able to personally meet with Mr. Teyf since February due to travel and quarantine restrictions imposed by Executive Order and simultaneous prohibitions on attorney visits at Albemarle District Jail, which only very recently resumed attorney visitations. However, shortly thereafter, multiple states in the Southwest and Southeast, including North Carolina, became "hot spots" with unacceptable increasing levels of COVID-19 infections which triggered mandatory 14-day quarantines for travelers from those states to New York, New Jersey, or Connecticut, imposed by Executive Order of their Governors. As a result, lead counsel continues to be prevented from personally meeting with Mr. Teyf, as the resulting 14-day quarantine upon return to New York would prevent counsel from effectively continuing necessary trial preparation in their office. Indeed, counsel has been out of their offices in New York since mid-March, and only recently has New York entered Phase 2 of its re-opening which only then permitted limited access. Counsel's firm, Moses & Singer LLP, also continues to operate remotely and no members of the staff have returned to the offices.[4]

As the Supreme Court has recognized, "the assistance of counsel cannot be limited to participation in trial; to deprive a person of counsel during the period prior to trial may be more damaging than denial of counsel during the trial itself." *Maine v. Moulton*, 474 U.S. 159, 170 (1985). This untenable situation compromises Mr. Teyf's right to effective assistance of counsel.[5]

---

[4] Moreover, due to Mr. Teyf's vulnerability to severe illness based upon his underlying medical conditions, all counsel are equally concerned with the unacceptable danger and harm that an otherwise essential personal meeting could cause.

[5] New York-based counsel would also need to self-quarantine for 14 days after returning to New York following Mr. Teyf's first trial, the current timing of which would adversely impact their ability to prepare for the second trial currently set to begin on August 31, 2020.

4

Whether North Carolina is in the midst of the first or second "wave" of coronavirus cases, the recent upward trend in cases and hospitalizations unfairly compromises Mr. Teyf's right to a fair trial in multiple ways.

*First*, as previously indicated, a greater number of potential jurors have the virus or are at risk of contracting it. In recent weeks, more North Carolinians are likely to be living with a family member who has contracted the virus, or have otherwise been exposed to someone with the virus. The negative impact of the coronavirus on the potential jury venire and the attendant right to a fair trial is undeniable. Members of the venire may simply not appear or quite reasonably opt out, due to fear of exposure to COVID-19. As the Eastern District's Plan for Random Selection of Jurors ("Jury Plan") makes clear, pursuant to 28 U.S.C. §§ 1861 and 1862, Mr. Teyf is entitled to a jury "selected at random from a fair cross-section of the community," "all qualified citizens shall have the opportunity to be considered for service," and "[n]o citizen shall be excluded from service. . .on account of race, color, religion, sex, national origin, or economic status." Especially given the dangerous upward trend in coronavirus cases, however, a significant cross-section of the population (including, for example, the elderly, those with children in the home and those who care for an aging parent) will be excluded or seek to be excluded from the jury. It is also well documented that there are significant differences across racial and ethnic lines regarding risks of infection, access to health insurance, economic dislocations due to the virus, and overall fear of the virus.[6] As infections and hospitalizations rise, there is a greater risk that "a jury of the defendant's peers" will actively seek to avoid jury service (and with good reason).

---

[6] *See, e.g.,* Mark Hugo Lopez, et al, *Financial and health impacts of COVID-19 vary widely by race and ethnicity*, Pew Research Center (May 5, 2020) ("There are sharp racial and ethnic differences in personal experiences with COVID-19 and in concerns about spreading or catching the virus."); *available at* https://www.pewresearch.org/fact-tank/2020/05/05/financial-and-health-impacts-of-covid-19-vary-widely-by-race-and-ethnicity/ (last visited July 8, 2020).

5

*Second*, those jurors who are seated are more likely to be worried about promoting their own physical well-being, or the safety of their loved ones, and distracted from the complexities of the case at hand. COVID-19 is disrupting lives and routines all over the world, and those in the courtroom will hardly be insulated from that impact. Mr. Teyf is charged with murder-for-hire and other serious offenses. These charges demand the jury's undivided attention throughout the entire trial. Their emotional and physical resources are, however, likely to be drained: they may be fearful of congregating in a confined space, with reported cases rising; or uncomfortable with the prospect that they have high-risk family members they are putting at greater risk.[7] And once the case is sent to the jury, there is a significant risk that a jury will be averse to extended deliberation, and may instead rush to judgment and seek a quick verdict in order to avoid continued close contact with fellow jurors. A holdout juror may be pressured to capitulate. Thus, seating a distracted jury, or a jury impatient to end the trial in order to attend to their or their loved ones' health, would constitute a miscarriage of justice and undermine the fairness and integrity of the proceedings.

