IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:18-CR-452-1-FL

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| v. | ) | UNITED STATES' RESPONSE TO |
| | ) | DEFENDANT'S MOTION IN |
| | ) | LIMINE RE 404(b) EVIDENCE |
| LEONID ISAAKOVICH TEYF, | ) | (D.E. 518) |
| Defendant. | ) | |

The United States of America, by and through the United States Attorney for the Eastern District of North Carolina, hereby responds in opposition to the portions of defendant's earlier motion in limine to exclude all noted 404(b) evidence from trial. D.E. 518. Filed prior to the severance of counts against defendant Teyf for separate trials, the government earlier filed a response to those portions of D.E. 518 relating to the trial on the bribery, gun, and murder for hire counts. D.E. 559. The instant response is to the remainder of the motion as pertains evidence noticed and relevant to the money laundering, tax, financial filings, and immigration and visa trial (hereinafter "the money laundering trial").

## LAW and ANALYSIS

*Fed. R. Evid. 404(b)*

Although there are exceptions, character evidence is generally inadmissible for the sole purpose of providing action in conformity therein. *See* Fed. R. Evid. 404(a). Likewise, evidence of a crime, wrong, or other act is not admissible to solely prove up an otherwise inadmissible character trait. *See* Fed. R. Evid. 404(b). However, there are explicitly well-recognized appropriate reasons for admitting

1

other crimes, wrongs, or acts. These include, but are not limited to such things as proving "motive, opportunity, intent, preparation, plan, knowledge, identify, absence of mistake or lack of accident." Fed. R. Evid. 404(b)(2).

The Fourth Circuit Court of Appeals has "long treated 404(b) as an inclusionary rule, permitting introduction of all evidence except that which proves only criminal disposition." United States v. Sanchez, 118 F.3d 192, 195 (4th Cir. 1997). Indeed, the list of appropriate purposes for entry of such evidence under Rule 404(b) is not an exhaustive list; rather, "the cataloging therein is merely illustrative and not exclusionary." United States v. Masters, 622 F.2d 83, 86 (4th Cir. 1980).

Even if evidence is admissible under Rule 404(b), it still must satisfy the strictures of Rule 403 wherein a court may exclude relevant evidence "if its probative value is substantially outweighed by a danger of" unfair prejudice. Fed. R. Evid. 403. The Fourth Circuit has considered this and thus found that Rule 404(b) evidence is admissible so long as it satisfies a combined four part test. The evidence must be: (1) relevant to some issue other than character (the more similar the prior act, the more relevant); (2) necessary to prove an essential claim or element of the offense; (3) reliable; and (4) its probative value must not be substantially outweighed by confusion or unfair prejudice. United States v. Queen, 132 F.3d 991, 997 (4th Cir. 1997); United States v. Aramony, 88 F.3d 1369, 1377 (4th Cir. 1996).

However, a "Rule 404(b) inquiry applies ***only*** to evidence of other acts that are 'extrinsic to the one charged' [and] 'acts intrinsic to the alleged crime do not fall under Rule 404(b)'s limitations on admissible evidence.'" United States v. Siegel, 536 F.3d 306, 315-316 (4th Cir. 2008) *quoting* United States v. Chin, 83 F.3d 83, 87-

2

88 (4th Cir. 1996) (emphasis added). Thus, evidence is admissible without any need to turn to Rule 404(b) when such evidence furnishes part of the context of the charged crime or is directly applicable to an element of offense. This concept is well-established in the Fourth Circuit. *See e.g.,* United States v. Bajoghli, 785 F.3d 957, 965 (4th Cir. 2015); *but see* United States v. Fuertes, 805 F.3d 485, 494 (4th Cir. Md. Aug. 18, 2015) (footnoting a concern over the potential of having the concept of "intrinsic" evidence too broadly applied). A "not guilty" plea obviously puts into issue every element of the crime for which a defendant is charged. *See* United States v. Bailey, 990 F.2d 119, 123 (4th Cir. 1993).

