IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:18-CR-452-1-FL

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| ) | |
| v. ) | UNITED STATES' RESPONSE TO |
| ) | DEFENDANT'S MOTION TO |
| ) | REOPEN DETENTION HEARING |
| LEONID ISAAKOVICH TEYF, ) | (D.E. 602) |
| Defendant. ) | |

The United States of America, by and through the United States Attorney for the Eastern District of North Carolina, hereby responds in opposition to defendant's motion to reopen detention hearing and order pretrial release. (D.E. 602). The defendant has provided no justification for the reopening of his detention hearing or for ordering his temporary release, and the motion should be denied.

I. **STATEMENT OF THE CASE AND FACTS**

The defendant has been charged by Indictment with multiple instances of Money Laundering under 18 U.S.C. § 1957; Conspiring to do the same under 18 U.S.C. § 1956(h); Bribery of a Public Official and Aiding and Abetting under 18 U.S.C. §§ 201(b)(1) and 2; Murder for Hire and Aiding and Abetting under 18 U.S.C. §§ 1958 and 2; Possession of a Firearm with Obliterated Serial Number and Aiding and Abetting the same, under 18 U.S.C. §§ 922(k) and 924 (a)(1)(B) and 2; Conspiracy to Harbor Illegal Aliens under 8 U.S.C. § 1324(a)(1)(A)(iv), 1324(a)(1)(A)(v)(I), and 1324(a)(1)(A)(v)(II); Visa Fraud under 18 U.S.C. § 1546(a), and several tax-related and revenue charges, under 26 U.S.C. 7206(1) and 31 U.S.C. 5314 and 5322(b) and related regulations. (D.E. 248).

1

On December 18, 2018, the court held the defendant's detention hearing and United States Magistrate Judge Robert T. Numbers II ordered the defendant detained pending trial. (D.E. 64 and 68). On January 3, 2019, the defendant filed a motion to revoke that order, by way of appeal to this Court (D.E. 75), and on January 22, 2019, a *de novo* hearing was held. (D.E. 99 and 103). At the conclusion of the hearing, the court ordered the defendant continue in detention pending trial, and on January 28, 2019, the district court issued a written opinion, memorializing its reasons for ordering detention. (D.E. 110).

The defendant appealed that determination to the Fourth Circuit Court of Appeals. (D.E. 119). On February 26, 2019, the Fourth Circuit Court of Appeals affirmed this Court's order regarding detention (D.E. 161); on April 5, 2019, it denied the defendant's petition for rehearing *en banc* (D.E. 211).

The defendant now moves the Court to reconsider again his detention status. (D.E. 602). He argues that newly developed evidence discredits the government's case and shifts the weight of the evidence in favor of Mr. Teyf (D.E. 602 at 4); that given the restraint of Mr. Teyf's assets, there is no credible risk of flight (D.E. 602 at 9); and finally, that risk to his health in custody weighs in favor of pretrial release (D.E. 602 at 11). In support of these arguments, defendant relies on 18 U.S.C. § 3142(f), and asserts separately that the same reasons also provide a "compelling reason" for a temporary release under 18 U.S.C. § 3142(i). None of the defendant's claims and arguments are new and none support the reopening of the detention hearing. His motion should be dismissed.

## II. ARGUMENT

### A. The Bail Reform Act, 18 U.S.C. § 3141 *et. seq.*

The Bail Reform Act, 18 U.S.C. § 3141 *et seq.*, states that a defendant may be detained pending trial where the United States shows "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e) and (f). Detention can be based on a showing by the United States of either of the following: (1) that, beyond a preponderance of the evidence, the defendant poses a risk of flight, United States v. Xulam, 84 F.3d 441, 443 (D.C. Cir. 1996); or (2) that, by clear and convincing evidence, the defendant poses a risk to the safety of any person or the community. 18 U.S.C. § 3142(f). The purpose of the hearing is not a reprise of all the evidence presented before the grand jury, United States v. Suppa, 799 F.2d 115, 119 (3d Cir.1986), nor a right to confront non-testifying government witnesses, *see, e.g.,* United States v. Accetturo, 783 F.2d 382, 388-89 (3d Cir.1986); Winsor, 785 F.2d at 756-57; United States v. Delker, 757 F.2d 1390, 1397-98 (3d Cir.1985), but rather to provide the opportunity for the detainee to show no risk of flight or danger to community (United States v. Hurtado, 779 F.2d 1467, 1479 (11th Cir.1985) and United States v. Williams, 798 F.Supp. 34, 36 (D.D.C.1992)). This Court found the government had shown by a preponderance of the evidence that there were no conditions or combination of conditions that would alleviate the defendant's risk of flight were he to be released. (D.E. 103 at 62; 110 at 3 – 4).

