UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION


_____  )
                                 )
UNITED STATES OF AMERICA,        )
                                 )
            vs.                  )   CASE NO. 5:18-CR-452-1-FL
                                 )
                                 )
LEONID ISAAKOVICH TEYF,          )
                                 )
            Defendant.           )
_____  )



FRIDAY, MARCH 19, 2021
PLEA HEARING
HELD IN NEW BERN, NORTH CAROLINA
BEFORE THE HONORABLE LOUISE W. FLANAGAN
UNITED STATES DISTRICT JUDGE




MICHELLE A. McGIRR, RPR, CRR, CRC, RMR
Official Court Reporter
United States District Court
Raleigh, North Carolina

**APPEARANCES**:


<u>On Behalf of the Government</u>:

**BARBARA D. KOCHER, Assistant U.S. Attorney**
**MATTHEW LEE FESAK, Assistant U.S. Attorney**
U.S. Attorney's Office
150 Fayetteville Street, Suite 2100
Raleigh, North Carolina  27601


<u>On Behalf of the Defendant</u>:

**F. HILL ALLEN, IV, Esquire**
**Tharrington Smith**
150 Fayetteville Street, Suite 1800
Raleigh, North Carolina  27601


**ROBERT S. WOLF, Esquire**
**Moses & Singer**
405 Lexington Avenue, 12th Floor
New York, New York  10174


<u>USPO</u>:

**JOSH CANTAFIO**


<u>INTERPRETERS</u>:

**ROMAN VOLSKY**
**MARIANNE DUHATEROVA**

```
 1                    (Friday, March 19, 2021)

 2                    P R O C E E D I N G S

 3

 4                    (Open Court at 3:37 p.m.)

 5           THE COURT:  I'm going to ask defense counsel just to

 6    stand for a moment in the next cases.  We've got Mr. and Mrs. Teyf.

 7           For Mr. Teyf, is he ready to be sentenced?

 8           MR. ALLEN:  Your Honor --

 9           THE COURT:  I'm sorry.  Ready to be arraigned.

10           MR. ALLEN:  Yes, your Honor.

11           THE COURT:  All right.  Is there a preference between the

12    husband and the wife as to who is proceeded first?

13           MR. ZESZOTARSKI:  Whatever Your Honor's preference is

14    fine with us.

15           THE COURT:  Does the Marshal have a preference?

16           THE MARSHAL:  No, your Honor.

17           THE COURT:  Okay.  We'll take up -- yes, Mr. Hill -- or

18    Mr. Allen.

19           MR. ALLEN:  Your Honor, I would suggest that maybe

20    Mrs. Teyf will be quicker and we hate to make her labor through our

21    part of it.  Purely at the Court's pleasure.

22           THE COURT:  Well, I think she needs to labor so we're

23    going to take up Mr. first.

24           Let's take a 10-minute recess.

25                    (Recess commencing at 3:38 p.m.)
```

```
 1        (The defendant, Leonid Isaakovich Teyf, escorted into the courtroom
 2                             at 3:45 p.m.)
 3        (The defendant, Tatyana Anatolyevna Teyf, present in the courtroom
 4                         seated in the gallery)
 5                     (Recess concluding at 3:47 p.m.)
 6                       (Open Court at 3:47 p.m.)
 7             THE COURT:  Good afternoon again.
 8             Before I turn my attention to Mr. Teyf, who's here for
 9   the Meintzschel case?
10                 (Whereupon the Court heard other matters)
11             THE COURT:  Let's administer the oath to our Russian
12   interpreter.
13             THE CLERK:  Please raise your right hands.  Please state
14   your names.
15             INTERPRETER DUHATEROVA:  Marianne Duhaterova.
16             INTERPRETER VOLSKY:  Roman Volsky.
17      (Interpreters, Marianne Duhaterova and Roman Volsky, sworn by the
18                             clerk)
19             INTERPRETER DUHATEROVA:  Yes.
20             INTERPRETER VOLSKY:  I do.
21             THE CLERK:  Thank you.
22             THE COURT:  And Ms. Teyf is here as well?
23             MR. ZESZOTARSKI:  Yes, your Honor, she is.
24             THE COURT:  I would urge for efficiency that she -- is
25   she going to need an interpreter?
```

1          MR. ZESZOTARSKI:  I think she'll be fine without an

2    interpreter.

