UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION


_____ )
UNITED STATES OF AMERICA,       )
                                )
            vs.                 )      CASE NO. 5:18-CR-452-1FL
                                )
LEONID ISAAKOVICH TEYF,         )
                                )
            Defendant.          )
_____ )
                                )
UNITED STATES OF AMERICA        )
                                )
            vs.                 )      CASE NO. 5:18-CR-452-1FL
                                )
TATYANA ANATOLYEVNA TEYF        )
                                )
            Defendant.          )
_____ )



FRIDAY, JULY 9, 2021
SENTENCING HEARING
HELD IN RALEIGH, NORTH CAROLINA
BEFORE THE HONORABLE LOUISE W. FLANAGAN
UNITED STATES DISTRICT JUDGE




MICHELLE A. McGIRR, RMR, CRR, CRC
Official Court Reporter
United States District Court
Raleigh, North Carolina

**APPEARANCES**:


**On Behalf of the Government**:
JASON M. KELLHOFER, Assistant U.S. Attorney
MATTHEW LEE FESAK, Assistant U.S. Attorney
U.S. Attorney's Office
150 Fayetteville Street, Suite 2100
Raleigh, North Carolina  27601




**On Behalf of the Defendant**:
(Leonid Isaakovich Teyf)

DMITRY PETROV, Esquire
ROBERT S. WOLF, Esquire
Moses & Singer, LLP
405 Lexington Avenue, 12th Floor
New York, New York 10174

F. HILL ALLEN, IV, Esquire
Tharrington Smith, LLP
150 Fayetteville Street, Suite 1800
Raleigh, North Carolina  27601


(Tatyana Anatolyevna Teyf)

DAVID WILLIAM LONG, Esquire
Poyner Spruill, LLP
301 Fayetteville Street, Suite 1900
Raleigh, North Carolina  27601

JOSEPH E. ZESZOTARSKI, JR., Esquire
Gammon, Howard & Zeszotarski, PLLC
115 1/2 West Morgan Street
Raleigh, North Carolina  27601


USPO:

REBECCA RABONE

INTERPRETERS:

TATYANA DRAGA
ROMAN VOLSKY

```
 1                        (Friday, July 9, 2021)

 2                      P R O C E E D I N G S

 3

 4   (The defendant, Leonid Isaakovich Teyf, escorted into the courtroom

 5                          at 9:55 a.m.)

 6   (The defendant, Tatyana Anatolyevna Teyf, coming forward to counsel

 7               table from the gallery at 9:55 a.m.)

 8                   (Open Court at 10:03 a.m.)

 9            THE COURT:  All right.  Well, good morning.

10                   (All say good morning)

11            THE COURT:  As the first order of business, would the

12   clerk administer the oath to our interpreters.

13            THE CLERK:  Please raise your right hand.  Please state

14   your name.

15            INTERPRETER DRAGA:  Tatyana Draga.

16            INTERPRETER VOLSKY:  Roman Volsky.

17      (Interpreters, Tatyana Draga and Roman Volsky, affirmed by the

18                         deputy clerk)

19            INTERPRETER DRAGA:  I do.

20            INTERPRETER VOLSKY:  I do.

21            THE COURT:  Thank you.

22            As a matter of the record, I'll facilitate introductions.

23            And on behalf of the Government.

24            MR. KELLHOFER:  Yes, your Honor.  Jason Kellhofer

25   representing the United States along with AUSA Matthew Fesak.
```

```
 1              THE COURT:  All right.  Thank you.
 2              MR. ALLEN:  Good morning, your Honor.  For Leonid Teyf,
 3    Hill Allen from Tharrington Smith.  Robert Wolf and Dmitry Petrov --
 4    and Mr. Petrov has filed a notice of appearance -- from Moses &
 5    Singer in New York City.
 6              THE COURT:  All right.  Thank you.
 7              And, of course, Mr. Teyf is here.
 8              DEFENDANT LEONID ISAAKOVICH TEYF:  Good morning, your
 9    Honor.
10              MR. ZESZOTARSKI:  Good morning, Your Honor.  Joe
11    Zeszotarski and David Long for Ms. Teyf, who's seated next to us
12    here.
13              THE COURT:  All right.  Thank you very much.
14              So the Court has before it plea agreements entered into
15    by both defendants that are inextricably united in their provisions
16    and terms.  Each depends on the acceptance of the Court's plea of
17    the other from my reading of these agreements.
18              Briefly, to summarize, if the Court accepts Mr. Teyf's
19    plea agreement, he agrees to plead guilty to Counts 27, 31 and 44.
20              He also agrees to forfeit and/or abandon all his interest
21    in monies voluntarily surrendered by the defendant to Government
22    agents or cooperators, an additional amount -- in addition to what's
23    held in evidence -- of assets totaling $5,900,241.72.
24              He agrees to the immediate withdrawal of any previously
25    filed claim or request for action in an FBI case pending.
```