*Third*, the potential need for Mr. Teyf to wear a mask as a vulnerable individual would risk unfair prejudice to him, as a mask may be viewed negatively by jurors. Just as "[i]dentifiable prison garb. . .tends to brand [a defendant] in the eyes of the jurors with an unmistakable mark of guilt," the use of masks creates the same unfairly prejudicial associations. *See Estelle v. Williams*, 425 U.S. 501 (1976). There is inherent and significant tension between the need to protect Mr. Teyf's safety (and the safety of those around him, including counsel in their 60s and 50s) by requiring a mask, and his right to present himself to the jury without a mask to avoid fostering a

---

[7] These concerns are similarly held by defense counsel, who are concerned not only about the integrity of the proceedings, but also about their own ability to focus on and prepare for the serious charges at hand amid these extraordinary circumstances.

negative impression.[8] Alternatively, Mr. Teyf's presence without a mask may invite jurors to infer that Mr. Teyf is a selfish individual who is reckless towards the health and safety of others.[9] Mr. Teyf, and the Court, should not be faced with this difficult dilemma.

*Fourth,* the need for masks impairs Mr. Teyf's constitutional right to confront witnesses against him, which "compel[s] [a witness] to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief." *California v. Green,* 399 U.S. 149 (1970) (citing *Mattox v. United States*, 156 U.S. 237, 242 (1896)). Masks obscure faces and muffle sound – and therefore fundamentally impair the ability of jurors to evaluate witnesses' credibility, which is a hallmark of a fair trial. *See Breeden v. Weinbarger*, 493 F.2d 1002 (4th Cir. 1974) (noting that a witness' demeanor can lay the basis for a credibility finding). They also prevent counsel from assessing the jurors' reaction to the evidence. The signals that jurors do detect from witnesses (and that counsel detect from jurors) may not be as probative in the midst of the pandemic as they otherwise would be. For example, jurors may ascribe a witness' nervous or tentative testimony to their fear of contracting COVID-19 rather than to actual evasiveness about the subject matter.

*Fifth*, as cases rise, coronavirus-related fears will only be compounded if members of the public are permitted to observe proceedings in the courtroom. Excluding the public, however,

---

[8] North Carolina Governor Roy Cooper recently mandated masks in public places where social distancing of six feet is not possible. *See* WBTW, NC Gov. Issues Mandate Requiring Face Masks in Public, https://www.wbtw.com/home/nc-gov-roy-cooper-issues-mandate-requiring-face-masks-in-public-nc-sheriffs-and-community-reaction/ (last accessed on July 8, 2020). The Court's June 18, 2020 Standing Order also requires all individuals in the courthouse to wear a face covering "unless directed by the court otherwise". DE 586, 2.

[9] Some jurors may agree, for instance, with Andrew Cuomo, the Governor of New York, who claims that refusing to wear a mask "is insensitive, it is arrogant, it is self-destructive, [and] it is disrespectful to other people." George Back, *Andrew Cuomo on 'selfish' New Yorkers not wearing masks: 'I just don't get it'*, Yahoo Entertainment (May 7, 2020), available at https://sports.yahoo.com/andrew-cuomo-on-selfish-new-yorkers-not-wearing-masks-i-just-dont-get-it-074031942.html (last visited July 8, 2020).

would deny Mr. Teyf his Sixth Amendment right to a public trial, and would also deny the public their right to monitor court proceedings.

Ultimately, there can be no prejudice to any party, other than defendant, from delay while the status of the pandemic continues to clarify and resolve. Mr. Teyf remains detained. Based upon the foregoing, Mr. Teyf makes the instant motion on the grounds that a continuance of this jury trial is necessary to protect the health of the defendant, jurors, counsel, witnesses, and Court staff and personnel, and is necessary to ensure a fair trial. Additionally, as this Court's June 18 Order and prior Standing Orders recognize, continuances of proceedings and trials for the foregoing reasons serve the ends of justice and may be excluded from computation under the Speedy Trial Act of 1974. Mr. Teyf consents to the exclusion of the requested delay for purposes of the Speedy Trial Act. As set forthabove, Mr. Teyf makes the instant motion on the grounds that a continuance of this jury trial is necessary to protect the health of the defendant, as well as jurors, counsel, witnesses, and Court staff and personnel, and is necessary to ensure a fair trial.

## CONCLUSION

For the foregoing reasons, defendant respectfully requests that the Court enter an order continuing the trial currently set for the July 27, 2020 until at least August 31, 2020 or a date thereafter as the Court determines consistent with the foregoing schedule proposed by defendant and the Government.

Respectfully submitted, this the 9th day of July, 2020.

/s/ F. Hill Allen
F. Hill Allen
THARRINGTON SMITH, L.L.P.
P.O. Box 1151
Raleigh, NC 27602

Phone: (919) 821-4711
Fax: (919) 829-1583
hallen@tharringtonsmith.com
N.C. State Bar No. 18884
*Counsel for Defendant*


/s/ Robert S. Wolf
Robert S. Wolf
MOSES & SINGER LLP
The Chrysler Building
405 Lexington Ave., 12th Floor
New York, NY 10174-1299
Phone: (212) 554-7825
Fax: (212) 554-7700
rwolf@mosessinger.com
*Counsel for Defendant*

9

## CERTIFICATE OF SERVICE

      I hereby certify that on this 9th day of July, 2020, I electronically filed the foregoing **MOTION TO CONTINUE TRIAL** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

                              /s/ F. Hill Allen
                              F. Hill Allen
THARRINGTON SMITH, L.L.P.
P.O. Box 1151
Raleigh, NC 27602
Phone: (919) 821-4711
Fax: (919) 829-1583
hallen@tharringtonsmith.com
N.C. State Bar No. 18884
*Counsel for Defendant*