Of course, even under circumstances in which Rule 404(b) is inapplicable, it is still necessary to conduct a Rule 403 analysis. In the case at hand, the defendant asserts that any of the previously noticed acts would be "highly and unfairly prejudicial to defendant," that the noticed bad acts "not, in fact, intrinsic to the charged crimes," and the "only purpose would be to prejudice the jury against the defendant."[1] The defendant fails to acknowledge or address even any arguable basis for any of the noticed acts and summarily asserts that the evidence is a "thinly veiled attempt" to prove propensity, is "replete with assertions of fact and events that may have never actually occurred," and that the Government's evidence on certain charges is "unreliable and weak."[2] The defendant broadly attacks each asserted act but clearly avoids a structured item by item analysis. However, doing so very clearly displays that the Defendant's allegations are excessive and inaccurate. For the reasons previously set forth within the Government's notice and now more fully

---

[1] DE 518 at 1, 7.
[2] DE 518 at 7, 14-15.

explained, the bad acts to be admitted at trial are vastly part and parcel of the charged conduct, have a valid purpose for admission, and are not unfairly prejudicial to the defendant. Of those items noticed at D.E. 472, filed prior to severance of the counts for trial, the government intends to introduce the following at the money laundering trial:

      1. According between CHS#1 and a person closely connected to the prosecutor in Russia then investigating Voentorg, on the subject of monies paid by Teyf to that person to stop the investigation as to Teyf.

      2. A recording between CHS#1 and Teyf in which Teyf informs CHS#1 that an individual who had interfered in Teyf's business needed to be made "sick," and that someone not connected to Teyf should be found to do it.

      3. Teyf's promised assistance with immigration, then failure to assist, or affirmatively prevent the person from getting legal status here in the United States, re: CHS#1, Alexey Timofeev, Olesya Timofeeva, and A.G.'s parents.

      4. Recordings of calls made by Teyf while in jail, regarding attempts to gather and manipulate documents in Russia.

      5. Evidence will be offered concerning Teyf's knowledge about the need to file the FBAR, to include testimony and emails regarding the advice he received from multiple professionals. The evidence will show Teyf declined the advice to file the form, but instead chose alternate advice to divorce his spouse. The associated evidence will include statements made to the local police after the divorce that the divorce was on paper only, that the assets remained his, and other statements to the effect his spouse stole $10 million from him (the approximate amount given her by the divorce papers) and it was best to try and get back in good stead with her to get the money back.

      6. Teyf told CHS#1 on more than one occasion, that the "best money is the money you obtain from the government."

### *Intrinsic Facts Outside the Scope of Rule 404(b)*

The below acts by the Defendant are intrinsic to various counts and are thus admissible evidence outside the scope of Rule 404(b). This evidence is necessary to tell the story of what occurred, to display the Defendant's relationship to various individuals, to show how and why witnesses acted in the manner they did – all in addition to explaining the Defendant's motive, intent, knowledge, and modus

operandi. As will be seen, several of these pieces of evidence have been fleshed out more fully in the government's previous filing at D.E. 594.

**Voice recording between CHS#1 and a person closely connected to the prosecutor then investigating alleged wrongdoing by Voentorg, on the subject of monies paid by Teyf to that person to stop the investigation as to Teyf.**

Defendant's motion in limine at D.E. 590 also moves to exclude this item. For the reasons stated within the government's response thereto, D.E 594, this recording is literally part and parcel of the crime committed in Russia–which the government must prove occurred in order for the jury to convict the defendant of money laundering. See D.E. 594 at 2-3. "[there is] no evidence that any formal investigation was ever conducted nor formal charges ever brought against Teyf, Minister of Defense Serdyukov, or anyone else." D.E. 590 at 2. Although the existence of an investigation or charges is not required to prove the underlying SUA, the fact that any investigation existed certainly would be relevant to the jury's consideration of whether the SUA occurred. In this case, the government's evidence, through Stroggi and otherwise, is that there was an investigation (the newspaper articles found at Teyf's residence, subject to the defendant's motion 5, D.E. 590, are further evidence of this). The fact that Stroggi will testify he paid Peredriy at Teyf's direction to stop the investigation is highly probative. The government's evidence will show Peredriy's statements were those of a co-conspirator to a crime it must prove occurred in order for the jury to find Teyf guilty of the money laundering charged. That is, Peredriy was a co-conspirator to the bribery scheme which occurred in Russia. See Government Proposed Jury Instruction 46 at D.E. 426. This conversation is indeed intrinsic to the crimes charged.