Section 3142(f) provides that a detention hearing "may be reopened . . . at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing

3

Case 5:18-cr-00452-FL   Document 606   Filed 11/18/20   Page 3 of 12

on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f).

Section 3142(i) provides that a "judicial officer may . . . permit the temporary release of the person, in the custody of the United States Marshal or another appropriate person, to the extent that . . . such release is necessary for preparation of the person's defense or for another compelling reasons." 18 U.S.C. 3142(i). Under this section, the defendant bears the burden of establishing that there is a compelling reason justifying his release.

B. <u>Analysis</u>

1. There is no newly discovered evidence, much less newly discovered evidence that would have a material bearing on detention.

Under § 3142(f), a court must make two findings to reopen the detention hearing: 1) information exists not known to the defendant at the time of the earlier hearing; and 2) the new information has a material bearing on whether conditions of release may now reasonably assure the appearance of the defendant or the safety of others. 18 U.S.C. § 3142(f). In this case, neither finding can be made.

The defendant argues that since the time of the detention hearing(s) previously held, evidence "devastating" to the government's case has come to light (D.E. 602 at 4). He then for three-plus pages, recounts information known to Mr. Teyf at the time of the detention hearings. That is, he has produced witnesses, unwilling to come to the United States to testify at trial and impervious to any United States' actions for perjury, who "flatly contradict" the allegations of wrongdoing, and state that he had "tremendous wealth" before the alleged scheme began (D.E. 602 at 6). This is not new information. Defendant was in possession of

the identity of his acquaintances and employees, as well as had knowledge and evidence of his pre-existing wealth and earnings at the time of the December 2018 detention hearing, and even had an additional month to gather such information for the *de novo* hearing held in January 2019. His arguments that the government's case relies on one witness, and that various other witnesses (his own) and the lack of documentation of the underlying crime in Russia make the case weak, are not new. Those things have been argued before. See D.E. 103 at 59-60, transcript of de novo hearing. This evidence from employees and friends of his and records of accounts he held that purportedly contradict a government witness about Teyf's involvement in the charged scheme and devastate the government's case cannot by their very terms be "new" evidence.

Notably, defendant has disclosed only eleven substantive documents as reciprocal discovery to the government[1] — all eleven documents regarding defendant's "tremendous" pre-existing wealth as discussed by defense witness Dmitry Grishechkin. These exhibits, according to Mr. Grishechkin, are essentially annual statements of an investment account of defendant's. They date from 2004, and purportedly show that the investment account had a balance of approximately $17.5 million dollars in 2008. They further show, however, that Teyf withdrew those funds and closed the account in October 2008. (D.E. 602, Exhibit 7 at 16). Mr. Grishechkin knew nothing of defendant's finances since that time.

---

[1] But for these eleven documents, defendant has provided no reciprocal discovery. Despite repeated requests from the government during the discovery period and despite a grand jury subpoena and subsequent motion to compel documentation regarding foreign-held assets (the motion to compel is currently held in abeyance), the defendant has not provided any additional documents that he intends to use at trial.

5

## 2. There has been no change in circumstances allowing for the reopening of the detention hearing, and certainly none which induce appropriate conditions for release.

Defendant next summarily argues that since "multiple grounds for detention were presented to and adopted by the Court that do not apply today," the government can no longer maintain its evidence as to flight risk. (D.E. 602 at 9). The defendant goes on to say that the Court had focused on risk of flight at the detention hearing, and that the restrained assets "now effectively and appropriately function as a massive, $39 million secured bond." (D.E. 602 at 10). This, defendant asserts, in light of the weaknesses and insufficiency he detailed earlier in his motion (namely that he has now shown people who will testify he wasn't involved, and can show he had "tremendous" wealth prior to the transfers of money into the United States as alleged), is sufficient to assure his appearance as ordered. But, the defendant need get past the same hurdle as presented above-he must present new evidence to gain a new hearing. And the assets, restrained since the execution of the December 2018 seizure warrants, and which were restrained at the time of the earlier detention hearings, are not new evidence.