3          THE COURT:  Okay.  Listen carefully to what is said

4    because it may promote some efficiencies when the Court turns to her

5    case.

6          So Ms. Teyf, please listen to everything I have to say.

7     (The defendant, Tatyana Anatolyevna Teyf, seated in the gallery

8                          nodding head)

9          THE COURT:  Thank you.

10         All right.  In this time of COVID, as counsel may be

11   aware, I note on the record I wish you to stay seated in addressing

12   the Court.  Microphone front and center and I'll be able to hear you

13   and you hear me, but if anyone has difficulty understanding what's

14   said, just raise your hand and I'll take care of that immediately.

15         MR. ALLEN:  Thank you, your Honor.

16         THE COURT:  Thank you.

17         Mr. Teyf, the Constitution and laws of this country give

18   you the right to be tried by a jury.  At a jury trial, you would be,

19   as you are now, presumed innocent.  The burden is on the shoulders

20   of the Government to prove a defendant guilty beyond a reasonable

21   doubt.  You don't have to prove anything.

22         The Government goes about its case by calling witnesses

23   into court who would testify before the Court and jury in your

24   presence.  As you know, you have the right to be represented by an

25   attorney at every stage of this court proceeding.  And you or your

1    attorney can object to evidence, can cross-examine witnesses, can

2    call witnesses into the courtroom to testify on your behalf and you

3    can take the witness stand if you want to. You don't have to

4    because you've got that right that I have discussed to remain

5    silent.

6              Now, if you're not a citizen of the United States, you

7    need to understand that a plea of guilty to any felony offense may

8    result in deportation or otherwise adversely affect immigration

9    status.

10             By pleading guilty, you waive the right to a trial by

11   jury and all the rights associated with it. Instead of a trial,

12   you'll being judged guilty; and after the Court calculates the

13   advisory sentencing range under the Guidelines, the Court would

14   determine a sentence pursuant to Federal law that is sufficient but

15   not more than what is necessary to take into consideration your

16   background and your history, the seriousness of the offense, the

17   need to protect the public, discourage this type of criminal

18   conduct, promote respect for the law among other things.

19             If you plead guilty, you waive or give up the right not

20   to incriminate yourself because I'm going to ask you questions about

21   what you did in order to be sure that you're guilty as charged and

22   you will have to acknowledge your guilt.

23             You may lose civil rights including the right, for

24   example, to possess any kind of firearm. There are a number of

25   penalties that could apply. You may be ordered to make restitution,

you may lose or forfeit property. There's $100 special assessment. If your case involves fraud, you may be ordered to provide notice of conviction. And that special assessment applies to each felony offense. The Court may impose a fine in addition to a prison term. You may be given conditional release. If you violate any term or condition of supervised release or if a fine is imposed and you fail to pay it, that could go against you severely.

You will be sentenced under the Sentencing Reform Act of 1984. I've made mention of that already. Under some circumstances, you or the Government may have the right to appeal a sentence, but if you've waived an appeal right in some type of plea agreement, that waiver may bind you.

There's no parole in the Federal system so defendants don't get out early on parole; and the Court has to examine very carefully any plea agreement to make sure it conforms to the objectives of sentencing.

The standards of acceptance of plea agreements stated in Rule 11 include the following: In the case of a plea agreement that includes a recommendation or an agreement not to oppose a request for a particular sentence, such recommendation is not binding on the Court.

If the Court doesn't follow the recommendation, a defendant has no right to withdraw her or his guilty plea. However, if the Court accepts plea agreement in which the Government agrees not to bring a certain charge or to dismiss a certain charge or an

1    agreement in which the Government and the defendant agree that a
2    certain sentence or sentencing range is appropriate, that agreement
3    will bind the Court once it is accepted and the agreed-upon
4    disposition will be included in the judgment.

5         Now, if the Court rejects any type of plea agreement,
6    it's not required to follow the plea agreement.  The defendant will
7    be given the right to withdraw the defendant's plea.  If it's not
8    withdrawn, the case may be dismissed of more severely than what the
9    defendant expected.