1          He agrees to entry of a declaration of forfeiture to
2    property listed separately in paragraph (1) on page 3 of the
3    agreement.  And that's the amount that totals that sum of slightly
4    less than six million variously kept by different financial
5    institutions.  As well as a Ruger pistol with an obliterated serial
6    number.
7          And the money that's held in evidence, that I previously
8    mentioned, is individually or described in the parcels as listed in
9    paragraphs a through g on page 4 and it looks like roughly that
10    totals about $50,000, give or take.
11          And this forfeiture is joint and several with Ms. Teyf as
12    her forfeiture of the same, excluding the pistol.  I don't believe
13    she declares any interest in that.  It's joint and several with Mr.
14    Teyf.
15          Mr. Hill Allen, you're going to become possessor of an
16    arsenal, it appears, and I'm sure you've got plans for disposal of
17    that.
18          MR. ALLEN:  Yes, your Honor.
19          THE COURT:  And the defendant agrees to entry of a
20    stipulated judicial order of removal.  He admits he's a native of
21    Belarus, a citizen of Russia and a citizen of Israel.  He's not a
22    citizen of this country and has no claim to acquired or derivative
23    citizenship and he agrees to enter into a stipulated judicial order
24    of removal.
25          The provisions of the same recite his first choice of

being removed to Belarus; his second choice, Israel. And if Israel
won't accept him, his third choice of Russia.

The Government agrees to certain points or provisions,
including that it will seek a sentence today of 5 years'
imprisonment for Count 27 and Count 31 and a 36-month term to run
concurrently on Count 44.

In Mr. Teyf's plea agreement, the Government agrees it
will accept the plea from Mrs. Teyf providing for the same
forfeiture provisions. It will dismiss all counts of the fourth
superseding indictment against her and it will not seek any sentence
of imprisonment against Ms. Teyf.

Should the Court accept the plea agreement and Ms. Teyf's
counter-part agreement, the entry of a final criminal judgment with
respect to this defendant and Ms. Teyf, the United States agrees it
will withdraw the notices of *lis pendens* previously filed with
respect to certain real property.

The United States agrees it will instruct the Federal
Bureau of Investigation or the United States Marshal Service to
release remaining personal property of the defendant not subject in
accordance with the agency's established policies -- I'm sorry, in
accordance with the agency's established policies and procedures and
the Government refers to a time frame of posthaste.

What is posthaste, Mr. Kellhofer?

MR. KELLHOFER: Your Honor, our intent is to do
immediately within the -- after acceptance of the plea, your Honor.

```
1                    THE COURT:  Is immediately three days, one day,
2         seven days?
3                    MR. KELLHOFER:  Within a week, your Honor.
4                    THE COURT:  Within seven days.  Okay.
5                    MR. KELLHOFER:  Yes, your Honor.
6                    THE COURT:  And this plea agreement is executed fully by
7         Mr. Teyf, the Government, through Ms. Kocher, and counsel.
8                    And Ms. Teyf's plea agreement, I've implicitly referenced
9         is before the Court, recites in pertinent part as noticed by me with
10        respect to Mr. Teyf.
11                   She acknowledges that pleading guilty may have
12        consequences with respect to her immigration status if she is not a
13        natural born citizen of this country.
14                   The plea agreement provides that under federal law, a
15        broad range of crimes are removable offenses, including the offense
16        or offenses to which the defendant is pleading guilty.  And some
17        offenses create a presumption of mandatory removal.
18                   Removal and other immigration consequences, she notes,
19        are the subject of a separate proceeding.  However, and the
20        defendant understands that no one, including her attorney, including
21        the Court, can predict with certainty the effect of her conviction
22        on her immigration status.
23                   The defendant, nevertheless, affirms through this plea
24        agreement that she wants to plead guilty regardless of any
25        immigration consequences that may result from this conviction,
```

1   including her automatic removal from the United States, denial of

2   citizenship, denial of admission to this country in the future,

3   denaturalization and any other similar consequences.

4           Again, the United States agrees to dismiss in its

5   entirety the fourth superseding indictment against this defendant

6   only and it will dismiss its motion to show cause with prejudice and

7   it will not seek to prosecute a related contempt charge against the

8   defendant or the co-defendant, Mr. Teyf.

9           The United States agrees to a sentence which includes no

10  term of imprisonment.

11          So Ms. Teyf, have you read the pre-sentence report?

12          DEFENDANT TATYANA ANATOLYEVNA TEYF:  Yes, I have.

13          THE COURT:  I'm going to invite everybody to stay seated.

14  It's my way of compensating for the fact that we speak to one

15  another through these masks, but keep your microphone front and

16  center.

17          And, Ms. Teyf, you're going to need to borrow one right

18  there.  Yes.  So you said you had read it?

19          DEFENDANT TATYANA ANATOLYEVNA TEYF:  Yes, I have.

20          THE COURT:  Was it translated for you into Russian or

21  could you read it in English?

22          DEFENDANT TATYANA ANATOLYEVNA TEYF:  I have a chance to

23  read it in English.  I was okay with understanding.  I am fully

24  understand what I've read.

25          THE COURT:  Okay.

1          Counsel, did you want to add something?

2          MR. LONG:  Just trying to get this over here so she can

3    sit down, your Honor.

4          THE COURT:  Okay.  Very good.

5          Are you ready to be sentenced today?

6          DEFENDANT TATYANA ANATOLYEVNA TEYF:  Yes, your Honor.

7          THE COURT:  Okay.  Mr. Teyf, I ask you the same question,

8    but I want to make sure -- because you say you don't understand

9    English, that you can't read it or speak it from my review of the

10   record.  Was the pre-sentence report translated for you into

11   Russian?

12         He's got to take his --

13         DEFENDANT LEONID ISAAKOVICH TEYF:  Yes, your Honor.

14         THE COURT:  He's got to take his interpretation from the

15   Court's interpreter, not from counsel.  I know you speak Russian,

16   but defer to those individuals, okay.