**A recording between CHS#1 and Teyf in which Teyf informs CHS#1 that an individual who had interfered in Teyf's business needed to be made "sick," and that someone not connected to Teyf should be found to do it.**

The defendant has made clear Stroggi was a "n'er do well" who functioned only as a perimeter guard in the nether regions of Russia, and whom had no possibility of even over-hearing a business conversation Teyf may have had (D.E. 356 at 7, 8, and 9) much less be a sole participant with Teyf in a conversation about Teyf's business. This subject recording, where Teyf entrusts Stroggi sufficiently to order a clearly illegal act, refutes that claim and is highly probative of the relationship between Teyf and Stroggi. D.E. 594.

**Recordings of calls made by Teyf while in jail, regarding attempts to gather and manipulate documents in Russia.**

Substantial portions of the recorded jail calls specifically relate to the charged crimes, as well as to Teyf's consciousness of guilt. The calls indicate the use of coded language, of Teyf's unorthodox manner in attempting to obtain documentation of his wealth, and conversations with co-conspirators and witnesses to the bribery in Russia, and many more relevant topics. The calls, or in the least, portions thereof, are intrinsic to the money laundering and tax charges, and are admissible.

**Evidence concerning Teyf's knowledge about the need to file the FBAR, to include testimony and emails regarding the advice he received from multiple professionals, and other financial acts, admissions and statements.**

Defendant makes no separate or specific claim against this noticed 404(b) evidence. Again, the notice was a precautionary one, and the government's position that the evidence is intrinsic to the crimes charged. In the case of this specific

evidence, it goes directly to Teyf's knowledge of the FBAR filing requirement, and the steps he took in willful failure of that knowledge-an element of the offense.

**Teyf told CHS#1 on more than one occasion, that the "best money is the money you obtain from the government."**

Again, Defendant makes no separate or specific claim against this noticed 404(b) evidence. The notice was a precautionary one, with the government's position that this evidence is also intrinsic to the crimes charged, specifically, the theft of funds from the Russian government. This is an admission of Teyf's against his interest, relevant and intrinsic to the crimes charged.

*Extrinsic Facts Requiring 404(b) Analysis*

The Government concedes that item three (3), Teyf's promised assistance with immigration, then failure to assist, or affirmatively act to prevent CHS#1, Alexey Timofeev, Olesya Timofeeva, and A.G.'s parents[3] from getting legal status here in the United States, is conduct which falls squarely within Rule 404(b), but is admissible nevertheless.

Count Thirty charges Teyf with conspiracy to bring and keep Timofeevs here in violation of the law. Timofeevs' testimony as to the circumstances under which they came to the United States, their conversations with Teyf and their understanding of what he would do, and his conduct and ultimate impact on their immigration status are all intrinsic to the charged crime in Count Thirty. The uncharged evidence is that CHS#1's testimony, as part of his relational story with Teyf, will inform the jury Teyf promised him assistance with immigration, which he

---

[3] While the government noted its intent to offer evidence also regarding A.G.'s parents, it will not pursue that evidence.

7

did not receive. This evidence displays the Defendant's motives in relation to the charges throughout the charged time frame, his intent, his knowledge, realistic capabilities, and nature of relationships with witnesses and would-be-victims – thus satisfying the Queen four-part test.

First, each of these facts are relevant as they tends to prove facts of consequence – facts which either support the Government's proffered motive, intent, means, and method in relation to the charged crimes: money laundering, immigration and visa fraud, and false tax filings and failure to file required financial forms.