Moreover, because the cited assets are already subject to forfeiture, posting them as bond does nothing to assure the defendant's appearance at trial. The defendant might well conclude that the property will be taken by the United States whether or not he flees, so he might as well flee.

Finally, the amount of restrained assets is not a "massive $39 million." Rather, between seizures and *lis pendens*, just over $16 million is restrained. However, of that $16 million, defendant had ownership of about half those assets. $9,087,771.39 in bank accounts was seized, of which defendant had a named

6
Case 5:18-cr-00452-FL   Document 606   Filed 11/18/20   Page 6 of 12

interest in only $1.5 million. The vast majority of restrained cash was in the name of Tatyana Teyf. The four properties subject to a *lis pendens* in defendant's name were valued at approximately $6.5 million at the time the *lis pendens* were filed. One vehicle, with a value of just over $100,000, was seized from defendant. Thus, the "massive" secured bond is about one-fifth of the value he claims.

Moreover, in the first detention hearing and in subsequent hearings and filings, the Court has been made aware of a number of transfers of assets throughout 2018 to overseas accounts by defendant or others acting on his behalf. Those transfers amount to $7,500,210.00, nearly equal to the value of defendant's assets currently restrained in the United States. Exhibit 1.

And, lastly, the defendant's first argument above that he now has evidence to show how wealthy he was even prior to the alleged criminal conduct, cuts against him on this issue. If he had such tremendous wealth, the government's restraint of a mere $ 1.5 million and *lis pendens* on real property of approximately $6 million, is but a drop in his bucket.

Circumstances have not changed. The defendant is not entitled to a reopened hearing. The Court's conclusions are still accurate: "the government ha[s] demonstrated [Mr. Teyf's] mobility. He can cross borders. He can go places." (D.E. 602 at 10, citing the transcript of the detention hearing, D.E. 103 at 53). The defendant's flight risk continues, and he should remain in detention pending trial.

3. <u>COVID-19 does not warrant reconsideration of the detention decision under Section 3142(f) nor is it a compelling reason for release under Section 3142(i).</u>

Finally, the defendant argues that COVID-19 itself justifies reopening the

detention hearing under 3142(f), and is alternatively a compelling reason to order his temporary release under 3142(i). To this end, he cites a few district court cases that have granted release to defendants based on the COVID-19 pandemic. (D.E. 602 at 12). The first two such cases, from New York and Indiana courts respectively, granted release in part due to claims of COVID. The latter three cases, however, are not at all comparable. Two are post-sentencing compassionate release cases, and one regards detention pending revocation of supervised release, where the basis for the revocation were additional federal charges in another district. The district court presiding over the additional charges did not see fit to detain the defendant on those charges. (D.E. 602 at 12). Tellingly, defendant does not cite a case from the Eastern District of North Carolina, which considered and refused similar release to a detained defendant pending trial, nor numerous decisions of district courts within the Fourth Circuit which have likewise refused to do so. See, United States v. Owens, 5:20-CR-26-BR, 2020 WL 2527938, esp. n.3 case summaries (E.D. NC May 18, 2020); United States v. Blue, ELH-19-286, 2020 WL 6044328 (D.Md Oct. 9, 2020); and United States v. Bland, PWG-15-141 , 2020 WL 1904742 (D. Md. April 16, 2020).

As noted by Magistrate Judge Numbers in Owens, "[W]hether COVID-19 qualifies as a compelling circumstance under § 3142(i) is highly fact specific." 2020 WL 2527938 at 2. Using guidance provided by the Fourth Circuit in an order of remand in United States v. Creek, 20-4251 (4th Cir. Apr. 15, 2020), D.E. No. 18, a court should assess: 1) "the severity of the risk that the COVID-19 virus poses to the defendant[.]"; 2) the defendant's "existing medical conditions and the current COVID-19 situation at the facility where he is being held[.]; and, 3) "whether that

8
Case 5:18-cr-00452-FL   Document 606   Filed 11/18/20   Page 8 of 12

risk, balanced against the other Bail Reform Act factors, rises to the level of a 'compelling reason' for temporary release[.]" See, Order of Remand in Creek, 20-4251 at D.E. 18. The defendant bears the burden of establishing that a compelling reason exists justifying his release. Owens, 2020 WL 2527938 at 2.