10        A written pre-sentence report is prepared by the
11   probation office to assist the Court in sentencing.  The process
12   takes a number of weeks to unfold.  There's usually a 90-day period
13   of time between acceptance of any plea and time of sentencing.
14   Among other things, that allows for the probation office to conduct
15   a comprehensive investigation, including an interview of the
16   defendant.  And I always recommend that your counsel be present at
17   the time of the interview.  The report will play an important part
18   in the fashioning of a sentence that's sufficient but not greater
19   than necessary.  There's a process for sorting out objections; and
20   if the objections aren't sorted out before the report is delivered
21   to the judge, about a week before sentencing, those objections will
22   be decided finally by the Court at time of sentencing.

23        And I tell the parties that if there's any complicated
24   issue that either side thinks is going to arise at time of
25   sentencing, file your brief advocating your client's respective

position not later than seven days before sentencing.  And I
normally don't allow oral testimony concerning a defendant's
background and character at time of sentencing, but I certainly
welcome letters or certificates, awards, other information if deemed
important to be considered.  You can file those seven days before
sentencing, too.

        All right.  So if you would, please, raise your right
hand and the clerk will administer the oath to you.

        THE CLERK:  Please state your name.

        THE DEFENDANT:  Leonid Teyf.

  (The defendant, Leonid Isaakovich Teyf, affirmed by the clerk)

        THE DEFENDANT:  Yes, I do.  I swear.

        THE COURT:  How old are you?

        THE DEFENDANT:  59.

        THE COURT:  And how far did you go in school?

        THE DEFENDANT:  I have two universities -- I graduated
from two universities.

        THE COURT:  Okay.  Has the charging document been
interpreted for you into Russian?

        THE DEFENDANT:  It has.

        THE COURT:  Good.  Do you have some understanding of the
written English word?

        THE DEFENDANT:  No, I do not understand written language.

        THE COURT:  Okay.  Have you been recently under the care
of any type of medical professional?

```
 1                THE DEFENDANT:  Just my heart.
 2                THE COURT:  Just my what?
 3                THE DEFENDANT:  My heart.
 4                THE COURT:  Your heart.  Are you taking any medicine now?
 5                THE DEFENDANT:  Not at the moment.
 6                THE COURT:  Okay.  Counsel, have you had any difficulty,
 7      aside from a language barrier, which I assume you have addressed
 8      through use of an interpreter, is that correct?
 9                MR. ALLEN:  That is correct, Your Honor.
10                THE COURT:  Have you had any other difficulty
11      communicating with Mr. Teyf?
12                MR. ALLEN:  No, your Honor.
13                THE COURT:  Any reason to question his competency?
14                MR. ALLEN:  None.
15                THE COURT:  Ms. Kocher?
16                MS. KOCHER:  The Government has no reason to question Mr.
17      Teyf's competency, your Honor.
18                THE COURT:  Well, I think Mr. Teyf is capable and
19      competent.  I find that he is so.  Let me continue on just to make
20      sure of that.
21                You understand what you're charged with, correct?
22                THE DEFENDANT:  Yes, your Honor.  I understand.
23                THE COURT:  All right.  And you understand all the rights
24      that I've explained?
25                THE DEFENDANT:  Yes, I do understand.
```

```
 1              THE COURT:  Okay.  Well, again, I believe you're capable
 2    and competent to go forward and we will continue.
 3              Would you like the Government to read out loud the
 4    indictment to remind you of what it says or would you accept the
 5    Court's summary?
 6              THE DEFENDANT:  Through the attorney, we will accept the
 7    Court's summary.
 8              THE COURT:  Okay.  All right.
 9              Mr. Teyf, you're charged in Count One with spending --
10    it's a spending money laundering conspiracy.  Beginning around
11    March 2nd of 2011 and continuing until May 9th of 2019, which is the
12    date of the indictment in this district, that you and others did
13    conspire to violate 18 United States Code, Section 1956 and Section
14    1957, as described therein by knowingly conducting and attempting to
15    conduct financial transactions affecting commerce, which involved
16    the proceeds of specified unlawful activities in this case, an
17    offense against Russia involving bribery of a public official and
18    the misappropriation, theft or embezzlement of public funds by or
19    for the benefit of a public official knowing that the transactions
20    were -- is there a question?
21              MR. ALLEN:  No, your Honor.
22              THE COURT:  Knowing that the transactions were designed
23    in whole or in part to conceal and disguise the nature, location,
24    source, ownership and control of the proceeds of the unlawful
25    activity and that you knew the property involved represented the
```

proceeds of some form of unlawful activity.