17         MR. WOLF:  Your Honor, I don't speak Russian.

18         THE COURT:  You don't?

19         MR. WOLF:  I don't.  And I didn't say anything to him.  I

20   just leaned over -- I don't think he was aware your Honor was -- you

21   were addressing him.

22         THE COURT:  Okay.  Well, I didn't mean to --

23         MR. WOLF:  Not a problem.

24         THE COURT:  -- suggest that you were -- okay.  All right.

25         So, again, did you understand the pre-sentence report?

1          DEFENDANT LEONID ISAAKOVICH TEYF:  Yes, your Honor.  I

2     understood.

3          THE COURT:  Okay.  Are you ready to be sentenced today?

4          DEFENDANT LEONID ISAAKOVICH TEYF:  Yes, I am ready.

5          THE COURT:  Okay.

6          The report for each defendant gives the Court much

7     background information -- much background information about the

8     offenses at issue here today.  Your family background and education,

9     your health is discussed, your work activities.  All of this

10    information I've read.

11         So let me turn my attention to the Government where I am

12    required to consider the advice of the Guidelines and the Guidelines

13    advise, with respect to Mr. Teyf, a sentence that's substantially

14    greater than what the United States has negotiated with the

15    defendant.  And of course, if I accept it, I'm bound by that.

16         Mr. Kellhofer, what can you say in furtherance of your

17    negotiated resolution with this defendant that gives the Court

18    assurances that this comports with the law, that this sentence is

19    one that recognizes his background and his history and the nature

20    and circumstances of the offenses and protects the public, will

21    discourage this type of conduct in the future and will promote

22    respect for the laws of this country.

23         Can you give the Court some background on that.

24         MR. KELLHOFER:  Yes.  (Standing at counsel table).

25    Sorry, your Honor.  It's a habit.

1            THE COURT:  It is a habit.

2            MR. KELLHOFER:  Your Honor, I think as your Honor has

3    stated, you have a plethora of facts before you regarding the

4    offenses and whatnot.  I would say with regard to the offenses, you

5    know, the Government's case, as you're aware, began as essentially a

6    white collar offense or offenses that were being investigated; and

7    through that, it is the Government's position that that evidence has

8    displayed an individual who acts corruptly, who came to the country,

9    as is within the charge.

10           That began with an individual taking advantage of the

11   systems within the United States, the immigration system in that

12   instance, and then progressed on to misuse of the financial systems

13   within the U.S.  And that's represented through the tax count

14   through which he is pleading guilty here today.

15           And then the Government's case took a bit of a turn in

16   terms of investigation, unexpectedly, with regard to the

17   circumstances surrounding the infidelity suspected by Mr. Teyf of

18   his wife.  And then at that point, he became pretty hell bent on

19   revenge.

20           And through the Government's review of the evidence,

21   became truly completely focused on that one subject, that clearly

22   began to take over the man's life.

23           Now, our evidence, had we proceeded to trial, we believe,

24   would have presented some evidence in the past of potentially

25   abusive behavior by the defendant towards his wife as well as a

1    willingness to engage in at least some low levels of violence in

2    relation to corrupt practices in Russia.

3            So I say all that to say that the Government's evaluation

4    here did largely center on that last aspect, your Honor.  Because

5    while certainly financial crimes are absolutely worth pursuing and

6    whatnot and they have harms, direct and indirect, obviously physical

7    violence is of more immediate concern.

8            We did conclude, based on our review of quite a bit of

9    evidence, that this was focused on one circumstance and one

10   individual, which we do feel worthy of note in terms of the

11   individual's threat to society at large.

12           So that's one factor that largely went into our

13   evaluation and discussions with my respected colleagues at the

14   defense counsel table.  And I think that directly pertinent to the

15   question of an individual's threat in the future, at least

16   physically, your Honor.

17           I will say that, additionally, had some effect on our

18   decision with regard to how to plead with Mrs. Teyf in that it is

19   the Government's position that while her deportation status will be

20   a matter resolved elsewhere and through other agencies, I, you know,

21   as a representative from this case, am convinced that she would be

22   putting herself at harm potentially in leaving the country.

23           So we were not keen, your Honor, towards fully pressing

24   or demanding a charge that guaranteed deportation, if you will.

25           THE COURT:  Can I interject here?  So you think if she

1   leaves the country, she may risk harm in Belarus or Russia?

2           MR. KELLHOFER:  I believe that Mr. Teyf has a lot of

3   money and that throughout the evidence in this case, he has

4   displayed the belief that his money puts him above the law and he

5   will hire people or pay people to do things; and specifically here,

6   there was a willingness and a desire to harm both the paramour, from

7   the facts, as well as Mrs. Teyf.  Yes, your Honor.

8           And so it would be our position that, yes, she would

9   likely be risking herself or making that choice to put herself at

10  potential risk to go to some of those countries or areas where we

11  believe Mr. Teyf would still have a large amount of influence

12  through his financial means.