Second, the evidence is necessary to the Government's case-in-chief. At the trial, understanding the discussions between Defendant TEYF and CHS#1 are vital to understanding the scope of that relationship; moreover, it is necessary to provide Defendant's motive, knowledge, and intent in carrying out these crimes which will naturally be a looming question in the mind of the jury. There is no other manner by which this evidence can be presented.

Third, the proposed evidence is reliable. As the Fourth Circuit previously noted, evidence is reliable "unless it is so preposterous that it could not be believed by a rational and properly instructed juror." Aramony, 88 F.3d at 1378. CHS#1 and the Timofeevs will testify about these conversations with Teyf and will be subject to cross-examination. Because such evidence will be sufficient to allow the jury to reasonably conclude that the acts occurred and that the Defendant was the knowing actor, such evidence is reliable. *See* United States v. Powers, 59 F.3d 1460, 1467 (4th Cir. 1995).

The Fourth prong of the Queen test incorporates a Rule 403 analysis and is

8

applicable regardless of whether the prior three prongs are applied. Here, the probative value of the evidence is not substantially outweighed by any unfair prejudice. According to the Fourth Circuit, there is no unfair prejudice when an extrinsic act is no more sensational or disturbing than the crimes with which a defendant is charged. United States v. Boyd, 53 F.3d 631, 637 (4th Cir. 1995). "'[D]amage to a defendant's case is not a basis for excluding probative evidence,' because 'evidence that is highly probative invariably will be prejudicial to the defense.'" United States v. Basham, 561 F.3d 302, 326 (4th Cir. 2009) (citations omitted). Indeed, evidence of other acts should only be excluded for undue prejudice "where the trial judge believes that there is a genuine risk that the emotions of the jury will be excited to irrational behavior, and this risk is disproportionate to the probative value of the offered evidence." Bailey, 990 F.2d at 122 (*citing* Masters, 622 F.2d at 87; *see also* Basham, 561 F.3d at 326-27). Certainly, the above-described evidence is not "dramatically and unfairly prejudicial." D.E. 518 at 15. Nor is learning that Teyf promised to assist CHS#1 with his immigration, as he did the Timofeevs, likely to excite the jury to irrational behavior. Bailey, 990 F.2d at 122.

Due to the severance of various counts for trial, the vast majority of the evidence defendant characterized as "violent, threatening, and salacious actions" have been completely removed from the equation. Left are intrinsic facts that in retrospect did not call for even a precautionary 404(b) notice, and evidence that Teyf had at least one other victim in his immigration crimes.

For these reasons, the government should be allowed to introduce its noticed evidence.

Respectfully submitted this 17th day of August, 2020.

                                    ROBERT J. HIGDON, JR.
                                    United States Attorney

By:   */s/ Barbara D. Kocher*
       JASON M. KELLHOFER
       BARBARA D. KOCHER
       Assistant U.S. Attorney
       150 Fayetteville St., Suite 2100
       Raleigh, NC 27601
       Telephone: 919-856-4530
       Fax: 919-856-4487
       E-mail: jason.kellhofer@usdoj.gov
       OH Bar: 0074736
       E-mail: barb.kocher@usdoj.gov
       NC Bar: 16360

CERTIFICATE OF SERVICE

This is to certify that I have this 17th day of August 2020, served a copy of the foregoing filing upon counsel for the defendant in this action by electronically filing the foregoing with the Clerk of Court, using the CM/ECF system that will send notification of such filing to:

| | |
|---|---|
| F. Hill Allen<br>Tharrington Smith, L.L.P.<br>P.O. Box 1151<br>Raleigh, NC  27602 | Robert S. Wolf<br>Moses & Singer, L.L.P.<br>405 Lexington Ave. 12th Floor<br>New York., NY  10174-1299 |

By: */s/ Barbara D. Kocher*
    BARBARA D. KOCHER
    Assistant U.S. Attorney
    150 Fayetteville St., Suite 2100
    Raleigh, NC 27601
    Telephone: 919-856-4530
    Fax: 919-856-4487
    E-mail: barb.kocher@usdoj.gov
    NC Bar: 16360