The defendant presents a March 2020 diagnosis of pneumonia in support of his release, yet admits his favorable response to treatment for that illness. He does not claim ongoing concern specifically because of that episode. (D.E. 602 at 11). Records submitted with other filings earlier to the Court indicate the defendant has suffered from obesity, hypertension, gastroesophageal reflux, and other typical age-related matters, they were well-controlled and did not cause the Court any concern at the time of the January 2019 detention hearing. (D.E. 103 at 54). While the defendant summarily claims his "health has further deteriorated while detained," he supports the argument only reference to the bout of pneumonia from which he has recovered. D.E. 602 at 12. The defendant does not provide evidence of any change in his ongoing health.

In fact, a close look at his arguments reveals the defendant mentions his current situation exactly once. He makes only a general reference to common conditions of confinement, that is, "no time outdoors, lack of fresh air or diet appropriate for his underlying condition," and does not articulate any COVID-19 specific concerns at his facility. (D.E. 602). Indeed, upon information and belief, at the time of this filing, Albemarle District Jail has no COVID-19 positive inmates. The concerns articulated by defendant are not about his current housing, but rather his expected movement to a different facility for housing during trial. D.E. 602 at 12. He fails to articulate any impact COVID is having on his current detention

9
Case 5:18-cr-00452-FL   Document 606   Filed 11/18/20   Page 9 of 12

status, other than general ongoing concerns faced by all inmates with an elevated risk from the disease.

Finally, his proposed release plan is insufficient under 3142(i), even had he stated a claim for relief. The temporary release authorized in that Section is only to the custody of the U.S. marshal or another appropriate person. Teyf did not present a third party custodian sufficient to assuage the concerns of flight evidenced at the earlier detention hearings, and does not propose one now. In addition, Tatiana Teyf is under a no contact order as to this defendant, and other family members located in the Raleigh area have had some role in events tangential to the crimes charged (e.g., son's transfer of significant monies overseas). By statute, Teyf can only be released at this time temporarily, and to the custody of another person under Section 3142(i).

The defendant's risk of contracting COVID-19, balanced against the other Bail Reform Act factors earlier considered by the Court, and particularly in light of the defendant's statutorily insufficient release plan, does not rise to the level of a 'compelling reason' for temporary release. The COVID-19 pandemic does not change the calculus previously undertaken by the Court.

### III. CONCLUSION

For all of the above-stated these reasons, the presence of COVID-19 does not change the consideration of a reopening of defendant's pre-trial detention status, and his motion should be denied. To the extent the defendant has concerns regarding defendant's health and access to counsel during trial, the Court has been able to consult with the U.S. Marshal Service in this and other cases where attorney

access and other issues required some creative thinking, and the government is confident the same can be done here.

Respectfully submitted this 18th day of November, 2020.

        ROBERT J. HIGDON, JR.
        United States Attorney

By:   */s/ Barbara D. Kocher*
      JASON M. KELLHOFER
      BARBARA D. KOCHER
      Assistant U.S. Attorney
      150 Fayetteville St., Suite 2100
      Raleigh, NC 27601
      Telephone: 919-856-4530
      Fax: 919-856-4487
      E-mail: jason.kellhofer@usdoj.gov
      OH Bar: 0074736
      E-mail: barb.kocher@usdoj.gov
      NC Bar: 16360

11

Case 5:18-cr-00452-FL   Document 606   Filed 11/18/20   Page 11 of 12

# CERTIFICATE OF SERVICE

This is to certify that I have this 18th day of November 2020, served a copy of the foregoing filing upon counsel for the defendant in this action by electronically filing the foregoing with the Clerk of Court, using the CM/ECF system that will send notification of such filing to:

| | |
|---|---|
| F. Hill Allen | Robert S. Wolf |
| Tharrington Smith, L.L.P. | Moses & Singer, L.L.P. |
| P.O. Box 1151 | 405 Lexington Ave. 12th Floor |
| Raleigh, NC 27602 | New York., NY 10174-1299 |

By: */s/ Barbara D. Kocher*
    BARBARA D. KOCHER
    Assistant U.S. Attorney
    150 Fayetteville St., Suite 2100
    Raleigh, NC 27601
    Telephone: 919-856-4530
    Fax: 919-856-4487
    E-mail: barb.kocher@usdoj.gov
    NC Bar: 16360