Counts Two through Nine, 11 through 13, 17 through 19 and 21 through 24 charge instances of money laundering and aiding and abetting.

Count 27 charges bribery of a public official.

28, the use of interstate commerce facilities in the commission of murder for hire.

Count 29 charges possession of a firearm with obliterated serial number and aiding and abetting.

And Count 30 is a conspiracy to harbor illegal aliens.

Count 31 is visa fraud.

Counts 35 through 36 and 40 through 41 are spending money laundering.

44 through 46 are false statement on tax returns.

And 48 through 49 is a failure to file a certain form required with regard to banking.

All right. Have you had enough time to talk about your case with your attorney?

THE DEFENDANT: Yes, your Honor.

THE COURT: Are you fully satisfied with the quality of legal representation provided to you by them?

THE DEFENDANT: Yes, absolutely.

THE COURT: Have you discussed that you may be deported as a result of this?

THE DEFENDANT: Yes, your Honor.

THE COURT:  Okay.  Any question about any rights that you have?

THE DEFENDANT:  No, your Honor.

THE COURT:  Okay.  How do you wish to plead to Counts 27, 31 and 44?

THE DEFENDANT:  Guilty.

THE COURT:  Okay.  Do you understand these are felony offenses?

THE DEFENDANT:  I do understand.

THE COURT:  Count 27, bribery of a public official, carries with a penalty of not more than 15 years in prison; a fine of a quarter of a million dollars or not more than three times of monetary equivalent of the thing of value, whichever is greater; not more than three years of supervised release; and $100 special assessment.

Count 31 is visa fraud.  It carries with it a penalty of not more than ten years in prison; a fine of not more than a quarter of a million dollars; again, the possibility of both a fine and the prison term; not more than three years of supervised release; and $100 special assessment.

And Count Four 44 is making a false statement on a tax return and it carries with it a penalty of not more than three years in prison; a fine of not more than a quarter of a million dollars; the possibility of both a fine and the prison term; not more than a year of supervised release; $100 special assessment.

1          So counsel it's my understanding that this is what the

2    defendant has agreed to plead guilty to in the plea agreement,

3    correct?

4              MR. ALLEN:  Yes, your Honor.

5              MS. KOCHER:  Yes, your Honor.

6              THE COURT:  Okay.  Do you have any questions about the

7    penalties associated?

8              THE DEFENDANT:  No questions.

9              THE COURT:  Did you hear my explanation of the sentencing

10   process?

11             THE DEFENDANT:  Yes, I did.  Of course.

12             THE COURT:  Okay.  Any questions?  I have to ask you

13   that.  Do you have any questions?

14             THE DEFENDANT:  No questions.

15             THE COURT:  Okay.  Nobody knows how this case is going to

16   turn out for sentencing.  The Court has to consider the advice of

17   the Guidelines and then reflect on those statutory sentencing

18   factors in deciding a sentence that's sufficient but not greater

19   than what is necessary.  So if your attorneys have told you what

20   they think the sentence might be, it's their best guess.  In no way

21   can you rely on it as a guarantee of what the punishment will be.

22   Nobody knows that at this point in time.  Any questions?

23             THE DEFENDANT:  No questions.

24             MR. WOLF:  Your Honor, may we -- just referring to the

25   agreement that's before the Court, the plea agreement with the

```
 1    Government.  And in light of the question you've just asked Mr.
 2    Teyf --
 3              THE COURT:  Okay.  So maybe I need to --
 4              MR. WOLF:  It somewhat conflicts with the question you've
 5    asked because we haven't given him --
 6              THE COURT:  I haven't been fully exposed to this.  It was
 7    just recently filed.  So perhaps this is a good time to turn
 8    attention to it.
 9              So was this translated for you into Russian before you
10    signed it?
11              THE DEFENDANT:  Yes, of course.
12              THE COURT:  All right.  There are a lot of complicated
13    words and phrases in plea agreements.  Did you have a chance to ask
14    questions to be sure you knew what they meant?
15              THE DEFENDANT:  Yes, your Honor.
16              THE COURT:  Okay.  Your plea agreement waives rights to
17    appeal.  Do you understand that?
18              THE DEFENDANT:  Yes, I understand.
19              THE COURT:  And those waivers are generally enforceable.
20    So among other things, you've agreed to withdraw any
21    previously-filed administrative claim, petition or request for
22    judicial action in a designated FBI case; and you've agreed to the
23    entry of an administrative declaration of forfeiture as to property
24    listed in the plea agreement, including $2,520,044.74 seized from a
25    Bank of America account; $1,503,836.15 from the Merrill Lynch
```