13          That being said, your Honor, the Government has put a

14  large amount of effort into this case certainly, but we have

15  additionally recognized -- and it's our job to fully evaluate a case

16  as to whether or not -- despite whether we fully believe it --

17  whether we can bear the burden of proving it beyond a reasonable

18  doubt.

19          We've had multiple discussions with defense counsel, and

20  as you are fully aware, there's been multiple discussions via

21  filings and quite a bit of litigation.  We have to evaluate that and

22  we've done so, particularly in the realm, your Honor, of 404(b)

23  issues that would arise, that would require extensive briefing to

24  even allow your Honor to rule on it.

25          We believe the trial -- or the trials would take up, with

regard to all individuals, at least six to eight weeks for both Mr.

and Mrs. Teyf to be completed. And we have, as your Honor is aware,

through our filings, substantial concerns about the safety of

background information related to certain witnesses.

And then another matter, your Honor, to be perfectly

frank, is that we are dealing with -- while we believe these to be,

I suppose, current charges that deal within the statute of

limitations certainly, but revolve largely around facts that are

quite a bit historical and occurred in other countries.

All of that is to say that we recognize the risks and

those risks have been appropriately pointed out through zealous

representation by the defense.

In evaluating all of that, your Honor, we've decided that

this plea is one that is justice achieved for the citizens of the

Eastern District of North Carolina to the extent that we believe we

can secure that.

To be frank, as I told, I think, defense counsel during

one of our meetings, that often, in my view, compromise means

everybody leaves a little bit dissatisfied. And to be frank, from

the United States' perspective, this is an individual who's

committed a number of crimes, who was engaging in seeking violence

against an individual, up to and including death, and certainly is

worthy of prosecution.

Nonetheless, we feel that a five-year sentence, given the

situation that exists and a substantial financial impact through the

1   roughly -- I believe right around six million -- as well as the

2   other provisions and a guaranteed deportation.

3           All of those, your Honor, lead us to conclude that this

4   is a deal, a plea deal, that achieves justice as best can be

5   obtained in this case, despite the understandable Guidelines, which

6   take into account only the fact of a sentence rather than what it

7   would take to actually obtain getting to that point.

8           THE COURT:  Okay.  I have a defendant's statement in

9   support of judicial order of removal and the proposed order for

10  release of certain assets, but the copies given to the Court are not

11  fully executed.  Do you have --

12          MR. KELLHOFER:  I have the signed copies.  May I

13  approach?

14          THE COURT:  Please do.

15    (Attorney Kellhofer providing documents to the deputy clerk.  The

16          deputy clerk providing documents to the Court)

17          THE COURT:  So hypothetically, what happens, Mr.

18  Kellhofer, if the country of last resort won't take him?

19          MR. KELLHOFER:  Your Honor, that is a question without an

20  answer, at least from the Office of Immigration -- I'm sorry, the

21  Office of International Affairs.  I had spoken with OIA, Office of

22  International Affairs, about deportation to these countries and

23  essentially here's the summary rundown.

24          The best guess belief from our Government, the OIA

25  section, is that it depends largely on the charges.  The tax charge

has no effect essentially for any country's concern is what it was

informed of.  The bribery statute, likewise, literally has very

little consequence.  The immigration statute was the one that would

actually potentially cause a hang up if it involved fraudulent

identity.

In this case, it was not fraudulent identity, it was

rather misstatements.  So particularly, Israel would apparently have

some likely concern over that, but we were informed that all three

countries, these charges -- based on the charges, would likely not

be a hindrance in this case in terms of the individual being

accepted by those countries so long as they had citizenship within

those countries.  So that's, I guess, the answer I was given.

To the question of if all three denied, then it would be

the individual's responsibility to return -- to continue -- under

immigration law, it's the individual's responsibility to continue to

make efforts to obtain the deportation action from those countries

or alternatively, to provide a differing location.

So where that individual would be housed during that

period or whether they would be released into the community during

that period would be a matter for immigration.  They can make a

choice -- at that point, they could administratively hold the

individual, which would be a -- it's not considered legally

confinement.  It would be an administrative detention of that

individual.  Or they could release the individual based on some of

those requirements that are very similar to probation in terms of

1  ability to, you know, check in at certain dates, et cetera.

2              So that's the summary, your Honor.

3              THE COURT:  During which time, the Court's term of

4  supervised release would be in force and effect as well.

5              MR. KELLHOFER:  That is correct, your Honor.

6              THE COURT:  All right.  Well, Mr. Zeszotarski, what say

7  you for your client?

8              MR. ZESZOTARSKI:  Your Honor, with respect to Ms. Teyf,

9  under the terms of the plea agreement, I think the question for the

10  Court is, is there a term of probation and how long is it.

11              I think there's an agreement of no further incarceration

12  in the case, an agreement as to no further financial penalty beyond

13  the special assessment and the agreed-upon forfeiture amounts.

14              I'll tell your Honor that with respect to Ms. Teyf, she's

15  43 years old.  She's got no prior record.  She's been under

16  supervision since December of 2018, the end of December.

17              Your Honor notes in the pre-sentence report, she was in

18  custody for seven days according to the first page of the

19  pre-sentence report.  She then was released and has had no issues

20  whatsoever under supervision for two and a half years now.