account; $1,441,629.61 from the First Citizens account listed.
There's a PNC Bank account with over 210,000.  A Branch Banking and
Trust account with almost 80,000.  A PNC Bank account referred to
with over 62,000 in it.  Almost 41,000 seized from a Bank of America
account; over 40,000 from another Bank of America account; and a
Ruger P 94 .40-caliber pistol with an obliterated serial number.

Is that correct, that you're agreeing to forfeit all of
that property?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Okay.  And then there's forfeiture
immediately of money as listed on page 4 of the plea agreement.
Various amounts between 2,000 and $20,000.  Are you agreeing to
forfeit that?

THE DEFENDANT:  Yes, I do agree.

THE COURT:  Okay.  Now Mr. Allen, you're taking
possession of miscellaneous firearms and ammunition as listed on
page 5 of the plea agreement?

MR. ALLEN:  Yes, your Honor.

THE COURT:  And what's going to happen with that?

MR. ALLEN:  They will be sold or otherwise disposed of in
accordance with law.

THE COURT:  All right.  Now the defendant is agreeing
that in order to resolve any civil liability for failure to file
those bank reports for the years between 2012 and 2015 he's going to
pay a penalty of $99,758.26 I think -- my copy is not -- not as

clear as perhaps others.

Is that true, Mr. Teyf, that you're agreeing to pay this penalty to resolve the failure to file reports of foreign bank financial accounts?

THE DEFENDANT:  Yes, your Honor.  I agree.

THE COURT:  Okay.  The defendant is also agreeing to the entry of a stipulated judicial order of removal from this country. Do you understand that as part of your plea agreement?

THE DEFENDANT:  Yes, I do agree.

THE COURT:  Okay.

All right.  Government, you're agreeing at sentencing to dismiss all the other counts against this defendant only and to dismiss the motion to show cause with prejudice and not to seek to prosecute a related contempt charge against the defendant or his co-defendant.  You also agree to seek a sentence of 5 years of imprisonment, that is 60 months for each of Count 27 and Count 31, and 36 months on Count 44 to run together.  And you have certain other agreements set forth herein.

Is there anything, Ms. Kocher, further you think would be useful to bring to the Court's attention?

MS. KOCHER:  Only, your Honor, to note that the number that you were having difficulty reading was 28¢ rather than 26¢.

THE COURT:  Okay.  All right.  Thank you.

So today I've been presented with an agreement memorializing both the Government and the defendant's understanding

1    pursuant to Rule 11(c)(1)(C) that a sentence of five years

2    confinement and $5,900,241.72 in forfeiture will be imposed together

3    with that statutory penalty that I made reference to in excess of

4    $99,000 and the mandatory special assessment totaling $300 in this

5    case.

6            This will be binding on the Court if the Court accepts

7    the plea agreement.  So --

8            MR. WOLF:  Your Honor, there is also, as part of that, an

9    agreement between us and the Government, subject to the Court's

10   approval, that there not be any fine imposed as well.

11          THE COURT:  I understand.

12          Do you have any questions, sir, about what was in the

13   plea agreement that was negotiated on your behalf which you signed

14   and agreed to?

15          THE DEFENDANT:  No.  Thank you.  I have no further

16   questions.

17          THE COURT:  Okay.  So how long has the defendant been in

18   custody?  Remind the Court.

19          MR. WOLF:  About 27 months, your Honor.  A little over

20   27 months.  March 5th I think would have been 27 months.

21          THE COURT:  So Mr. Teyf, has anybody made any promise or

22   assurance to you of any kind in an effort to make you come to court

23   today to tell me you wish to plead guilty to these offenses that's

24   not contained in this plea agreement?  In other words, are there any

25   other promises that have influenced you, that have been made to you,

1    that aren't in this agreement?  Tell me now.