21              I'm not going to belabor the facts.  I think Mr.

22  Kellhofer is correct when he says that a settlement in a case like

23  this is something that both sides come away with, with not getting

24  everything that they want and that's certainly true here.

25              Ms. Teyf is in an unusual position, in my experience as a

federal criminal defendant, in that she is a defendant, but she's also a victim. And your Honor has seen in some of the filings in this case, some of the evidence that is out there, and there's no question that she's a victim.

She is divorced from Mr. Teyf. She has been divorced from Mr. Teyf since March of 2017; and she, frankly, your Honor, looks forward to trying to put this behind her and go on with her life.

She has children. She has a young child, an 11 year old, who, frankly, is her focus. She has a 22-year-old daughter that also she's very involved with and who's in Raleigh as well.

And I just ask the Court to consider -- with respect to what to do with respect to Ms. Teyf's sentence, you have seven days' credit that's there, and you have the ability to impose probation for a term of -- I think the statute requires a year.

And I'd ask the Court to consider in that regard if the Court is -- if the Court -- Mr. Long was telling me that Tatyana was in jail for 13 days. Whether it's seven or 13. If the Court's going to impose a term of probation, I'd just ask the Court to consider that she's been under supervision for two and a half years and has had no issues whatsoever.

Happy to give the Court any other further information you would like, but we'd ask the Court to consider all that in deciding what to do.

THE COURT: All right. So the factual objections don't

1    have any affect on the Guideline range?

2                MR. ZESZOTARSKI:  That's correct, Your Honor.

3                THE COURT:  Do you want to be heard further on those?

4                MR. ZESZOTARSKI:  I don't, your Honor.  I just wanted the

5    Court to be aware with respect to the deportation issue, this is not

6    an offense that requires deportation.

7                We do have immigration counsel who's representing Ms.

8    Teyf and who will deal with the appropriate authorities, but the

9    immigration issue that's been raised by the Government is separate

10   and apart from any consequences of this conviction.

11               THE COURT:  Well, the point you're making is you really

12   don't want me to order her surrendered to immigration officials for

13   consideration of deportation.

14               MR. ZESZOTARSKI:  That's correct, Your Honor.

15               THE COURT:  What says the Government?

16               MR. KELLHOFER:  Your Honor, the Government is not

17   requesting that she be turned over to immigration or anything.  That

18   agency is fully capable of acting in its own capacity should it seek

19   to enforce deportation or immigration action in the future.

20               And I will say, this is not an individual, unlike other

21   circumstances I suppose, where there's concerns of re-engagement

22   with the individual that would lead to a dangerous encounter or

23   something of that nature.

24               THE COURT:  So is it the Government's position that you

25   join in this objection or you don't oppose it?

1          MR. KELLHOFER:  We do not oppose it, your Honor.

2          THE COURT:  Okay.  Now, let's turn to Mr. Teyf and his

3     objections.

4          Mr. Allen, do you want to be heard on that or Mr. Wolf?

5          MR. ALLEN:  Your Honor, may it please the Court, Mr. Wolf

6     will respond.

7          THE COURT:  Okay.

8          MR. WOLF:  Your Honor, as we indicated in our objections

9     that we filed -- and as your Honor has both -- read them in the

10    addendum to the pre-sentence report, we are not seeking the Court to

11    make any determination or to be heard on that.  We are before the

12    Court on Rule 32 of the Federal Rules of Criminal Procedure and for

13    sentencing.

14          In this instance, it does not require that the Court

15    determine or make such a ruling if it's unnecessary, of course, they

16    would not affect sentencing.

17          And if the Court's going to impose a sentence in

18    accordance with the agreement, the 60 months, then there's no need

19    to determine that at all.  It wouldn't be relevant.

20          THE COURT:  Do you want to be heard on a legal objection

21    regarding special conditions?

22          MR. WOLF:  Yes, your Honor.  Our position is Mr. Teyf is

23    going to be and has agreed to be removed and will be deported from

24    this country.  So there will not be any period of time in which he

25    will be at liberty in this country to be supervised or at liberty in

1    the country for any concern of conduct that will occur in this

2    country.

3            Indeed, he's largely agreed to all of the terms here,

4    including the sentence, to achieve a result that he feels is in the

5    best interest of his family as well as to put this case, you know,

6    appropriately behind him and move forward in life.

7            But in terms of supervision, there's no financial terms

8    that will continue in this case.  There's no restitution, there's no

9    fine, so there's no -- none of the -- sometimes financial concerns

10   that probation might have about how someone might be able to meet a

11   restitution order or pay restitution payments and have certain

12   employment, none of that would apply to this sentence.

13           So generally for all of those reasons, there's no need

14   for any imposition of the supervisory term.

15           THE COURT:  Okay.  Does your client want to say anything?

16           DEFENDANT LEONID ISAAKOVICH TEYF:  No, your Honor, I

17   don't have any questions.

18           MR. WOLF:  Your Honor, is this our statement before the

19   imposition of sentencing?

20           THE COURT:  You have an opportunity to be heard.  Would

21   you like to be heard further?

22           MR. WOLF:  Your Honor, I would just -- yes, just if I

23   could briefly.