2              THE DEFENDANT:  No, your Honor.  There were not.

3              THE COURT:  Did anybody or anything make -- threaten you

4    to cause to you plead guilty?

5              THE DEFENDANT:  No, your Honor.  Nobody threatened.

6              THE COURT:  Did anybody force you to plead guilty?

7              THE DEFENDANT:  No, your Honor.  Nobody forced me.

8              THE COURT:  Okay.  Now, you can withdraw your plea before

9    I accept it for any reason or for no reason, but if the Court

10   accepts this plea, you cannot withdraw it.  You can't take it back.

11   Do you understand that?

12             THE DEFENDANT:  I understand that.  Absolutely.

13             THE COURT:  Are you pleading guilty to Counts 27, 31 and

14   44 of your own free will?

15             THE DEFENDANT:  Yes, your Honor.  I plead guilty on these

16   charges on my own free will.

17             THE COURT:  Have you been truthful in all of your answers

18   to all of my questions?

19             THE DEFENDANT:  I was truthful and I was answering the

20   truth.

21             THE COURT:  Okay.  Is there any other information or

22   advice that you want from your lawyers before we go forward on the

23   question of whether or not this plea will be accepted?

24             THE DEFENDANT:  No, your Honor.  There's no questions.

25             THE COURT:  Okay.  If the case involving bribery of a

public official was to go to trial, there are three -- there are

four essential elements that the Government would have to prove

beyond a reasonable doubt in order to obtain a conviction.

In this case, the four elements are as follows:  That on

or about May 23rd of 2018, you gave a thing of value, that is,

$10,000 in U.S. cash, to a public official, that is, an employee of

the Department of Homeland Security, and that you intended to

influence the performance of an official act to cause a person to be

deported from the United States and that you did so corruptly.

If the case on Count 31, visa fraud, was to go to trial,

the Government would be required to prove three essential elements

beyond a reasonable doubt.  The first, that you uttered, used

attempted to use, possessed, obtained, accepted or received an

immigrant visa which had been procured by fraud or unlawfully

obtained and that you did so knowingly.

And if Count 44 was to go to trial, making false

statement in a tax return, the Government would have to prove beyond

a reasonable doubt that you made or caused to be made and signed a

tax return for a year in question containing a written declaration

under the penalties of perjury; you didn't believe the return was

true and correct as to every material matter; and you acted

willfully in so doing.

All right.  Counsel, would you tell the Court what the

Government would be prepared to prove should the case on those

counts go to trial against Mr. Teyf.

1          MS. KOCHER:  Yes, your Honor.

2          Relevant to these charges, pursuant to the plea agreement

3   before you today, first as to Count 27.  In February of 2018, Mr.

4   Teyf told a confidential source of the Federal Bureau of

5   Investigation in a recorded conversation with Mr. Teyf that Teyf had

6   discovered the Raleigh Police had been called to the home of "A.G."

7   in November of 2017.  This call was for a disturbance there based on

8   the behavior of Tatyana Teyf.  Mr. Teyf was very upset according to

9   the confidential source and believed this conduct signaled that the

10  two, "A.G." and Tatyana, had had an affair and he began planning

11  against "A.G.".

12          On April 15th of 2018 Mr. Teyf, using a co-defendant as a

13  translator, asked a different FBI confidential source for his help

14  in finding friends who could help Mr. Teyf locate "A.G." and send

15  him to Russia.