24           We appreciate the Court going forward in accordance with

25   the agreement, but this has been a long -- as your Honor is aware, a

1   very long and vigorous case and very aggressively defended and
2   contested.
3          And as far as the defense is concerned, we believe this
4   is a just resolution of this case, a just result of this case and,
5   like I say, it allows Mr. Teyf -- the terms of this resolution, are
6   very much and very responsibly in the interest of his family and his
7   children.
8          It involves the release of a very substantial amount of
9   assets being returned to him and the family such that the family can
10  then have financial ability and support in the future, which is very
11  important to Mr. Teyf that his family be taken care of.
12         And it also achieves, of course, as your Honor is aware,
13  the dismissal of a significant number of charges -- specifically, 37
14  money laundering counts, the murder for hire charge and other
15  offenses as the Government has moved for those to be dismissed as
16  well in connection with the sentence.
17         So for all of that, your Honor, we believe this is a just
18  agreement and I have nothing further to say.  Thank you.
19              THE COURT:  Okay.  Thank you.
20              Mr. Teyf, is there anything you want me to know?
21              DEFENDANT LEONID ISAAKOVICH TEYF:  No, thank you, your
22  Honor.  I have left everything to my attorneys and they have relayed
23  it to the Court.
24              THE COURT:  All right.  Thank you.
25              All right.  Mr. Long, Mr. Zeszotarski, is there anything

1    else you want me to know about your client?

2                MR. ZESZOTARSKI:  No, your Honor.  Thank you.

3                THE COURT:  Ms. Teyf, you have an opportunity to speak to

4    me before I sentence you.  Is there anything you want to note?

5                DEFENDANT TATYANA ANATOLYEVNA TEYF:  No, your Honor.

6                THE COURT:  All right.  Mr. Kellhofer, have I heard the

7    Government fully?

8                MR. KELLHOFER:  You have, your Honor.

9                THE COURT:  I think it's a thoughtful presentation that

10   you've made.  There are problems with the proof.  That's underlined

11   in your remarks to the Court, at least in some respects.  And

12   there's been an approach by the Government, taking that into

13   consideration and many other things, that has formed this agreement

14   it has entered into with each side.  And the sides have obviously

15   worked together in their efforts to resolve this case with respect

16   to the husband and the ex-wife.

17                So I have decided, all things considered, that the

18   agreements should be accepted.

19                I'll dismiss the fourth superseding indictment against

20   you, Ms. Teyf, and sentence you in accordance with the terms of the

21   agreement.

22                I do believe that if you are to be deported, you will be

23   found and you will be deported.

24                I'm going to sentence you to time served and then three

25   years of supervised release.

1      There is a hundred-dollar special assessment.

2      And all the other dismissals and recoveries of assets and

3 loss of assets, as memorialized in the plea agreements, all that

4 will come true in your case.

5      I am going to put you under a mental health treatment

6 program.  I assume you're getting mental health treatment now; is

7 that correct?

8      MR. ZESZOTARSKI:  She sees a counselor, your Honor.  Yes.

9      THE COURT:  And I want that to continue as directed by

10 the probation office during supervision.

11      And she'll have to cooperate in the collection of DNA;

12 support her dependents; and provide the probation office with access

13 to any requested financial information.

14      Hundred-dollar special assessment is due immediately.

15      I'm not going to impose a fine in addition to all the

16 other financial terms memorialized.

17      Does your client have any questions about the judgment?

18      MR. ZESZOTARSKI:  No, your Honor.  I would request, in

19 the written judgment, your Honor, with respect to time served, if

20 the judgment could show the number of days that that constitutes so

21 that the record is clear for immigration purposes.

22      THE COURT:  All right.  Madam probation officer, we've

23 had an estimate of seven days and one of 13 days.  What is your

24 understanding of the amount of time?

25      PROBATION OFFICER RABONE:  Our understanding is

seven days, your Honor.

THE COURT:  All right.  Seven days then it is.

MR. ZESZOTARSKI:  Thank you, your Honor.

THE COURT:  Now, other conditions.  You can't break any law, you can't possess a weapon, you can't possess drugs.

We have other standard and mandatory conditions which have been adopted in this district.  Basically, these are things you should be doing anyway, like allowing the probation officer to come into your residence when requested and other standard and mandatory provisions.  And those will be included in the Court's judgment as well.

You'll submit to a urinalysis test within 15 days and at least two periodic tests thereafter while under supervision.

Ms. Rabone, for the probation office, are there any changes recommended to comply with relevant sentencing law?

PROBATION OFFICER RABONE:  No, your Honor.

THE COURT:  All right.  Anything further, Mr. Zeszotarski or Mr. Long?

MR. ZESZOTARSKI:  No, your Honor.  Thank you.

THE COURT:  Mr. Kellhofer, anything as it relates to this defendant?

MR. KELLHOFER:  No, your Honor.

THE COURT:  All right.  That is the Court's judgment.

Now I turn my attention to you, Mr. Teyf.  I sentence you to 60 months on Counts 27 and 31 to run concurrently and 36 months

1    on Count 44 to run concurrently.

2            You'll be supervised for three years on Counts 27 and 31

3    and one year concurrent on 44.

4            I'm not going to impose a fine because of the financial

5    provisions discussed earlier that have been agreed to.