16          On May 9th of 2018 Mr. Teyf was introduced to a Homeland

17  Security Investigation special agent acting in an undercover

18  capacity; and on May 23rd of 2018 Mr. Teyf corruptly paid this agent

19  $10,000 in cash to find and cause the deportation of "A.G." to

20  Russia.

21          As to Count 31, your Honor, concerning visa fraud, the

22  Government would show that in 2010, it was falsely claimed on

23  immigration forms in Mr. Teyf's behalf that he was entering the

24  United States to be a multi-national executive employee of Delta

25  Plus, LLC and he would be making $110,000 annually.

1          Predicated upon this knowing falsehood by person or

2     persons, which had been made at Teyf's direction, and later denials

3     that false information had ever been provided, Mr. Teyf knowingly

4     procured by fraud, a U.S. immigrant visa and subsequently used it on

5     August 10th of 2018 at the Raleigh-Durham International Airport.

6          As to Count 44, your Honor, the Government would show

7     that on or about September 26th of 2013, the defendant submitted a

8     Schedule B to his form 1040 tax return for the year 2012.  The form

9     asks whether the individual, in this case Mr. Teyf, had a financial

10    interest in or a signature authority over a financial account

11    located in a foreign country.  Mr. Teyf reported that he did not

12    have any applicable accounts or authority when, in fact, he knew

13    that he did have at least one reportable account or signature

14    authority over such account located in Russia.

15         That would be the Government's evidence, your Honor, as

16    to those three counts.

17         THE COURT:  Mr. Teyf, did you, as charged in Counts 27,

18    31 and 44 of the indictment before the Court today, commit those

19    crimes?

20         THE DEFENDANT:  Yes, I committed those crimes, your

21    Honor.

22         THE COURT:  Are you, in fact, guilty of bribing a public

23    official, engaging in visa fraud and making false statements in a

24    tax return as charged?

25         THE DEFENDANT:  Yes, I am guilty.

1    THE COURT:  I'm satisfied with your responses.  I think

2    you're capable and competent to enter into a plea.  You've done so

3    today knowingly, voluntarily.  Nobody's forced or threatened you to

4    come into the courtroom and plead guilty giving up this extensive

5    amount of property, committing to being returned to Russia with the

6    knowledge and understanding you can't come back into this country

7    unless the U.S. Attorney or designee gives you permission.  All of

8    the many facets of this plea agreement I think you understand.

9         And there is a factual basis to support your plea of

10   guilty as to these offenses and I will accept this plea agreement.

11   I will accept your plea and I will enter judgment upon it.

12        I set your sentencing date for a term in approximately

13   three months time to provide the probation office the opportunity to

14   prepare a report and the parties the opportunity to assess their

15   respective arguments and make any filings in support of your

16   positions if you deem it to be necessary.  The clerk will provide a

17   notice at a later date and time as to when exactly the case will

18   come forward for sentencing, but it will be about three months.

19        And you'll get credit for time served towards any

20   sentence I impose.  And it appears in this case, though sentencing

21   will be more straightforward than many others, I do believe the

22   sentence comports with the purposes of sentencing.

23        So is there anything further from Mr. Teyf?

24        MR. WOLF:  Nothing further, your Honor.  Thank you.

25        THE COURT:  You're welcome.

1          Ms. Kocher.

2               MS. KOCHER:  No, your Honor.

3               THE COURT:  Is there anything else that if the Court was

4    to take it up today as it concerns this individual, that might

5    promote efficiencies down the road?

6               MR. WOLF:  Nothing, your Honor.

7               MS. KOCHER:  No, your Honor.

8               THE COURT:  All right.  The deportation paperwork, I'm

9    going to get that at time of sentencing --

10              MS. KOCHER:  That's correct, Your Honor.

11              THE COURT:  -- right?  Okay.

12              Okay.  I'll put you back in custody.  Thank you.

13              THE DEFENDANT:  Thank you, your Honor.

14              THE COURT:  You're welcome.

15

16                   (Hearing concluding at 4:27 p.m.)

17

18

19

20

21

22

23

24

25

1          UNITED STATES DISTRICT COURT

2         EASTERN DISTRICT OF NORTH CAROLINA

3

4          CERTIFICATE OF OFFICIAL REPORTER

5

6          I, Michelle A. McGirr, RPR, CRR, CRC, Federal

7    Official Court Reporter, in and for the United States District Court

8    for the Eastern District of North Carolina, do hereby certify that

9    pursuant to Section 753, Title 28, United States Code, that the

10   foregoing is a true and accurate transcript of my stenographically

11   reported proceedings held in the above-entitled matter and that the

12   transcript page format is in conformance with the regulations of the

13   Judicial Conference of the United States.

14

15   Dated this 22nd day of March, 2021

16

17                              /s/  Michelle A. McGirr
                                MICHELLE A. McGIRR
18                              RPR, CRR, CRC, RMR
                                U.S. Official Court Reporter
19

20

21

22

23

24

25