6            There is a $300 special assessment.

7            The other counts against you are now dismissed.

8            While on supervision -- and I have heard the Government

9    indicate in response to the Court a certain scenario where you could

10   possibly stay in this country, though that is certainly not desired.

11           I am entering into the -- now, interestingly, I've been

12   handed a defendant's statement in support of judicial order of

13   removal.  This one, too, doesn't have the attorney's signatures on

14   it.

15           So I didn't get anything -- as I look at the final page,

16   Mr. Kellhofer, anything that I didn't already have, which is two

17   unexecuted documents.  So I'm going to hand this to the clerk who's

18   going to hand it back to you.

19           Mr. Kellhofer, if you could approach the bench and

20   recover these documents and I'll give the lawyers a chance to confer

21   so that the Court is handed all necessary signatures.

22     (Attorney Kellhofer retrieving documents from the deputy clerk)

23           MR. KELLHOFER:  Do you have the other copy, your Honor?

24           THE COURT:  Okay.  Wait a minute.  You're right.  I'm

25   handing you back the one that I had.  I've got it.  Thanks.

1          MR. KELLHOFER:  Yes, your Honor.

2          THE COURT:  All right.  So I am entering into the order

3     of release.  Is there any order of removal?  You've handed me the

4     statement in support.  Is there a proposed order of removal or --

5          MR. KELLHOFER:  I did not have an order of removal with

6     me, your Honor.  I apologize.  It should have just been the judicial

7     -- defendant's statement in support of.

8      (Attorneys Allen and Kellhofer conferring at counsel table briefly

9                            off the record)

10         MR. KELLHOFER:  I apologize, your Honor.  If I may

11    approach.

12         THE COURT:  Certainly.

13         MR. KELLHOFER:  We had had a change with regard to the --

14         THE COURT:  Okay.  The court reporter -- you're probably

15    going to need to speak a little bit louder.

16         MR. KELLHOFER:  I'm sorry.  We had had a change, your

17    Honor, internally with counsel as to the locations in this order so

18    I wanted to make certain this final copy is in accordance with the

19    copy that you've been given with the other documents, that it would

20    be from the United States and in the first instance, Belarus.  Upon

21    refusal of Belarus, in the alternative, Israel.  And upon refusal of

22    Israel to accept him, in the alternative, Russia, which should now

23    be in line with the documents you've previously been provided.

24         THE COURT:  Okay.

25      (Attorney Kellhofer providing documents to the deputy clerk.  The

1       deputy clerk providing documents to the Court)

2       THE COURT:  It is.  And I enter into it.

3       So you're going to be surrendered to an immigration

4   official and considered for deportation.  And if ordered deported,

5   as you have affirmed in the execution of the documentation, you will

6   remain outside this country.  Do you understand that?

7       DEFENDANT LEONID ISAAKOVICH TEYF:  Yes, your Honor.  I

8   understand.

9       THE COURT:  And if for some reason you're not immediately

10  deported, as indicated, you'll be under supervision.

11      You can't break any law, you can't possess a weapon,

12  can't possess drugs.

13      We have some other standard and mandatory conditions that

14  you'll have to comply with.

15      In addition, a program approved by the probation office

16  for the treatment of addiction or dependency.

17      You won't consume alcohol; you won't go to businesses

18  whose primary product is alcohol; you won't be around people

19  drinking alcohol; and you won't use medicine with alcohol in it

20  unless you have a prescription from a doctor and permission of the

21  probation office.

22      I am requiring mental health treatment for you.

23      As with Ms. Teyf, she has to comply with warrantless

24  searches of her property.  You have to do the same.

25      You're going to provide your probation officer with

access to any requested financial information. That objection is
overruled. However, in the part where you seek to be relieved of a
requirement that you get permission before you open up a line of
credit, I sustain that part of your objection; but whenever the
probation office wants information of a financial nature, you will
provide it. Any question about that?

DEFENDANT LEONID ISAAKOVICH TEYF: No, your Honor.

THE COURT: Okay. Cooperate in the collection of DNA.

And, again, like Ms. Teyf, support your dependents.

You owe a $300 special assessment.

And in your case, too, I'm not going to impose a fine.

All of the other actions that the parties are to be
relieved of, the notice of *lis pendens* and other efforts to be
undertaken by the Government. If there remains an issue, seven days
from today's date, you can bring it to the Court's attention and
I'll take it up then.

I'm going to tell you both how you can appeal, but before
I do that, it's appropriate for me to go back around the room with
regard to the judgment pronounced concerning Mr. Teyf.

Ms. Rabone, are there any changes recommended by the
probation office to comply with relevant sentencing law?

PROBATION OFFICER RABONE: No, your Honor.

THE COURT: Okay. Does counsel have any matters not
already noted?

MR. WOLF: Yes, your Honor. We'd ask the Court to

```
1    recommend designation to Butner.

2              THE COURT:  Okay.  I'll recommend Butner.

3              And I'm going to recommend his mental health treatment

4    while in the custody of the Bureau of Prisons.

5              MR. WOLF:  Your Honor, I'm sorry to interrupt.

6              THE COURT:  Go ahead.

7              MR. WOLF:  I would also ask that you recommend -- I know

8    it's subject to the Bureau of Prisons approval -- but for the RDAP

9    program as well.  As you've noted, the alcohol abuse is certainly in

10   his history.  It's certainly noted and documented in the

11   pre-sentence report in multiple paragraphs and it would be certainly

12   to his benefit --

13             THE COURT:  Yes.  I'll --

14             MR. WOLF:  -- to that subject.

15             THE COURT:  -- I'll recommend that he get the benefit of

16   substance abuse treatment with regard to alcohol issues while in the

17   Bureau of Prisons, but if you're asking for the residential

18   treatment program, I'm nearly 100 percent sure he won't qualify for

19   that given his immigration status.

20             But also given how rare those bed spaces are, I'm going

21   to leave that bed space for somebody that's going to be staying in

22   this country when he's released.  And based on your hope and

23   understanding, that person's not your client.

24             But I do open up the door for just general treatment for

25   alcohol dependency.  And I completely agree with you, that that
```

```
 1   would be -- if he's willing to participate, that would be very
 2   useful for him.
 3               MR. WOLF:  Thank you, your Honor.
 4               THE COURT:  Okay.  Mr. Kellhofer.
 5               MR. KELLHOFER:  Nothing from the Government other than,
 6   your Honor, I don't have the docket entry number, but I will note
 7   that the Government's plea agreement with both of the defendants
 8   state that the Government will dismiss its motion to show cause and
 9   do so with prejudice.
10               We will file a -- on the record -- a written motion to
11   dismiss for that, your Honor.
12               THE COURT:  If you want, you can just --
13               MR. KELLHOFER:  And I'm happy to do so now.  I hate to
14   ask to do so without knowing the docket entry number.
15               THE COURT:  All right.  Well, let me look it up right
16   now.  (Reviewing docket entries).  When was it filed to the best of
17   your recollection?
18               MR. ALLEN:  March 19th or thereabouts, your Honor.
19               THE COURT:  Of this year?
20               MR. ALLEN:  Yes, your Honor.
21               THE COURT:  Okay.  All right.  (Reviewing docket
22   entries).
23               All right.  The first pending motion I see goes back to
24   August 7th of 2020.  It's a motion in limine and that motion is
25   terminated as a result of the judgment.
```

```
 1              Now moving on --
 2          MR. ALLEN:  Your Honor, I apologize.  I misunderstood
 3     which document you were asking about.  There's a motion to compel if
 4     we're talking about the -- back in roughly August of 2019.
 5          THE COURT:  But that doesn't relate to what Mr. Kellhofer
 6     is discussing, does it?
 7          MR. ALLEN:  I may have missed --
 8          THE COURT:  Does that relate to what Mr. Kellhofer is
 9     discussing?  I don't...
10      (Attorneys Kellhofer and Allen conferring at counsel table briefly
11                          off the record)
12          THE COURT:  Susan, do you have the docket number?  I'm
13     looking for it and it's not coming up.  What do you think?
14          THE CLERK:  Judge, I'm still looking, but I do see on
15     January 3rd, 2020, at Docket Entry 359, there was a motion for order
16     to show cause, which is not pending at the moment.
17          THE COURT:  Well, Mr. Kellhofer, I'm going to go back
18     around and think that you had a good idea.  The onus is on you to
19     find this motion that's referred to in the plea agreement and to do
20     what the plea agreement says so...
21          MR. KELLHOFER:  Absolutely, your Honor.
22          THE COURT:  Okay.  You can appeal if you think something
23     is wrong with the conviction or the sentence.  You did enter into
24     plea agreements.  These plea agreements have benefits to you, of
25     which I have spoken already, including dismissal of the fourth
```

superseding indictment against you, Ms. Teyf, and dismissal of many
other charges against you, Mr. Teyf.

There are also waivers in those plea agreements, waivers
of your rights to appeal.  These waivers are generally enforceable.
If you believe they're not for some reason, you can present your
theory to the court above, but each of you is governed by the same
deadline.  It's 14 days from today's date.

If you can't afford the cost of an appeal, you can apply
for permission to appeal for free; and if you request, Ms. Tripp
will fill out the appeal paperwork for you.

Any questions about your client's appeal rights that I
need to address today, Mr. Zeszotarski?  Mr. Long?

MR. ZESZOTARSKI:  No, your Honor.  Thank you.

THE COURT:  All right.  Mr. Wolf or Mr. Allen?

MR. WOLF:  No, your Honor.

THE COURT:  All right.  This concludes today's hearing.
Thank you.

(Hearing concluding at 10:58 a.m.)

1          UNITED STATES DISTRICT COURT

2        EASTERN DISTRICT OF NORTH CAROLINA

3

4        CERTIFICATE OF OFFICIAL REPORTER

5

6          I, Michelle A. McGirr, RMR, CRR, CRC, Federal

7    Official Court Reporter, in and for the United States District Court

8    for the Eastern District of North Carolina, do hereby certify that

9    pursuant to Section 753, Title 28, United States Code, that the

10   foregoing is a true and accurate transcript of my stenographically

11   reported proceedings held in the above-entitled matter and that the

12   transcript page format is in conformance with the regulations of the

13   Judicial Conference of the United States.

14

15   Dated this 25th day of March, 2022

16

17                              /s/  Michelle A. McGirr
                                MICHELLE A. McGIRR
18                              RMR, CRR, CRC
                                U.S. Official Court Reporter
19

20

21

22

23

24

25